1  Robert J. Miller, Esq. (#013334)
   Bryce A. Suzuki, Esq. (#022721)
2  **BRYAN CAVE LLP**
3  Two North Central Avenue, Suite 2200
   Phoenix, Arizona  85004-4406
4  Telephone:  (602) 364-7000
   Facsimile:    (602) 364-7070
5  Internet: rjmiller@bryancave.com
6           bryce.suzuki@bryancave.com
7  Attorneys for Countrywide Warehouse Lending

**Bryan Cave LLP**
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

8           **IN THE UNITED STATES BANKRUPTCY COURT**

9              **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 10  In re: | In Proceedings Under Chapter 11 |
| 11  FIRST MAGNUS FINANCIAL | Case No. 4:07-bk-01578-JMM |
| 12  CORPORATION, | |
| 13 | **COUNTRYWIDE WAREHOUSE LENDING'S MOTION FOR RELIEF FROM AUTOMATIC STAY TO RECOVER VARIOUS MORTGAGE LOANS AND OTHER COLLATERAL OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION AND ORDER REGARDING USE OF CASH COLLATERAL** |
| 14          Debtor. | |
| 15  COUNTRYWIDE WAREHOUSE | |
| 16  LENDING, | |
| 17          Movant, | |
| 18  v. | |
| 19 | Date of Hearing:  Not Yet Set |
| 20  FIRST MAGNUS FINANCIAL | Time of Hearing: Not Yet Set |
| 21  CORPORATION, | |
| 22          Respondent. | |

23       Countrywide Warehouse Lending ("Countrywide"), by and through its

24  undersigned attorneys, hereby moves, pursuant to 11 U.S.C. §§ 361, 362 and 363,

25  Bankruptcy Rule 4001, and Local Bankruptcy Rule 4001-1, for relief from the automatic

26  stay or, in the alternative, for adequate protection and an order regarding use of cash

27  collateral.

28

1        This request for relief is more fully supported by (i) the attached Memorandum of

2   Points and Authorities; (ii) the "<u>Declaration of Blair Kenny</u>" (the "<u>Kenny Declaration</u>"),

3   attached hereto as Exhibit "1"; and (iii) the entire record before the Court.

4        RESPECTFULLY SUBMITTED this 30th day of August, 2007.

5                        BRYAN CAVE LLP

6

7                        By:   /s/ BAS, #022721

8                             Robert J. Miller
                              Bryce A. Suzuki

9                             Two North Central Avenue, Suite 2200
                              Phoenix, Arizona  85004-4406

10

11                       Attorneys for Countrywide Warehouse Lending

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona  85004-4406
(602) 364-7000

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    Parties And Jurisdiction.

1.    Countrywide is a California corporation, with its principal office located at 8511 Fallbrook Avenue, West Hills, California.

2.    First Magnus Financial Corporation (the "Debtor") is the debtor in the above-referenced Chapter 11 bankruptcy case.

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G) and (M).

#### B.    Background.

4.    The Debtor and Countrywide are parties to that certain Revolving Credit and Security Agreement dated as of June 8, 2007 (the "Agreement").  See Kenny Declaration, ¶ 4.  A true and correct copy of the Agreement is attached to the Kenny Declaration as Attachment "A" and incorporated herein by this reference.

5.    Pursuant to the Agreement, Countrywide provided the Debtor with a line of credit to be used for originating, acquiring or repurchasing mortgage loans.  See Kenny Declaration, ¶ 5.

6.    As of August 21, 2007 (the "Petition Date"), the outstanding principal balance under the Agreement was not less than $28,995,461, plus accrued, unpaid interest, late charges, attorneys' fees, and other related costs and expenses (collectively, the "Indebtedness").  See Kenny Declaration, ¶ 6.

7.    The Indebtedness is secured by first-priority, perfected security interests in and liens upon certain collateral identified in the Agreement (the "Collateral"), which includes, without limitation, the following: (a) certain identified mortgage loans, including the mortgage loans listed on Attachment "B" to the Kenny Declaration (the "Mortgage Loans"), together with the promissory notes (the "Notes"),

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

the mortgages, deeds of trust, security deeds or similar instruments (the "Mortgages"), and all other documents and instruments evidencing or securing the Mortgage Loans, (b) all funds of the Debtor deposited or held in the "Over/Under Account" identified in the Agreement (the "Over/Under Account"), (c) all accounts, contract rights, and general intangibles constituting or relating to the Collateral, and (d) all products and proceeds of the Collateral, including all cash and non-cash proceeds received by the Debtor in connection with servicing the Mortgage Loans (such proceeds, the "Servicing Collateral"). See Kenny Declaration, ¶ 7.

8.      As of the Petition Date, the aggregate unpaid principal balance of the Mortgage Loans was approximately $44,562,407. See Kenny Declaration, ¶ 8.

9.      Countrywide perfected its security interest in the Collateral by (a) filing a UCC-1 financing statement covering the Collateral on February 7, 2006, with the Arizona Secretary of State, Document No. 200614042843, (b) taking possession (either directly or through a custodian) of all relevant documents and instruments evidencing or securing the Mortgage Loans, including the original Notes and original assignments of the Mortgages, and (c) taking possession of the Debtor's funds in the Over/Under Account, which are currently on deposit in an account owned and controlled by Countrywide. See Kenny Declaration, ¶ 10.

10.     The Debtor is in default of the Agreement, having failed to comply with the terms of the Agreement or repay the Indebtedness. See Kenny Declaration, ¶ 11.

11.     Upon information and belief, the Debtor continues to service the Mortgage Loans, which may include the following: (a) collecting payments of amounts due under the Mortgage Loans, (b) establishing and administering segregated custodial accounts (the "Custodial Accounts") to hold principal payments, interest payments, insurance proceeds, condemnation proceeds, foreclosure proceeds and other amounts paid in respect of the Mortgage Loans, (c) establish segregated escrow accounts (the "Escrow Accounts") to hold amounts escrowed on behalf of the borrowers under the

588117/0213181

4

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

1 Mortgage Loans, including home insurance premiums, mortgage insurance premiums and

2 property taxes, and (d) implementing collection procedures for defaulted Mortgage

3 Loans, including foreclosure proceedings. <u>See</u> Kenny Declaration, ¶ 12.

4 **II.    LEGAL ARGUMENT.**

5      **A.    <u>Countrywide Is Entitled To Relief Under Section 362(d)(1).</u>**

6      Pursuant to Bankruptcy Code §362(d)(1), relief from the automatic stay

7 shall be granted "for cause," which includes, but is not limited to, lack of adequate

8 protection. "Cause" is broadly construed by the bankruptcy courts. <u>In re Texas Optical,</u>

9 <u>Inc.</u>, 188 B.R. 552, 557 (Bankr. E.D. Tex. 1995). Courts evaluate whether cause exists to

10 grant stay relief on a case-by-case basis. <u>In re Laguna Associates Ltd. Partnership</u>, 30

11 F.3d 734, 737 (6th Cir. 1994).

12      Without defining the term "adequate protection," 11 U.S.C. §361 sets forth

13 three non-exclusive means of providing adequate protection:

14
15     (1)    requiring the trustee to make a cash payment or
periodic cash payments to such entity, to the extent that the
stay under section 362 of this title, use, sale, or lease under
16 section 363 of this title, or any grant of a lien under section
364 of this title results in a decrease in the value of such
17 entity's interest in such property;

18
19     (2)    providing to such entity an additional or replacement
lien to the extent that such stay, use, sale, lease, or grant
20 results in a decrease in the value of such entity's interest in
such property; or

21
22     (3)    granting such other relief, other than entitling such
entity to compensation allowable under section 503(b)(1) of
23 this title as an administrative expense, as will result in the
realization by such entity of the indubitable equivalent of
24 such entity's interest in such property.

25 11 U.S.C. §361. The debtor bears the burden of proving that the creditor's interest in the

26 property is adequately protected. <u>See</u> 11 U.S.C. §362(g)(2).

27

28

588117/0213181

5

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

1    Countrywide's interest in the Collateral is not adequately protected because

2    the value of the Collateral is declining and Countrywide's interest in the Collateral is

3    being impaired by virtue, among other things, the following:

4    *Continuing Decline in Market Value of Mortgage Loans*

5    The Debtor admits that the highly-publicized turmoil in the secondary

6    mortgage loan industry is continuing to cause rapid and severe devaluation of mortgage-

7    backed securities and mortgage loan holdings, creating a downward pressure on the value

8    of mortgage loans. See Declaration Of Gupreet S. Jaggi In Support Of Debtor's Chapter

9    11 Petition And First Day Motions dated August 21, 2007 (the "Jaggi Affidavit"), ¶ 18.

10   The Debtor also admits that the market for mortgage loans has been disrupted "to the

11   point of dysfunction," and sales of mortgage loans are occurring "at prices substantially

12   below the amount outstanding on the mortgage loan note." Id. These market forces

13   continue to erode the value of the Mortgage Loans.

14   *Continuing Decrease in Unpaid Principal Balance of Mortgage Loans*

15   With each passing day, the aggregate unpaid principal balance owing under

16   the Mortgage Loans continues to decrease as a result of (i) regular monthly payments

17   under the Mortgage Loans, (ii) early prepayments of the Mortgage Loans, and (iii)

18   foreclosures of the Mortgage Loans. As a result, the market value of the Mortgage Loans

19   (which is directly tied to the unpaid principal balance owing under the Mortgage Loans)

20   continues to decline.

21   *Inability to Adequately Service Mortgage Loans*

22   The Debtor is obligated to service the Mortgage Loans in a manner that

23   protects Countrywide's security interest in the Collateral. Among other things, the

24   Debtor is obligated to (a) service the Mortgage Loans in compliance with servicing

25   standards prevailing in the industry, Agreement, ¶¶ 8.2(d), 9.6, (b) maintain accurate and

26   complete records of the Mortgage Loans and permit Countrywide to examine such

27   records, Agreement, ¶ 9.3, and (c) deliver to Countrywide any reports related to the

28

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

1  Mortgage Loans and any other information in the Debtor's possession as requested by

2  Countrywide, Agreement, ¶ 9.2(f). The value of the Collateral will deteriorate and

3  Countrywide's interest in the Collateral will otherwise be impaired if the Debtor fails to

4  adequately service the Mortgage Loans.

5       The Debtor's failure to maintain adequate servicing staff and resources will

6  result in decreased collections of the Servicing Collateral, the Debtor's failure to properly

7  segregate the Servicing Collateral will impair Countrywide's ability to account for its

8  collateral, and the Debtor's failure to maintain accurate and complete records will prevent

9  the Debtor from providing up-to-date servicing records to prospective purchasers of the

10 Mortgage Loans, thereby decreasing the market value for the Mortgage Loans. It seems

11 impossible that the Debtor can adequately service the Mortgage Loans -- *the Debtor has*

12 *laid off almost 98% of its pre-bankruptcy workforce.* See Jaggi Affidavit, ¶ 24 ("Until

13 August 16, 2007, First Magnus Financial employed approximately 6,000 employees.

14 However, as of the Petition Date, First Magnus Financial has retained only 159

15 employees to assist with the orderly wind-down of the company.").

16       The Debtor does not appear to have any available unencumbered assets or

17 property from which to fund cash payments to Countrywide or provide Countrywide with

18 additional liens. The Debtor has also ceased its business operations. As a result, the

19 Debtor will not generate or have available sufficient post-petition property with which to

20 protect Countrywide from diminution in value of its interest in the Collateral by way of

21 periodic cash payments or granting of additional liens.

22       The Debtor has already informed the Court that it intends either to sell the

23 Mortgage Loans or to turn the Mortgage Loans over to Countrywide. See Jaggi

24 Affidavit, ¶ 21(a). Therefore, granting Countrywide relief from the stay would not

25 frustrate the Debtor's intended purposes for the Collateral, since the Debtor already

26 intends to dispose of the Mortgage Loans. Permitting Countrywide to assume

27 responsibility for the servicing and sale of the Mortgage Loans will relieve the

28

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

1   understaffed Debtor of these burdens, while ensuring that the maximum value for the

2   Mortgage Loans can be realized.

3          Unless Countrywide is granted relief from the automatic stay to proceed to

4   exercise its rights and remedies with respect to the Collateral, it will suffer a diminution

5   in the value of the Collateral.   This diminution is ongoing, leaving Countrywide

6   unprotected given the lack of adequate protection from the Debtor.  Cause, based on lack

7   of adequate protection, exists to grant Countrywide relief from the stay under 11 U.S.C. §

8   362(d)(1).

9          Therefore, Countrywide requests relief from the automatic stay in order to

10   exercise its rights and remedies with respect to the Collateral, including, without

11   limitation, each of the following:

12          (i)     entering the offices of the Debtor and taking possession of the
     Collateral, including all documents, records, files and other information pertaining
13   to the Collateral;

14
             (ii)    foreclosing on or otherwise enforcing its security interest in and lien
15   on the Collateral, including (i) conducting public or private sales of the Mortgage
     Loans, including the securitization or other sale of the Mortgage Loans to
16   investors, and (ii) exercising its setoff rights against the funds in the Over/Under
17   Account;

18
             (iii)   communicating with and notifying the borrowers under the
19   Mortgage Loans that the Mortgage Loans have been assigned to Countrywide and
     directing that all payments be made to Countrywide (or its designee);
20
21          (iv)    assuming and performing (or directing its designee to assume and
     perform) the servicing on the Mortgage Loans; and
22
23          (v)     compelling the Debtor to transfer to Countrywide all cash and
     property received by the Debtor under or in respect of the Mortgage Loans,
24   including the Custodial Accounts, the Escrow Accounts and any other Servicing
     Collateral, and to account to Countrywide regarding the sources of all such
25   property.

26

27

28

588117/0213181                                         8

**Bryan Cave LLP**
**Two North Central Avenue, Suite 2200**
**Phoenix, Arizona  85004-4406**
**(602) 364-7000**

**B.**     **In The Alternative, Countrywide Is Entitled To Adequate Protection.**

This Court may refuse to grant Countrywide stay relief only if Countrywide is provided adequate protection that will result in the realization by Countrywide of the indubitable equivalent of Countrywide's interests in the Collateral on the Petition Date.

Realization of the indubitable equivalent of Countrywide's interests in the Collateral requires that this Court order that the Debtor preserve and adequately protect Countrywide's interest in the Collateral.  The Debtor has already informed this Court that it intends either to sell the Mortgage Loans or to turn the Mortgage Loans over to Countrywide.  See Jaggi Affidavit, ¶ 21(a).  Pending the completion of any such sale or turnover of the Mortgage Loans, however, the Debtor will continue to use the Collateral by, among other things, servicing the Mortgage Loans.  This continued use of the Collateral is causing a decline in the value of Countrywide's interests in the Collateral because (a) the Debtor's failure to adequately service the Mortgage Loans will erode the value of the Mortgage Loans and impair Countrywide's collateral rights in the Mortgage Loans, and (c) the Debtor's continued use of the Servicing Collateral will further dissipate the Collateral.[1/]

The Debtor will not generate or have available sufficient post-petition property with which to protect Countrywide from a diminution in the value of its interest in the Collateral by way of periodic cash payments or granting of additional liens.  Therefore, in the alternative, Countrywide requests that the Court provide Countrywide adequate protection in the Collateral by ordering that the Debtor transfer the servicing of the Mortgage Loans to Countrywide as follows:

(i)     ordering the Debtor to cooperate and provide assistance to enable Countrywide to inspect the Collateral and to inspect and make copies of all

---

[1/]     To be clear – the Debtor is already prohibited from using any Collateral (including Servicing Collateral) that constitutes "cash collateral" under 11 U.S.C. § 363(a).  See 11 U.S.C. § 363(c)(2).

588117/0213181

9

documents, records, files and other information pertaining to the Collateral and the Debtor's servicing of the Mortgage Loans, at any time and from time to time as Countrywide shall reasonably elect to insure compliance with this Court's order;

(ii)  ordering the Debtor take all actions necessary to transfer the servicing of the Mortgage Loans to Countrywide;

(iv)  ordering the Debtor to take all actions necessary to transfer all cash and property held or received by the Debtor in respect of the Mortgage Loans (including the Custodial Accounts, the Escrow Accounts and any other Servicing Collateral) to Countrywide and account to Countrywide as to the sources of such cash and property; and

(vi)  ordering that, if the Debtor fails to comply with respect to any order of this Court relating to the Collateral, Countrywide shall automatically have all the rights and remedies otherwise granted to it by the Agreement including, without limitation, relief from the 11 U.S.C. § 362(a) automatic stay, immediate possession of the Collateral, and any such other relief necessary to provide Countrywide the indubitable equivalent of its interests in the Collateral.

**C.  Countrywide Is Entitled To An Order Regarding Use Of Cash Collateral.**

Pursuant to the Agreement, the Debtor granted Countrywide a first priority security interest in all products and proceeds of the Collateral, including, without limitation, all cash and cash equivalents constituting the Collateral (collectively, the "Cash Collateral"). The Cash Collateral includes, without limitation, each of the following: (a) principal and interest payments paid to the Debtor under the Mortgage Loans; (b) prepayments paid to the Debtor under the Mortgage Loans (c) payments paid to the Debtor by third-party bidders in conjunction with foreclosure sales under the Mortgage Loans, and (d) proceeds of any sales of real estate owned by the Debtor as a result of foreclosure sales or other dispositions under the Mortgage Loans.

The Cash Collateral constitutes "cash collateral," as that term is defined in Section 363(a). 11 U.S.C. § 363(c)(2) prohibits the Debtor from using the Cash Collateral unless Countrywide consents to the use of the Cash Collateral or the Court authorizes its use, after notice and a hearing, and a specific finding that Countrywide's interests in the Cash Collateral are adequately protected. Countrywide has objected to the

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

1   Debtor's use of the Cash Collateral pursuant to its <u>Notice of: (1) Security Interest in Cash</u>

2   <u>Collateral, (2) Demand for Segregation, Sequestration and Accounting of Cash</u>

3   <u>Collateral, and (3) Objection to Debtor's Use, Sale or Lease of Cash Collateral</u> (Docket

4   No. 43).

5          The Debtor does not appear to have any available unencumbered assets or

6   property from which to fund cash payments to Countrywide or provide Countrywide with

7   additional liens.  The Debtor has also ceased its business operations.  As a result, the

8   Debtor will not generate or have available sufficient post-petition property with which to

9   protect Countrywide from diminution in value of its interest in the Cash Collateral by

10  way of periodic cash payments or granting of additional liens.

11         Countrywide requests that the Court order and direct the Debtor to:

12         (i)     segregate and maintain all Cash Collateral now or hereafter in the
    Debtor's possession, custody or control in a separate account for the benefit of
13  Countrywide (the "<u>Cash Collateral Account</u>"), which shall not be commingled
    with any other funds derived from any source whatsoever that do not constitute
14  Cash Collateral;

15

16         (ii)    provide Countrywide with a weekly accounting of all amounts
    deposited into and held in the Cash Collateral Account; and

17

18         (iii)   disburse all funds held in the Cash Collateral Account to
    Countrywide not less than weekly.

19  **III.    <u>CONCLUSION</u>.**

20         WHEREFORE, based upon the foregoing, Countrywide respectfully requests that

21  the Court enter an Order:

22         A.      Granting this Motion; and

23         B.      Granting such other and further relief as the Court deems just and equitable.

24

25

26

27

28

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

1 RESPECTFULLY SUBMITTED this 30th day of August, 2007.

2                                    BRYAN CAVE LLP

3

4                              By:    /s/ BAS, #022721
5                                     Robert J. Miller
                                      Bryce A. Suzuki
6                                     Two North Central Avenue, Suite 2200
                                      Phoenix, Arizona 85004-4406
7
8                              Attorneys for Countrywide Warehouse Lending

9

10  COPY of the foregoing served via e-mail
    this 30th day of August, 2007, upon:

11

12  John R. Clemency
    Todd A. Burgess
13  Greenberg Traurig LLP
    2375 East Camelback Road, Suite 700
14  Phoenix, Arizona 85016
    Attorneys for Debtor
15  clemencyj@gtlaw.com
16  burgesst@gtlaw.com

17  Alan J. Brody, Esq.
18  Greenberg Traurig LLP
    200 Park Avenue
19  Florham Park, NJ 07932-0677
    Attorneys for Debtor
20  brodya@gtlaw.com

21
    James P.S. Leshaw, Esq.
22  Daniel Gold
23  Greenberg Traurig, LLP
    1221 Brickell Avenue
24  Miami, FL 33131
    Attorneys for the Debtor
25  leshawj@gtlaw.com
26  gold@gtlaw.com

27

28

588117/0213181                          12

Matthew R. K. Waterman
Snell & Wilmer, L.L.P.
One South Church Avenue, Suite 1500
Attorneys for National Bank of Arizona
mwaterman@swlaw.com

Robert E. Michael
Robert E. Michael & Associates PLLC
950 Third Avenue, Suite 2500
New York, NY 10022
Attorneys for WNS North America, Inc.
robert.e.mitchell.esq@gmail

Nancy J. March
DeConcini McDonald Yetwin & Lacy, P.C.
2525 E. Broadway Boulevard, Suite 200
Tucson, AZ 85716
Attorneys for WNS North America, Inc.
nmarch@dmyl.com

Jamie R. Welton
Lackey Hershman, L.L.P.
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
Attorneys for Pyro Brand Development, LLC and
  The Richards Group, Inc.
jrw@lhlaw.net

Clifford B. Altfeld
Altfeld Battaile & Goldman, P.C.
250 N. Meyer Avenue
Tucson, AZ 85701
Attorneys for Pyro Brand Development, LLC and
  The Richards Group, Inc.
cbaltfeld@abgattorneys.com

Charles J. Filardi, Jr.
Filardi Law Offices LLC
65 Trumbull Street, Second Floor
New Haven, CT 06510
Attorneys for Federal Express Corporation
charles@filardi-law.com

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

1  Renee Sandler Shamblin
   Office of the United States Trustee
2  230 N. First Avenue, Suite 204
   Phoenix, Arizona 85003
3  renee.s.shamblin@usdoj.gov

4  COPY of the foregoing served via U.S.
   Mail this 30th day of August, 2007, upon:
5

6  National Bank of Arizona
   335 N. Wilmot
7  Tucson, AZ 85711

8
   WNS North America, Inc.
9  420 Lexington Avenue, Suite 2515
   New York, NY 10170
10

11 First Magnus Lender Services
   5255 E. Williams Circle, Suite 2020
12 Tucson, AZ 85711

13
   Kirkland & Ellis
14 777 South Figueroa Street
   Los Angeles, CA 90017-5800
15

16 PYRO
   8750 N. Central Expressway, Suite 1050
17 Dallas, TX 75231

18
   Fannie Mae
19 6000 Feldwood Drive
   College Park, GA 30349
20

21 Corelogic
   10360 Old Placerville Road, Suite 100
22 Sacramento, CA 95287

23
   American Express
24 Box 0001
   Los Angeles, CA 90096
25

26 Hilton & Meyers
   3350 N. Country Club
27 Tucson, AZ 85716

28

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

1  Buckley Kolar LLP
2  2029 Century Park East
   Los Angeles, CA 90067
3

4  Time Warner
   P.O. Box 172567
5  Denver, CO 80217

6  GAPPCO
7  8575 Haven Avenue, Suite 210
   Rancho Cucamonga, CA 91730
8

9  MGIC
   250 E. Kilborn Avenue
10 Milwaukee, WI 53202

11 Principal Life
12 Dept. 400
   P.O. Box 14416
13 Des Moines, IA 50306

14 Federal Express
15 P.O. Box 660481
   Dallas, TX 75266
16

17 Dell
   P.O. Box 802816
18 Chicago, IL 60680

19 FM Realty LLC
20 603 N. Wilmot
   Tucson, AZ 85711
21

22 Fennemore Craig, PC
   One South Church Avenue, Suite 1000
23 Tucson, AZ 85701

24 Corporate Express
25 P.O. Box 71217
   Chicago, IL 60694
26

27

28

588117/0213181                                      15



WC Partners
P.O. Box 51285
Los Angeles, CA 90051



_____/s/ Sally Erwin_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bryan Cave LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000