# EXHIBIT "1"
### (Plan)

1

**GREENBERG TRAURIG, LLP**
2375 East Camelback Road, Suite 700
Phoenix, Arizona 85016
2
Ph: (602) 445-8000
Fax: (602) 445-8100
3
John R. Clemency (email: clemencyj@gtlaw.com) – SBN 009646
4
Todd A. Burgess (email: burgesst@gtlaw.com) -- SBN 019013

5
**GREENBERG TRAURIG, P.A.**
1221 Brickell Avenue
6
Miami, Florida 33131
Ph: (305) 579-0500
7
Fax: (305) 579-0717
James P.S. Leshaw (email: leshawj@gtlaw.com) – FL Bar No. 917745
8
Daniel Gold (email: goldd@gtlaw.com) – FL Bar No. 0761281

9
Attorneys for First Magnus Financial Corporation

10
IN THE UNITED STATES BANKRUPTCY COURT
11
FOR THE DISTRICT OF ARIZONA

12

13
In re                                                    In Proceedings Under Chapter 11

14
FIRST MAGNUS FINANCIAL                  NO. 4-07-bk-01578-JMM
CORPORATION,
15
                                                          **PLAN OF LIQUIDATION FILED BY FIRST**
                             Debtor.                      **MAGNUS FINANCIAL CORPORATION**
16
                                                          **(Dated October 15, 2007)**

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS...........................................................................................4

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS.............................12

ARTICLE III IDENTIFICATION OF CLASSES OF CLAIMANTS IMPAIRED OR
    UNIMPAIRED UNDER THE PLAN...................................................................13

ARTICLE IV PROVISIONS FOR TREATMENT OF CLAIMS NOT IMPAIRED
    UNDER THE PLAN...........................................................................................14
4.1.    Administrative Expense Claims.....................................................................14
4.2.    Priority Tax Claims.........................................................................................15
4.3.    Allowed Priority Non-Tax Claims (Class 1).................................................15

ARTICLE V PROVISIONS FOR TREATMENT OF CLAIMS IMPAIRED UNDER
    THE PLAN.........................................................................................................16
5.1.    Class of Secured Claims (Class 2)................................................................16
5.2.    Claims of Allowed General Unsecured Creditors (Class 3)..........................16
5.3.    Claims of Allowed Rejection Damage Claims (Class 4)...............................16
5.4.    Claims of Wamu under the Wamu EPA Repurchase Agreement and the Wamu
    Commercial Paper Repurchase Agreement (Class 5).....................................16
5.5.    Allowed Claims of Repo Participants Under Repurchase Agreements (Class 6)..............17
5.6.    Claims of Subordinated Creditors (Class 7)..................................................17
5.7.    Class of Equity Security Interest Holders (Class 8).......................................17

ARTICLE VI ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION
    BY ONE OR MORE CLASSES OF CLAIMS ...............................................17
6.1.    Impaired Classes to Vote ...............................................................................17
6.2.    Acceptance by a Class of Creditors...............................................................17
6.3.    Cram-down......................................................................................................17
6.4.    Blank Ballots...................................................................................................18

ARTICLE VII MEANS OF EFFECTUATING THE PLAN .......................................18
7.8.    Liquidating Trustee and Litigation Trustee...................................................19

ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............21

ARTICLE IX RETENTION OF JURISDICTION .......................................................21

ARTICLE X PROCEDURES FOR RESOLVING DISPUTED CLAIMS ...................23
10.1.    Objections to Claims.......................................................................................23
10.2.    Payments and Distributions with Respect to Disputed Claims......................23
10.3.    Distributions After Allowance .......................................................................23
10.4.    No Recourse ....................................................................................................24

ARTICLE XI PROVISIONS CONCERNING DISTRIBUTION ................................24
11.1.    Time of Distributions Under the Plan............................................................24
11.2.    Payment Dates.................................................................................................24
11.3.    Manner of Payments Under the Plan ..............................................................24
11.4.    Fractional Cents ..............................................................................................24

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

Case 4:07-bk-01578-EWH   Doc 369-1   Filed 10/15/07   Entered 10/15/07 16:23:25
Desc Exhibit 1   Page 3 of 32

11.5.    Non-Negotiated Checks .................................................................... 25
11.6.    Unclaimed Distributions ................................................................. 25
11.7.    No Cash Payments of $20.00 or Less on Account of Allowed Claims ........................... 25
11.8.    Disputed Payments or Distributions ................................................. 25

ARTICLE XII EFFECT OF CONFIRMATION OF PLAN ...................................... 25
12.1.    Discharge ..................................................................................... 25
12.2.    Modification of Plan ..................................................................... 26
12.3.    Post-Confirmation Quarterly Fees ................................................... 26
12.4.    Investment of Dividend Fund .......................................................... 26
12.5.    Retention of Claims and Causes of Action ....................................... 26

ARTICLE XIII GENERAL PROVISIONS ...................................................... 27
13.1.    Notices Under the Plan .................................................................. 27
13.2.    Withholding Taxes/Setoffs ............................................................. 27
13.3.    Committee .................................................................................... 27
13.4.    Headings ...................................................................................... 27
13.5.    Unenforceability ........................................................................... 27
13.6.    Certain Terminations ..................................................................... 27
13.7.    Rights if Plan Not Confirmed ......................................................... 28
13.8.    Governing Law .............................................................................. 28
13.9.    Liquidated and/or Disputed Claims ................................................. 28
13.10.  Revocation of Plan ........................................................................ 28
13.11.  Reservation of Rights .................................................................... 28
13.12.  Exemption from Certain Transfer Taxes .......................................... 28
13.13.  Injunction .................................................................................... 29
13.14.  Ratification of Action Taken During Pendency of the Chapter 11 Case ........................... 29
13.15.  Term of Injunctions or Stays ......................................................... 29
13.16.  Injunction Against Interference With Plan ....................................... 30
13.17.  Exculpation .................................................................................. 30
13.18.  Manner of Payments Under the Plan ............................................... 30
13.19.  Retention of Causes of Action/Reservation of Rights ....................... 30
13.20.  Successors and Assigns ................................................................. 30

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

*PHX 327965825v8*

First Magnus Financial Corporation is the debtor and debtor-in-possession (the "Debtor") in this Chapter 11 bankruptcy case pending before the United States Bankruptcy Court for the District of Arizona. This document is the Chapter 11 plan (the "Plan") proposed by the Debtor. Sent to you in the same envelope as this document is the Disclosure Statement which **[has been approved by the Bankruptcy Court and]** is provided to help you understand the Plan.

This is a liquidating plan. In other words, the Debtor seeks to accomplish payments under the Plan by placing the proceeds from the sale of the Debtor's assets in a fund, from which creditors will be paid some or all of the amounts owed by the Debtor to each such creditor. The Effective Date of the proposed Plan is as defined herein.

## ARTICLE I
### Definitions

Except as otherwise provided in this Plan, all terms used herein shall have the meanings attributable to such terms under Title 11 of the United States Code, as amended (the "Bankruptcy Code"), the applicable Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Arizona (the "Local Bankruptcy Rules"). For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.1. <u>Administrative Expense</u> shall mean any cost or expense of administration of the Chapter 11 Case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, and indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of the Debtor under Chapter 123 of Title 28 of the United States Code.

1.2. <u>Advisory Board</u> means the Advisory Board created for the Liquidating Trust and the Litigation Trust pursuant to Section 7 below.

1.3. <u>Affiliates</u> shall have the meaning and shall be defined as set forth in Section 101(2) of the Bankruptcy Code.

1.4. <u>Allowed</u> when used as an adjective preceding the words "Claims" or "Equity Security Interest" shall mean any Claim against or Equity Security Interests in the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Security Interest against the Debtor, or, if no proof of Claim or Equity Security Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-4-

as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed timely and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Security Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Security Interest from and after the Debtor's Petition Date.

1.5. <u>Allowed Administrative Expense Claim</u> shall mean any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

1.6. <u>Allowed Priority Claim</u> shall mean all or that portion of an Allowed Claim entitled to priority under Section 507(a)(3), (4), (6), or (7) of the Bankruptcy Code.

1.7. <u>Allowed Priority Tax Claim</u> shall mean all or that portion of an Allowed Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.8. <u>Allowed Unsecured Claim</u> shall mean an Unsecured Claim that is or has become an Allowed Claim.

1.9. <u>Assets</u> shall mean the aggregate assets, of any kind, of the Debtor and its Estate.

1.10. <u>Ballot</u> shall mean the form(s) distributed to creditors holding claims in an impaired Class, or holders of interests in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

1.11. <u>Bankruptcy Code or Code</u> shall mean the Bankruptcy Reform Act of 1978 (11 U.S.C. Sections 101, *et seq.*), as amended, and as codified in Title 11 of the United States Code.

1.12. <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the District of Arizona having jurisdiction over the Debtor's Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

1.13. <u>Bankruptcy Rules</u> shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 11 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

1.14. <u>Bar Date</u> shall mean the applicable bar date by which a proof of claim must be filed with the Court, as established by an order of the Bankruptcy Court.

1.15. <u>Business Day</u> shall mean and refer to any day except Saturday, Sunday, and any other day on which commercial banks in Arizona are authorized by law to close.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1.16.  Cash shall mean legal tender of the United States of America or equivalents thereof, as well as any and all foreign currencies.

1.17.  Case shall mean the Debtor's case under Chapter 11 of the Bankruptcy Code, Case No. 4:07-bk-01578.

1.18.  Chase shall mean JP Morgan Chase Bank, N.A. and Chase Equipment Leasing, Inc.

1.19.  Claim shall mean a claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code; including any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.20.  Claimant shall mean the holder of a Claim.

1.21.  Class shall mean a class of holders of Allowed Claims or interests described in Article II of the Plan.

1.22.  Confirmation shall mean the entry of an Order by the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of the Bankruptcy Code.

1.23.  Confirmation Date shall mean the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.24.  Confirmation Hearing shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.25.  Confirmation Order shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.26.  Contested when used with respect to a Claim, shall mean a Claim against the Debtors, other than an Allowed Administrative Claim, (i) that is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated, or (ii) that is the subject of a proof of claim to which an objection has been or may be filed.

1.27.  Countrywide shall mean Countrywide Warehouse Lending, one of the Debtor's Warehouse Lenders.

1.28.  Creditor shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Estate of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1.29. <u>Creditors Committee</u> shall mean the Official Committee of Unsecured Creditors that was appointed in this case pursuant to Bankruptcy Code §1102.

1.30. <u>Debt</u> shall mean, refer to and shall have the same meaning ascribed to it in Section 101(12) of the Bankruptcy Code.

1.31. <u>Debtor</u> shall mean First Magnus Financial Corporation.

1.32. <u>Disallowed Claim</u> shall mean a Claim or portion thereof that: (i) has been disallowed by a Final Order; (ii) is identified in the Debtor's Schedules in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of claim was not filed by the Bar Date; or (iii) is not identified in the Debtor's schedules and as to which no proof of claim has been filed or deemed filed by the Bar Date.

1.33. <u>Disclosure Statement</u> shall mean and refer to the Disclosure Statement filed by the Debtor as required pursuant to Section 1125 of the Bankruptcy Code.

1.34. <u>Disputed Claim</u> shall mean any Claim that is not an Allowed Claim or a Disallowed Claim and that has not been barred or otherwise disallowed or paid or otherwise satisfied. In the event that any part of a Claim is a Disputed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under the Plan unless the Debtor or the Liquidating Trustee and the holder thereof agree otherwise; <u>provided</u>, <u>however</u>, nothing in this definition is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under Section 502(c) of the Bankruptcy Code. Without limiting any of the foregoing, but subject to the provisions of the Plan, a Claim that is the subject of a pending application, motion, complaint, objection or any other legal proceeding commenced or filed by the Debtor seeking to disallow, limit, subordinate or estimate such Claim shall be deemed to constitute a Disputed Claim.

1.35. <u>Dividend Fund</u> shall mean such sums held by the Liquidating Trust for distribution to holders of Allowed Claims pursuant to the Plan on or after the Effective Date of the Plan. The costs and expenses of the Liquidating Trust will be paid out of the Dividend Fund.

1.36. <u>Effective Date</u> shall mean the date designated in writing by the Debtor which is not later than thirty (30) days after the date upon which the Debtor has sufficient funds on hand to make all contemplated distributions in accordance with this Plan to holders of all Allowed Administrative Expense Claims (in such amounts and in accordance with and subject to the terms of the Plan), and the Confirmation Order shall have become a Final Order, <u>provided</u>, <u>however</u>, that if the Confirmation Order is not a Final Order, the Debtor, with notice to the Committee, may waive the requirement that the Confirmation Order shall have become a Final Order.

1.37. <u>Equity Security Interests</u> shall have the meaning set forth in Section 101(16) of the Bankruptcy Code and "Holders of Equity Security Interests" shall have the meaning set forth in Section 101(17) of the Bankruptcy Code.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1.38.   Estate shall mean the estate of the Debtor created in accordance with Section 541 of the Bankruptcy Code.

1.39.   Estate Claims shall mean any and all claims, causes of action, demands, suits, choses in action and all other rights and remedies of the Debtor, the Debtor's Estate, for or on behalf of Creditors and/or the Debtor and/or the Estate, including but not limited to any and all claims and/or causes of action by the Debtor's Estate and/or the Debtor, against any and all Creditors or other Persons (as such term is defined by the Bankruptcy Code), of every kind or nature, whether known or unknown, at law or in equity, including but not limited to those for damages, the recovery of monies, injunctive, equitable or other relief, but not including Estate Tort and Chapter 5 Claims.

1.40.   Estate Tort and Chapter 5 Claims shall mean any claims, causes of action, demands, suits, choses in action and all other rights and remedies of the Debtor, the Debtor's Estate, for or on behalf of Creditors and/or the Debtor and/or the Estate, against any and all Creditors or other Persons (as such term is defined by the Bankruptcy Code), of every kind or nature, whether known or unknown, relating to a breach of duty and all avoidance actions of the Estate, under Sections 543, 544, 545, 546, 547, 548, 549, 550, *et seq*. of the Bankruptcy Code.

1.41.   Executory Contract and Unexpired Lease or Executory Contract or Unexpired Lease shall mean a contract or lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

1.42.   Fee Claim shall mean a Claim under Sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Case.

1.43.   Final Order shall mean an order or judgment of the Court as entered on the docket that (a) is not stayed, (b) has not been reversed, modified or amended, and (c) as to which the time to appeal, petition for certiorari, or seek reargument, review, reconsideration, rehearing or leave to appeal (excluding the time to move for relief from a final order or judgment under Rule 60(b) of the Federal Rules of Civil Procedure and the time to request revocation of an order of confirmation under Section 1144 of the Bankruptcy Code) has expired and as to which no appeal, petition for certiorari or other proceeding for reargument, review, reconsideration, rehearing or leave to appeal (including a motion for relief from a final order or judgment under said Rule 60(b) or a request for revocation of an order of confirmation under said Section 1144) or as to which any right to appeal, petition for certiorari or seek reargument, review, reconsideration, rehearing or leave to appeal has been waived in writing, or, if any appeal, petition for certiorari, or other proceeding for reargument, review, reconsideration, rehearing or leave to appeal has been sought, the order or judgment of the Court has been affirmed by the highest court to which the order or judgment was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or seek further reargument, review reconsideration, rehearing or leave to appeal

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

(excluding the time to move for relief from a final order or judgment under said Rule 60(b) and the time to request revocation of an order of confirmation under said Section 1144) has expired.

1.44. Impaired when used as an adjective preceding the words "Class of Claims" or "Class of Equity Security Interest", shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

1.45. IRS shall mean the Internal Revenue Service, Department of the Treasury of the United States of America.

1.46. Lien shall mean any lien or charge against or interest, including any security interest, in property to secure payment of a debt or performance of an obligation but only to the extent such lien, charge, or interest is valid, binding, enforceable and perfected and not subject to avoidance, defense, recharacterization or subordination.

1.47. Liquidating Trust shall have the meaning set forth in Section 7.0 of this Plan.

1.48. Liquidating Trustee shall mean Morris C. Aaron.

1.49. Liquidating Trust Agreement shall mean the agreement setting forth the terms of the Liquidating Trust which is attached as Exhibit "5" to the Disclosure Statement.

1.50. Litigation Trust shall have the meaning set forth in Section 7.0 of this Plan.

1.51. Litigation Trustee shall mean the Person to be selected by the Committee prior to the Confirmation Date who will serve as the trustee of the Litigation Trust.

1.52. Litigation Trust Agreement shall mean the Litigation Trust Agreement to be entered into by the Litigation Trustee and the Debtor prior to the Confirmation Date which will govern the operations of the Litigation Trust.

1.53. Litigation Trust Start-Up Cash shall mean $250,000.

1.54. Merrill Lynch shall mean Merrill Lynch Bank, USA, one of the Debtor's Warehouse Lenders.

1.55. Mortgage Loan shall include loans and the proceeds thereof as well as all collateral granted to or for the benefit of a Repo Participant pursuant to a Repurchase Agreement.

1.56. Net Proceeds shall mean an amount equal to the "gross proceeds" of sale and/or collection and receipt of property (real or personal) of the Debtor, as actually received by the Liquidating Trustee, less the amount of all Allowed Secured Claims against such real and personal property, and less the costs and fees associated with such sale, including, but not limited to appraisal fees, auctioneer's fees, brokers fees and/or real property tax liability of any kind arising out of or in connection with such sale.

PHX 327965825v8

1.57. <u>Petition Date</u> shall mean August 21, 2007.

1.58. <u>Plan</u> shall mean this Plan of Liquidation, including, without limitation, the exhibits and schedules hereto, as the same may be amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.59. <u>Preference Actions</u> shall mean causes of action against Persons relating to any payment, conveyance or other transfer of property of the Debtor to any Person that may be avoidable pursuant to Section 547 of the Bankruptcy Code and/or recoverable pursuant to Section 550 of the Bankruptcy Code.

1.60. <u>Prime Rate</u> means, at any time, the rate of interest quoted in the Wall Street Journal, Money Rates Section, as the "Prime Rate" (currently defined as the base rate on corporate loans posted by at least seventy five percent (75%) of the nation's thirty largest banks). In the event that the Wall Street Journal quotes more than one rate, or a range of rates as the Prime Rate, then the Prime Rate shall mean the average of the quoted rates. In the event that the Wall Street Journal ceases to publish the Prime Rate, then the Prime Rate shall be the average Prime Rate of the three largest U.S. money center commercial banks, as determined by the Liquidating Trustee.

1.61. <u>Priority Claims</u> shall mean "Priority Tax Claims" and "Priority Non-Tax Claims" in the aggregate, and shall mean any claim to the extent entitled to priority in payment under Section 507(a)(2), (3), (4), (5), (6), (7) or (8) of the Bankruptcy Code.

1.62. <u>Priority Non-Tax Claims</u> shall mean Priority Claims other than Priority Claims entitled to priority treatment as a tax under Section 507(a)(8) of the Bankruptcy Code.

1.63. <u>Priority Tax Creditor</u> shall mean a Creditor holding a Priority Tax Claim.

1.64. <u>Priority Tax Claim</u> shall mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

1.65. <u>Proceedings</u> shall mean the Chapter 11 Case of the Debtor.

1.66. <u>Proceeds</u> shall mean an amount equal to the "gross proceeds" of sale and/or collection and receipt of property (real or personal) of the Debtor, as actually received by the Liquidating Trust, less the costs and fees associated with such sale, including but not limited to appraisal fees, auctioneers' fees, bankers fees and/or real property tax liability (if any) of any kind arising out of or in connection with such sale.

1.67. <u>Professional Persons</u> shall mean and refer to any professional employed in the Chapter 11 Case pursuant to Section 327 or Section 1103 of the Bankruptcy Code, or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Case pursuant to Sections 503(b)(3)(F) and (b)(4) of the Bankruptcy Code.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-10-

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1.68. <u>Professional Fee Claim</u> shall mean and refer to a claim by any and all Professional Persons as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

1.69. <u>Pro Rata</u> shall mean, with respect to an amount of Cash to be paid or distributed to a Creditor with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claims of such Person in the indicated Class to the aggregate dollar amount of all Claims in the indicated Class (including, in each such calculation, the full amount of Disputed Claims in the Class which have been asserted or are otherwise pending and which have not yet been Allowed or otherwise disposed of).

1.70. <u>Remaining Assets</u> shall mean all of the Debtor's Assets as of the Confirmation Date other than the Estate Tort and Chapter 5 Claims and the Liquidating Trust Start-Up Cash.

1.71. <u>Reserve</u> shall mean the <u>Pro Rata</u> portion of any Cash or other property retained on account of a Contested Claim, pending allowance of such Claim.

1.72. <u>Secured Claim</u> shall mean and refer to a Claim which is secured by a valid, perfected and unavoidable Lien in the Debtor's Assets or which expressly attached to the Net Proceeds of Sold Assets pursuant to an Order of the Court, as of the Debtor's Petition Date, but only to the extent of the value of the Debtor's interest in such property, as determined by agreement by the Debtor and the holder of such claim or by the Bankruptcy Court by a Final Order pursuant to section 506(a) of the Bankruptcy Code. In accordance with the Section 506(a) of the Bankruptcy Code, Secured Claim specifically excludes that portion of a Claim of a holder of a Lien against the property of the Debtor to the extent such holder's interest in the property is less than the amount of such Claim. To the extent of any deficiency in the value of the interest of the holder of such Secured Claim in such property, such deficiency is a General Unsecured Claim (a "Deficiency Claim"), unless otherwise provided for by order of the Bankruptcy Court.

1.73. <u>Sold Assets</u> shall mean the Debtors' Assets sold after the Petition Date pursuant to an Order of the Court.

1.74. <u>Subordinated Claim</u> shall mean all claims described in Section 510 of the Bankruptcy Code.

1.75. <u>UBS</u> shall mean, UBS Real Estate Securities, Inc., one of the Debtor's Warehouse Lenders.

1.76. <u>Tax Claim</u> shall mean a Claim of the kind of specified in Section 507(a)(7) of the Bankruptcy Code.

1.77. <u>Unsecured Claim</u> shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for the Debtor, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by Section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority

-11-

under Sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

1.78. <u>Voting Class</u> shall mean a Class of Claims under the Plan which is impaired and entitled to vote to accept or reject the Plan.

1.79. <u>Wamu</u> shall mean Washington Mutual Savings Bank, one of the Debtor's Warehouse Lenders.

1.80. <u>Wamu Commercial Paper Repurchase Agreement</u> shall mean the Mortgage Loan Purchase and Sale Agreement dated January 30, 2007 between the Debtor and Concord Minutemen Capital Company, LLC, whose rights in the Wamu Commercial Paper Repurchase Agreement were assigned to Wamu.

1.81. <u>Wamu EPA Repurchase Agreement</u> shall mean the Mortgage Loan Purchase and Sale Agreement dated October 11, 2004 between the Debtor and Wamu.

1.82. <u>Wamu Syndicated Repurchase Agreement</u> shall mean the Mortgage Loan Repurchase Agreement dated June 29, 2007 between the Debtor and Wamu, as administrative agent for various buyers.

1.83. <u>Warehouse Lenders</u> shall mean Creditors that provided warehouse loan facilities to the Debtor, including Countrywide, Merrill Lynch, UBS, and Wamu.

1.84. <u>Other Definitions</u> The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Except for the rule contained in Section 102(5) of the Bankruptcy Code, the rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the Plan. The headings of the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. To the extent there is an inconsistency between any of the provisions of the Plan and any of the provisions contained in the Disclosure Statement or other related document, the Plan shall control.

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

2.1. As required by the Bankruptcy Code, the Plan classifies Claims and Equity Security Interests in various Classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each Class of Claims or Equity Security Interests is impaired or unimpaired. The Plan provides the treatment each Class will receive under the Plan. In accordance with the requirements of the Bankruptcy Code, Allowed Administrative Expense Claims and Allowed Priority Tax Claims are not set forth in Classes. The Allowed Claims against the Debtors' Estates are divided into the following classes:

2.1.1. Class 1 shall consist of:

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-12-

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

All Allowed Non-Tax Priority Claims against the Debtor's Estate.

2.1.2.   Class 2 shall consist of:
All Allowed Secured Claims against the Debtor's Estate (including Secured Claims that may be asserted by Chase and Countrywide).

2.1.3.   Class 3 shall consist of:
All Allowed General Unsecured Claims against the Debtor's Estate, except the Allowed Unsecured Claims (a) arising out of the rejection of Executory Contracts or Unexpired Leases and (b) Subordinated Claims.

2.1.4.   Class 4 shall consist of
The Allowed Unsecured Claims against the Debtor's Estate of Creditors asserting Claims arising out of the rejection of Executory Contracts or Unexpired Leases, except Subordinated Claims.

2.1.5.   Class 5 shall consist of:
The Allowed Claims of Wamu arising under or in connection with the Wamu EPA Repurchase Agreement  and the Wamu Commercial Paper Repurchase Agreement.

2.1.6.   Cla ss 6 shall consist of:
The Allowed Claims of Repo Participants under Repurchase Agreements (including any Claims under Repurchase Agreements asserted by UBS, Merrill Lynch, and Wamu), except Class 5 Claims.

2.1.7.   Clas s 7 shall consist of:
The Allowed Claims of Creditors whose claims are subordinated under Section 510 of the Bankruptcy Code.

2.1.8.   Class 8 shall consist of:
The Equity Security Interests in the Debtor.

### ARTICLE III
### IDENTIFICATION OF CLASSES OF CLAIMANTS
### IMPAIRED OR UNIMPAIRED UNDER THE PLAN

3.1.   Allowed Administrative Expense Claims, and Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims (Class 1).

3.2.   Allowed Secured Claims (Class 2), Allowed General Unsecured Claims (Class 3), Allowed rejection damage Claims (Class 4), the Claims of Wamu under the Wamu EPA Repurchase Agreement  and the Wamu Commercial Paper Repurchase Agreement (Class 5), and the Allowed Claims of Repo Participants under Repurchase Agreements (Class 6) are impaired by the Plan and are entitled to vote to accept or reject the Plan.  Allowed Subordinated Claims (Class 7) and Allowed Equity Security Interests (Class 8) are

-13-

*PHX 327965825v8*

receiving no distribution on account of such Subordinated Claims or Equity Security Interests and are, therefore, deemed to have rejected the Plan.

3.3.     In the event of a controversy as to whether any Claimant or Class of Claimants is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, resolve such controversy.

3.4.     The Debtor shall provide all Claimants entitled to vote with a form of Ballot approved by the Court to be used in casting a vote on the Plan. The Ballot shall designate the Class in which the Debtor believes a particular Claim belongs.

**ARTICLE IV**
**PROVISIONS FOR TREATMENT OF**
**CLAIMS NOT IMPAIRED UNDER THE PLAN**

4.1.     <u>Administrative Expense Claims</u>.

4.1.1.     <u>Generally</u>. Administrative Expenses include claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Section 503(b) of the Bankruptcy Code and fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case. The Code requires that Allowed Administrative Expenses be paid on the Effective Date, unless a particular creditor agrees to a different treatment. All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date. All Allowed Administrative Expenses shall be paid in full on or before the Effective Date of the Plan, or as otherwise provided herein.

4.1.2.     <u>Administrative Bar Date</u>. Requests for payment of Administrative Expense Claims must be filed and served pursuant to the procedures set forth in the Confirmation Order or notice of entry of the Confirmation Order, no later than thirty (30) days after the Confirmation Date.

4.1.3.     <u>Professional Fee Claims</u>. The Court must approve all requests for the payment of professional compensation and expenses to the extent incurred on or before the Confirmation Date. Each Professional Person requesting compensation or reimbursement of expenses in the Proceedings pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than twenty (20) days after the Confirmation Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of these cases pending Confirmation of this Plan. No motion or application is required to fix fees payable to the Clerk's Office of the Office of the United States Trustee, as those fees are determined by statute. All fees, costs and disbursements of Professional Persons not heretofore paid through the Effective Date of the Plan, shall be paid out of the Dividend Fund following entry of an order of the Bankruptcy Court authorizing and allowing same pursuant to Sections 327, 330 and 331 of the Bankruptcy Code. Fees, costs and disbursements of Professional Persons shall be

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

the subject matter of applications to the Court for allowance or award in the manner prescribed by the Code. Notwithstanding the foregoing, any Professional Person may apply to the Bankruptcy Court in the manner prescribed by the Code for interim allowance of fees, costs and disbursements at any time and from time to time prior to payment in full of such fees, costs and disbursements.

4.2. <u>Priority Tax Claims.</u>

4.2.1. Priority Tax Claims are certain pre-Petition Date unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. The Bankruptcy Code requires, and thus this Plan provides, that each holder of a Section 507(a)(8) Priority Tax Claim receives regular installment payments in cash of a total value, as of the Effective Date, equal to the allowed amount of such claim over a period ending not later than five (5) years after the Petition Date, in a manner not less favorable than non-priority, unsecured claims.

4.2.2. To the extent Priority Tax Claims exist on the Confirmation Date, those holders of Priority Tax Claims will be (a) paid out of the Dividend Fund created by the sale of the Debtor's Assets by the Liquidating Trust on the Effective Date, or (b) over a period not exceeding five (5) years after the Petition Date, in the sole and absolute discretion of the Liquidating Trustee. Except as expressly set forth in this Plan, neither the Debtor, the Liquidating Trust nor the Liquidating Trustee, nor their designee(s), officers, directors, employees, attorneys or agents shall be individually liable or responsible for the payment of Priority Tax Claims such that the holders of Allowed Priority Tax Claims shall have recourse only against the Dividend Fund and their claims shall be paid solely out of the Dividend Fund.

4.3. <u>Allowed Priority Non-Tax Claims (Class 1).</u> Certain Priority non-tax claims that are referred to in Sections 507(a)(3), (4), (5), (6) and (7) of the Bankruptcy Code are entitled to priority treatment. Class 1 is unimpaired under the Plan and is deemed to have accepted the Plan. Priority Non-Tax Claims will be paid by the Liquidating Trust in full on the Effective Date of the Plan out of the Dividend Fund in the event there are sufficient funds in the Dividend Fund to pay such Priority Non-Tax Claims in full in the sole and absolute discretion of the Debtor. To the extent there are not sufficient funds in the Dividend Fund to pay Priority Non-Tax Claims in full on the Effective Date, the Liquidating Trust shall pay such claims with interest at the Prime Rate on such date or dates as it is determined by the Liquidating Trustee that sufficient cash is available to make such payments. Neither the Debtor, the Liquidating Trust nor the Liquidating Trustee, nor its designee(s), officers, directors, employees, attorneys or agents shall be individually liable or responsible for the payment of such Priority Non-Tax Claims such that the holders of Allowed Priority Non-Tax Claims shall have recourse only against the Dividend Fund, and their claims shall be paid solely out of the Dividend Fund.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

**ARTICLE V**
**PROVISIONS FOR TREATMENT OF**
**CLAIMS IMPAIRED UNDER THE PLAN**

5.1.  Class of Secured Claims (Class 2). Class 2 (consisting of Allowed Secured Claims) is impaired under the Plan. The holders of Allowed Class 2 Claims will be satisfied through: (a) abandonment or transfer all right, title and interest of the Debtor and its Estate in the Assets in which a secured creditor has a Lien (as of the Petition Date and/or thereafter) to the secured creditor, or (b) before or after the Effective Date, the sale and/or other disposition of the Asset in which the secured creditor has a Lien (as of the Petition Date and/or thereafter). Any Lien on a Sold Asset will attach to the proceeds of sale, which shall be transferred to and paid to the holder of the Secured Claim. The transfer of the proceeds of a Sold Asset will occur on the later of the Effective Date of the Plan or within five (5) Business Days of the sale of the Asset, in full or partial satisfaction of the Creditor's Allowed Secured Claim. Except as otherwise agreed, holders of Allowed Class 2 Claims will have the right to assert a deficiency Claim which, as and when it becomes an Allowed Claim, shall be treated as a Class 3 Unsecured Claim.

5.2.  Claims of Allowed General Unsecured Creditors (Class 3). After payment in full to the holders of Administrative Expense Claims and Priority Claims pursuant to this Plan and upon the Liquidating Trustee's determination that sufficient cash is available to make such payments, each holder of an Allowed Unsecured Claim in Class 3 shall receive its Pro Rata share of the Dividend Fund. Neither the Debtor, the Liquidating Trust nor the Liquidating Trustee, nor its designee(s), officers, directors, employees, attorneys or agents shall be individually liable or responsible for the payment of such Allowed Unsecured Claims such that the holders of Allowed Unsecured Claims in Class 3 shall have recourse only against the Dividend Fund, and their claims shall be paid solely out of the Dividend Fund.

5.3.  Claims of Allowed Rejection Damage Claims (Class 4). After payment in full to the holders of Administrative Expense Claims and Priority Claims pursuant to this Plan and upon the Liquidating Trustee's determination that sufficient cash is available to make such payments, each holder of an Allowed Claim arising from rejection of an executory contract or unexpired lease in Class 4 shall receive its Pro Rata share of the Dividend Fund. Neither the Debtor, the Liquidating Trust nor the Liquidating Trustee, nor its designee(s), officers, directors, employees, attorneys or agents shall be individually liable or responsible for the payment of such Allowed Unsecured Claims such that the holders of Allowed Unsecured Claims in Class 4 shall have recourse only against the Dividend Fund, and their claims shall be paid solely out of the Dividend Fund.

5.4.  Claims of Wamu under the Wamu EPA Repurchase Agreement and the Wamu Commercial Paper Repurchase Agreement (Class 5). Class 5 (the Claims of Wamu under the Wamu EPA Repurchase Agreement and the Wamu Commercial Paper Repurchase Agreement) are impaired under the Plan. In full satisfaction of its Class 5 Claim, Wamu will keep for its own account all of the loans purchased by Wamu pursuant to the Wamu

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-16-

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

EPA Repurchase Agreement and the Wamu Commercial Paper Repurchase Agreement which were owned by Wamu on the Effective Date, Wamu will return to the Debtor approximately $3,150,000 in loans identified in the letter dated September 12, 2007 from Wamu to the Debtor, and Wamu will not assert any Claims in the Bankruptcy Case with respect to the Wamu EPA Repurchase Agreement and the Wamu Commercial Paper Repurchase Agreement.

5.5.    Allowed Claims of Repo Participants Under Repurchase Agreements (Class 6). Class 6 (consisting of Allowed Claims of Repo Participants under Repo Agreements) shall have the right to liquidate Mortgages that they purchased from the Debtor under Repurchase Agreements and shall deliver any excess of the market prices received on liquidation of such Mortgages over the sum of the repurchase price provided for in the applicable Repurchase Agreement and all reasonable expenses incurred in connection with the liquidation of Mortgages. The Repo Participants will provide the Debtor or the Liquidating Trustee with such information reasonably required to determine the interest of the Estate or the Liquidating Trust in Mortgages liquidated pursuant to Class 6 of the Plan.

5.6.    Claims of Subordinated Creditors (Class 7). Class 7 (consisting of Creditors whose claims are subordinated pursuant to Section 510 of the Bankruptcy Code) is impaired under the Plan. No distribution will be made in respect of Subordinated Claims. This class will be deemed to have voted against confirmation of this Plan.

5.7.    Class of Equity Security Interest Holders (Class 8). Equity Security Interest Holders shall not retain an interest in the Debtors. No distribution will be made in respect of Equity Security Interests. All outstanding capital stock of the Debtor and membership interests in the Debtor will be deemed redeemed and cancelled. This Class will be deemed to have voted against confirmation of this Plan.

## ARTICLE VI
### ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

6.1.    Impaired Classes to Vote. Each impaired class of Creditors with Claims against the Estate shall be forwarded a ballot and shall be entitled to vote to accept or reject the Plan.

6.2.    Acceptance by a Class of Creditors. A Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in the aggregate dollar amount and more than one-half (1/2) in number of Holders of the Allowed Claims of such class that have voted to accept or reject the Plan.

6.3.    Cram-down. In the event that any impaired Class of Creditors with Claims against the Debtor's Estate shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan, notwithstanding such rejection, in accordance with Section 1129(b)(1) of the Bankruptcy Code.

PHX 327965825v8

Case 4:07-bk-01578-EWH    Doc 369-1    Filed 10/15/07    Entered 10/15/07 16:23:25
Desc Exhibit 1    Page 18 of 32

6.4.  <u>Blank Ballots</u>.  Any Ballot which is executed by the Holder of an Allowed Claim or interest but which does not indicate an acceptance or rejection of the Plan shall be deemed an acceptance of the Plan.

## ARTICLE VII
## MEANS OF EFFECTUATING THE PLAN

7.1.  The Plan is to be implemented in a manner consistent with Section 1123 of the Bankruptcy Code.

7.2.  The Plan will be consummated and distributions will be made by the Liquidating Trust out of the Dividend Fund in accordance with the terms of this Plan.

7.3.  Effective immediately upon the Effective Date, the Liquidating Trust, by and through the Liquidating Trustee, shall have all necessary power and authority to sell and/or liquidate the Remaining Assets and settle or prosecute all Estate Claims as it deems appropriate in its reasonable discretion, without approval of the Bankruptcy Court.  Effective immediately upon the Effective Date, the Litigation Trust, by and through the Litigation Trustee, shall have all necessary power and authority to settle or prosecute all Estate Tort and Chapter 5 Claims as it deems appropriate in its reasonable discretion, without approval of the Bankruptcy Court.

7.4.  The Net Proceeds of any and all sales (private or public) of the Assets collected by the Liquidating Trust (or its designee or agent) along with Proceeds generated by the Litigation Trust shall be placed by the Liquidating Trustee (or by the Litigation Trustee, as the case may be) in the Dividend Fund to the extent necessary to pay the Allowed Administrative Expense Claims, Priority Claims, and Allowed Class 1 Claims, Allowed Class 3 Claims and Allowed Class 4 Claims in such <u>Pro Rata</u> amounts and as is provided by this Plan; <u>provided</u>, <u>however</u>, that if such Claims are otherwise paid or satisfied in such amounts and as provided by this Plan, irrespective of the Net Proceeds of the Assets collected by the Liquidating Trust, then the Liquidating Trust shall have no further obligation to collect and/or segregate or separately deposit the Net Proceeds, and the Liquidating Trustee shall be immediately released and discharged from its duties herein.

7.5.  On and after the Effective Date, the Liquidating Trust, by and through the Liquidating Trustee, shall be fully empowered and authorized (without further order of the Bankruptcy Court), to market for sale and/or sell and/or dispose of the Remaining Assets, and shall have the power and authority (without the need for a further hearing or order of the Bankruptcy Court) to execute all contracts of sale and other documents necessary to effectuate the sale or disposition of the Remaining Assets.  Without limiting the foregoing, the Confirmation Order may provide for the cancellation of all Equity Interests in the Debtor and the reissuance and sale of the stock in the Debtor by the Liquidating Trustee on the Effective Date.

7.6.  Immediately upon the Effective Date, a trust shall be created (the "Liquidating Trust") and shall receive an assignment of all the Debtor's rights, title and interest in the Remaining

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-18-

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 83016
(602) 445-8000

Assets, and the Liquidating Trust shall be granted and shall have exclusive control and possession of the Remaining Assets, and the Debtor (and its directors, officers, employees, shareholders and agents) shall, on the Effective Date, or immediately thereafter as is practical, (without further hearing or Order of the Bankruptcy Court) peaceably turnover exclusive possession of the Remaining Assets to the Liquidating Trust. The Liquidating Trust shall obtain such possession on the Effective Date for the sole purpose of effectuating and/or consummating this Plan. The Liquidating Trust shall be established for the sole purpose of liquidating the Remaining Assets and making disbursements from the Dividend Fund for payment of Allowed Claims in accordance with the terms of the Plan. Neither the Liquidating Trust nor the Liquidating Trustee shall have an obligation of any kind to continue operating the business of the Debtor.

7.7.     Immediately upon the Effective Date, a trust shall be created (the "Litigation Trust") and shall receive an assignment of all the Debtor's rights, title and interest in the Estate Tort and Chapter 5 Claims and the Litigation Trust Start-Up Cash, and the Litigation Trust shall be granted and shall have exclusive control and possession of the Estate Tort and Litigation Claims and the Litigation Trust Start-Up Cash, and the Debtor (and its directors, officers, employees, shareholders and agents) shall, on the Effective Date, or immediately thereafter as is practical, (without further hearing or Order of the Bankruptcy Court) peaceably turnover exclusive possession of the Estate Tort and Chapter 5 Claims and the Litigation Trust Start-Up Cash to the Litigation Trust. The Litigation Trust shall obtain such possession on the Effective Date for the sole purpose of effectuating and/or consummating this Plan. The Litigation Trust shall be established for the sole purpose of liquidating the Estate Tort and Chapter 5 Claims the Proceeds of which will be deposited as provided in the Litigation Trust Agreement into and ultimately disbursed out of the Dividend Fund for payment of Allowed Claims in accordance with the terms of the Plan. Neither the Litigation Trust nor the Litigation Trustee shall have an obligation of any kind to continue operating the business of the Debtor.

7.8.     <u>Liquidating Trustee and Litigation Trustee.</u>

7.8.1.  <u>Appointment of Liquidating Trustee.</u>  On the Effective Date, the Liquidating Trustee shall be immediately appointed and authorized to administer the Liquidating Trust and to liquidate any and all Remaining Assets on behalf of the Liquidating Trust for distribution in accordance with the Plan and the Liquidating Trust Agreement.

7.8.2.  <u>Powers of the Liquidating Trustee.</u>  All transfers of the Remaining Assets, including the execution of all contracts of sale, deeds, and other documents necessary to effectuate this Plan and to make payments under the Plan, shall be made by the Liquidating Trustee, on behalf of the Liquidating Trust and in accordance with the *Liquidating Trust Agreement* which is attached as Exhibit "5" to the Disclosure Statement. The Liquidating Trustee shall have and is hereby granted the power and authority to list and/or market the Remaining Assets for sale (at such prices and for such amounts as determined by the Liquidating Trustee in his sole and absolute discretion), and the Liquidating Trustee shall also have the power and authority to execute any and all documents (including contracts,

-19-

deeds, and other documents) necessary to effectuate this Plan and/or sell or convey title to the Remaining Assets, without the need of further order of the Bankruptcy Court. In the discharge of its duties, the Liquidating Trustee will consult with the Advisory Board.

7.8.3. The Liquidating Trustee, on behalf of the Liquidating Trust, shall be further empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan including, without limitation, releases, settlement documents, notices of dismissal, stipulations of dismissal of any and all Estate Claims; (ii) subject to the provisions of this section of the Plan, make all distributions contemplated hereby; (iii) employ professionals to represent the Liquidating Trust in connection with the consummation of the terms of this Plan; and (iv) commence such actions and exercise such other powers as may be vested in the Liquidating Trustee and/or the Liquidating Trust by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Liquidating Trustee to be necessary and proper to implement the provisions of the Plan.

7.8.4. Appointment of Litigation Trustee. On the Effective Date, the Litigation Trustee shall be immediately appointed and authorized to administer the Litigation Trust and to liquidate any and all Estate Tort and Chapter 5 Claims on behalf of the Litigation Trust for distribution in accordance with the Plan and the Litigation Trust Agreement.

7.8.5. Powers of the Litigation Trustee. The Litigation Trustee shall have and is hereby granted the power and authority to prosecute and settle Estate Tort and Chapter 5 Claims (for such amounts as determined by the Litigation Trustee in his reasonable discretion), and the Litigation Trustee shall also have the power and authority to execute any and all documents (including contracts and other documents) necessary to effectuate this Plan and/or liquidate the Estate Tort and Chapter 5 Claims, without the need of further order of the Bankruptcy Court. In the discharge of its duties, the Litigation Trustee will consult with the Advisory Board.

7.8.6. Advisory Board. On the Effective Date, the Advisory Board will be established with two (2) members selected by the Committee and one (1) member selected by the Debtor. All final actions to be taken by either the Liquidating Trustee or the Litigation Trustee with respect to the assets of the Liquidating Trust or the Litigation Trust, respectively, including the sale or abandonment of the Remaining Assets or the prosecution, compromise, settlement, or abandonment of any Estate Tort and Chapter 5 Claims, shall be in consultation with the Advisory Board. In the event of any disagreement between the Liquidating Trustee or the Litigation Trustee and the Advisory Board, the decision of the Liquidating Trustee or the Litigation Trustee will control, provided, however, that the Advisory Board has the right to seek injunctive relief through a court of competent jurisdiction aimed at preventing the Liquidating Trustee or the Litigation Trustee from taking action where the amount in controversy exceeds $1.5 million.

7.8.7. Expenses Incurred on or After the Effective Date. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-20-

Liquidating Trust or the Litigation Trust on or after the Effective Date and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorney and other professional fees and expenses) made by the Liquidating Trust or the Litigation Trust may be paid in Cash held by the Liquidating Trust or the Litigation Trust. The Liquidating Trustee and the Litigation Trustee shall serve without bond and shall receive compensation at their ordinary and customary hourly rate (unless otherwise agreed to in writing by the Liquidating Trustee or the Litigation Trustee), for services rendered and expenses incurred on behalf of the Liquidating Trust or the Litigation Trust and in carrying out their duties pursuant to the Plan.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1.     The Plan contemplates and hereby provides for the rejection, pursuant to Section 365 of the Bankruptcy Code, of any and all Executory Contracts and Unexpired Leases of the Debtor which are in force on the Confirmation Date, except those Executory Contracts and Unexpired Leases which were specifically assumed pursuant to an order of the Court. Notwithstanding any other provision in this Plan or prior notice of any kind from the clerk of the Bankruptcy Court, any and all Creditors or persons with Claims against the Debtor's Estate arising out of or in connection with or due to the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall have thirty (30) days from the Confirmation Date within which to file a proof of claim in the true amount of such Claims. If any such Creditors fail to file such proofs of claim within said thirty (30) day period, then such Creditors shall have no Claims as against the Debtor, its Estate, the Liquidating Trustee, or the Litigation Trustee (and with any of their representatives, agents and employees), which Claims arising out of or in connection with or due to such rejection of such Executory Contract or Unexpired Lease, shall be dismissed, released and null and void.

8.2.     Any Entity whose Claim arises from the rejection of an Executory Contract or Unexpired Lease shall, to the extent such Claim becomes an Allowed Claim, have the rights of a Class 3 Claimant with respect thereto.

8.3.     Any claim filed in accordance with the provisions of Section 8.01 hereof shall be treated as a Disputed Claim until the period of time has elapsed within which the Debtors may file an objection to such Claim.

## ARTICLE IX
## RETENTION OF JURISDICTION

9.1.     The Bankruptcy Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

9.2.    In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code.    If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Liquidating Trustee or the Litigation Trustee elects to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court public authority or commission having competent jurisdiction over such matters.

9.3.    The Bankruptcy Court shall retain jurisdiction of the Case pursuant to the provisions of the Code, until the final allowance or disallowance of all Claims affected by the Plan, including, but not limited to the following matters:

9.3.1.    To enable the Debtor, the Liquidating Trustee, or the Litigation Trustee to consummate any and all proceedings which it may bring prior to the entry of the Confirmation Order, to set aside Liens or encumbrances, to challenge or object to the allowance of Claims and to recover any preferences, transfers, assets or damages to which it may be entitled under the applicable provisions of the Code or other federal, state or local law;

9.3.2.    To adjudicate all controversies concerning the classification or allowance of a Claim and/or Equity Security Interest;

9.3.3.    To adjudicate all disputes regarding Repurchase Agreements, including the obligations of Repo Participants to deliver funds to the Liquidating Trustee and to provide information to the Liquidating Trustee;

9.3.4.    To hear and determine all claims and/or motions by the Debtor or others arising from or seeking to the rejection of any Executory Contracts or Unexpired Leases, and to consummate the rejection and termination thereof or with respect to any Executory Contracts or Unexpired Leases to which an application for rejection or termination is filed prior to entry of the Confirmation Order;

9.3.5.    To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

9.3.6.    To adjudicate all claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

9.3.7.    To adjudicate all claims or controversies arising out of any purchases, sales, or contracts made or undertaken by the Debtor and/or the Liquidating Trustee during the pendency of the Proceedings;

9.3.8.    To recover all Assets and properties of the Debtor, wherever located;

9.3.9.    To adjudicate and determine any cause of action provided for under the Plan or pursuant to the Confirmation Order;

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

9.3.10. To make orders as are necessary or appropriate to carry out the provisions of the Plan, or in aid of confirmation and consummation of the Plan;

9.3.11. To hear and determine any application to modify the Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan, the Disclosure Statement or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects hereof; and

9.3.12. To hear and determine all matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

9.3.13. To determine any and all applications, adversary proceedings, and contested or litigated matters properly before the Court before or after the Confirmation Date.

9.3.14. To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Court in the Chapter 11 Cases entered on or before the Confirmation Date.

9.4.    To implement the provisions of the Plan in the manner as provided by Section 1142 of the Bankruptcy Code, and/or to modify same pursuant to Section 1127 of the Bankruptcy Code.

## ARTICLE X
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

10.1.   Objections to Claims. Only the Liquidating Trustee shall be entitled to object to Claims. Any objections to Claims shall be served and filed on or before the later of: (i) one hundred and twenty (120) days after the Confirmation Date; (ii) thirty (30) days after a request for payment or proof of Claim is timely filed and properly served; or (iii) such other date as may be fixed by the Bankruptcy Court, whether before or after the dates specified in subsections (i) and (ii) herein. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Creditor if service is effected in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on any counsel that has appeared on the Creditor's behalf in the Cases; or (c) by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified in the proof of Claim or any attachment thereto.

10.2.   Payments and Distributions with Respect to Disputed Claims. Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

10.3.   Distributions After Allowance. After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Liquidating Trustee shall distribute to the holder thereof

-23-

the distributions, if any, to which such holder is then entitled under the Plan in accordance with the provisions hereof. In respect of Disputed Claims such distributions shall be made within fifteen (15) days after such Disputed Claims become Allowed Claims by Final Order of the Bankruptcy Court.

10.4. <u>No Recourse</u>. Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Liquidating Trustee, the Debtor, or any of their respective professionals, consultants, attorneys, advisory, officers, directors or members of their successors or assigns, or any of their respective property; <u>provided</u>, <u>however</u>, that nothing in the Plan shall modify any rights of a holder of a Claim in accordance with Section 502(j) of the Bankruptcy Code. The Bankruptcy Court's entry of an estimation order may limit the distribution to be made on individual disputed claims, regardless of the amount finally allowed on account of such disputed claims.

## ARTICLE XI
## PROVISIONS CONCERNING DISTRIBUTION

11.1. <u>Time of Distributions Under the Plan</u>. Payments and distributions to be made by the Liquidating Trust on or after the Effective Date pursuant to the Plan shall be made on such date, or as soon as practicable, except as otherwise provided for in the Plan, or as may be ordered by the Court.

11.2. <u>Payment Dates</u>. Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day.

11.3. <u>Manner of Payments Under the Plan</u>. Cash payments made pursuant to the Plan shall be made in the currency of the United States, by check drawn on a domestic bank or by wire transfer from a domestic bank. Distributions to all holders of Allowed Claims shall be made (a) at the addresses set forth in the proof of claim filed by such holders (or at last known addresses of such holders if no proofs of claims were filed or the Debtor was notified of a change of address); or (b) at the addresses set forth in any written notices of address change delivered to the Debtors or the Bankruptcy Court after the date the proof of claim was filed; or (c) at the addresses reflected in the Debtor's schedules if no claim shall have been filed and no written notice of an address change has been received by the Debtors. No payments shall be made to a holder of a Disputed or Contested Claim unless and until such Claim becomes an Allowed Claim by a Final Order.

11.4. <u>Fractional Cents</u>. Any other provision of the Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payment of a fraction of a

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-24-

PHX 327965825v8
Case 4:07-bk-01578-EWH    Doc 369-1    Filed 10/15/07    Entered 10/15/07 16:23:25
Desc Exhibit 1    Page 25 of 32

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of .5).

11.5.    <u>Non-Negotiated Checks</u>.    Except as otherwise set forth in Section 11.06 hereof, if a Holder of an Allowed Claim, or and other claim or interest fails to negotiate a check issued to such Holder under the Plan within one hundred and eighty (180) days of the date such check was issued by the Liquidating Trust, then the amount of Cash or other property attributable to such check shall be deemed to be "Unclaimed Distributions," and the payee of such check shall be deemed to have no further Claim or future Claim against the Debtor, the Dividend Fund and/or the Liquidating Trust with respect of such check.

11.6.    <u>Unclaimed Distributions</u>.    In the event any payment to a holder of a Class 3 Unsecured Claim under the Plan remains unclaimed for a period of six (6) months after such distribution has been made (or after such delivery has been attempted), such Unclaimed Distribution and all future distributions to be made to such holders shall be deemed forfeited by such holder and the Unclaimed Distribution shall be distributed Pro Rata to the other holders of a Class 3 Allowed Unsecured Claims.

11.7.    <u>No Cash Payments of $20.00 or Less on Account of Allowed Claims</u>.    If a cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than Twenty Dollars ($20.00) (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, no such payment will be made and the Liquidating Trust shall retain such funds for its own purposes.

11.8.    <u>Disputed Payments or Distributions</u>.    In the event of any dispute between and among Claimants (including the Entity or Entities asserting the right to receive the disputed payment or distribution) as to the right of any Entity to receive or retain any payment or distribution to be made to such Entity under the Plan, the Liquidating Trust may, in lieu of making such payment or distribution to such Entity, make it instead into an escrow account or to a disbursing agent, for payment or distribution as ordered by a court of competent jurisdiction or as the interested parties to such dispute may otherwise agree among themselves.

**ARTICLE XII**
**EFFECT OF CONFIRMATION OF PLAN**

12.1.    <u>Discharge</u>.    Any liability imposed by the Plan will not be discharged.  If Confirmation of this Plan does not occur, the Plan shall be deemed null and void.  In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its Estate or any other Persons, or to prejudice in any manner the rights of the Debtor or its Estate or any Person in any further proceeding involving the Debtor or the Estate.  The provisions of this Plan shall be binding upon the Debtor, all Creditors and all Equity Security Interest Holders, regardless of whether such Claims or Equity Security Interest Holders are impaired or whether such parties accept this Plan, upon Confirmation thereof.

-25-

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

12.2. <u>Modification of Plan</u>. The Debtor may modify the Plan at any time before Confirmation. However, the Bankruptcy Court may require a new Disclosure Statement or revoting on the Plan if the Debtor materially modifies the Plan prior to Confirmation. The Debtor or the Liquidating Trust may also seek to modify the Plan at any time after Confirmation so long as (a) the Plan has not been substantially consummated, <u>and</u> (b) the Bankruptcy Court authorizes the proposed modification after notice and a hearing. After Confirmation, the Debtor may, upon Order from the Bankruptcy Court, in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose of this Plan.

12.3. <u>Post-Confirmation Quarterly Fees</u>. Quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the cases are converted, dismissed, or closed pursuant to a final decree.

12.4. <u>Investment of Dividend Fund</u>. To the extent practicable, the Liquidating Trust may invest any Cash in the Dividend Fund, and Liquidating Trust, Liquidating Trustee and the Dividend Fund shall be and are hereby released, discharged and/or not otherwise required to comply with the requirements and provisions of Section 345 of the Bankruptcy Code.

12.5. <u>Retention of Claims and Causes of Action</u>. Except to the extent any rights, claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Bankruptcy Case: (i) any and all Estate Claims or Estate Tort and Chapter 5 Claims accruing to the Debtor or its Estate shall remain assets of and vest in the Liquidating Trust or the Litigation Trust (as the case may be), whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Estate Claims or Estate Tort and Chapter 5 Claims have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Court, and (ii) neither the Debtor, the Estate, the Liquidating Trust, nor the Litigation Trust waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any Estate Claims or Estate Tort and Chapter 5 Claims that constitute property of the Debtor's Estate. Without in any manner limiting the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any Estate Claim, Estate Tort and Chapter 5 Claim, or potential Estate Claim or Estate Tort and Chapter 5 Claim, in the Plan, the Disclosure Statement, or any other document filed with the Court shall in no manner waive, eliminate, modify, release, or alter the Debtor's, the Liquidating Trustee's, or the Litigation Trust's right to commence, prosecute, defend against, settle, recover on account of, and realize upon any Estate Claim or Estate Tort and Chapter 5 Claim that the Debtor or its Estate have or may have as of the Confirmation Date.

PHX 327965825v8
Case 4:07-bk-01578-EWH    Doc 369-1    Filed 10/15/07    Entered 10/15/07 16:23:25
Desc Exhibit 1    Page 27 of 32

## ARTICLE XIII
## GENERAL PROVISIONS

13.1. <u>Notices Under the Plan</u>. Notices, requests, or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Proponents, addressed to:

Greenberg Traurig, P.A.                      Morris C. Aaron
1221 Brickell Avenue                          MCA Financial Group, Ltd.
Miami, Florida 33131                          4435 N. 44th Street
Attn: James P.S. Leshaw, Esq.                 Phoenix, Arizona 85018
                                              Liquidating Trustee

Greenberg Traurig, LLP
2375 East Camelback Road
Suite 700
Phoenix, Arizona 85016
Attn: John R. Clemency, Esq.
Attorneys for the Debtor

13.2. <u>Withholding Taxes/Setoffs</u>. The Liquidating Trust shall be entitled to deduct any Federal or State withholding taxes from any payments with respect to Allowed Claims for wages of any kind. The Liquidating Trustee may, but shall not be required to, set off against any Claim, and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtor or the Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust of any such claim the Debtor may have against such holder..

13.3. <u>Committee</u>. On the Confirmation Date, the Committee shall automatically dissolve and the members thereof and the Professionals retained by the Committee in accordance with Section 1103 of the Bankruptcy Code shall be released and discharged from their respective duties and obligations.

13.4. <u>Headings</u>. The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions of this Plan.

13.5. <u>Unenforceability</u>. Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

13.6. <u>Certain Terminations</u>. On the Effective Date, all instruments evidencing indebtedness of the Debtor discharged by the Plan shall be deemed canceled, unless this Plan provides for the retention of liens.

-27-

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

13.7.   <u>Rights if Plan Not Confirmed</u>.  If Confirmation of this Plan does not occur, the Plan shall be deemed null and void.  In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or its Estate or any other Person, or to prejudice in any manner, the rights of the Debtor of its Estate or any Person in any further proceedings involving the Debtor or its Estate.

13.8.   <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Arizona.

13.9.   <u>Liquidated and/or Disputed Claims</u>.  The Bankruptcy Court shall fix or liquidate the amount of any contingent and/or disputed Claim pursuant to Section 502 of the Bankruptcy Code.  The amount so fixed shall be deemed the amount of such contingent Claim for purposes of this Plan.  In lieu thereof, the Bankruptcy Court may determine the amount to be reserved for such contingent Claim, which amount shall be the maximum amount which the holder of such contingent Claim shall be entitled to receive under this Plan if such contingent Claim is Allowed in whole or in part.

13.10.  <u>Revocation of Plan</u>. The Debtor reserves the right to revoke and withdraw this Plan at any time prior to Confirmation.

13.11.  <u>Reservation of Rights</u>.  Nothing contained herein shall prohibit the Debtor from prosecuting or defending any of its rights as may exist on its own behalf.  If Confirmation of the Plan does not occur, the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, its Estate, the Committee or any other Person, or to prejudice in any manner, the rights and remedies of the creditors, the Debtor, its Estate, the Committee or any Person in any further proceedings involving the Debtor or its Estate.  The filing of the Plan and or any modifications hereto, and the Plan itself shall not constitute a waiver by the Debtor of any and all rights, remedies, objections, causes of action, the Debtor may have or may wish to raise with respect to anything, including, without limitation, any other plan or plans filed or to be filed in this bankruptcy case, all of which rights and objections are hereby reserved.  The Debtor and the Liquidating Trustee reserve the right to modify the treatment of any Allowed Claims at any time on and after the Confirmation Date upon the consent of the holder of such Allowed Claim whose treatment is being modified, provided that no such modification which materially adversely affects other Allowed Claims can be made, unless such modification has been approved by Final Order, upon notice to the the Debtor, or has been agreed to by the Debtor or accepted by the holders of Allowed Claims in the applicable class as determined pursuant to Section 1126 of the Bankruptcy Code.

13.12.  <u>Exemption from Certain Transfer Taxes</u>.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer hereunder will not be subject to any stamp, tax, or similar tax,

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-28-

including but not limited to the transfer of any Remaining Assets by the Liquidating Trust and the recording or mortgages by the purchaser thereof.

13.13. <u>Injunction</u>. Except as otherwise provided in the Plan or the Confirmation Order, and except for any actions timely filed pursuant to Section 523 of the Bankruptcy Code and/or any Claims declared by the Court to be non-dischargeable pursuant to Section 523 of the Bankruptcy Code, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against the Debtor or its Estate are, with respect to any such Claims or Equity Security Interests, permanently enjoined from and after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) with respect to any such Claim against or affecting the Debtor, its Estate, the Liquidating Trust, the Liquidating Trustee, the Litigation Trust, and the Litigation Trustee or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment, collecting or otherwise recovering by any manner or means, whether directly or indirectly, with respect to any judgment, award, decree or order against the Debtor or its Estate, or any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or its Estate, or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to the Debtor or its Estate, any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law. By accepting a distribution pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this section, and, except as set forth in this Section, waives any and all claims, causes of action and/or remedies and objections of every kind against the Debtor, the Litigation Trustee, and the Liquidating Trustee.

13.14. <u>Ratification of Action Taken During Pendency of the Chapter 11 Case</u>. The Confirmation Order shall ratify all transactions effected by the Debtor and/or the Committee during the period commencing on the Debtor's Petition Date and ending on the Confirmation Date.

13.15. <u>Term of Injunctions or Stays</u>. Unless otherwise provided, all injunctions or stays arising prior to the Confirmation Date in accordance with Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, or such later date as provided under applicable law.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-29-

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

13.16. <u>Injunction Against Interference With Plan</u>. Upon the entry of the Confirmation Order, all holders of Claims and Equity Security Interests and other parties in interest, including the Debtor, along with its respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

13.17. <u>Exculpation</u>. Except with respect to obligations under the Plan, the Liquidating Trustee, the Liquidating Trust, the Debtor, nor any of the Debtor's respective members, officers, directors, employees, agents or professionals, solely in their capacity as such, shall have or incur any liability to the Debtor and/or any holder of any Claim for any act or omission in connection with, or arising out of: (i) the Case; (ii) the confirmation of the Plan; (iii) the consummation of the Plan; or (iv) the administration of the Plan or property to be distributed pursuant to the Plan, except for willful misconduct, recklessness or gross negligence; and, in all respects, the Liquidating Trust, Liquidating Trustee, the Litigation Trust, the Litigation Trustee, and the Debtor, and each of their respective members, officers, directors, employees, advisors and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

13.18. <u>Manner of Payments Under the Plan</u>. Cash payments made pursuant to the Plan shall be made in the currency of the United States, by check drawn on a domestic bank or by wire transfer from a domestic bank. Distributions to all holders of Allowed Claims shall be made (a) at the addresses set forth in the proof of claim filed by such holders (or at last known addresses of such holders if no proofs of claims were filed or the Debtor was notified of a change of address); or (b) at the addresses set forth in any written notices of address change delivered to the Debtor or the Bankruptcy Court after the date the proof of claim was filed; or (c) at the addresses reflected in the Debtor's schedules if no claim shall have been filed and no written notice of address change has been received by the Debtor. No payments shall be made to a holder of a Disputed or Contested Claim unless and until such Claim becomes an Allowed Claim by a Final Order.

13.19. <u>Retention of Causes of Action/Reservation of Rights</u>. Except as specifically provided herein, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, claims, or causes of action that the Debtor or its Estate may have or which the Debtor the Litigation Trust, or the Liquidating Trust may choose to assert on behalf of the Estate in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation: (i) any and all claims against any Person to the extent such Person asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, its Estate, the Equity Security Interest Holders; (ii) the avoidance of any transfer by or obligation of the Debtor or its Estate or the recovery of the value of such transfer; or (iii) the turnover of any property of the Estate.

13.20. <u>Successors and Assigns</u>. The rights and obligations of any Entity named or referred to in the Plan shall be binding upon and shall insure to the benefit of, the predecessors, successors, assigns and agents of such Entity.

-30-

Date: October 15, 2007

FIRST MAGNUS FINANCIAL CORPORATION
Debtor

By: _____
Gurpreet S. Jaggi
President, Chief Executive Officer

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

-31-

PHX 327965825v8