**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone: 312/853-7256
Telecopier: 312/853-7036
Paul Caruso – IL Bar No. 6230816
David A. Hall – IL Bar No. 6280151

**RYLEY CARLOCK & APPLEWHITE**
One North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: 602/258-7701
Telecopier: 602/257-9582
John J. Fries – 007182

Counsel for Wells Fargo Bank, N.A. and
Wells Fargo Funding, Inc.

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>FIRST MAGNUS FINANCIAL CORPORATION<br><br>Debtor. | Chapter 7<br><br>Case No.: 4-07-bk-01578-JMM<br><br>**OBJECTION OF WELLS FARGO FUNDING, INC. TO CONFIRMATION OF THE SECOND AMENDED PLAN OF LIQUIDATION FILED BY FIRST MAGNUS FINANCIAL CORPORATION DATED JANUARY 4, 2008**<br><br>Date: **February 7 and 8, 2008**<br>Time: **9:30 a.m.**<br>Place: **Tucson, Arizona** |

Wells Fargo Funding, Inc. ("Wells Fargo Funding") hereby files this objection (the "Objection") to confirmation of the Second Amended Plan of Liquidation filed By First Magnus Financial Corporation (the "Debtor") dated January 4, 2008 (the "Plan"). In support of its Objection, Wells Fargo Funding respectfully states as follows:

## SUMMARY OF OBJECTION

1. The Debtor currently holds certain escrow funds, collected prepetition by the Debtor as interim servicer of certain mortgage loans owned by Wells Fargo Funding, which were never turned over to Wells Fargo Funding pursuant to the express terms of certain prepetition contracts between the Debtor and Wells Fargo Funding. Upon information and belief, those funds collected by the Debtor on behalf of Wells Fargo Funding have been commingled in a bank account with funds in which numerous other third party institutional investors have asserted an interest.

2. The Plan's distribution scheme is funded primarily with proceeds that are expected to be realized from the liquidation of the Debtor's assets. Nevertheless, the Plan fails to indicate whether, and to what extent, the Debtors intend to use these commingled prepetition funds to make distributions under the Plan. Consequently, Wells Fargo Funding objects to confirmation of the Plan to the extent that the Debtor asserts any interest in any funds owned by Wells Fargo Funding that are in the Debtor's possession and using such funds to make distributions under the Plan.

3. Moreover, confirmation of the Plan is wholly inappropriate absent the Plan and/or the confirmation order providing that those prepetition commingled escrow funds in the Debtor's possession will be segregated from any of the Debtor's property that will be used to make distributions under the Plan, and such escrow funds will be held in trust pending resolution of the relative rights of the various parties claiming an interest in such funds.

## FACTUAL BACKGROUND

4. On August 21, 2007 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. Prior to the Petition Date, the Debtor entered into agreements with Wells Fargo Funding that set forth the essential terms governing the sale of certain mortgage loans from the Debtor to Wells Fargo Funding.

6. Specifically, Wells Fargo Funding entered into two prepetition loan purchase agreements with the Debtor pursuant to which Wells Fargo Funding purchased certain qualifying fixed and adjustable rate residential first lien mortgage loans (the "Mortgage Loans") from the Debtor. The agreements include: (1) the Master Mortgage Loan Purchase and Interim Servicing Agreement, dated August 29, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "MLPSA"), which is attached hereto as Exhibit A, and (2) the Loan Purchase Agreement, dated August 16, 1996 (as subsequently amended, the "Loan Purchase Agreement"), which is attached hereto as Exhibit B.[1] The Loan Purchase Agreement incorporates by reference the Wells Fargo Funding Seller Guide (as amended, restated, supplemented or otherwise modified from time to time, the "Seller Guide"), which sets forth additional terms and

---

[1] The Loan Purchase Agreement has been amended several times including: (1) the Zip Fund Delayed Program amendment, dated November 6, 2003 (the "Zip Fund Amendment"); (2) the First Amendment to the Institutional Conduit Program Purchase Agreement, dated December 1, 2005 (the "First Conduit Agreement"); (3) the Image Express Program Amendment, dated July 31, 2006 (the "Image Express Amendment"); (4) the Second Amendment to the Institutional Conduit Program Purchase Agreement, dated January 10, 2007 (the "Second Conduit Amendment"); and (5) the Conventional Delegated Underwriting Amendment, dated May 23, 2007 (the "CDU Amendment"). The foregoing list is not intended to be the exclusive list of amendments to the Loan Purchase Agreement, and any reference to the Loan Purchase Agreement includes any subsequent amendments thereto, irrespective of whether such amendments are specifically referenced herein

conditions governing the sale of Mortgage Loans under the Loan Purchase Agreement.[2] The MLPSA, the Loan Purchase Agreement and the Seller Guide are collectively referred to herein as the "Agreements."

7. Pursuant to the Agreements, the Debtor conveyed, transferred and assigned all right, title, and interest in and to the Mortgage Loans to Wells Fargo Funding, including, without limitation, the corresponding servicing rights on a servicing released basis. See Seller Guide at 310.01, 13; MLPSA Exhibit 4, ¶ 1. Additionally, pursuant to the Agreements, Wells Fargo Funding was vested with beneficial ownership of the Mortgage Loans and the related mortgage notes. MLPSA §§ 6.02.

8. Subsequent to the sale of Mortgage Loans from the Debtor to Wells Fargo Funding, the Debtor would typically serve as interim servicer of the Mortgage Loans for a brief period (the "Interim Servicing Period") (generally not more than 30 to 60 days) until such time as Wells Fargo Funding could transition servicing to the permanent servicer, Wells Fargo Bank, N.A. (collectively with Wells Fargo Funding, "Wells Fargo"). MLPSA § 6.02; MLPSA Exhibit 11, § 11.01. In many cases, after purchasing the Mortgage Loans from the Debtor, Wells Fargo Funding would sell the Mortgage Loans to third-party investors (the "End Investors") and Wells Fargo Bank, N.A. would act as the permanent servicer of the Mortgage Loans.

9. In its capacity as interim servicer, the Debtor collected principal and interest and escrow payments owing to taxing authorities and insurance carriers from end-borrowers under the Mortgage Loans and held such collections as custodian

---

[2] Due to its voluminous and proprietary nature, Wells Fargo Funding has not attached hereto the Seller Guide as an exhibit. Wells Fargo Funding will provide a copy of the Seller Guide to the Court upon request.

for Wells Fargo Funding during the Interim Servicing Period. MLPSA § 6.02. After servicing of the Mortgage Loans had been transitioned to Wells Fargo Bank, N.A., the Debtor's servicing rights terminated, and the Debtor was required to deliver to Wells Fargo all principal and interest payments and any escrow payments collected by it from end-borrowers during the Interim Servicing Period. MLPSA § 15. Upon receipt of the principal and interest and escrow payments from the Debtor, Wells Fargo applied monies to the end-borrowers' loan accounts, forwarded interest payments to End Investors, and paid insurance carriers and taxing authorities on behalf of end-borrowers.

10. As of the Petition Date, the Debtor was holding approximately $207,514.15 in escrow funds (the "Escrow Funds") that it collected as interim servicer during the Interim Servicing Period in respect of Mortgage Loans purchased by Wells Fargo, that were never turned over to Wells Fargo. As a consequence of the Debtor's failure to timely turnover the Escrow Funds, Wells Fargo was required to go out-of-pocket to pay various insurance carriers and taxing authorities on behalf of end-borrowers in the amount of the Escrow Funds in order to prevent such end-borrowers' accounts from becoming delinquent.

11. Since the Petition Date, Wells Fargo Funding has worked patiently and in good faith with the Debtor in order to recover the Escrow Funds, expending significant time and financial resources. Nevertheless, such efforts have been unsuccessful and the parties have not be able to come to terms for the turnover of the Escrow Funds.

12. Upon information and belief, the Escrow Funds have been commingled in a prepetition bank account (containing approximately $3.8 million as of

the Petition Date) in which other third party institutional investors have asserted an interest (the "Prepetition Funds"). See Disclosure Statement at V.C (disclosing the existence of the Prepetition Funds).

13. The Plan is silent, however, with respect to the Debtor's position regarding ownership of the Prepetition Funds, whether such funds will be segregated from the Dividend Fund (as defined in the Plan) or whether such funds will be used to fund distributions under the Plan.

## ARGUMENT

14. Section 1129(a)(1) of the Bankruptcy Code provides that a plan of reorganization can only be confirmed if "[t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). It is well settled that a bankruptcy court does not have jurisdiction to direct the disposition of property that does not comprise property of a debtor's bankruptcy estate. See In re Pentell, 777 F.2d 1281, 1285 (7th Cir. 1985) (holding that the bankruptcy court did not have jurisdiction over insurance proceeds absent evidence that the debtor had an interest in such proceeds); In re Xonics, Inc., 813 F.2d 127, 131 (7th Cir. 1987) (holding that the purpose of bankruptcy court jurisdiction is to apportion the debtor's assets among its creditors and therefore, the bankruptcy court has no jurisdiction over non-estate assets); In re Holywell Corp., 118 B.R. 876 (S.D. Fla. 1990) (finding that the bankruptcy court does not have jurisdiction over property belonging to another party absent a finding that the property also constitutes a part of the debtor's estate); In re Ridgely Communications, Inc., 139 B.R. 374, 380 (Bankr. D. Md. 1992) (noting that assets not comprising part of debtor's estate are not subject to a bankruptcy court's jurisdiction). Because the Escrow

Funds are not property of the Debtor's estate, this Court is without jurisdiction to authorize the distribution of the Prepetition Funds under the Plan, and the Plan, to the extent it seeks to distribute the Prepetition Funds, cannot be confirmed.

15. Section 541(a) of the Bankruptcy Code broadly defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §§ 541(a)(1); <u>Begier v. Internal Revenue Service</u>, 496 U.S. 53, 59 (1990) (holding that property in which the debtor has no interest is not property of the estate). With respect to ownership of the Escrow Funds, the Agreements leave no doubt – Wells Fargo Funding owns all right, title and interest in and to the Mortgage Loans, the corresponding servicing rights and loan documents, and all proceeds collected on account of such Mortgage Loans, including the Escrow Funds. The Debtor retained no interest - equitable, legal or otherwise - in the Mortgage Loans or the Escrow Funds and therefore, the Escrow Funds do not comprise part of the Debtor's bankruptcy estate.

16. Wells Fargo Funding's exclusive ownership rights in the Escrow Funds is further evidenced by the Agreements, which expressly provide that the Debtor holds any Escrow Funds as "custodian" for Wells Fargo Funding and is required to immediately turnover any such funds in its possession to Wells Fargo Funding upon termination of the Interim Servicing Period. MLPSA §§ 6.02, 15.

17. In addition, the Escrow Funds do not become property of the Debtor's estate simply because they have been commingled with funds in which other third party institutional investors have asserted an interest. Under well settled tracing principles, to recover the Escrow Funds, Wells Fargo Funding may have to establish its

rights to the Escrow Funds vis-à-vis other creditors who also claim an interest in the Prepetition Funds. But the commingling of the Escrow Funds with other Prepetition Funds does not, however, transform the Escrow Funds into property of the estate. See Old Republic Nat'l Ins. Co. v. Tyler (In re Dameron), 155 F.3d 718, 723-24 (4th Cir. 1998) (holding that creditor, whose funds have been commingled in debtor's general operating account, is entitled recover such funds using equitable method of tracing); Official Committee of Unsecured Creditors of Columbia Gas Transmission Corp. v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.), 997 F.2d 1039, 1064 (3d Cir. 1993) (holding that equitable tracing principles allow a creditor to recover funds from a commingled account); In re Supermarkets of Cheltenham, 1999 WL 260956 (Bankr. E.D. Pa. 1999) (same).

18. Because the Escrow Funds do not comprise part of the Debtor's bankruptcy estate, this Court lacks jurisdiction to authorize the Debtors to distribute such funds under the Plan. Thus, to the extent the Debtor asserts an ownership interest in the Prepetition Funds, including the Escrow Funds, and intends to use such funds to make distributions under the Plan prior to a judicial determination being made regarding the parties' relative rights in such funds, Wells Fargo Funding respectfully requests that this Court deny confirmation of the Plan.

19. Wells Fargo Funding further submits that confirmation of the Plan is inappropriate absent the Plan and/or the confirmation order providing that the Prepetition Funds, which include the Escrow Funds, shall be segregated from the Dividend Fund and held in trust pending a final resolution of the relative rights of all parties asserting an interest in the Prepetition Funds.

## CONCLUSION

For the foregoing reasons, Wells Fargo Funding respectfully requests this Court deny confirmation of the Debtor's Plan.

Dated this 4th day of February, 2008.

RYLEY CARLOCK & APPLEWHITE

/s/ John J. Fries

John J. Fries
One North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 258-7701
Facsimile: (602) 257-9582

And

SIDLEY AUSTIN, LLP

Paul S. Caruso
David A. Hall
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Attorneys for Wells Fargo Funding, Inc.

///
///
///

ORIGINAL electronically filed with the
U.S. Bankruptcy Court on this 4th day of
February, 2008.

COPIES mailed this 4th day of
February, 2008, to:

Office of the U.S. Trustee
230 North First Avenue, #204
Phoenix, Arizona 85003-1706

John R. Clemency
Todd A. Burgess
Greenberg Traurig LLP
2375 East Camelback Road
Suite 700
Phoenix, Arizona 85016

By: /s/ Maureen A. Scott
Maureen A. Scott

CH1 4138462v 3