# EXHIBIT A

# MASTER MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT

FIRST MAGNUS FINANCIAL CORPORATION
Seller and Interim Servicer

WELLS FARGO FUNDING, INC.
Initial Purchaser

Dated as of August 29, 2006

First and Second Lien, Fixed and Adjustable Rate Mortgage Loans

Case 4:07-bk-01578-EWH Doc 1224-1 Filed 02/04/08 Entered 02/04/08 10:12:53
Desc Exhibit A - Part 1 Page 2 of 41

TABLE OF CONTENTS

Page

SECTION 1. Definitions. ..... 1

SECTION 2. Agreement to Purchase ..... 12

SECTION 3. Mortgage Loan Schedules ..... 12

SECTION 4. Purchase Price ..... 13

SECTION 5. Examination of Mortgage Files; Underwriting Guidelines. ..... 13
Subsection 5.01. Examination of Mortgage Files ..... 13
Subsection 5.02. Underwriting Guidelines ..... 13

SECTION 6. Conveyance from Seller to Initial Purchaser ..... 14
Subsection 6.01. Conveyance of Mortgage Loans; Possession of Servicing Files ..... 14
Subsection 6.02. Books and Records ..... 14
Subsection 6.03. Delivery of Final Mortgage Loan Documents ..... 14

SECTION 7. Representations, Warranties and Covenants of the Seller: Remedies for Breach ..... 15
Subsection 7.01. Representations and Warranties Respecting the Seller ..... 15
Subsection 7.02. Representations and Warranties Regarding Individual Mortgage Loans ..... 19
Subsection 7.03. Remedies for Breach of Representations and Warranties ..... 33
Subsection 7.04. Repurchase or Indemnification of Certain Mortgage Loans ..... 34

SECTION 8. Closing ..... 35

SECTION 9. Closing Documents ..... 35

SECTION 10. Costs ..... 36

SECTION 11. Seller's Servicing Obligations ..... 37

SECTION 12. Removal of Mortgage Loans from Inclusion under This Agreement Upon a Whole Loan Transfer or a Securitization Transaction on One or More Reconstitution Dates ..... 37

SECTION 13. The Seller ..... 45
Subsection 13.01. Additional Indemnification by the Seller ..... 45
Subsection 13.02. Merger or Consolidation of the Seller ..... 45
Subsection 13.03. Limitation on Liability of the Seller and Others ..... 45
Subsection 13.04. Seller Not to Resign ..... 46
Subsection 13.05. No Transfer of Servicing ..... 46

SECTION 14. Default ..... 46
Subsection 14.01. Events of Default ..... 46
Subsection 14.02. Waiver of Defaults ..... 48
Subsection 14.03. Reasonable Assurances ..... 48

SECTION 15. Termination ..... 48

SECTION 16. Successor to the Seller ..... 49

SECTION 17. Financial Statements ..... 49

SECTION 18. Mandatory Delivery: Grant of Security Interest ..... 50

SECTION 19. Notices ..... 50

SECTION 20. Severability Clause ..... 51

SECTION 21. Counterparts ..... 51

SECTION 22. Governing Law ..... 51

SECTION 23. Intention of the Parties ..... 51

SECTION 24. Successors and Assigns ..... 52

SECTION 25. Waivers ..... 52

SECTION 26. Exhibits ..... 52

SECTION 27. Non-solicitation ..... 52

SECTION 28. General Interpretive Principles ..... 52

SECTION 29. Reproduction of Documents ..... 53

SECTION 30. Further Agreements ..... 53

SECTION 31. Entire Agreement ..... 53

SECTION 32. Confidentiality ..... 53

SECTION 33. Consumer Privacy ..... 54

## EXHIBITS

| | |
|---|---|
| EXHIBIT 1 | SELLER'S OFFICER'S CERTIFICATE |
| EXHIBIT 2 | FORM OF OPINION OF COUNSEL TO THE SELLER |
| EXHIBIT 3 | SECURITY RELEASE CERTIFICATION |
| EXHIBIT 4 | ASSIGNMENT AND CONVEYANCE |
| EXHIBIT 5 | SELLER'S UNDERWRITING GUIDELINES |
| EXHIBIT 6 | CONDITIONS AND LIMITATIONS TO SELLER'S UNDERWRITING GUIDELINES |
| EXHIBIT 7 | CONTENTS OF EACH MORTGAGE FILE |
| EXHIBIT 8 | FORM OF ASSIGNMENT AND RECOGNITION AGREEMENT |
| EXHIBIT 9 | FORM OF INDEMNIFICATION AGREEMENT |
| EXHIBIT 10 | ESCROW DELAY INTERIM SERVICING AND TRANSFER PROCEDURES |
| EXHIBIT 11 | SERVICING ADDENDUM |
| EXHIBIT 12 | LIST OF AUTHORIZED SERVICING OFFICERS |
| EXHIBIT 13 | FINAL MORTGAGE LOAN DOCUMENTS |
| EXHIBIT 14 | FORM OF ANNUAL CERTIFICATION |
| EXHIBIT 15 | SERVICING CRITERIA TO BE ADDRESSED IN ASSESSMENT OF COMPLIANCE |
| SCHEDULE I | MORTGAGE LOAN SCHEDULE |
| SCHEDULE II | PREPAYMENT CHARGE SCHEDULE |

## MASTER MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT

This is a MASTER MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT (the "Agreement"), dated as of August 29, 2006, by and between Wells Fargo Funding, Inc., having an office at 2701 Wells Fargo Way, 1 South, Minneapolis, Minnesota 55408 (the "Initial Purchaser", and the Initial Purchaser or the Person, if any, to which the Initial Purchaser has assigned its rights and obligations hereunder as Purchaser with respect to a Mortgage Loan, and each of their respective successors and assigns, the "Purchaser") and First Magnus Financial Corporation, having an office at 603 North Wilmot Road, Tucson, Arizona 85711 (the "Seller").

W I T N E S S E T H :

WHEREAS, the Seller desires to sell, from time to time, to the Purchaser, and the Purchaser desires to purchase, from time to time, from the Seller, certain conventional, fixed and adjustable rate residential first and second lien mortgage loans, including the right to any Prepayment Charges payable by the related Mortgagors as described herein, (the "Mortgage Loans") as described herein on a servicing-released basis, and which shall be delivered in groups of whole loans on various dates as provided herein (each, a "Closing Date");

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first or second lien on a residential dwelling located in the jurisdiction indicated on the Mortgage Loan Schedule for the related Mortgage Loan Package, which is to be annexed hereto on each Closing Date as Schedule I;

WHEREAS, the Purchaser and the Seller wish to prescribe the manner of the conveyance, interim servicing and control of the Mortgage Loans; and

WHEREAS, following its purchase of the Mortgage Loans from the Seller, the Purchaser desires to sell some or all of the Mortgage Loans to one or more purchasers as a whole loan transfer in a whole loan or participation format or a public or private mortgage-backed securities transaction;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller agree as follows:

### SECTION 1. Definitions.

For purposes of this Agreement, the following capitalized terms shall have the respective meanings set forth below.

Accepted Servicing Practices: With respect to any Mortgage Loan, those mortgage servicing practices of prudent lending institutions that service Mortgage Loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located.

Actual Principal Balance: As to each Mortgage Loan as of any Determination Date, (i) the principal balance of the Mortgage Loan as of the Cut-off Date after giving effect to payments of principal received on or before such date, minus (ii) all amounts previously distributed to the Purchaser with respect to the related Mortgage Loan representing payments or recoveries of principal.

Adjustable Rate Mortgage Loan: A Mortgage Loan which provides for the adjustment of the Mortgage Interest Rate payable in respect thereto.

Adjustment Date: With respect to each Adjustable Rate Mortgage Loan, the date set forth in the related Mortgage Note on which the Mortgage Interest Rate on such Adjustable Rate Mortgage Loan is adjusted in accordance with the terms of the related Mortgage Note.

Agreement: This Master Mortgage Loan Purchase and Interim Servicing Agreement including all exhibits, schedules, amendments and supplements hereto.

Appraised Value: With respect to any Mortgaged Property, the lesser of (i) the value thereof as determined by an appraisal made for the originator of the Mortgage Loan at the time of origination of the Mortgage Loan by an appraiser who met the minimum requirements of FNMA or FHLMC and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and (ii) the purchase price paid for the related Mortgaged Property by the Mortgagor with the proceeds of the Mortgage Loan; provided, however, in the case of a Refinanced Mortgage Loan, such value of the Mortgaged Property is based solely upon the value determined by an appraisal made for the originator of such Refinanced Mortgage Loan at the time of origination of such Refinanced Mortgage Loan by an appraiser who met the minimum requirements of FNMA or FHLMC and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989

Assignment and Conveyance: An assignment and conveyance of the Mortgage Loans purchased on a Closing Date in the form annexed hereto as Exhibit 4.

Assignment of Mortgage: With respect to each Mortgage Loan which is not a MERS Loan, an individual assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to give record notice of the sale of the Mortgage to the Purchaser.

Balloon Mortgage Loan: A Mortgage Loan that provided on the date of origination for an amortization schedule extending beyond its maturity date.

Balloon Payment: With respect to any Balloon Mortgage Loan as of any Determination Date, the Monthly Payment payable on the maturity of such Mortgage Loan.

Blanket Mortgage: The Mortgage or Mortgages encumbering the Cooperative Project.

Business Day: Any day other than a Saturday or Sunday, or a day on which banking and savings and loan institutions in the States where the parties' principal place of business are authorized or obligated by law or executive order to be closed.

Cash-Out Refinancing: A Refinanced Mortgage Loan the proceeds of which were in excess by more than the lesser of $2,000 or 2% of the principal balance of any existing first mortgage on the related Mortgaged Property and related closing costs, and were used to pay any such existing first mortgage, related closing costs and subordinate mortgages on the related Mortgaged Property.

Closing Date: The date or dates on which the Purchaser from time to time shall purchase and the Seller from time to time shall sell to the Purchaser, the Mortgage Loans listed on the related Mortgage Loan Schedule with respect to the related Mortgage Loan Package.

Closing Documents: With respect to any Closing Date, the documents required pursuant to Section 9.

Code: The Internal Revenue Code of 1986, or any successor statute thereto.

Combined Loan-to-Value Ratio or CLTV: With respect to any Mortgage Loan as of any Determination Date, the ratio on such date of the outstanding principal amount of the Mortgage Loan and any other mortgage loan which is secured by a lien on the related Mortgaged Property to the Appraised Value of the Mortgaged Property.

Commission: The United States Securities and Exchange Commission.

Company Information: As defined in Section 12(c)(i)(A).

Condemnation Proceeds: All awards, compensation and settlements in respect of a taking of all or part of a Mortgaged Property by exercise of the power of condemnation or the right of eminent domain.

Confirmation or Trade Ticket: With respect to any Mortgage Loan Package purchased and sold on any Closing Date, the letter agreement between the Purchaser and the Seller (including any exhibits, schedules and attachments thereto), setting forth the terms and conditions of such transaction and describing the Mortgage Loans to be purchased by the Purchaser on such Closing Date. Such Confirmation shall also include any changes to the Underwriting Guidelines. A Confirmation may relate to more than one Mortgage Loan Package to be purchased on one or more Closing Dates hereunder.

Convertible Mortgage Loan: A Mortgage Loan that by its terms and subject to certain conditions contained in the related Mortgage or Mortgage Note allows the Mortgagor to convert the adjustable Mortgage Interest Rate on such Mortgage Loan to a fixed Mortgage Interest Rate.

Cooperative Documents: For any Cooperative Share Loan, any and all documents required by the Seller or the Purchaser as part of the Mortgage File.

Cooperative Project: A structure of two or more Cooperative Units in which a borrower obtains the right to occupy one of the Cooperative Units by purchasing stock in the Corporation that owns the structure and by executing a Proprietary Lease for the Cooperative Unit.

Cooperative Share Loan: A Mortgage Loan secured by the Mortgagor's rights of ownership of the related Corporation and Mortgagor's occupancy in a Cooperative Unit.

Cooperative Unit: The single family dwelling, located within the Cooperative Project, which is the subject of the Proprietary Lease.

Corporation: The corporation or other legally constituted entity that owns the Cooperative Project and is the lessor under the Proprietary Lease.

Custodial Account: The separate account or accounts, each of which shall be an Eligible Account, created and maintained pursuant to this Agreement, which shall be entitled "[Seller], as servicer, in trust for the Purchaser and various Mortgagors, Fixed and Adjustable Rate Mortgage Loans", established at a financial institution acceptable to the Purchaser.

Cut-off Date: The first day of the month in which the related Closing Date occurs.

Depositor: The depositor, as such term is defined in Regulation AB, with respect to any Securitization Transaction.

Determination Date: With respect to each Distribution Date, the fifteenth (15th) day of the calendar month in which such Distribution Date occurs or, if such fifteenth (15th) day is not a Business Day, the Business Day immediately preceding such fifteenth (15th) day.

Distribution Date: The fifth (5th) day of each month, commencing on the fifth day of the month next following the month in which the related Cut-off Date occurs, or if such fifth (5th) day is not a Business Day, the first Business Day immediately following such fifth (5th) day.

Due Date: With respect to each Mortgage Loan, the first day of the calendar month, which is the day on which the Monthly Payment is due on a Mortgage Loan (including the Balloon Payment with respect to a Balloon Mortgage Loan), exclusive of any days of grace.

Electronically: As it applies to any record, communication, data, signature, including but not limited to any manifestation of assent, such as "clicking" on an on-screen icon, word or graphic, shall mean any digital, analog, optical or magnetic means, method, or process now known or hereafter developed, used to evidence such item or event.

Eligible Account: Either (i) an account or accounts maintained with a federal or state chartered depository institution or trust company, the short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the short-term unsecured debt obligations of such holding company) are rated A-1 by S&P or Prime-1 by Moody's (or a comparable rating if another rating agency is specified by the Initial Purchaser by written notice to the Seller) at the time any amounts are held on deposit therein, (ii) an account or accounts the deposits in which are fully insured by the FDIC or (iii) a trust account or accounts maintained with a federal or state chartered depository institution or trust company acting in its fiduciary capacity. Eligible Accounts may bear interest.

Escrow Account: The separate trust account or accounts created and maintained pursuant to this Agreement which shall be entitled "[Seller], as servicer, in trust for the Purchaser and various Mortgagors, Fixed and Adjustable Rate Mortgage Loans," established at a financial institution acceptable to the Purchaser.

Escrow Payments: The amounts constituting ground rents, taxes, assessments, water charges, sewer rents, Primary Insurance Policy premiums, fire and hazard insurance premiums, flood insurance premiums and other payments required to be escrowed by the Mortgagor with the Mortgagee pursuant to the terms of any Mortgage Note or Mortgage.

Event of Default: Any one of the events enumerated in Subsection 14.01

Exchange Act: The Securities Exchange Act of 1934, as amended.

FDIC: The Federal Deposit Insurance Corporation, or any successor thereto.

FHLMC: Freddie Mac or any successor thereto.

Final Mortgage Loan Documents: Those mortgage loan documents listed in Exhibit 13

Final Recovery Determination: With respect to any defaulted Mortgage Loan or any REO Property (other than a Mortgage Loan or REO Property purchased by the Seller pursuant to this Agreement), a determination made by the Seller that all Insurance Proceeds, Liquidation Proceeds and other payments or recoveries which the Seller, in its reasonable good faith judgment, expects to be finally

recoverable in respect thereof have been so recovered. The Seller shall maintain records, prepared by a servicing officer of the Seller, of each Final Recovery Determination.

Fixed Rate Mortgage Loan: A Mortgage Loan with respect to which the Mortgage Interest Rate set forth in the Mortgage Note is fixed for the term of such Mortgage Loan.

Flood Zone Service Contract: A transferable contract maintained for the Mortgaged Property with a nationally recognized flood zone service provider acceptable to Purchaser in its sole discretion for the purpose of obtaining the current flood zone status relating to such Mortgaged Property, over the life of the Mortgage Loan.

FNMA: Fannie Mae or any successor thereto.

GAAP: Generally accepted accounting principles.

Gross Margin: With respect to any Adjustable Rate Mortgage Loan, the fixed percentage amount set forth in the related Mortgage Note and the related Mortgage Loan Schedule that is added to the Index on each Adjustment Date in accordance with the terms of the related Mortgage Note to determine the new Mortgage Interest Rate for such Mortgage Loan.

HUD: The United States Department of Housing and Urban Development or any successor thereto.

Index: With respect to any Adjustable Rate Mortgage Loan, the index identified on the Mortgage Loan Schedule and set forth in the related Mortgage Note for the purpose of calculating the interest rate thereon.

Initial Closing Date: The Closing Date on which the Initial Purchaser purchases and the Seller sells the first Mortgage Loan Package hereunder.

Initial Purchaser: Wells Fargo Funding, Inc., or any successor.

Insurance Proceeds: With respect to each Mortgage Loan, proceeds of insurance policies insuring the Mortgage Loan or the related Mortgaged Property.

Interim Servicing Period: With respect to any Mortgage Loan, the period commencing on the related Closing Date and ending on the Servicing Transfer Date unless otherwise specified in the related Confirmation; provided, however that the Interim Servicing Period may be extended for additional periods of thirty days by written notice by the Purchaser.

Liquidation Proceeds: Amounts, other than Insurance Proceeds and Condemnation Proceeds, received in connection with the liquidation of a defaulted Mortgage Loan through trustee's sale, foreclosure sale or otherwise, other than amounts received following the acquisition of REO Property.

Loan-to-Value Ratio or LTV: With respect to any Mortgage Loan as of any Determination Date, the ratio on such date of the outstanding principal amount of the Mortgage Loan, to the Appraised Value of the Mortgaged Property.

Manufactured Home: A manufactured home, including all accessions thereto, that is legally classified as real property under applicable state law.

Manufactured Home Loan: A Mortgage Loan secured by property upon which the primary dwelling is a Manufactured Home.

Maximum Mortgage Interest Rate: With respect to each Adjustable Rate Mortgage Loan, a rate that is set forth on the related Mortgage Loan Schedule and in the related Mortgage Note and is the maximum interest rate to which the Mortgage Interest Rate on such Mortgage Loan may be increased on any Adjustment Date.

MERS: Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto

MERS® System: The system of recording transfers of Mortgages electronically maintained by MERS.

MIN: The Mortgage Identification Number of Mortgage Loans registered with MERS on the MERS® System.

Minimum Mortgage Interest Rate: With respect to each Adjustable Rate Mortgage Loan, a rate that is set forth on the related Mortgage Loan Schedule and in the related Mortgage Note and is the minimum interest rate to which the Mortgage Interest Rate on such Mortgage Loan may be decreased on any Adjustment Date.

MOM Loan: Any Mortgage Loan where MERS acts as the mortgagee of record of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.

Monthly Accounting Cut-off Date: The last Business Day of each month.

Monthly Payment: With respect to any Mortgage Loan, the scheduled combined payment (including any Balloon Payment) of principal and interest payable by a Mortgagor under the related Mortgage Note on each Due Date.

Moody's: Moody's Investors Service, Inc. or its successor in interest.

Mortgage: The mortgage, deed of trust or other instrument creating a first or second lien on Mortgaged Property securing the Mortgage Note.

Mortgage File: The items pertaining to a particular Mortgage Loan referred to in Exhibit 7 annexed hereto, and any additional documents required to be added to the Mortgage File pursuant to this Agreement or the related Confirmation.

Mortgage Interest Rate: With respect to each Fixed Rate Mortgage Loan, the fixed annual rate of interest provided for in the related Mortgage Note and, with respect to each Adjustable Rate Mortgage Loan, the annual rate that interest accrues on such Adjustable Rate Mortgage Loan from time to time in accordance with the provisions of the related Mortgage Note.

Mortgage Loan: Each first or second lien, residential mortgage loan, sold, assigned and transferred to the Purchaser pursuant to this Agreement and the related Confirmation and identified on the Mortgage Loan Schedule annexed to this Agreement on such Closing Date, which Mortgage Loan includes without limitation the Mortgage File, the Monthly Payments, Prepayment Charges, Liquidation

Proceeds, Condemnation Proceeds, Insurance Proceeds, REO Disposition proceeds, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan.

Mortgage Loan Package: The Mortgage Loans listed on a Mortgage Loan Schedule, delivered to the Purchaser at least fifteen (15) Business Days prior to the related Closing Date and attached to this Agreement as Schedule I on the related Closing Date or such other date as agreed upon in the Confirmation.

Mortgage Loan Schedule: With respect to each Mortgage Loan Package, the schedule of Mortgage Loans to be annexed hereto as Schedule I (or a supplement thereto) on each Closing Date for the Mortgage Loan Package delivered on such Closing Date in both hard copy and electronically, such schedule setting forth the following information with respect to each Mortgage Loan in the Mortgage Loan Package: (1) the Seller's Mortgage Loan identifying number; (2) the Mortgagor's first and last name; (3) the street address of the Mortgaged Property including the state and zip code; (4) a code indicating whether the Mortgaged Property is owner-occupied; (5) the type of Residential Dwelling constituting the Mortgaged Property; (6) the original months to maturity; (7) the original date of the Mortgage Loan and the remaining months to maturity from the Cut-off Date, based on the original amortization schedule; (8) the Loan-to-Value or Combined Loan-to-Value Ratio at origination; (9) the Mortgage Interest Rate in effect immediately following the Cut-off Date; (10) the date on which the first Monthly Payment was due on the Mortgage Loan; (11) the stated maturity date; (12) the amount of the Monthly Payment at origination; (13) the amount of the Monthly Payment as of the Cut-off Date; (14) the last Due Date on which a Monthly Payment was actually applied to the unpaid principal balance; (15) the original principal amount of the Mortgage Loan and with respect to second liens the related first lien on the Mortgaged Property; (16) the Actual Principal Balance of the Mortgage Loan and with respect to second liens the principal balance of the related first lien on the Mortgaged Property as of the close of business on the Cut-off Date; (17) with respect to each Adjustable Rate Mortgage Loan, the first Adjustment Date; (18) with respect to each Adjustable Rate Mortgage Loan, the Gross Margin; (19) a code indicating the purpose of the loan (i.e., purchase financing, Rate/Term Refinancing, Cash-Out Refinancing); (20) with respect to each Adjustable Rate Mortgage Loan, the Maximum Mortgage Interest Rate under the terms of the Mortgage Note; (21) with respect to each Adjustable Rate Mortgage Loan, the Minimum Mortgage Interest Rate under the terms of the Mortgage Note; (22) the Mortgage Interest Rate at origination; (23) with respect to each Adjustable Rate Mortgage Loan, the Periodic Rate Cap; (24) with respect to each Adjustable Rate Mortgage Loan, the first Adjustment Date immediately following the Cut-off Date; (25) with respect to each Adjustable Rate Mortgage Loan, the Index; (26) the date on which the first Monthly Payment was due on the Mortgage Loan and, if such date is not consistent with the Due Date currently in effect, such Due Date; (27) a code indicating whether the Mortgage Loan is an Adjustable Rate Mortgage Loan or a Fixed Rate Mortgage Loan; (28) a code indicating whether the Mortgage Loan is a Balloon Mortgage Loan and, if so, the term of the Balloon Mortgage Loan and the amount of the Balloon Payment scheduled to be due at maturity assuming no Principal Prepayments; (29) a code indicating whether the Mortgage Loan is an interest-only Mortgage Loan, and, if so, the term of the interest-only period of such Mortgage Loan; (30) a code indicating whether the Mortgage Loan is a first lien or second lien; (31) a code indicating the documentation style (i.e., full (providing two years employment verification - 2 years W-2s and current paystub or 2 years 1040s for self employed borrowers), alternative or reduced); (32) a code indicating if the Mortgage Loan is subject to a Primary Insurance Policy; (33) the Appraised Value of the Mortgaged Property; (34) the sale price of the Mortgaged Property, if applicable; (35) a code indicating whether the Mortgage Loan is subject to a Prepayment Charge or penalty; (36) the amount and the term of any Prepayment Charge or penalty and (37) with respect to each MERS Mortgage Loan, the related MIN. With respect to the Mortgage Loan Package in the aggregate, the Mortgage Loan Schedule shall set forth the following information, as of the related Cut-off Date: (1) the number of Mortgage Loans; (2) the current principal balance of the Mortgage Loans; (3) the weighted average Mortgage Interest Rate of the Mortgage Loans; and (4) the

weighted average maturity of the Mortgage Loans. Schedule I hereto shall be supplemented as of each Closing Date to reflect the addition of the Mortgage Loan Schedule with respect to the related Mortgage Loan Package.

Mortgage Note: The original executed note or other evidence of the Mortgage Loan indebtedness of a Mortgagor endorsed to Wells Fargo Bank, N.A.

Mortgaged Property: The Mortgagor's real property securing repayment of a related Mortgage Note, consisting of a fee simple interest in a single parcel of real property improved by a Residential Dwelling.

Mortgagee: The mortgagee or beneficiary named in the Mortgage and the successors and assigns of such mortgagee or beneficiary.

Mortgagor: The obligor on a Mortgage Note, the owner of the Mortgaged Property and the grantor or mortgagor named in the related Mortgage and such grantor's or mortgagor's successors in title to the Mortgaged Property.

Non-Delivery Fee: Fee paid by Seller to Purchaser if the Seller does not fully deliver all the Mortgage Loans as described in the Confirmation.

Officer's Certificate: A certificate signed by the Chairman of the Board or the Vice Chairman of the Board or a President or a Vice President or a Chief Executive Officer or a Chief Financial Officer and by the Treasurer or the Secretary or one of the Assistant Treasurers or Assistant Secretaries of the Person on behalf of whom such certificate is being delivered.

Opinion of Counsel: A written opinion of counsel, who may be salaried counsel for the Person on behalf of whom the opinion is being given, reasonably acceptable to each Person to whom such opinion is addressed.

Periodic Rate Cap: With respect to each Adjustable Rate Mortgage Loan and any Adjustment Date therefore, a number of percentage points per annum that is set forth in the related Mortgage Loan Schedule and in the related Mortgage Note, which is the maximum amount by which the Mortgage Interest Rate for such Adjustable Rate Mortgage Loan may increase (without regard to the Maximum Mortgage Interest Rate) or decrease (without regard to the Minimum Mortgage Interest Rate) on such Adjustment Date from the Mortgage Interest Rate in effect immediately prior to such Adjustment Date.

Person: An individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Prepayment Charge: With respect to any Mortgage Loan, any prepayment penalty or premium thereon payable in connection with a Principal Prepayment on such Mortgage Loan pursuant to the terms of the related Mortgage Note.

Prepayment Charge Schedule: The schedule to be annexed hereto as Schedule II indicating whether a Mortgage Loan is subject to a Prepayment Charge and if so, the amount and term of such Prepayment Charge.

Primary Insurance Policy: A policy of primary mortgage guaranty insurance issued by a Qualified Insurer.

Principal Prepayment: Any payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date, including any Prepayment Charge, which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Proprietary Lease: The lease agreement between the Corporation and the Mortgagor entitling the Mortgagor to occupy the Cooperative Unit.

Purchase Price: The price paid on the related Closing Date by the Purchaser to the Seller pursuant to the related Confirmation in exchange for the Mortgage Loans purchased on such Closing Date as calculated as provided in Section 4.

Purchaser: Wells Fargo Funding, Inc. and any subsequent purchasers.

Qualified Correspondent: Any Person from which the Seller purchased Mortgage Loans, provided that the following conditions are satisfied: (i) such Mortgage Loans were originated pursuant to an agreement between the Seller and such Person that contemplated that such Person would underwrite mortgage loans from time to time, for sale to the Seller, in accordance with underwriting guidelines designated by the Seller ("Designated Guidelines") or guidelines that do not vary materially from such Designated Guidelines; (ii) such Mortgage Loans were in fact underwritten as described in clause (i) above and were acquired by the Seller within 180 days after origination; (iii) either (x) the Designated Guidelines were, at the time such Mortgage Loans were originated, used by the Seller in origination of mortgage loans of the same type as the Mortgage Loans for the Seller's own account or (y) the Designated Guidelines were, at the time such Mortgage Loans were underwritten, designated by the Seller on a consistent basis for use by lenders in originating mortgage loans to be purchased by the Seller; and (iv) the Seller employed, at the time such Mortgage Loans were acquired by the Seller, pre-purchase or post-purchase quality assurance procedures (which may involve, among other things, review of a sample of mortgage loans purchased during a particular time period or through particular channels) designed to ensure that Persons from which it purchased mortgage loans properly applied the underwriting criteria designated by the Seller.

Qualified Insurer: An insurance company duly qualified as such under the laws of the states in which the Mortgaged Property is located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided, and approved as an insurer by FNMA or FHLMC.

Rate/Term Refinancing: A Refinanced Mortgage Loan, the proceeds of which are not in excess by more than the lesser of $2,000 or 2% of the existing first mortgage loan on the related Mortgaged Property and related closing costs, and were used exclusively to satisfy the then existing first mortgage loan of the Mortgagor on the related Mortgaged Property and to pay related closing costs.

Recognition Agreement: The agreement signed by the Corporation, in a form acceptable to the Purchaser, in the Purchaser's sole discretion, in which, among other things, the Corporation recognizes the rights of the Seller, its successors and assigns in the Shares and the Proprietary Lease.

Reconstitution: Any Securitization Transaction or Whole Loan Transfer.

Reconstitution Agreement: The agreement or agreements entered into by the Seller and the Purchaser and/or certain third parties on the Reconstitution Date or Dates with respect to any or all of the Mortgage Loans serviced hereunder, in connection with a Whole Loan Transfer or a Securitization Transaction as provided in Section 12.

Reconstitution Date: The date or dates on which any or all of the Mortgage Loans serviced under this Agreement shall be removed from this Agreement and reconstituted as part of a Whole Loan Transfer or Securitization Transaction pursuant to Section 12 hereof.

Record Date: With respect to each Distribution Date, the last Business Day of the month immediately preceding the month in which such Distribution Date occurs.

Refinanced Mortgage Loan: A Mortgage Loan the proceeds of which were not used to purchase the related Mortgaged Property.

Regulation AB: Subpart 229.1100 – Asset Backed Securities (Regulation AB), 17 C.F.R. §§229.1100-229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

REMIC: A real estate mortgage investment conduit within the meaning of Section 860D of the Code.

REO Account: The separate trust account or accounts created and maintained pursuant to this Agreement which shall be entitled "[Seller], in trust for the Purchaser, as of [date of acquisition of title], Fixed and Adjustable Rate Mortgage Loans".

REO Disposition: The final sale by the Seller of any REO Property.

REO Property: A Mortgaged Property acquired as a result of the liquidation of a Mortgage Loan.

Repurchase Price: With respect to any Mortgage Loan, a price equal to (i) the unpaid Principal Balance of such Mortgage Loan as of the date of repurchase times the greater of (x) the percentage of par set forth in the Confirmation and (y) 100%, plus (ii) interest on such unpaid Principal Balance at the Mortgage Interest Rate from and including the last Due Date through which interest has been paid by or on behalf of the Mortgagor to the day prior to such date of repurchase, less amounts received in respect of such repurchased Mortgage Loan which are being held in the Custodial Account for distribution in connection with such Mortgage Loan, plus (iii) if applicable, any Service Release Premium (as specified in the related Confirmation) not included in the Purchase Price percentage, plus (iv) any unreimbursed Servicing Advances and monthly advances (including nonrecoverable monthly advances) and any unpaid servicing fees allocable to such Mortgage Loan paid by any party other than the Seller, plus (v) any reasonable costs and expenses incurred by the Purchaser, the servicer, master servicer or any trustee in respect of the breach or defect giving rise to the repurchase obligation including, without limitation, documentary stamp taxes, recording fees, transfer taxes, reasonable attorneys' fees and any costs and damages incurred by any such party in connection with any violation by any such Mortgage Loan of any predatory or abusive lending law.

Residential Dwelling: Any one of the following: (i) a detached one-family dwelling; (ii) a detached two- to four-family dwelling; (iii) a one-family dwelling unit in a FNMA eligible

condominium project; (iv) or a detached one-family dwelling in a planned unit development, none of which is a Manufactured Home.

Securities Act: The Securities Act of 1933, as amended.

Securitization Transaction: Any transaction subject to Regulation AB involving either (1) a sale or other transfer of some or all of the Mortgage Loans directly or indirectly to an issuing entity in connection with an issuance of publicly offered or privately placed, rated or unrated mortgage-backed securities or (2) an issuance of publicly offered or privately placed, rated or unrated securities, the payments on which are determined primarily by reference to one or more portfolios of residential mortgage loans consisting, in whole or in part, of some or all of the Mortgage Loans.

Servicer: As defined in Section 12(b)(8)(c).

Servicing Addendum: The terms and conditions attached hereto as Exhibit 11 which will govern the servicing of the Mortgage Loans by Seller during the Interim Servicing Period.

Servicing Advances: All customary, reasonable and necessary "out-of-pocket" costs and expenses incurred by the Seller in the performance of its servicing obligations, including, but not limited to, the cost of (i) preservation, restoration and repair of a Mortgaged Property, (ii) any enforcement or judicial proceedings with respect to a Mortgage Loan, including foreclosure actions and (iii) the management and liquidation of REO Property.

Servicing Criteria: The "servicing criteria" set forth in Item 1122(d) of Regulation AB, as such may be amended from time to time.

Servicing Fee: With respect to each Mortgage Loan, an amount equal to eight dollars ($8.00) per calendar month, payable monthly, in arrears. If the Interim Servicing Period includes any partial month, the Servicing Fee for such month shall be pro rated at a per diem rate based upon a 30-day month.

Servicing File: With respect to each Mortgage Loan, the file retained by the Seller consisting of originals of all documents in the Mortgage File which are not delivered to the Purchaser and copies of the Final Mortgage Loan Documents set forth in Exhibit 15 hereto.

Servicing Officer: Any officer of the Seller involved in or responsible for the administration and servicing of the Mortgage Loans whose name appears on a list of servicing officers furnished by the Seller to the Purchaser upon request, as such list may from time to time be amended.

Servicing Transfer Date: With respect to each Mortgage Loan, the date or dates set forth in the related Confirmation upon which the actual transfer of servicing responsibilities for any Mortgage Loan is transferred from the Seller to the Purchaser or its designee.

Shares: The shares of stock owned by the Mortgagor, or other evidence of ownership of the Corporation, acceptable to the Purchaser in the Purchaser's sole discretion.

S&P: Standard & Poor's, a division of The McGraw-Hill Companies, or its successor in interest.

Static Pool Information: Static pool information as described in Item 1105(a)(1)-(3) and 1105(c) of Regulation AB.

Sub-Servicing Agreement: An agreement between the Seller and any Subservicer.

Subcontractor: Any vendor, subcontractor or other Person that is not responsible for the overall servicing (as "servicing" is commonly understood by participants in the mortgage-backed securities market) of Mortgage Loans but performs one or more discrete functions identified in Item 1122(d) of Regulation AB with respect to Mortgage Loans under the direction or authority of the Seller or a Subservicer.

Subservicer: Any Person that services Mortgage Loans on behalf of the Seller or any Subservicer and is responsible for the performance (whether directly or through Subservicers or Subcontractors) of a substantial portion of the material servicing functions required to be performed by the Seller under this Agreement or any Reconstitution Agreement that are identified in Item 1122(d) of Regulation AB.

Tax Service Contract: A transferable contract maintained for the Mortgaged Property with a tax service provider acceptable to Purchaser in its sole discretion for the purpose of obtaining current information from local taxing authorities relating to such Mortgaged Property, over the life of the Mortgage Loan.

Third-Party Originator: Each Person, other than a Qualified Correspondent, that originated Mortgage Loans acquired by the Seller.

Transfer Date: Such date as set forth in the related Confirmation.

Underwriting Guidelines: As to each Mortgage Loan subject to this Agreement, the Seller's underwriting guidelines as set forth on Exhibit 5 hereto, with the conditions and/or limitations set forth in Exhibit 6 hereto. Any changes to the Underwriting Guidelines shall be identified and set forth as an exhibit to the related Confirmation.

Whole Loan Transfer: Any sale or transfer of some or all of the Mortgage Loans, other than a Securitization Transaction.

SECTION 2. Agreement to Purchase.

The Seller agrees to sell, and the Purchaser agrees to purchase, from time to time, Mortgage Loans having an aggregate Actual Principal Balance on the related Cut-off Date in an amount as set forth in the related Confirmation, or in such other amount as agreed by the Purchaser and the Seller as evidenced by the actual aggregate principal balance of the Mortgage Loans accepted by the Purchaser on the related Closing Date. Purchaser will confirm each subsequent agreement to purchase and sell Mortgage Loans by transmitting a Confirmation in response to Seller's request for bids, by fax or email. Seller must accept the Confirmation by returning a signed copy of the Confirmation by fax or electronic mail. If the Seller executes and accepts the Confirmation, the Confirmation shall be conclusive evidence of the terms under which the Seller has agreed to sell and Purchaser has agreed to buy the Mortgage Loans. The delivered Mortgage Loans must reflect the individual Mortgage Loan characteristics and collective pool parameters specified in the Confirmation.

SECTION 3. Mortgage Loan Schedules.

The Seller shall deliver the Mortgage Loan Schedule for a Mortgage Loan Package to be purchased on a particular Closing Date to the Purchaser at least five (5) Business Days prior to the related Closing Date.

SECTION 4. Purchase Price.

The Purchase Price for each Mortgage Loan listed on the related Mortgage Loan Schedule shall be the percentage of par as stated in the related Confirmation (subject to adjustment as provided therein), multiplied by its Actual Principal Balance as of the related Cut-off Date, less any Non-Delivery Fee. If so provided in the related Confirmation, portions of the Mortgage Loans shall be priced separately.

In addition to the Purchase Price as described above, the Initial Purchaser shall pay to the Seller, at closing, accrued interest on the Actual Principal Balance of each Mortgage Loan as of the related Cut-off Date at its Mortgage Interest Rate, net of the Servicing Fee from the related Cut-off Date through the day prior to the related Closing Date, both inclusive.

The Purchaser shall own and be entitled to receive with respect to each Mortgage Loan purchased, (1) all recoveries of principal collected after the Cut-off Date, (2) all payments of interest on the Mortgage Loans net of the Servicing Fee during the Interim Servicing Period and (3) all Prepayment Charges on the Mortgage Loans collected on or after the Cut-off Date.

SECTION 5. Examination of Mortgage Files; Underwriting Guidelines.

Subsection 5.01. Examination of Mortgage Files.

In addition to the rights granted to the Initial Purchaser under the related Confirmation to underwrite the Mortgage Loans and review the Mortgage Files prior to the Closing Date, prior to the related Closing Date, the Seller shall, at the Purchaser's option (a) deliver to the Purchaser or its designee in escrow, for examination with respect to each Mortgage Loan to be purchased on such Closing Date, the related Mortgage File, including the Assignment of Mortgage, pertaining to each Mortgage Loan, or (b) make the related Mortgage File available to the Initial Purchaser for examination at the Seller's offices or such other location as shall otherwise be agreed upon by the Initial Purchaser and the Seller. Such examination may be made by the Initial Purchaser or its designee at any reasonable time before or after the related Closing Date. If the Initial Purchaser makes such examination prior to the related Closing Date and identifies any Mortgage Loans that do not conform to the terms of the related Confirmation or the Underwriting Guidelines, such Mortgage Loans may, at the Initial Purchaser's option, be rejected for purchase by the Initial Purchaser. If not purchased by the Initial Purchaser, such Mortgage Loans shall be deleted from the related Mortgage Loan Schedule. The Initial Purchaser may, at its option and without notice to the Seller, purchase all or part of any Mortgage Loan Package without conducting any partial or complete examination. The fact that the Initial Purchaser has conducted or has determined not to conduct any partial or complete examination of the Mortgage Files shall not affect the Initial Purchaser's (or any of its successors') rights to demand repurchase or other relief or remedy provided for in this Agreement.

Subsection 5.02. Underwriting Guidelines.

The Mortgage Loans shall be underwritten to the Underwriting Guidelines. In accordance with this provision, the Initial Purchaser and Seller agree as follows:

(a) Seller agrees to provide the Initial Purchaser prior written notice of any amendment to the Seller's Underwriting Guidelines. Such amendment to the Underwriting Guidelines shall not become effective for any Mortgage Loans purchased by the Initial Purchaser until the Initial Purchaser has accepted such amendment, which acceptance may be evidenced by e-mail or fax or other written documentation;

(b) Seller understands that the Initial Purchaser may audit any or all Mortgage Loans for compliance with the Underwriting Guidelines. If the Initial Purchaser, in its sole discretion, determines at any time after the Closing Date that such Mortgage Loan is not in compliance with the Underwriting Guidelines, the Initial Purchaser may exercise its remedies hereunder which may include demand for repurchase of the Mortgage Loan; and

(c) Seller understands that the Initial Purchaser has agreed to purchase Mortgage Loans underwritten to the Underwriting Guidelines, attached as Exhibit 5 with the conditions and/or limitations set forth in Exhibit 6.

SECTION 6. Conveyance from Seller to Initial Purchaser.

Subsection 6.01. Conveyance of Mortgage Loans; Possession of Servicing Files.

The Seller, simultaneously with the receipt of the Purchase Price, shall execute and deliver to the Initial Purchaser an Assignment and Conveyance with respect to the related Mortgage Loan Package in the form attached hereto as Exhibit 4. The Servicing File retained by the Seller with respect to each Mortgage Loan pursuant to this Agreement shall be appropriately identified in connection with its duties as interim servicer in the Seller's computer system to reflect clearly the sale of such related Mortgage Loan to the Purchaser. The Seller shall release from its custody the contents of any Servicing File on the servicing transfer date in accordance with the Servicing Addendum attached hereto as Exhibit 11.

Subsection 6.02. Books and Records.

Record title to each Mortgage and the related Mortgage Note as of the related Closing Date shall be in the name of the Seller, the Purchaser or one or more designees of the Purchaser, as the Purchaser shall designate. Notwithstanding the foregoing, beneficial ownership of each Mortgage and the related Mortgage Note shall be vested solely in the Purchaser or the appropriate designee of the Purchaser, as the case may be. All rights arising out of the Mortgage Loans including, but not limited to, all funds received by the Seller after the related Cut-off Date on or in connection with a Mortgage Loan as provided in Section 4 shall be vested in the Purchaser or one or more designees of the Purchaser; provided, however, that all such funds received on or in connection with a Mortgage Loan as provided in Section 4 shall be received and held by the Seller in trust for the benefit of the Purchaser or the assignee of the Purchaser, as the case may be, as the owner of the Mortgage Loans pursuant to the terms of this Agreement.

It is the express intention of the parties that the transactions contemplated by this Agreement be, and be construed as, a sale of the Mortgage Loans by the Seller and not a pledge of the Mortgage Loans by the Seller to the Purchaser to secure a debt or other obligation of the Seller. Consequently, the sale of each Mortgage Loan shall be reflected as a sale on the Seller's business records, tax returns and financial statements.

Subsection 6.03. Delivery of Final Mortgage Loan Documents.

The Seller shall from time to time in connection with each Closing Date, at least five (5) Business Days prior to such Closing Date, deliver and release to the Purchaser those Final Mortgage Loan Documents as set forth on Exhibit 13 hereto with respect to each Mortgage Loan to be purchased and sold on the related Closing Date, or such other documents as shall be required consistent with agreed upon procedures between the Seller and the Purchaser as modified from time to time. All Final Mortgage Loan Documents and all documents required to be contained in the Mortgage File must be reviewed by the

Seller for accuracy and delivered to the Purchaser within 270 days of the related Closing Date. Any such documents not received within 360 days from the date of purchase by the Purchaser, on a monthly basis, will be billed to the Seller according to the current market price for procurement as established by the Purchaser. If the Seller fails to provide the Final Mortgage Loan Documents or any documents required to be contained in the Mortgage File within 360 days of the related Closing Date, or if the applicable documentation fails to be obtainable through reasonable means, the Mortgage Loan shall be repurchased by the Seller in accordance with Subsection 7.03 hereof, or Purchaser may bill the Seller, on a monthly basis, the current market price for procurement of any missing document. In addition, if the Purchaser determines, at any time after the related Closing Date, that there are any deficiencies with the documents that have been delivered, the Purchaser will notify the Seller, and Seller must correct any document deficiencies to the Purchaser's satisfaction within thirty (30) calendar days after the date of such notice. If the Seller fails to resolve any document deficiency within the thirty (30) calendar day period, the Purchaser may either request that the Seller immediately repurchase the Mortgage Loan in accordance with Subsection 7.03 hereof or Purchaser may bill the Seller for the market cost of procurement.

The Seller shall provide to the Purchaser a notice containing a list of authorized servicing officers (each, an "Authorized Representative") for the purpose of giving and receiving notices, requests and instructions and delivering certificates and documents in connection with this Agreement. Such notice shall contain the specimen signature for each Authorized Representative. From time to time, the Seller may, by delivering to the others a revised notice, change the information previously given pursuant to this Section, but each of the parties hereto shall be entitled to rely conclusively on the then current notice until receipt of a superseding notice. The current notice is attached as Exhibit 12.

The Seller shall forward to the Purchaser original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into in accordance with this Agreement within two weeks of their execution, provided, however, that the Seller shall provide the Purchaser with a certified true copy of any such document submitted for recordation within two weeks of its execution, and shall provide the original of any document submitted for recordation or a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original within ninety days of its submission for recordation.

In the event the public recording office is delayed in returning any original document required to be contained in the Mortgage File, the Seller shall deliver to the Purchaser within 120 days of its submission for recordation, a copy of such document and an Officer's Certificate, which shall (i) identify the recorded document; (ii) state that the recorded document has not been delivered to the Purchaser due solely to a delay by the public recording office, and (iii) specify the date the applicable recorded document will be delivered to the Purchaser. The Seller will be required to deliver the document to the Purchaser by the date specified in (iii) above. An extension of the date specified in (iii) above may be requested from the Purchaser, which consent shall not be unreasonably withheld.

SECTION 7. Representations, Warranties and Covenants of the Seller; Remedies for Breach.

Subsection 7.01. Representations and Warranties Respecting the Seller.

(a) The Seller represents, warrants and covenants to the Purchaser as of the initial Closing Date and each subsequent Closing Date or as of such date specifically provided herein or in the applicable Assignment and Conveyance:

(1) The Seller is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States and under the laws of the state in which the Seller is

incorporated, organized and/or conducting business. The Seller has and shall continue to maintain all licenses, registrations and certifications necessary to carry on its business as the Seller is now conducting it and to be licensed, qualified, and in good standing in each state where a Mortgaged Property is located if the laws of any such state so require. The Seller will remain in good standing with state and federal authorities to the extent necessary to ensure the enforceability of all Mortgage Loans.

The Seller has disclosed to the Purchaser any material deficiencies, actions or sanctions that Seller has received notice of with respect to any federal or state agency or instrumentality reviews, investigations, examinations, audits, actions and sanctions undertaken or imposed within two (2) years prior to the initial Closing Date. Except as the Seller may have disclosed to the Purchaser and the Purchaser may have approved in writing, the Seller is not operating under any type of agreement or order (including, without limitation, a supervisory agreement, memorandum of understanding, cease and desist order, capital directive, supervisory directive, and consent decree) with or by the Office of Thrift Supervision, Federal Deposit Insurance Corporation, Federal Reserve Board, Office of the Comptroller of the Currency, or any state banking department or other government banking agency, which would materially affect Seller's ability to meet its obligations under the Agreement, and the Seller is in compliance with any and all capital, leverage or other financial standards imposed by any applicable regulatory authority;

(2) The Seller has and will maintain full corporate and partnership power and authority, as applicable, to execute and deliver this Agreement and perform in accordance with its terms, and the Seller has taken all requisite corporate or partnership action to make the Agreement valid, binding and enforceable upon the Seller in accordance with its terms, subject as to enforcement or remedies, to bankruptcy, insolvency, reorganization, receivership or other laws affecting creditors' rights generally from time to time in effect and general equity principles. The Seller is duly and validly authorized to execute and deliver all documents, instruments and agreements the Seller is required to execute and deliver under the terms of the Agreement and to consummate the transactions contemplated by the Agreement. The Agreement evidences the Seller's legal, valid, binding and enforceable obligations;

(3) The Seller's execution and delivery of the Agreement, acquisition, making and sale of the Mortgage Loans, consummation of Agreement contemplated transactions, fulfillment of and compliance with the terms and conditions of the Agreement will not conflict with or result in a breach of any terms, conditions, or provisions of the Seller's articles of incorporation, charter, by-laws, partnership agreement, or other organizational document, or of any legal restriction or regulatory directive or any agreement or instrument to which the Seller is now a party or by which it is bound; nor will such actions by the Seller constitute a default or result in an acceleration under any of the foregoing, result in the violation of any law, rule, regulation, order, judgment, or decree to which the Seller or any of its property is subject, impair the ability of the Purchaser to realize on a Mortgage Loan or impair its value;

(4) The Seller is an approved seller/servicer for FNMA or FHLMC in good standing and is a HUD approved mortgagee pursuant to Section 203 of the National Housing Act. No event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with FNMA, FHLMC or HUD eligibility requirements or which would require notification to FNMA, FHLMC or HUD;

(5) The Seller has the ability to perform each and every obligation contained in, and to satisfy each and every requirement imposed on the Seller in this Agreement and no offset, counterclaim, or defense exists to the Seller's full performance of this Agreement's requirements;

(6) The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered with respect to each Mortgage Loan pursuant to this Agreement, have

been delivered to the Purchaser or its designee as provided in the transfer instructions contained in the Escrow Delay Interim Servicing and Transfer Procedures attached as Exhibit 10, all in compliance with the specific requirements of this Agreement. With respect to each Mortgage Loan, the Seller is in possession of a complete Mortgage File in compliance with Exhibit 7;

(7) Immediately prior to the payment of the Purchase Price for each Mortgage Loan, the Seller was the owner of record of the related Mortgage and the indebtedness evidenced by the related Mortgage Note and upon the payment of the Purchase Price by the Purchaser, in the event that the Seller retains record title, the Seller shall retain such record title to each Mortgage, each related Mortgage Note and the related Mortgage Files with respect thereto in trust for the Purchaser as the owner thereof and only for the purpose of servicing and supervising the servicing of each Mortgage Loan;

(8) There is no action, suit, proceeding, inquiry, review, audit or investigation pending or, to the best of Seller's knowledge, threatened by or against the Seller ("Adverse Action") that, either in any one instance or in the aggregate, could result in any material adverse change in the Seller's business, operations, financial condition, properties or assets or in any material liability on the Seller's part which would draw into question the validity or enforceability of this Agreement, any Mortgage Loan, or any of the Seller's actions taken, or to be taken in connection therewith; or which would be likely to impair materially Seller's ability to perform under this Agreement's terms. Seller shall advise the Purchaser immediately, in writing, of any pending or threatened Adverse Action, or any pending or threatened action to revoke or limit any license, permit, authorization or approval issued or granted to the Seller by any federal, state or local government or quasi–governmental body, or any agency or instrumentality thereof, which is necessary for the Seller to conduct its business, or to impose any penalty or other disciplinary sanction on the Seller, or any other sanction that would materially affect the Seller's business;

(9) The Seller's execution and performance of, and compliance with, this Agreement; sale of any of the Mortgage Loans; and consummation of any transactions contemplated herein do not require the consent, approval, authority, or order of any court or governmental agency or body, or if required, the Seller has obtained such unconditional approval prior to the related Closing Date;

(10) Consummation of the transactions contemplated by this Agreement are in the ordinary course of the Seller's business, and the Seller's transfer, assignment, and conveyance of the Mortgage Notes and the Mortgages pursuant to this Agreement are not subject to the bulk transfer laws or any similar statutory provisions in effect in any applicable jurisdiction;

(11) The transfer of the Mortgage Loans shall be treated as a sale on the books and records of the Seller, and the Seller has determined that, and will treat, the disposition of the Mortgage Loans pursuant to this Agreement for tax and accounting purposes as a sale. The Seller shall maintain a complete set of books and records for each Mortgage Loan which shall be clearly marked to reflect the ownership of each Mortgage Loan by the Purchaser;

(12) The consideration received by the Seller upon the sale of the Mortgage Loans constitutes fair consideration and reasonably equivalent value for such Mortgage Loans;

(13) The Seller is solvent and will not be rendered insolvent by the consummation of the transactions contemplated hereby. The Seller is not transferring any Mortgage Loan with any intent to hinder, delay or defraud any of its creditors;

(14) The information delivered by the Seller to the Purchaser with respect to the Seller's loan loss, foreclosure and delinquency experience for the twelve (12) months immediately

preceding the Initial Closing Date on mortgage loans underwritten to the same standards as the Mortgage Loans and covering mortgaged properties similar to the Mortgaged Properties, is true and correct in all material respects;

(15) The promises, agreements, representations and warranties contained in this Agreement and all other statements, reports, and documents the Seller furnished or will furnish pursuant to this Agreement contain no untrue statement of material fact nor do they fail to contain a material fact necessary to make the statements contained therein not misleading;

(16) The Seller is a member of MERS in good standing, will comply in all material respects with the rules and procedures of MERS in connection with the servicing of the Mortgage Loans that are registered with MERS and is current in payment of all fees and assessments imposed by MERS;

(17) Except as the Seller has disclosed to the Purchaser and the Purchaser has acknowledged in writing prior to the initial Closing Date, there are no accrued liabilities of the Seller with respect to any of the Mortgage Loans, or circumstances under which the Purchaser will be liable for any such accrued liabilities as the Seller's successor in interest in and to the Mortgage Loans;

(18) The Seller has complied with, and shall continue to comply with, and has not violated and shall not violate, any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the Seller's operations or financial conditions or the Seller's ability to consummate the transactions contemplated by this Agreement; and

(19) The Seller will comply with all provisions of this Agreement, and will promptly notify the Purchaser of any occurrence, act, or omission regarding the Seller, the Mortgage Loan, the Mortgaged Property or the Mortgagor, which occurrence, act, or omission may materially affect the Seller, the Mortgage Loan, the Mortgaged Property or the Mortgage.

(20) The Seller has delivered to the Purchaser financial statements of the Seller, for its last two complete fiscal years. All such financial information fairly presents the pertinent results of operations and financial position for the period identified and has been prepared in accordance with GAAP consistently applied throughout the periods involved, except as set forth in the notes thereto. There has been no change in the servicing policies and procedures, business, operations, financial condition, properties or assets of the Seller since the date of the Seller's financial information that would have a material adverse effect on its ability to perform its obligations under this Agreement;

(21) The Seller shall be deemed to represent to the Purchaser and to any Depositor, as of the date on which information is first provided to the Purchaser or any Depositor under Section 12(b)(8) that, except as disclosed in writing to the Purchaser or such Depositor prior to such date: (i) the Seller is not aware and has not received notice that any default, early amortization or other performance triggering event has occurred as to any other securitization due to any act or failure to act of the Seller; (ii) the Seller has not been terminated as servicer in a residential mortgage loan securitization, either due to a servicing default or to application of a servicing performance test or trigger; (iii) no material noncompliance with the applicable servicing criteria with respect to other securitizations of residential mortgage loans involving the Seller as servicer has been disclosed or reported by the Seller; (iv) no material changes to the Seller's policies or procedures with respect to the servicing function it will perform under this Agreement and any Reconstitution Agreement for mortgage loans of a type similar to the Mortgage Loans have occurred during the three-year period immediately preceding the related Securitization Transaction; (v) there are no aspects of the Seller's financial condition that could have a material adverse effect on the performance by the Seller of its servicing obligations under this Agreement or any Reconstitution Agreement; (vi) there are no material legal or governmental proceedings pending

Case 4:07-bk-01578-EWH Doc 1224-1 Filed 02/04/08 Entered 02/04/08 10:12:53 Desc Exhibit A - Part 1 Page 23 of 41

(or known to be contemplated) against the Seller, any Subservicer or any Third-Party Originator; and (vii) there are no affiliations, relationships or transactions relating to the Seller, any Subservicer or any Third-Party Originator with respect to any Securitization Transaction and any party thereto identified by the related Depositor of a type described in Item 1119 of Regulation AB.

(b) If so requested by the Purchaser or any Depositor on any date following the date on which information is first provided to the Purchaser or any Depositor under Section 12(b)(8), the Seller shall, within five Business Days following such request, confirm in writing the accuracy of the representations and warranties set forth in paragraph (a)(21) of this Section or, if any such representation and warranty is not accurate as of the date of such request, provide reasonably adequate disclosure of the pertinent facts, in writing, to the requesting party.

Subsection 7.02. Representations and Warranties Regarding Individual Mortgage Loans.

The Seller hereby represents and warrants to the Purchaser that, as to each Mortgage Loan, as of the related Closing Date for such Mortgage Loan:

(1) The information set forth in the related Mortgage Loan Schedule is complete, true and correct. No document, report, data or material furnished to the Purchaser relating to any Mortgage Loan (including, without limitation, the Mortgagor's loan application executed by the Mortgagor) in any Mortgage File, whether delivered in hard copy, electronically or otherwise, contains any untrue statement of fact or omits to state a fact necessary to make the statements contained in the Mortgage File not misleading;

(2) The Mortgage Loan is in compliance with all requirements set forth in the related Confirmation, and the characteristics of the related Mortgage Loan Package as set forth in the related Confirmation are true and correct, provided, however, that in the event of any conflict between the terms of any Confirmation and this Agreement, the terms of this Agreement shall control;

(3) All payments required to be made up to the close of business on the Closing Date for such Mortgage Loan under the terms of the Mortgage Note have been made. No payment has been delinquent at any time since the origination of the Mortgage Loan. For purposes of this paragraph, a Mortgage Loan will be deemed to be delinquent if the Mortgagor did not pay any payment due within 30 days of such payment's Due Date or the month such payment was due. The Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds from a party other than the owner of the related Mortgaged Property, directly or indirectly, for the payment of any amount required by the Mortgage Note or Mortgage; and there has been no delinquency, exclusive of any period of grace, in any payment by the Mortgagor thereunder since the origination of the Mortgage Loan;

(4) The Mortgagor has not defaulted under the Mortgage Loan terms, and the Mortgagor or Seller has paid any and all taxes, including, without limitation, any and all transfer taxes due and payable to any state or municipality relating to the Mortgaged Property's transfer of ownership and occupancy interest. The Mortgagor has paid all governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments and ground rents and other charges that previously became due and owing or will become due and owing within sixty (60) days of the Closing Date, or the Mortgagor has established an escrow account sufficient to pay such charges. To the best of the Seller's knowledge, no Mortgagor is a debtor in any state or federal bankruptcy or insolvency proceeding;

(5) The terms of the Mortgage Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments, recorded in the applicable public recording office if necessary to maintain the lien priority of the Mortgage; the substance of any such waiver, alteration or modification has been approved by the insurer under the Primary Insurance Policy, if any, and the title insurer, to the extent required by the related policy, and is reflected on the related Mortgage Loan Schedule. No instrument of waiver, alteration or modification has been executed, and no Mortgagor has been released, in whole or in part, except in connection with an assumption agreement approved by the insurer under the Primary Insurance Policy, if any, and the title insurer, to the extent required by the policy, and the terms of which are reflected in the related Mortgage Loan Schedule;

(6) The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of the Mortgage Note and the Mortgage, or the exercise of any right thereunder, render the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto. The information set forth in the Prepayment Charge Schedule is complete, true and correct in all material respects and each Prepayment Charge is permissible, enforceable and collectable under applicable federal, state and local law;

(7) Except as set forth on the related Mortgage Loan Schedule, none of the Mortgage Loans are subject to a Prepayment Charge. For any Mortgage Loan originated prior to October 1, 2002 that is subject to a Prepayment Charge, such Prepayment Charge does not extend beyond five years after the date of origination. For any Mortgage Loan originated on or following October 1, 2002 that is subject to a Prepayment Charge, such Prepayment Charge does not extend beyond three years after the date of origination. With respect to any Mortgage Loan that contains a provision permitting imposition of a premium upon a prepayment prior to maturity: (i) prior to the Mortgage Loan's origination, the Mortgagor agreed to such premium in exchange for a monetary benefit, including but not limited to a rate or fee reduction; (ii) prior to the Mortgage Loan's origination, the Mortgagor was offered the option of obtaining a Mortgage Loan that did not require payment of such a premium; (iii) the prepayment premium is disclosed to the Mortgagor in the loan documents pursuant to applicable state and federal law; and (iv) the Prepayment Charge term shall expire no later than the initial Adjustment Date;

(8) All buildings upon the Mortgaged Property are insured by an insurer acceptable to FNMA or FHLMC against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the Mortgaged Property is located, in an amount not less than the greatest of (i) 100% of the replacement cost of all improvements to the Mortgaged Property, (ii) either (A) the outstanding principal balance of the Mortgage Loan with respect to each first lien Mortgage Loan or (B) with respect to each second lien Mortgage Loan, the sum of the outstanding principal balance of the related first lien mortgage loan and the outstanding principal balance of the second lien Mortgage Loan, (iii) the amount necessary to avoid the operation of any co-insurance provisions with respect to the Mortgaged Property, or (iv) the amount necessary to fully compensate for any damage or loss to the improvements that are a part of such property on a replacement cost basis. All such insurance policies contain a standard mortgagee clause naming the Seller, its successors and assigns as mortgagee and all premiums thereon have been paid. If the Mortgaged Property is in an area identified on a Flood Hazard Map or Flood Insurance Rate Map issued by the Federal Emergency Management Agency ("FEMA") as having special flood hazards (and such flood insurance has been made available) a flood insurance policy meeting the greater of the requirements of the current guidelines of the Federal Insurance Administration is in effect or the requirements of FNMA or FHLMC. No Mortgaged Property is located in a special flood hazard area where flood insurance issued by FEMA is unavailable. The Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and on the

Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain such insurance at Mortgagor's cost and expense and to seek reimbursement therefore from the Mortgagor;

(9) The Mortgage Loan is covered by an American Land Title Association ("ALTA") lender's title insurance policy (which, in the case of an Adjustable Rate Mortgage Loan has an adjustable rate mortgage endorsement in the form of ALTA 6.0 or 6.1 with an ALTA 7.0 endorsement) acceptable to FNMA or FHLMC, issued by a title insurer acceptable to FNMA or FHLMC and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns as to the first or second (as indicated on the related Mortgage Loan Schedule) priority lien of the Mortgage in the original principal amount of the Mortgage Loan and, with respect to any Adjustable Rate Mortgage Loan, against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment in the Mortgage Interest Rate and Monthly Payment provisions of the Mortgage Note. Additionally, such lender's title insurance policy affirmatively insures ingress and egress to and from the Mortgaged Property, and against encroachments by or upon the Mortgaged Property or any interest therein. The Seller is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy;

(10) The Mortgage Loan was underwritten, originated and processed in accordance with the Underwriting Guidelines in effect at the time the Mortgage Loan was originated; and the Mortgage Note and Mortgage are on forms acceptable to FNMA or FHLMC; For policies and guidelines not addressed within the Underwriting Guidelines (Exhibit 5), standard FNMA or FHLMC guidelines in effect as of the date of the Trade Ticket, as applicable per the loan type, will apply. In the event that a specific policy or guideline is not specifically addressed within either the Underwriting Guidelines or the FNMA/FHLMC guidelines, Purchaser reserves the right to either decline the loan for purchase or exercise its rights to require repurchase.

(11) The Mortgage File contains an appraisal of the related Mortgaged Property which satisfied the standards of FNMA or FHLMC, was on appraisal form 1004 or form 2055 with an interior inspection and was made and signed, prior to the approval of the Mortgage Loan application, by a qualified appraiser, duly appointed by the Seller, who met the minimum qualifications of FNMA or FHLMC. Each appraisal of the Mortgage Loan was made in accordance with the relevant provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. Each appraisal is made by an appraiser who meets all of the following requirements:

(a) Is either a licensed or certified residential appraiser or a certified general appraiser, by the state, as required for the particular appraisal;

(b) Is in good standing with the applicable state appraisal licensing agency;

(c) Is independent of the Purchaser, the Seller, the Third Party Originator and the Seller's affiliates and subsidiaries, and is not involved in the Mortgage Loan transaction in any way except as the appraiser;

(d) Does not have any present or prospective direct or indirect interest, financial or otherwise, in the property that is the subject of the appraisal report;

(e) Has no personal bias or interest with respect to any of the parties involved in the transaction relating to the appraisal, including but not limited to the Seller or the Seller's directors, officers, employees or agents;

(f) Made a personal inspection of the property that is the subject of the appraisal report;

(g) Was not assigned the appraisal based on any required or expected minimum or specific valuation of the appraised property, and whose compensation was not based upon reporting a predetermined value of the appraised property or any other information contingent upon some event which, at the time of the appraisal, had not occurred;

(h) Was not assigned the appraisal by the same person responsible for the sole approval authority for granting the loan request; and

(i) Demonstrates sufficient experience and education in the appraisal of properties similar to the subject property;

(12) No Mortgage Loan had an LTV or CLTV at origination in excess of 100%. Each Mortgage Loan with an LTV at origination in excess of 80% is and will be subject to a Primary Insurance Policy, issued by a Qualified Insurer, which insures that portion of the Mortgage Loan in excess of the portion of the Appraised Value of the Mortgaged Property as required by FNMA. All provisions of such Primary Insurance Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. Any Mortgage subject to any such Primary Insurance Policy obligates the Mortgagor thereunder to maintain such insurance and to pay all premiums and charges in connection therewith. The Mortgage Interest Rate for the Mortgage Loan does not include any such insurance premium. The Seller has not engaged in any act or omission, and the Seller has no knowledge of any act or omission by or on the Mortgagor's behalf or any other person's or entity's behalf, which act or omission would impair any such Primary Insurance Policy's coverage or validity, the benefit of the endorsement provided for in, or the validity or binding effect of either;

(13) Any principal advances made to the Mortgagor prior to the Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first or second (as specified in the Mortgage Loan Schedule) lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to FNMA or FHLMC. The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan;

(14) If the Residential Dwelling on the Mortgaged Property is a condominium unit or a unit in a planned unit development (other than a de minimis planned unit development) such condominium or planned unit development project meets the eligibility requirements of FNMA or FHLMC;

(15) No Mortgage Loan is secured by a Manufactured Home or mobile home, regardless of whether such Manufactured Home or mobile home has been converted to real property, is permanently affixed to real property, or has had its title certificate cancelled or surrendered.

(16) The originating, closing and, prior to the Purchaser becoming responsible for the Mortgage Loan servicing, the servicing of the Mortgage Loan was in compliance with, and to the extent that it is within the Seller's control will continue to be in compliance with:

(a) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders, and contractual requirements with respect to the origination, closing, underwriting, processing, and servicing of each Mortgage Loan;

(b) any and all other applicable federal, state, county, municipal, or other local laws, including, without limitation, those laws relating to truth-in-lending, real estate settlement procedures, predatory and abusive lending, consumer credit protection, usury limitations, fair housing, disclosure, equal credit opportunity, collection practices, and real estate appraisals; and

(c) all applicable anti-money laundering laws and regulations, including but not limited to the Bank Secrecy Act and its subsequent revisions and enhancements, the Customer Identification Program requirements of the USA Patriot Act, Office of Foreign Assets Control requirements (collectively the "Anti-Money Laundering Laws"), and has established an anti-money laundering compliance program as required by the applicable Anti-Money Laundering Laws, and maintains, and will maintain, sufficient information to identify the applicable Mortgagor for purposes of the Anti-Money Laundering Laws;

(17) The Seller is the sole owner and holder of the Mortgage Loan. Except for the security interest of a warehouse lender, which security interest the Seller has disclosed in writing to the Purchaser, the Mortgage Loan is not assigned or pledged. The Seller has good and marketable title to the Mortgage Loan, and has full right to transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim, security interest, right, option, assignment, or servicing agreement with any third party whatsoever, and the Seller has full right and authority (subject to no interest or participation of, or agreement with, any other party) to sell and assign each Mortgage Loan pursuant to this Agreement;

(18) The Mortgage has not been satisfied, cancelled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such satisfaction, cancellation, subordination, rescission or release. There is no assumption, loss draft or payoff pending on the Mortgage Loan nor has the Seller received a request for approval of, or notice of any proposed assumption, loss draft or payoff of the Mortgage Loan;

(19) The Mortgage is a valid, existing and enforceable first or second (as indicated on the Mortgage Loan Schedule) lien on the Mortgaged Property, including all improvements on the Mortgaged Property subject only to (a) the lien of current real property taxes and assessments not yet due and payable, (b) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording being acceptable to mortgage lending institutions generally and specifically referred to in the lender's title insurance policy delivered to the originator of the Mortgage Loan and which do not adversely affect the Appraised Value of the Mortgaged Property, (c) to the extent the Mortgage Loan is a second lien Mortgage Loan, the related first lien on the Mortgaged Property; and (d) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property. Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid,

existing and enforceable first or second (as indicated on the Mortgage Loan Schedule) lien and first or second (as indicated on the Mortgage Loan Schedule) priority security interest on the property described therein and the Seller has full right to sell and assign the same to the Purchaser.

(20) There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under law could give rise to such lien) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;

(21) There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and the Seller has not waived any default, breach, violation or event of acceleration. With respect to each second lien Mortgage Loan, (i) the first lien mortgage loan is in full force and effect, (ii) there is no default, breach, violation or event of acceleration existing under such first lien mortgage or the related mortgage note, (iii) no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration thereunder, (iv) either (A) the first lien mortgage contains a provision which allows or (B) applicable law requires, the mortgagee under the second lien Mortgage Loan to receive notice of, and affords such mortgagee an opportunity to cure, any default by payment in full or otherwise under the first lien mortgage, (v) the related first lien does not provide for or permit negative amortization under such first lien Mortgage Loan, and (vi) either no consent for the Mortgage Loan is required by the holder of the first lien or such consent has been obtained and is contained in the Mortgage File.

(22) The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage on the Mortgaged Property and the security interest of any applicable security agreement or chattel mortgage referred to in (19) above, the existence of which the Seller previously disclosed to the Purchaser and the Purchaser approved in writing;

(23) With respect to each MOM Loan, Seller has not received any notice of liens or legal actions with respect to such Mortgage Loan and no such notices have been electronically posted by MERS;

(24) With respect to the right of a homeowners association, special district, or similar organization to assert a lien for assessments, maintenance fees or similar charges against the Mortgaged Property which is, or appears to be, equal to or prior to the Mortgage Loan, the homeowners association, special district or similar organization has agreed to give at least 60 days written notice before foreclosing on the lien and the Seller will forward such notice to the holder of the Mortgage Loan at least 45 days before foreclosure, and any such liens are indicated in the Mortgage Loan Schedule;

(25) The Mortgage Note and the related Mortgage are genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms. With respect to each Mortgage Note where a lost note affidavit has been delivered in place of the original Mortgage Note, the related Mortgage Note is no longer in existence;

(26) All parties to the Mortgage Note and the Mortgage had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage, and the Mortgage Note and the Mortgage have been duly and properly executed by such parties. The Mortgagor is a natural person;

(27) The proceeds of the Mortgage Loan have been fully disbursed to or for the account of the Mortgagor and there is no obligation for the Mortgagee to advance additional funds thereunder and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefore have been complied with. All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage have been paid, and the Mortgagor is not entitled to any refund of any amounts paid or due to the Mortgagee pursuant to the Mortgage Note or Mortgage;

(28) To the best of Seller's knowledge, upon due inquiry, all parties which have had any interest in the Mortgage Loan, whether as Third Party Originator, mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) in compliance with any and all applicable "doing business" and licensing requirements of the laws of the state wherein the Mortgaged Property is located;

(29) Principal payments on the Mortgage Loan commenced no more than sixty days after the proceeds of the Mortgage Loan were disbursed. The Mortgage Loan bears interest at the Mortgage Interest Rate. With respect to each Mortgage Loan, the Mortgage Note is payable on the first day of each month in Monthly Payments, which, in the case of a Fixed Rate Mortgage Loans, are sufficient to fully amortize the original principal balance over the original term thereof (other than with respect to a Mortgage Loan identified on the related Mortgage Loan Schedule as an interest-only Mortgage Loan during the interest-only period or a Mortgage Loan which is identified on the related Mortgage Loan Schedule as a Balloon Mortgage Loan) and to pay interest at the related Mortgage Interest Rate, and, in the case of an Adjustable Rate Mortgage Loan, are changed on each Adjustment Date, and in any case, are sufficient to fully amortize the original principal balance over the original term thereof (other than with respect to a Mortgage Loan identified on the related Mortgage Loan Schedule as an interest-only Mortgage Loan during the interest-only period or a Mortgage Loan which is identified on the related Mortgage Loan Schedule as a Balloon Mortgage Loan) and to pay interest at the related Mortgage Interest Rate. No Mortgage Loan provides for negative amortization. With respect to each Mortgage Loan identified on the Mortgage Loan Schedule as an interest-only Mortgage Loan, the interest-only period shall not exceed ten (10) years (or such other lesser period specified on the Mortgage Loan Schedule) and following the expiration of such interest-only period, the remaining Monthly Payments shall be sufficient to fully amortize the original principal balance over the remaining term of the Mortgage Loan. With respect to each Balloon Mortgage Loan, the Mortgage Note requires a monthly payment which is sufficient to fully amortize the original principal balance over the original term thereof and to pay interest at the related Mortgage Interest Rate and requires a final Monthly Payment substantially greater than the preceding monthly payment which is sufficient to repay the remained unpaid principal balance of the Balloon Mortgage Loan as the Due Date of such monthly payment. The Index for each Adjustable Rate Mortgage Loan is as defined in the related Confirmation. No Mortgage Loan is a Convertible Mortgage Loan;

(30) The origination, servicing and collection practices used with respect to each Mortgage Note and Mortgage including, without limitation, the establishment, maintenance and servicing of the Escrow Accounts and Escrow Payments, if any, since origination, have been in all respects legal, proper, prudent and customary in the mortgage origination and servicing industry and in accordance with Accepted Servicing Practices, conforming with all principles of responsible lending. The Mortgage Loan has been serviced by the Seller and any predecessor servicer in accordance with the terms of the Mortgage Note. With respect to escrow deposits and Escrow Payments, if any, all such payments are in the possession of, or under the control of, the Seller and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits or Escrow Payments or other charges or payments due the Seller have been capitalized under any

Mortgage or the related Mortgage Note and no such escrow deposits or Escrow Payments are being held by the Seller for any work on a Mortgaged Property which has not been completed;

(31) The Mortgage and related Mortgage Note contain customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (a) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (b) otherwise by judicial foreclosure. The Mortgaged Property has not been subject to any bankruptcy proceeding or foreclosure proceeding and the Mortgagor has not filed for protection under applicable bankruptcy laws. There is no homestead or other exemption available to the Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage. The Mortgagor has not notified the Seller and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the Service Members Civil Relief Act;

(32) In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor or reconveyance of the deed of trust;

(33) No Mortgage Loan contains provisions pursuant to which Monthly Payments are (a) paid or partially paid with funds deposited in any separate account established by the Seller, the Mortgagor, or anyone on behalf of the Mortgagor, (b) paid by any source other than the Mortgagor or (c) contains any other similar provisions which may constitute a "buydown" provision. The Mortgage Loan is not a graduated payment mortgage loan and the Mortgage Loan does not have a shared appreciation or other contingent interest feature;

(34) The Mortgagor has executed a statement to the effect that the Mortgagor has received all disclosure materials required by applicable law with respect to the making of fixed rate mortgage loans in the case of Fixed Rate Mortgage Loans, and adjustable rate mortgage loans in the case of Adjustable Rate Mortgage Loans and rescission materials with respect to Refinanced Mortgage Loans, and such statement is and will remain in the Mortgage File, or the Mortgage File contains documented evidence that the Mortgage has received all such disclosure materials;

(35) There is no circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor, or the Mortgagor's credit standing, that can reasonably be expected to cause investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent or adversely affect the Mortgage Loan's value or marketability;

(36) Neither the Mortgagor nor any other person or entity involved in the Mortgage Loan transaction or in its underwriting or documentation (including without limitation, any appraiser, broker, Third Party Originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with such transaction whether or not the Seller was a party to or had knowledge of such misrepresentation or incorrect information. No error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to a Mortgage Loan has taken place on the part of any person, including without limitation the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in the application of any insurance in relation to such Mortgage Loan;

(37) No other party has any option or right of first refusal or other arrangement to acquire directly or indirectly any of the Mortgage Loans offered to the Purchaser for purchase;

(38) The Assignment of Mortgage is in recordable form assigning the Mortgage to Wells Fargo Bank, N.A., or to MERS and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located and the Seller has provided a second assignment from Wells Fargo Bank, N.A., the assignee of which is blank for any Mortgage Loan which is not assigned to MERS;

(39) The source of the down payment with respect to each Mortgage Loan has been fully verified by the Seller;

(40) Interest on each Mortgage Loan is calculated on the basis of a 360-day year consisting of twelve 30-day months;

(41) If a Mortgage Loan was made in connection with (a) the construction or rehabilitation of a Mortgaged Property or (b) facilitating the trade-in or exchange of a Mortgaged Property, the property is complete and a certificate of occupancy has been issued; and the trade or exchange was completed in compliance with all applicable law and the Mortgagor is in title to the Mortgaged Property;

(42) The Mortgaged Property is in material compliance with all applicable environmental laws pertaining to environmental hazards including, without limitation, asbestos and mold, and neither the Seller nor, to the Seller's knowledge, the related Mortgagor, has received any notice of any violation or potential violation of such law. To the best of the Seller's knowledge, except as the Seller has specifically disclosed to the Purchaser and the Purchaser has approved in writing, the Mortgaged Property is not exposed to environmental hazards (such as toxic or hazardous waste) which are not covered by fire and extended coverage insurance or other available insurance;

(43) The Mortgaged Property is lawfully occupied under applicable law; all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy, have been made or obtained from the appropriate authorities;

(44) All improvements which were considered in determining the Appraised Value of the related Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property. No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation. All Mortgaged Property improvements, including new construction, have been completed in full compliance with any applicable laws, regulations or building codes and standards, and the improvements comply with the laws, regulations, or building codes and standards as of the Closing Date;

(45) The Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado, hurricane or other casualty so as to affect adversely the Mortgaged Property's value as security for the Mortgage Loan or the use for which the premises were intended. The Mortgaged Property is in good repair. There are no condemnation proceedings by any federal, state, or local authority pending or, to the best of the Seller's knowledge, threatened against the Mortgaged Property;

(46) The Seller shall be required to reimburse the Purchaser for all costs and expenses incurred by the Purchaser in connection with the purchase of any such Tax Contract required by Purchaser, not to exceed $75 per Mortgage Loan;

(47) Each Mortgage Loan is covered by a Flood Zone Service Contract provided by Wells Fargo Flood Services or First American or a provider acceptable to Purchaser, which is assignable to the Purchaser or its designee and is acceptable to Purchaser in its sole discretion;

(48) The Seller used no adverse selection process or procedures in selecting the Mortgage Loans to be sold to the Purchaser;

(49) The Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the mortgagee thereunder;

(50) The Mortgage Loan was not prepaid in full prior to the Closing Date and the Seller has not received notification from a Mortgagor that a prepayment in full shall be made after the Closing Date;

(51) The Mortgaged Property is located in the state identified in the Mortgage Loan Schedule and, unless otherwise provided for in the Underwriting Guidelines, consists of a single parcel of real property with a single family residence erected thereon, or a two-to-four family dwelling, or an individual unit in a planned unit development, condominium project, or cooperative. No portion of the Mortgaged Property is used for commercial purposes in such a manner that knowledgeable and sophisticated investors active in the residential secondary mortgage market would consider the Mortgaged Property commercial, rather than residential property. No Mortgage Loan is secured by commercial property or mixed use property;

(52) No Mortgagor was encouraged or required to select a Mortgage Loan product offered by the Mortgage Loan's originator which is a higher cost product designed for less creditworthy borrowers, unless at the time of the Mortgage Loan's origination, such Mortgagor did not qualify taking into account credit history and debt to income ratios for a lower cost credit product then offered by the Mortgage Loan's originator or any affiliate of the Mortgage Loan's originator. If, at the time of loan application, the Mortgagor may have qualified for a lower cost credit product then offered by any mortgage lending affiliate of the Mortgage Loan's originator, the Mortgage Loan's originator referred the Mortgagor's application to such affiliate for underwriting consideration;

(53) The Mortgage Loan was originated by the Seller or by a savings and loan association, a savings bank, a commercial bank or similar banking institution which is supervised and examined by a federal or state authority, or by a mortgagee approved as such by the Secretary of HUD;

(54) The methodology used in underwriting the extension of credit for each Mortgage Loan employs objective mathematical principles which relate the Mortgagor's income, assets and liabilities to the proposed payment and such underwriting methodology does not rely on the extent of the Mortgagor's equity in the collateral as the principal determining factor in approving such credit extension. Such underwriting methodology confirmed that at the time of origination (application/approval) the Mortgagor had a reasonable ability to make timely payments on the Mortgage Loan;

(55) All points and fees related to each Mortgage Loan were disclosed in writing to the related Mortgagor in accordance with applicable state and federal laws and regulations. All fees and

charges (including finance charges) and whether or not financed, assessed, collected or to be collected in connection with the origination and servicing of each such Mortgage Loan were disclosed in writing to the related Mortgagor in accordance with applicable state and federal laws and regulations;

(56) No predatory, abusive or deceptive lending practices, including but not limited to, the extension of credit to a mortgagor without regard for the mortgagor's ability to repay the Mortgage Loan and the extension of credit to a mortgagor which has no apparent benefit to the mortgagor, were employed in connection with the origination of the Mortgage Loan;

(57) No Mortgagor was required to purchase any credit insurance product (e.g., life, mortgage, disability, accident, unemployment or health insurance product) or debt cancellation agreement as a condition of obtaining the extension of credit. No Mortgagor obtained a prepaid single premium credit life, mortgage, disability, accident, unemployment or health insurance product in connection with the origination of the Mortgage Loan. No proceeds from any Mortgage Loan were used to purchase single premium credit insurance policies as part of the origination of, or as a condition to closing, such Mortgage Loan;

(58) The Mortgagor has not made or caused to be made any payment in the nature of an "average" or "yield spread premium" to a mortgage broker or Third Party Originator or a like Person which has not been fully disclosed to the Mortgagor;

(59) The sale or transfer of the Mortgage Loan by the Seller complies with all applicable federal, state, and local laws, rules, and regulations governing such sale or transfer, including, without limitation, the Fair and Accurate Credit Transactions Act ("FACT Act") and the Fair Credit Reporting Act, each as may be amended from time to time, and the Seller has not received any actual or constructive notice of any identity theft, fraud, or other misrepresentation in connection with such Mortgage Loan or any party thereto;

(60) Seller agrees to use best efforts to ensure that each loan offered to a borrower is consistent with his or her needs, objectives and financial situation. Each Mortgage Loan, the proceeds of which have been used to refinance a previous mortgage loan, offers a documented, demonstrable, tangible net economic benefit to the borrower. Appropriate assessment and documentation has been performed of the borrowers' ability to repay each Mortgage Loan in accordance with its terms. Timely, sufficient and accurate information has been provided to borrowers concerning each Mortgage Loan's terms, costs, risks and benefits. Total loan compensation for each Mortgage Loan, including compensation to third party originators, has been structured to avoid providing any incentive to originate a loan with predatory or abusive characteristics;

(61) Seller and its Third Party Originators have not engaged in any of the following practices with respect to Mortgage Loans purchased or to be purchased by the Purchaser:

(a) Encouraging a borrower to default on an existing loan in connection with the refinance of all or part of the existing loan;

(b) Financing single premium credit life, disability or unemployment insurance products with the proceeds of the Mortgage Loan;

(c) Refinancing of a Special Subsidized Mortgage. A "Special Subsidized Mortgage" means a residential mortgage loan that is originated or subsidized by or through a state, local, or tribal government or nonprofit organization and that in some circumstances:

(i) does not have to be completely repaid; or

(ii) requires only partial payments be made.

Examples include, but are not limited to, a mortgage granted by organizations such as Habitat for Humanity or a local housing authority.

(d) Executing documents to evidence or secure the Mortgage Loan which contain an arbitration clause;

(e) Payment to a home improvement contractor from the proceeds of the Mortgage Loan other than by a check made payable either to the consumer, or jointly to the consumer and the home improvement contractor, or through an independent third party escrow agent;

(f) Payment of Mortgage Loan payments in advance from the loan proceeds; and

(g) Contracting for an increase in the interest rate upon default of the Mortgage Loan at a level not commensurate with risk mitigation;

(62) No Mortgagor agreed to submit to arbitration to resolve any dispute arising out of or relating in any way to the Mortgage Loan transaction;

(63) No Mortgage Loan is (a) subject to the provisions of the Homeownership and Equity Protection Act of 1994 as amended ("HOEPA"), (b) a "high cost" mortgage loan, "covered" mortgage loan, "high risk home" mortgage loan or "predatory" mortgage loan (or a similarly designated loan using different terminology), no matter how defined under any federal, state or local law, (c) subject to any comparable federal, state or local statutes or regulations, or any other statute or regulation providing for heightened regulatory scrutiny or assignee liability to holders of such mortgage loans, or (d) a High Cost Loan or Covered Loan, as applicable (as such terms are defined in the current Standard & Poor's LEVELS® Glossary Revised, Appendix E). All Mortgage Loans have passed a High Cost mortgage test, whether or not they are covered by high cost mortgage regulation, HOEPA, or any state or local high cost, covered or predatory lending law or ordinance. This includes owner-occupied refinances, non-owner occupied refinances and purchase money transactions Interest rates and other pricing terms reasonably reflect the costs and risks of originating the Mortgage Loan. All Mortgage Loans comport to Seller's established policies with respect to maximum points and charges, overages, yield spread premiums or other compensation vehicles, and established limits on total broker and lender compensation;

(64) No Mortgage Loan is a "High Cost Home Loan" as defined in the Georgia Fair Lending Act, as amended (the "Georgia Act"). Each Mortgage Loan that is a "Home Loan" under the Georgia Act complies with all applicable provisions of the Georgia Act. No Mortgage Loan secured by owner occupied real property or an owner occupied manufactured home located in the State of Georgia was originated (or modified) on or after October 1, 2002 through and including March 6, 2003;

(65) No Mortgage Loan is a "manufactured housing loan" or "home improvement home loan" pursuant to the New Jersey Home Ownership Act. No Mortgage Loan is a "High-Cost Home Loan" or a refinanced "Covered Home Loan," in each case, as defined in the New Jersey Home Ownership Act effective November 27, 2003 (N.J.S.A. 46;10B-22 et seq.);

(66) No Mortgage Loan secured by a Mortgaged Property located in the Commonwealth of Massachusetts was made to pay off or refinance an existing loan or other debt of the related borrower (as the term "borrower" is defined in the regulations promulgated by the Massachusetts Secretary of State in connection with Massachusetts House Bill 4880 (2004)) unless either (1) (a) the related Mortgage Interest Rate (that would be effective once the introductory rate expires, with respect to Adjustable Rate Mortgage Loans) did or would not exceed by more than 2.25% the yield on United States Treasury securities having comparable periods of maturity to the maturity of the related Mortgage Loan as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit was received by the related lender or (b) the Mortgage Loan is an "open-end home loan" (as such term is used in the Massachusetts House Bill 4880 (2004)) and the related Mortgage Note provides that the related Mortgage Interest Rate may not exceed at any time the Prime rate index as published in The Wall Street Journal plus a margin of one percent, or (2) such Mortgage Loan is in the "borrower's interest," as documented by a "borrower's interest worksheet" for the particular Mortgage Loan, which worksheet incorporates the factors set forth in Massachusetts House Bill 4880 (2004) and the regulations promulgated thereunder for determining "borrower's interest," and otherwise complies in all material respects with the laws of the Commonwealth of Massachusetts;

(67) With respect to each MOM Loan, a MIN has been assigned by MERS and such MIN is accurately provided on the Mortgage Loan Schedule. The related Assignment of Mortgage to MERS has been duly and properly recorded, or has been delivered for recording to the applicable recording office;

(68) The Seller makes the following additional representations and warranties when the Seller delivers a Cooperative Share Loan to the Purchaser:

(a) All Cooperative Share Loan documents conform with all state and federal laws applicable to the Seller and to Cooperative Share Loans.

(b) The Seller has caused to be filed the appropriate number of properly executed UCC-1 financing statements in the appropriate local and/or state office. The execution of the loan security agreement and the filing of such UCC-1 financing statement(s) created and perfected in favor of the Seller or the Seller's third party originator, a valid, subsisting, and enforceable first priority security interest in and to the Shares and the Proprietary Lease, securing payment and performance of the Mortgagor's obligations thereunder and under the Cooperative Share Loan. The Seller has caused to be filed the appropriate number of properly executed UCC-3 financing statements necessary to transfer such security interest to the Purchaser, and any and all additional filings, and assignments, endorsements, and other action necessary or desirable to perfect, protect, and validly assign to the Purchaser such first priority security interest have been duly made, filed, taken and/or obtained (as the case may be). The lien of the loan security agreement is subject only to the lien of the Corporation for unpaid assessments representing the Mortgagor's pro rata share of the Corporation's payments for its Blanket Mortgage, if any, current real property taxes, insurance premiums, maintenance assessments and other assessments acceptable to the Purchaser. Except as set forth above, no other financing statement or other instrument similar in effect covering all or any part of the Cooperative Documents is on file in any local or state office.

(c) The Seller has no knowledge of any circumstance or condition with respect to the Cooperative Documents, the Corporation, or the Cooperative Project, that can reasonably be expected to cause private institutional investors to regard the

Cooperative Share Loan as an unacceptable investment, cause the Cooperative Share Loan to become delinquent, or adversely affect the value or marketability of the Cooperative Share Loan.

(d) The Corporation has been created and exists in full compliance with the requirements for residential cooperatives in the jurisdiction where the Cooperative Project is located.

(e) The Corporation has good and marketable title to the Cooperative Project and owns the Cooperative Project in fee simple, and such title is free and clear of any adverse lien or encumbrance, except for the lien of the Blanket Mortgage.

(f) The Cooperative Share Loan does not violate the terms of the Blanket Mortgage.

(g) A Recognition Agreement exists; the Corporation has the right to enter into the Recognition Agreement; the terms of the Recognition Agreement are valid and binding upon the Corporation; all of the representations and warranties made by the Corporation in the Recognition Agreement are true, accurate, and complete in all material respects; and the Seller makes each representation therein to the Purchaser as if the Seller were the Corporation.

(h) The Mortgagor has the right to encumber his or her ownership in the Corporation and occupancy rights to the Cooperative Unit, and the Mortgagor's right to occupy the Cooperative Unit pursuant to the Proprietary Lease extends through the term of the Mortgage, either by its stated term or through renewals.

(i) The Corporation owns the amenities and facilities relating to the Cooperative Project and the sponsor has not retained an ownership interest in those amenities. If the amenities and facilities are subject to a lease between the Corporation and another party, the terms of such lease are not adverse to the interests of the Corporation.

(j) With respect to each Cooperative Share Loan, the Cooperative Documents, including, without limitation, the Recognition Agreement, the Proprietary Lease, or the assignment of Proprietary Lease, provide that:

(i) In accordance with the Recognition Agreement, the Corporation will not consider to be effective any attempt by the Mortgagor to terminate the Proprietary Lease absent the Seller's prior written consent;

(ii) The Corporation is required to notify the Seller of: (i) any delinquency or other default by the Mortgagor, or (ii) further encumbrances, subletting, termination, cancellation, surrender or modification of the Mortgagor's membership in the Corporation or the Proprietary Lease;

(iii) If any default by the Mortgagor under the Proprietary Lease (a "Lease Default") can be cured by the payment of money, the Corporation will also notify the Seller promptly of any default involving an amount equal to or exceeding three (3) months maintenance payments and will take no action to

terminate the Proprietary Lease or cancel the Shares if the Lease Default is cured either by the Seller for the account of the Mortgagor or by the Mortgagor within fifteen (15) days after such notice of Lease Default or intention to terminate;

(iv) If the Lease Default cannot be cured, the Corporation will institute no action to terminate the Proprietary Lease or cancel the Shares until the Seller has had reasonable notice and opportunity, by action or otherwise, to induce the Mortgagor to cure the Lease Default, such opportunity to be no less than the time provided in the Proprietary Lease for the Mortgagor to cure;

(v) If the Corporation shall terminate the Proprietary Lease and cancel the Shares for a Lease Default not curable by the payment of money, then, provided the Seller pays the Corporation the amounts which are due to the Corporation under the Proprietary Lease (including its deficiency clause) when due, the Corporation shall not sell or sublet the Cooperative Unit without the Seller's approval, unless the net proceeds of such sale or subletting shall equal or exceed the amount owing to the Seller by the Mortgagor; and

(vi) The Corporation will accept payment from the Seller on behalf of the Mortgagor of any sums due under the Proprietary Lease (including its deficiency clause), any payments made by the Seller under the terms of the Cooperative Documents will be deemed so paid and no such payments shall be deemed to limit the Seller's rights against the Mortgagor pursuant to law.

(k) A qualified attorney has reviewed the Cooperative Project's legal documents and has rendered an opinion that they comply with state and local laws.

Subsection 7.03. <u>Remedies for Breach of Representations and Warranties</u>.

It is understood and agreed that the representations and warranties set forth in Subsections 7.01 and 7.02 shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or lack of examination of any Mortgage File. Upon discovery by the Seller of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser (or which materially and adversely affects the interests of the Purchaser in the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), the Seller shall give prompt written notice to the Purchaser.

Within 60 days of the earlier of either discovery by or notice to the Seller of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans, the Seller shall use its best efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, the Seller shall, at the Purchaser's option, repurchase such Mortgage Loan at the Repurchase Price. In the event that a breach shall involve any representation or warranty set forth in Subsection 7.01 and such breach cannot be cured within 60 days of the earlier of either discovery by or notice to the Seller of such breach, all of the Mortgage Loans shall, at the Purchaser's option, be repurchased by the Seller at the Repurchase Price.

If a document required to be delivered by the Seller with respect to any Mortgage Loan is not delivered as required or if the Seller fails to resolve any document deficiency within thirty (30) calendar days of notice, the Seller must, upon the Purchaser's written demand, immediately repurchase

the Mortgage Loan at the Repurchase Price. The Purchaser reserves the right to deduct from the Purchase Price of any mortgage loan that the Purchaser subsequently purchases from the Seller whether or not sold under the terms of this Agreement or any amendments thereto, any and all amounts owed to the Purchaser by the Seller in connection with this repurchase obligation.

At the time of repurchase of any deficient Mortgage Loan, the Purchaser and the Seller shall arrange for the reassignment of the repurchased Mortgage Loan to the Seller. Upon such repurchase the related Mortgage Loan Schedule shall be amended to reflect the withdrawal of the repurchased Mortgage Loan from this Agreement. Any failure on the Seller's part to repurchase any Mortgage Loan in accordance with this Subsection 7.03 shall constitute an Event of Default.

In addition to such cure and repurchase obligation, the Seller shall indemnify the Purchaser and hold it harmless against, and shall pay on behalf of the Purchaser in the first instance, any and all claims, losses, liabilities, demands, damages, penalties, fines, forfeitures, reasonable and necessary legal fees (both trial and appellate) and related costs, judgments and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Seller's representations and warranties contained in this Section 7. It is understood and agreed that the obligations of the Seller set forth in this Subsection 7.03 to cure or repurchase a defective Mortgage Loan and to indemnify the Purchaser as provided in this Subsection 7.03 constitute the sole remedies of the Purchaser respecting a breach of the foregoing representations and warranties.

Any cause of action against the Seller relating to or arising out of the breach of any representations and warranties made in Subsections 7.01 or 7.02 shall accrue as to any Mortgage Loan upon (i) discovery of such breach by the Purchaser or notice thereof by the Seller to the Purchaser, (ii) failure by the Seller to cure such breach or repurchase such Mortgage Loan as specified above, and (iii) demand upon the Seller by the Purchaser for compliance with the relevant provisions of this Agreement.

The Purchaser shall be under no obligation to notify the Seller of the occurrence of any breach of the Seller's representations, warranties or covenants hereunder. All of the Purchaser's remedies hereunder, including, without limitation, any obligation of the Seller to repurchase a Mortgage Loan and the indemnification with respect to any breach of a representation, warranty or covenant (or any other Event of Default), shall exist regardless of the dates of the Purchaser's discovery and notice to the Seller of the breach and the Purchaser's demand for any remedy. The Seller shall remain liable for all remedies hereunder even if the Purchaser discovers a breach after the Mortgage Loan no longer exists.

In addition to the foregoing, within 90 days of the earlier of discovery by the Seller or receipt of notice by the Seller of a breach of any representation of the Seller which materially and adversely affects the interests of any Prepayment Charge, the Seller shall pay the amount of the scheduled Prepayment Charge to the Purchaser.

Subsection 7.04. Repurchase or Indemnification of Certain Mortgage Loans.

In the event that (i) the first Due Date for a Mortgage Loan is subsequent to the Cut-off Date and the initial Monthly Payment is not made within thirty 30 days of such Due Date, or (ii) any of the first four (4) payments due to Purchaser or its assigns following the Cut-off Date becomes ninety (90) days or more delinquent; then, in each such case, at the Purchaser's option, the Seller shall either: repurchase the affected Mortgage Loans at the Repurchase Price, which shall be paid as provided for in Subsection 7.03; or pay Purchaser an early default indemnification amount equal to the amount of any servicing released premium plus any above par premium paid, plus a nonrefundable fee of $1500; such early default indemnification amount to be paid to Purchaser within 30 days of request

If the principal balance due on a Mortgage Loan is paid in full within 90 days following the Closing Date, then in each such case, the Seller shall indemnify the Purchaser in the amount of any servicing released premium plus any above par premium paid; such early payoff indemnification amount to be paid to Purchaser within 30 days of request.

SECTION 8. Closing.

The closing for each Mortgage Loan Package shall take place on the related Closing Date. At the Purchaser's option, the closing shall be either: by telephone, confirmed by email, letter or wire as the parties shall agree, or conducted in person, at such place as the parties shall agree.

The closing for the Mortgage Loans to be purchased on each Closing Date shall be subject to each of the following conditions:

(1) all of the representations and warranties of the Seller under this Agreement shall be true and correct as of the related Closing Date and no event shall have occurred which, with notice or the passage of time, would constitute a default under this Agreement;

(2) the Initial Purchaser shall have received, or the Initial Purchaser's attorneys shall have received in escrow, all Closing Documents as specified in Section 9, in such forms as are agreed upon and acceptable to the Purchaser, duly executed by all signatories other than the Purchaser as required pursuant to the terms hereof; and

(3) all other terms and conditions of this Agreement shall have been complied with.

Subject to the foregoing conditions, the Initial Purchaser shall pay to the Seller on the related Closing Date the Purchase Price, plus accrued interest pursuant to Section 4, by wire transfer of immediately available funds to the account designated by the Seller.

SECTION 9. Closing Documents.

(1) On or before the Initial Closing Date, the Seller shall submit to the Initial Purchaser fully executed originals of the following documents:

(a) this Agreement, in four counterparts;

(b) an Officer's Certificate, in the form of Exhibit 1 hereto, including all attachments thereto;

(c) an Opinion of Counsel to the Seller, in the form of Exhibit 2 hereto; and

(d) an Incumbency Certificate, in the form of Attachment IV to the Officer's Certificate attached as Exhibit 1 hereto.

(2) The Closing Documents for the Mortgage Loans to be purchased on each Closing Date shall consist of fully executed originals of the following documents:

(a) the related Confirmation;

(b) the related Mortgage Loan Schedule;

(c) an Officer's Certificate, in the form of Exhibit 1 hereto, including all attachments thereto;

(d) if requested by the Initial Purchaser, an Opinion of Counsel to the Seller, in the form of Exhibit 2 hereto;

(e) a Security Release Certification, in the form of Exhibit 3 hereto executed by any Person, as requested by the Initial Purchaser, if any of the Mortgage Loans has at any time been subject to any security interest, pledge or hypothecation for the benefit of such Person;

(f) a certificate or other evidence of merger or change of name, signed or stamped by the applicable regulatory authority, if any of the Mortgage Loans were acquired by the Seller by merger or acquired or originated by the Seller while conducting business under a name other than its present name, if applicable, in recordable form; and

(g) Assignments and Conveyances in the form of Exhibit 4 hereto.

(3) Seller will take the following actions:

(a) Update or will cause to update MERS system with assignment recording information; and

(b) Take all necessary actions to transfer ownership of the Mortgage Loans on the MERS system.

(4) In the event there has been a change to the Incumbency Certificate, prior to the Closing Date, the Seller shall provide to the Purchaser a revised executed Incumbency Certificate attached in the form of Attachment IV to Exhibit 1.

(5) The Seller and the Purchaser hereto agree that each document required to be executed under this Agreement including, without limitation, the Assignment and Conveyance required to be delivered on the Closing Date may be executed by the Seller and the Purchaser Electronically. The Seller and the Purchaser hereby agree that any such electronic executions shall be conclusive evidence of such party's intent to execute such document, shall be binding on such party and that the other party hereto (in addition to each other third party thereto, if any) is relying on the enforceability of such execution.

SECTION 10. Costs.

The Purchaser shall pay any commissions due its salesmen, the legal fees and expenses of its attorneys. The Seller shall pay the legal fees and expenses of its attorneys and all other costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, including without limitation recording fees for all assignments to Wells Fargo Bank, N.A., fees for title policy endorsements and continuations and shipment of files to any servicer designated by the Purchaser, costs of note endorsements to the Seller. The Seller is responsible for payment of all fees and assessments imposed by MERS, and any transfer fees.