SECTION 11. Seller's Servicing Obligations.

The Seller, as servicer, shall service and administer the Mortgage Loans during the Interim Servicing Period, directly or through one or more Subservicers (which must be approved in advance by the Purchaser), in accordance with the terms and provisions set forth in the Servicing Transfer Addendum set for in Exhibit 10 and the Servicing Addendum attached as Exhibit 11, which Servicing Transfer Addendum and Servicing Addendum are incorporated herein by reference. In addition, with respect to any Mortgage Loan that is not subject to an assignable life of loan Tax Service Contract or Flood Services Contract acceptable to Purchaser as of the related Closing Date, the Seller shall pay the cost incurred by the Purchaser or its designee to obtain such a contract.

SECTION 12. Removal of Mortgage Loans from Inclusion under This Agreement Upon a Whole Loan Transfer or a Securitization Transaction on One or More Reconstitution Dates.

(a) The Seller and the Purchaser agree that with respect to some or all of the Mortgage Loans, the Purchaser may effect either:

(1) one or more Whole Loan Transfers; and/or

(2) one or more Securitization Transaction.

(b) With respect to each Whole Loan Transfer or Securitization Transaction, as the case may be, entered into by the Purchaser, the Seller agrees:

(1) to cooperate fully with the Purchaser and any prospective purchaser with respect to all reasonable requests and due diligence procedures including participating in meetings with rating agencies, bond insurers and such other parties as the Purchaser shall designate and participating in meetings with prospective purchasers of the Mortgage Loans or interests therein and providing information reasonably requested by such purchasers;

(2) upon Purchaser's intended inclusion of a material amount of Seller's loans, as determined in Purchaser's good faith judgment, in a Securitization Transaction or a Whole Loan Transfer, to execute all Reconstitution Agreements, including, without limitation, an Assignment and Recognition Agreement in the form attached hereto as Exhibit 8 and an Indemnification Agreement in the form attached hereto as Exhibit 9, provided that each of the Seller and the Purchaser is given an opportunity to review and reasonably negotiate in good faith the content of such other documents not specifically referenced or provided for herein;

(3) with respect to any Whole Loan Transfer or Securitization Transaction, the Seller shall make the representations and warranties regarding the Seller and the Mortgage Loans set forth herein and such additional commercially reasonable representations and warranties as are reasonably necessary in Purchaser's good faith judgment to effect such Whole Loan Transfer or Securitization Transaction as of the date of the Whole Loan Transfer or Securitization Transaction, modified to the extent necessary to accurately reflect the pool statistics of the Mortgage Loans as of the date of such Whole Loan Transfer or Securitization Transaction and any events or circumstances existing subsequent to the related Closing Date(s);

-37-

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 1 of 35

(4) to deliver to the Purchaser for inclusion in any prospectus or other offering material such publicly available information regarding the Seller's underwriting standards, the Seller, its financial condition and its mortgage loan delinquency, foreclosure and loss experience and any reasonably necessary additional information requested by the Purchaser including, without limitation, information on the Mortgage Loans, and to deliver to the Purchaser any similar non public, unaudited financial information, in which case the Purchaser shall bear the cost of having such information audited by certified public accountants if the Purchaser desires such an audit, or as is otherwise reasonably requested by the Purchaser and which the Seller is capable of providing without unreasonable effort or expense, and to indemnify the Purchaser and its affiliates for material misstatements or omissions or any alleged misstatements or omissions contained in such information;

(5) to deliver to the Purchaser and to any Person designated by the Purchaser, at the Purchaser's expense, such statements and audit letters of reputable, certified public accountants pertaining to information provided by the Seller pursuant to clause 4 above as shall be reasonably requested by the Purchaser;

(6) to deliver to the Purchaser, and to any Person designated by the Purchaser, such legal documents and in-house Opinions of Counsel as are customarily delivered by originators or servicers, as the case may be, and reasonably determined by the Purchaser to be necessary in connection with Whole Loan Transfers or Securitization Transactions, as the case may be, such in-house Opinions of Counsel for a Securitization Transaction to be in the form reasonably acceptable to the Purchaser, it being understood that the cost of any opinions of outside special counsel that may be required for a Whole Loan Transfer or Securitization Transaction, as the case may be, shall be the responsibility of the Purchaser;

(7) in the event that the Mortgage Loans become subject to a Securitization Transaction prior to the termination of the Interim Servicing Period, the Seller agrees to service the Mortgage Loans on an actual/actual basis; and

(8) in connection with any Securitization Transaction the Seller shall (i) within ten Business Days following the reasonable request by the Purchaser or any Depositor, provide to the Purchaser and such Depositor (or, as applicable, cause each Third-Party Originator and each Subservicer to provide), in writing and in form and substance required for compliance with Regulation AB as determined in Purchaser's good faith judgment, the information and materials specified in paragraphs (a), (b), (c) and (f) of this Section 12(b)(8), and (ii) as promptly as practicable following notice to or discovery by the Seller, provide to the Purchaser and any Depositor (in writing and in form and substance required by Regulation AB as determined in Purchaser's good faith judgment) the information specified in paragraph (d) of this Section

(a) If so requested by the Purchaser or any Depositor, the Seller shall provide such information regarding (i) the Seller, as originator of the Mortgage Loans (including as an acquirer of Mortgage Loans from a Qualified Correspondent), or (ii) each Third-Party Originator, and (iii) as applicable, each Subservicer, as is requested for the purpose of compliance with Items 1103(a)(1),

WFF Conduit Master 04-01-06

Case 4:07-bk-01578-EWH Doc 1224-2 Filed 02/04/08 Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2 Page 2 of 35

1105 (subject to paragraph (b) below), 1110, 1117 and 1119 of Regulation AB
Such information shall include, at a minimum:

      (A)    the originator's form of organization;

      (B)    to the extent material in Purchaser's good faith judgment, a description of the originator's origination program and how long the originator has been engaged in originating residential mortgage loans, which description shall include a discussion of the originator's experience in originating mortgage loans of a similar type as the Mortgage Loans; if material in Purchaser's good faith judgment, information regarding the size and composition of the originator's origination portfolio; and information that may be material, in the good faith judgment of the Purchaser or any Depositor, to an analysis of the performance of the Mortgage Loans, including the originators' credit-granting or underwriting criteria for mortgage loans of similar type(s) as the Mortgage Loans and such other information as the Purchaser or any Depositor may reasonably request for the purpose of compliance with Item 1110(b)(2) of Regulation AB;

      (C)    a description of any material legal or governmental proceedings pending (or known to be contemplated) against the Seller, each Third-Party Originator and each Subservicer; and

      (D)    a description of any affiliation or relationship between the Seller, each Third-Party Originator, each Subservicer and any of the following parties to a Securitization Transaction, as such parties are identified to the Seller by the Purchaser or any Depositor in writing within ten days in advance of such Securitization Transaction:

      (1)    the sponsor;
      (2)    the depositor;
      (3)    the issuing entity;
      (4)    any servicer;
      (5)    any trustee;
      (6)    any originator;
      (7)    any significant obligor;
      (8)    any enhancement or support provider; and
      (9)    any other material transaction party

      (b)    If so requested by the Purchaser or any Depositor, and required by Regulation AB in Purchaser's good faith judgment, the Seller shall provide (or, as applicable, cause each Third-Party Originator to provide) to the extent Seller obtains performance data on loans sold on a servicing released basis, Static Pool Information with respect to the mortgage loans (of a similar type as the Mortgage Loans, as reasonably identified by the Purchaser as provided below) originated by (i) the Seller, if the Seller is an originator of Mortgage Loans (including as an acquirer of Mortgage Loans from a Qualified Correspondent), and/or (ii) each Third-Party Originator, in each case to the extent such mortgage loans were (a) purchased from the Seller by the Purchaser, and (b) acquired from the Purchaser by the relevant Depositor. Such Static Pool Information shall be

-39-

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 3 of 35

prepared by the Seller (or Third-Party Originator) pursuant to the specific written instructions of the Purchaser or the Depositor enumerating the fields or types of information to be provided and on the basis of the Purchaser's or the Depositor's reasonable, good faith interpretation of the requirements of Item 1105(a)(1)-(3) of Regulation AB for the period of time the Seller or Third-Party Originator serviced such Mortgage Loans. To the extent that there is reasonably available to the Seller (or Third-Party Originator) Static Pool Information with respect to more than one mortgage loan type, the Purchaser or any Depositor shall be entitled to specify whether some or all of such information shall be provided pursuant to this paragraph. The content of such Static Pool Information may be in the form customarily provided by the Seller, and need not be customized for the Purchaser or any Depositor. Such Static Pool Information for each vintage origination year or prior securitized pool, as applicable, shall be presented in increments no less frequently than quarterly over the life of the mortgage loans included in the vintage origination year or prior securitized pool. The most recent periodic increment must be as of a date no later than 135 days prior to the date of the prospectus or other offering document in which the Static Pool Information is to be included or incorporated by reference. The Static Pool Information shall be provided in an electronic format that provides a permanent record of the information provided, such as a portable document format (pdf) file, or other such electronic format reasonably required by the Purchaser or the Depositor, as applicable.

Promptly following notice or discovery of a material error in Static Pool Information provided pursuant to the immediately preceding paragraph (including an omission to include therein information required to be provided pursuant to such paragraph), the Seller shall provide corrected Static Pool Information to the Purchaser or any Depositor, as applicable, in the same format in which Static Pool Information was previously provided to such party by the Company.

(c)    If so requested by the Purchaser or any Depositor, the Seller shall provide (or, as applicable, cause each Third-Party Originator to provide), at the expense of the requesting party (to the extent of any additional incremental expense associated with delivery pursuant to this Agreement), such statements and agreed-upon procedures letters of certified public accountants reasonably acceptable to the Purchaser or Depositor, as applicable, pertaining to Static Pool Information relating to prior securitized pools for securitizations closed on or after January 1, 2006 or, in the case of Static Pool Information with respect to the Seller's or Third-Party Originator's originations or purchases, to calendar months commencing January 1, 2006, as the Purchaser or such Depositor shall reasonably request. As the requesting party and the Seller may agree, such statements and letters shall be addressed to and be for the benefit of such parties as the Purchaser or such Depositor shall designate, which may include, by way of example, any Sponsor, any Depositor and any broker dealer acting as underwriter, placement agent or initial purchaser with respect to a Securitization Transaction. As the requesting party and the Seller may agree, any such statement or letter may take the form of a standard, generally applicable document accompanied by a reliance letter authorizing reliance by the addressees designated by the Purchaser or such Depositor.

-40-

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 4 of 35

(A)     the Servicer's form of organization;

(B)     a description of how long the Servicer has been servicing residential mortgage loans; a general discussion of the Servicer's experience in servicing assets of any type as well as a more detailed discussion of the Servicer's experience in, and procedures for, the servicing function it will perform under this Agreement and any Reconstitution Agreements; information regarding the size, composition and growth of the Servicer's portfolio of residential mortgage loans of a type similar to the Mortgage Loans and information on factors related to the Servicer that may be material, in the good faith judgment of the Purchaser or any Depositor, to any analysis of the servicing of the Mortgage Loans or the related asset-backed securities, as applicable, including, without limitation:

(1)     whether any prior securitizations of mortgage loans of a type similar to the Mortgage Loans involving the Servicer have defaulted or experienced an early amortization or other performance triggering event because of servicing during the three-year period immediately preceding the related Securitization Transaction;

(2)     the extent of outsourcing the Servicer utilizes;

(3)     whether there has been previous disclosure of material noncompliance with the applicable servicing criteria with respect to other securitizations of residential mortgage loans involving the Servicer as a servicer during the three-year period immediately preceding the related Securitization Transaction;

(4)     whether the Servicer has been terminated as servicer in a residential mortgage loan securitization, either due to a servicing default or to application of a servicing performance test or trigger; and

(5)     such other information as the Purchaser or any Depositor may reasonably request for the purpose of compliance with Item 1108(b)(2) of Regulation AB;

(C)     a description of any material changes during the three-year period immediately preceding the related Securitization Transaction to the Servicer's policies or procedures with respect to the servicing function it will perform under this Agreement and any Reconstitution Agreements for mortgage loans of a type similar to the Mortgage Loans;

(D)     information regarding the Servicer's financial condition, to the extent that there is a material risk that an adverse financial event or circumstance involving the Servicer could have a material adverse effect on the performance by the Seller of its servicing obligations under this Agreement or any Reconstitution Agreement;

-41-

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 5 of 35

(E) information regarding advances made by the Servicer on the Mortgage Loans and the Servicer's overall servicing portfolio of residential mortgage loans for the three-year period immediately preceding the related Securitization Transaction, which may be limited to a statement by an authorized officer of the Servicer to the effect that the Servicer has made all advances required to be made on residential mortgage loans serviced by it during such period, or, if such statement would not be accurate, information regarding the percentage and type of advances not made as required, and the reasons for such failure to advance;

(F) a description of the Servicer's processes and procedures designed to address any special or unique factors involved in servicing loans of a similar type as the Mortgage Loans;

(G) a description of the Servicer's processes for handling delinquencies, losses, bankruptcies and recoveries, such as through liquidation of mortgaged properties, sale of defaulted mortgage loans or workouts; and

(H) information as to how the Servicer defines or determines delinquencies and charge-offs, including the effect of any grace period, re-aging, restructuring, partial payments considered current or other practices with respect to delinquency and loss experience.

(d) If so requested by the Purchaser or any Depositor for the purpose of satisfying its reporting obligation under the Exchange Act with respect to any class of asset-backed securities, the Seller shall (or shall cause each Subservicer and Third-Party Originator to) (i) notify the Purchaser and any Depositor in writing of (A) any material litigation or governmental proceedings pending against the Seller, any Subservicer or any Third-Party Originator and (B) any affiliations or relationships that develop following the closing date of a Securitization Transaction between the Seller, any Subservicer or any Third-Party Originator and any of the parties specified in clause (D) of paragraph (a) of this Section (and any other parties identified in writing by the requesting party) with respect to such Securitization Transaction, and (ii) provide to the Purchaser and any Depositor a description of such proceedings, affiliations or relationships.

(e) As a condition to the succession to the Seller or any Subservicer as servicer or subservicer under this Agreement or any applicable Reconstitution Agreement by any Person (i) into which the Seller or such Subservicer may be merged or consolidated, or (ii) which may be appointed as a successor to the Seller or any Subservicer, the Seller shall provide to the Purchaser and any Depositor, at least 15 calendar days prior to the effective date of such succession or appointment, (x) written notice to the Purchaser and any Depositor of such succession or appointment and (y) in writing and in form and substance reasonably satisfactory to the Purchaser and such Depositor, all information reasonably requested by the Purchaser or any Depositor in order to comply with its reporting obligation under Item 6.02 of Form 8-K with respect to any class of asset-backed securities.

-42-

Case 4:07-bk-01578-EWH   Doc 1224-2   Filed 02/04/08   Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2   Page 6 of 35

(f)     In addition to such information as the Seller, as servicer, is obligated to provide pursuant to other provisions of this Agreement, if so requested by the Purchaser or any Depositor, the Seller shall provide such information reasonably available to the Seller regarding the performance or servicing of the Mortgage Loans as is reasonably required to facilitate preparation of distribution reports in accordance with Item 1121 of Regulation AB.

(c)     The Seller shall indemnify the Purchaser, each affiliate of the Purchaser, and each of the following parties participating in a Securitization Transaction: each sponsor and issuing entity; each Person responsible for the preparation, execution or filing of any report required to be filed with the Commission with respect to such Securitization Transaction, or for execution of a certification pursuant to Rule 13a-14(d) or Rule 15d-14(d) under the Exchange Act with respect to such Securitization Transaction; each broker dealer acting as underwriter, placement agent or initial purchaser, each Person who controls any of such parties or the Depositor (within the meaning of Section 15 of the Securities Act and Section 20 of the Exchange Act); and the respective present and former directors, officers, employees and agents of each of the foregoing and of the Depositor, and shall hold each of them harmless from and against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any other costs, fees and expenses that any of them may sustain arising out of or based upon:

(i)(A)   any untrue statement of a material fact contained or alleged to be contained in any information, report, certification, accountants' letter or other material provided under this Section 12(b) or Exhibit 11 by or on behalf of the Seller, or provided under this Section 12(b) by or on behalf of any Subservicer, Subcontractor or Third-Party Originator (collectively, the "Company Information"), or (B) the omission or alleged omission to state in the Company Information a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; *provided, by way of clarification,* that clause (B) of this paragraph shall be construed solely by reference to the Company Information and not to any other information communicated in connection with a sale or purchase of securities, without regard to whether the Company Information or any portion thereof is presented together with or separately from such other information;

(ii)     any failure by the Seller, any Subservicer, any Subcontractor or any Third-Party Originator to deliver any information, report, certification, accountants' letter or other material when and as required under Section 12(b) or Exhibit 11, including any failure by the Seller to identify pursuant to Subsection 11.31(b)(ii) of Exhibit 11 any Subcontractor "participating in the servicing function" within the meaning of Item 1122 of Regulation AB; or

(iii)    any breach by the Seller of a representation or warranty set forth in Subsection 7.01(a)(21) or in a writing furnished pursuant to Subsection 7.01(b) and made as of a date prior to the closing date of the related Securitization Transaction, to the extent that such breach is not cured by such closing date, or any breach by the Seller of a representation or warranty in a writing furnished pursuant to Subsection 7.01(b) to the extent made as of a date subsequent to such closing date.

(d)     In the case of any failure of performance described in clause (a)(ii) of this Section, the Seller shall promptly reimburse the Purchaser, any Depositor, as applicable, and each Person responsible for the preparation, execution or filing of any report required to be filed with the Commission with respect

-43-

Case 4:07-bk-01578-EWH   Doc 1224-2   Filed 02/04/08   Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2   Page 7 of 35

to such Securitization Transaction, or for execution of a certification pursuant to Rule 13a-14(d) or Rule 15d-14(d) under the Exchange Act with respect to such Securitization Transaction, for all costs reasonably incurred by each such party in order to obtain the information, report, certification, accountants' letter or other material not delivered as required by the Seller, any Subservicer, any Subcontractor or any Third-Party Originator

      (i)     Any failure by the Seller, any Subservicer, any Subcontractor or any Third-Party Originator to deliver any information, report, certification, accountants' letter or other material when and as required under this Section 12 or Exhibit 11, or any breach by the Seller of a representation or warranty set forth in Subsection 7.01(a)(21) or in a writing furnished pursuant to Subsection 7.01(b) and made as of a date prior to the closing date of the related Securitization Transaction, to the extent that such breach is not cured by such closing date, or any breach by the Seller of a representation or warranty in a writing furnished pursuant to Subsection 7.01(b) to the extent made as of a date subsequent to such closing date, shall, except as provided in clause (ii) of this paragraph, immediately and automatically, without notice or grace period, constitute an Event of Default with respect to the Seller under this Agreement and any applicable Reconstitution Agreement, and shall entitle the Purchaser or Depositor, as applicable, in its sole discretion to terminate the rights and obligations of the Seller as servicer under this Agreement and/or any applicable Reconstitution Agreement without payment (notwithstanding anything in this Agreement or any applicable Reconstitution Agreement to the contrary) of any compensation to the Seller; *provided* that to the extent that any provision of this Agreement and/or any applicable Reconstitution Agreement expressly provides for the survival of certain rights or obligations following termination of the Seller as servicer, such provision shall be given effect.

      (ii)     Any failure by the Seller, any Subservicer or any Subcontractor to deliver any information, report, certification or accountants' letter when and as required under Subsection 11.23 or 11.25 of Exhibit 11, including any failure by the Seller to identify pursuant to Subsection 11.31 of Exhibit 11 any Subcontractor "participating in the servicing function" within the meaning of Item 1122 of Regulation AB, which continues unremedied for ten calendar days after the date on which such information, report, certification or accountants' letter was required to be delivered shall constitute an Event of Default with respect to the Seller under this Agreement and any applicable Reconstitution Agreement, and shall entitle the Purchaser or Depositor, as applicable, in its sole discretion to terminate the rights and obligations of the Seller as servicer under this Agreement and/or any applicable Reconstitution Agreement without payment (notwithstanding anything in this Agreement to the contrary) of any compensation to the Seller; *provided* that to the extent that any provision of this Agreement and/or any applicable Reconstitution Agreement expressly provides for the survival of certain rights or obligations following termination of the Seller as servicer, such provision shall be given effect.

      (iii)     The Seller shall promptly reimburse the Purchaser (or any designee of the Purchaser, such as a master servicer) and any Depositor, as applicable, for all reasonable expenses incurred by the Purchaser (or such designee) or such Depositor, as such are incurred, in connection with the termination of the Seller as servicer and the transfer of servicing of the Mortgage Loans to a successor servicer. The provisions of this paragraph shall not limit whatever rights the Purchaser or any Depositor may have under other provisions of this Agreement and/or any applicable Reconstitution Agreement or otherwise, whether in equity or at law, such as an action for damages, specific performance or injunctive relief.

      (e)     The Purchaser and the Seller acknowledge and agree that the purpose of Section 12(b)(8) and Exhibit 11 of this Agreement is to facilitate compliance by the Purchaser and any Depositor with the provisions of Regulation AB and related rules and regulations of the Commission. Neither the Purchaser

Case 4:07-bk-01578-EWH   Doc 1224-2   Filed 02/04/08   Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2   Page 8 of 35

nor any Depositor shall exercise its right to request delivery of information or other performance under these provisions other than in good faith, or for purposes other than compliance with the Securities Act, the Exchange Act and the rules and regulations of the Commission thereunder. The Seller acknowledges that interpretations of the requirements of Regulation AB may change over time, whether due to interpretive guidance provided by the Commission or its staff, consensus among participants in the asset-backed securities markets, advice of counsel, or otherwise, and agrees to comply with requests made by the Purchaser or any Depositor in good faith for delivery of information under these provisions on the basis of evolving interpretations of Regulation AB. In connection with any Securitization Transaction, the Seller shall cooperate fully with the Purchaser to deliver to the Purchaser (including any of its assignees or designees) and any Depositor, any and all statements, reports, certifications, records and any other information necessary in the good faith determination of the Purchaser or any Depositor to permit the Purchaser or such Depositor to comply with the provisions of Regulation AB, together with such disclosures relating to the Seller, any Subservicer, any Third-Party Originator and the Mortgage Loans, or the servicing of the Mortgage Loans, reasonably believed by the Purchaser or any Depositor to be necessary in order to effect such compliance.

### SECTION 13. The Seller.

#### Subsection 13.01. Additional Indemnification by the Seller.

In addition to the indemnification provided in Subsection 7.03 and Section 12, the Seller shall indemnify the Purchaser and hold them harmless against, and shall pay on behalf of the Purchaser in the first instance, any and all claims, losses, liabilities, demands, damages, penalties, fines, forfeitures, reasonable and necessary legal fees (both trial and appellate) and related costs, judgments, and any other costs, fees and expenses that the Purchaser may sustain in any way related to the failure of the Seller to perform its obligations under this Agreement including but not limited to its obligation to service and administer the Mortgage Loans in strict compliance with the terms of this Agreement or any Reconstitution Agreement entered into pursuant to Section 12.

#### Subsection 13.02. Merger or Consolidation of the Seller.

The Seller shall keep in full force and effect its existence, rights and franchises as a corporation under the laws of the state of its incorporation except as permitted herein, and shall obtain and preserve its qualification to do business as a foreign corporation in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement or any of the Mortgage Loans, and to enable the Seller to perform its duties under this Agreement.

Any Person into which the Seller may be merged or consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Seller shall be a party, or any Person succeeding to the business of the Seller, shall be the successor of the Seller hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided, however, that the successor or surviving Person shall be an institution whose deposits are insured by FDIC or a company whose business is the origination and servicing of mortgage loans, shall be a FNMA or FHLMC approved seller/servicer and shall satisfy any requirements of Section 16 with respect to the qualifications of a successor to the Seller.

#### Subsection 13.03 Limitation on Liability of the Seller and Others.

Neither the Seller nor any of the officers, employees or agents of the Seller shall be under any liability to the Purchaser for any action taken or for refraining from the taking of any action in good

WFF Conduit Master 04-01-06

Case 4:07-bk-01578-EWH   Doc 1224-2   Filed 02/04/08   Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2   Page 9 of 35

faith in connection with the servicing of the Mortgage Loans pursuant to this Agreement, or for errors in judgment; provided, however, that this provision shall not protect the Seller or any such person against any breach of warranties or representations made herein, or failure to perform its obligations in strict compliance with any standard of care set forth in this Agreement, or any liability which would otherwise be imposed by reason of any breach of the terms and conditions of this Agreement. The Seller and any officer, employee or agent of the Seller may rely in good faith on any document of any kind prima facie properly executed and submitted by any Person respecting any matters arising hereunder. The Seller shall not be under any obligation to appear in, prosecute or defend any legal action which is not incidental to its obligation to sell or duty to service the Mortgage Loans in accordance with this Agreement and which in its opinion may result in its incurring any expenses or liability; provided, however, that the Seller may, with the consent of the Purchaser, undertake any such action which it may deem necessary or desirable in respect of this Agreement and the rights and duties of the parties hereto. In such event, the legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities for which the Purchaser shall be liable, the Seller shall be entitled to reimbursement therefore from the Purchaser upon written demand except when such expenses, costs and liabilities are subject to the Seller's indemnification under Section 12 or Subsections 7.03 or 13.01.

Subsection 13.04.    Seller Not to Resign

The Seller shall not assign this Agreement or resign from the obligations and duties hereby imposed on it except by mutual consent of the Seller and the Purchaser or upon the determination that its servicing duties hereunder are no longer permissible under applicable law and such incapacity cannot be cured by the Seller in which event the Seller may resign as servicer. Any such determination permitting the resignation of the Seller as servicer shall be evidenced by an Opinion of Counsel to such effect delivered to the Purchaser which Opinion of Counsel shall be in form and substance acceptable to the Purchaser and which shall be provided at the cost of the Seller. No such resignation shall become effective until a successor shall have assumed the Seller's responsibilities and obligations hereunder in the manner provided in Section 16.

Subsection 13.05.    No Transfer of Servicing.

With respect to the retention of the Seller to service the Mortgage Loans during the Interim Servicing Period, the Seller acknowledges that the Purchaser has acted in reliance upon the Seller's independent status, the adequacy of its servicing facilities, plan, personnel, records and procedures, its integrity, reputation and financial standing and the continuance thereof. Without in any way limiting the generality of this Section, the Seller shall not either assign this Agreement or the servicing hereunder or delegate its rights or duties hereunder or any portion thereof, or sell or otherwise dispose of all or substantially all of its property or assets, without the prior written approval of the Purchaser, which consent will not be unreasonably withheld.

SECTION 14.    Default.

Subsection 14.01.    Events of Default

In case one or more of the following Events of Default by the Seller shall occur and be continuing, that is to say:

(1)    any failure by the Seller to remit to the Purchaser any payment required to be made under the terms of this Agreement which continues unremedied for a period of five Business Days; or

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53    Desc Exhibit A - Part 2    Page 10 of 35

(2)     failure on the part of the Seller duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Seller set forth in this Agreement which continues unremedied for a period of thirty days (except that such number of days shall be fifteen in the case of a failure to pay any premium for any insurance policy required to be maintained under this Agreement); or

(3)     a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding up or liquidation of its affairs, shall have been entered against the Seller and such decree or order shall have remained in force undischarged or unstayed for a period of sixty days; or

(4)     the Seller shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Seller or of or relating to all or substantially all of its property; or

(5)     the Seller shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations; or

(6)     failure by the Seller to be in compliance with the "doing business" or licensing laws of any jurisdiction where a Mortgaged Property is located; or

(7)     the Seller ceases to meet the qualifications of either a FNMA or FHLMC seller/servicer, or the Seller is not eligible to act as servicer or master servicer for mortgage loans subject to residential mortgage backed securities transactions rated by any nationally recognized rating agency or is eligible to act as such only with enhanced credit support; or

(8)     the Seller attempts to assign its right to servicing compensation hereunder or the Seller attempts, without the consent of the Purchaser, to sell or otherwise dispose of all or substantially all of its property or assets or to assign this Agreement or the servicing responsibilities hereunder or to delegate its duties hereunder or any portion thereof; or

(9)     Seller's membership in MERS is terminated for any reason; or

(10)     the Seller fails to duly perform, within the required time period, its obligations under Subsections 11.23, 11.24 or 11.25 of the Servicing Addendum, which failure continues unremedied for a period of three (3) days; or

(11)     the Seller fails to meet any capital, leverage or other financial standard imposed by any laws or applicable regulatory authority; or

(12)     the Purchaser determines in its sole discretion that any material adverse change has occurred in the Seller's financial condition; or

(13)     the Purchaser determines in its sole discretion that the Seller's sales and warranty obligations are disproportionate to its capital and/or assets; or

(14)     the Seller is placed on probation or a federal or state government agency restricts the Seller's activities in any manner; a court finds that the Seller or any of the Seller's principal officers

-47-

have committed an act constituting civil fraud; or the Seller or an officer thereof is convicted of any criminal act that relates to lending or loan servicing activities; or

(15)    the Seller is unable to meet the approval standards of any Qualified Insurer or other entity that provides insurance or other credit enhancements in connection with the Purchaser's efforts to sell the Mortgage Loans or to borrow based on the collateral value of the Mortgage Loans.

then, and in each and every such case, so long as an Event of Default shall not have been remedied, the Purchaser, by notice in writing to the Seller may, in addition to whatever rights the Purchaser may have at law or equity to damages, including injunctive relief and specific performance, terminate all the rights and obligations of the Seller as servicer under this Agreement. On or after the receipt by the Seller of such written notice, all authority and power of the Seller to service the Mortgage Loans under this Agreement shall on the date set forth in such notice pass to and be vested in the successor appointed pursuant to Section 16. The Purchaser shall be under no obligation to notify the Seller of the occurrence or existence of any Event of Default. All of the Purchaser's remedies hereunder, including, without limitation, the indemnification with respect to any Event of Default, shall exist regardless of the dates of the Purchaser's discovery and notice to the Seller of the Event of Default and the Purchaser's demand for any remedy.

Subsection 14.02.    Waiver of Defaults.

The Purchaser may waive any default by the Seller in the performance of its obligations hereunder and its consequences, so long as such waiver is provided in writing. Upon any such waiver of a past default, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been remedied for every purpose of this Agreement. No such waiver shall extend to any subsequent or other default or impair any right consequent thereon except to the extent expressly so waived.

Subsection 14.03.    Reasonable Assurances.

If at any time the Purchaser has reason to believe that an Event of Default has occurred, the Purchaser shall have the right to demand, pursuant to written notice from the Purchaser to the Seller, reasonable assurances that such a belief is in fact unfounded. Any failure by the Seller to provide the reasonable assurances set forth in the written notice and within a time frame specified in the written notice shall constitute an additional Event of Default; provided, however, that so long as no other Event of Default has occurred and is continuing, the Purchaser shall only be entitled to exercise such reasonable assurance remedy as may be necessary or appropriate for the Purchaser to insulate itself from any potential harm or loss relating to or caused by the facts or circumstances giving rise to such Event of Default.

SECTION 15.    Termination.

The respective obligations and responsibilities of the Seller, as servicer, shall terminate at the expiration of the Interim Servicing Period unless terminated on an earlier date at the option of the Purchaser or pursuant to Section 14. Upon written request from the Purchaser in connection with any such termination, the Seller shall prepare, execute and deliver, any and all documents and other instruments, place in the Purchaser's possession all Mortgage Files, and do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Mortgage Loans and related documents, or otherwise, at the Seller's sole expense. The Seller agrees to cooperate with the Purchaser and such successor in effecting the termination of the Seller's responsibilities and rights hereunder as servicer, including,

-48-

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 12 of 35

without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Seller to the Custodial Account, REO Account or Escrow Account or thereafter received with respect to the Mortgage Loans

SECTION 16.  Successor to the Seller.

Prior to termination of Seller's responsibilities and duties under this Agreement pursuant to Section 13, 14 or 15, the Purchaser shall (i) succeed to and assume all of the Seller's responsibilities, rights, duties and obligations under this Agreement, or (ii) appoint a successor which shall succeed to all rights and assume all of the responsibilities, duties and liabilities of the Seller as servicer under this Agreement. In connection with such appointment and assumption, the Purchaser may make such arrangements for the compensation of such successor out of payments on Mortgage Loans as it and such successor shall agree. In the event that the Seller's duties, responsibilities and liabilities as servicer under this Agreement should be terminated pursuant to the aforementioned Sections, the Seller shall discharge such duties and responsibilities during the period from the date it acquires knowledge of such termination until the effective date thereof with the same degree of diligence and prudence which it is obligated to exercise under this Agreement, and shall take no action whatsoever that might impair or prejudice the rights or financial condition of the Purchaser or such successor. The termination of the Seller as interim servicer pursuant to the aforementioned Sections shall not become effective until a successor shall be appointed pursuant to this Section 16 and shall in no event relieve the Seller of the representations and warranties made pursuant to Subsections 7.01 and 7.02 and the remedies available to the Purchaser under Subsection 7.03 or 7.04, it being understood and agreed that the provisions of such Subsections 7.01, 7.02 and 7.03 and 7.04 shall be applicable to the Seller notwithstanding any such resignation or termination of the Seller, or the termination of this Agreement.

Any successor appointed as provided herein shall execute, acknowledge and deliver to the Seller and to the Purchaser an instrument accepting such appointment, whereupon such successor shall become fully vested with all the rights, powers, duties, responsibilities, obligations and liabilities of the Seller, with like effect as if originally named as a party to this Agreement provided, however, that such successor shall not assume, and Seller shall indemnify such successor for, any and all liabilities arising out of the Seller's acts as servicer. Any termination of the Seller as servicer pursuant to Section 13, 14 or 15 shall not affect any claims that the Purchaser may have against the Seller arising prior to any such termination or resignation or remedies with respect to such claims.

The Seller shall timely deliver to the successor the funds in the Custodial Account, REO Account and the Escrow Account and the Mortgage Files and related documents and statements held by it hereunder and the Seller shall account for all funds. The Seller shall execute and deliver such instruments and do such other things all as may reasonably be required to more fully and definitely vest and confirm in the successor all such rights, powers, duties, responsibilities, obligations and liabilities of the Seller as servicer. The successor shall make arrangements as it may deem appropriate to reimburse the Seller for amounts the Seller actually expended as servicer pursuant to this Agreement which the successor is entitled to retain hereunder and which would otherwise have been recovered by the Seller pursuant to this Agreement but for the appointment of the successor servicer.

SECTION 17.  Financial Statements.

The Seller understands that in connection with the Purchaser's marketing of the Mortgage Loans, the Purchaser shall make available to prospective purchasers the Seller's financial statements for the most recently completed three fiscal years respecting which such statements are available. The Seller also shall make available any comparable interim statements to the extent any such statements have been prepared by the Seller (and are available upon request to members or stockholders of the Seller or the

-49-

Case 4:07-bk-01578-EWH   Doc 1224-2   Filed 02/04/08   Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 13 of 35

public at large). The Seller, if it has not already done so, agrees to furnish promptly to the Purchaser copies of the statements specified above. The Seller also shall make available information on its servicing performance with respect to mortgage loans serviced for others, including delinquency ratios.

The Seller also agrees to allow access to knowledgeable financial, accounting, origination and servicing officers of the Seller for the purpose of answering questions asked by any prospective purchaser regarding recent developments affecting the Seller, its loan origination or servicing practices or the financial statements of the Seller.

SECTION 18. Mandatory Delivery; Grant of Security Interest.

The sale and delivery of each Mortgage Loan on or before the related Closing Date is mandatory from and after the date of the execution of the related Confirmation, it being specifically understood and agreed that each Mortgage Loan is unique and identifiable on the date hereof and that an award of money damages would be insufficient to compensate the Initial Purchaser for the losses and damages incurred by the Initial Purchaser (including damages to prospective purchasers of the Mortgage Loans) in the event of the Seller's failure to deliver each of the related Mortgage Loans or one or more Mortgage Loans otherwise acceptable to the Initial Purchaser on or before the related Closing Date. The Seller hereby grants to the Initial Purchaser a lien on and a continuing security interest in each Mortgage Loan and each document and instrument evidencing each such Mortgage Loan to secure the performance by the Seller of its obligation hereunder, and the Seller agrees that it holds such Mortgage Loans in custody for the Initial Purchaser subject to the Initial Purchaser's (i) right to reject any Mortgage Loan under the terms of this Agreement and the related Confirmation, and (ii) obligation to pay the related Purchase Price for the Mortgage Loans. All rights and remedies of the Purchaser under this Agreement are distinct from, and cumulative with, any other rights or remedies under this Agreement or afforded by law or equity and all such rights and remedies may be exercised concurrently, independently or successively.

SECTION 19. Notices.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address as follows:

    (1)    if to the Purchaser:

        Wells Fargo Funding, Inc.
        2701 Wells Fargo Way, 1 South
        Minneapolis, Minnesota 55408
        Attn: Emily Omizo Whittenberg
        with a copy to: General Counsel's Office via telefax: 612-312-7206

    (2)    if to the Seller:

        First Magnus Financial Corporation
        603 North Wilmot Road
        Tucson, Arizona 85711
        Attention: Gary Malis

        With a copy to:

-50-

First Magnus Financial Corporation
603 North Wilmot Road
Tucson, Arizona 85711
Attn: General Counsel

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 20. Severability Clause.

Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

SECTION 21. Counterparts.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 22. Governing Law.

The Agreement shall be construed in accordance with the laws of the State of New York without regard to any conflicts of law provisions and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York or Minnesota, except to the extent preempted by Federal law.

SECTION 23. Intention of the Parties.

It is the intention of the parties that the Initial Purchaser is purchasing, and the Seller is selling, the Mortgage Loans and not a debt instrument of the Seller or another security. Accordingly, the parties hereto each intend to treat the transaction for Federal income tax purposes as a sale by the Seller, and a purchase by the Purchaser, of the Mortgage Loans. The Initial Purchaser shall have the right to review the Mortgage Loans and the related Mortgage Loan Files to determine the characteristics of the Mortgage Loans which shall affect the Federal income tax consequences of owning the Mortgage Loans and the Seller shall cooperate with all reasonable requests made by the Initial Purchaser in the course of such review.

-51-

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 15 of 35

SECTION 24. Successors and Assigns

This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and the Purchaser and the respective successors and assigns of the Seller and the Purchaser. The Purchaser may assign this Agreement to any Person to whom any Mortgage Loan is transferred whether pursuant to a sale or financing and to any Person to whom the servicing or master servicing of any Mortgage Loan is sold or transferred. Upon any such assignment, the Person to whom such assignment is made shall succeed to all rights and obligations of the Purchaser under this Agreement to the extent of the related Mortgage Loan or Mortgage Loans and this Agreement, to the extent of the related Mortgage Loan or Loans, shall be deemed to be a separate and distinct Agreement between the Seller and such Purchaser, and a separate and distinct Agreement between the Seller and each other Purchaser to the extent of the other related Mortgage Loan or Loans. The Purchaser may also assign separately to any other party any or all representations, warranties or covenants made by the Seller to the Purchaser in this Agreement, along with any or all of the Purchaser's remedies available against the Seller for the Seller's breach of any representation, warranty or covenant hereunder, including, without limitation, the repurchase and indemnification remedies. Any such party shall be an intended third party beneficiary of those representations, warranties, covenants and remedies. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the consent of the Purchaser.

SECTION 25. Waivers

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 26. Exhibits

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

SECTION 27. Non-solicitation.

The Seller covenants and agrees that it shall not take any action to solicit the refinancing of any Mortgage Loan following the date hereof or provide information to any other entity to solicit the refinancing of any Mortgage Loan; provided that, the foregoing shall not preclude the Seller from engaging in solicitations to the general public by newspaper, radio, television or other media which are not directed toward the Mortgagors or from refinancing the Mortgage Loan of any Mortgagor who, without solicitation, contacts the Seller to request the refinancing of the related Mortgage Loan.

SECTION 28. General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(1)     the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(2)     accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

-52-

WFF Conduit Master 04-01-06

(3)    references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other Subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(4)    reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(5)    the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(6)    the term "include" or "including" shall mean without limitation by reason of enumeration.

SECTION 29.    Reproduction of Documents.

This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 30.    Further Agreements.

The Seller and the Purchaser each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

SECTION 31.    Entire Agreement.

This Agreement constitutes the entire agreement and understanding of the parties with respect to the matters and transactions contemplated by this Agreement and, except to the extent otherwise set forth in writing, supersedes any prior agreement and understandings with respect to those matters and transactions.

SECTION 32.    Confidentiality.

As a result of their relationship under this Agreement, the Purchaser and the Seller may learn or have access to various trade secrets, confidential and proprietary methods, techniques, processes, applications, approaches, and other information in various forms, which such information is used or useful in the conduct of the other party's business, including origination, loan purchase, sale, and servicing of mortgage products, collectively referred to as "Confidential Information." The Purchaser and the Seller acknowledge that such Confidential Information of the other party is the exclusive property of the other. The Purchaser and the Seller shall not, at any time, regardless of if, when, and how their relationship may terminate, directly or indirectly use, disclose, publish, reveal, copy, disseminate, or otherwise make available such Confidential Information of the other party, other than as expressly set forth in this Agreement.

-53-

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 17 of 35

SECTION 33. Consumer Privacy.

Notwithstanding anything to the contrary, the Purchaser and the Seller agree that they will not use or disclose any "nonpublic personal information" on a "customer" or "consumer" of any financial institution affiliated with the other party that is made available to, provided to, or obtained for any purpose other than as required for the performance of their respective obligations under this Agreement. In addition, the Purchaser and the Seller will not disclose such "nonpublic personal information" to any third party, including (without limitation) an affiliate or individual contractor, to carry out the performance of their respective obligations under this Agreement unless: (1) the disclosing party obtains the prior written consent of the other party; and (2) such third party agrees in writing to be bound by the terms of this section and will use such "nonpublic personal information" only to perform some or all of the disclosing party's obligations under this Agreement in accordance with applicable law. For purposes of this section, the terms "nonpublic personal information," "consumer" and "customer" shall have the meanings set forth in Title V of the Gramm-Leach-Bliley Act and its implementing regulations, and this section shall survive termination of this Agreement. The foregoing notwithstanding, Initial Purchaser and subsequent Purchasers are in no way restricted from disclosing "nonpublic personal information" relating to the Mortgage Loans if such disclosure is done for the purpose of effecting a sale or securitization of the Mortgage Loans, or in accordance with any other permissible disclosure or exception under Title V of the Gramm-Leach-Bliley Act.

-54-

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 18 of 35

IN WITNESS WHEREOF, the Seller and the Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

FIRST MAGNUS FINANCIAL CORPORATION
(Seller)

By: _____

Name: __Gurpreet S. Jaggi__

Title: __President__

WELLS FARGO FUNDING, INC.
(Initial Purchaser)

By: _____

Name: _____

Title: _____

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 19 of 35

## EXHIBIT 1

### SELLER'S OFFICER'S CERTIFICATE

I, _____, hereby certify that I am the duly elected _____ of First Magnus Financial Corporation dba Charter Funding, a _____ (the "Seller"), and further certify, on behalf of the Seller as follows:

1. Attached hereto as Attachment I are a true and correct copy of the Certificate of Incorporation and by-laws of the Seller as are in full force and effect on the date hereof.

2. No proceedings looking toward merger, liquidation, dissolution or bankruptcy of the Seller are pending or contemplated.

3. Each person who, as an officer or attorney-in-fact of the Seller, signed (a) the Master Mortgage Loan Purchase and Interim Servicing Agreement (the "Purchase Agreement"), dated as of [Month] 1, 2006, by and between the Seller and Wells Fargo Funding, Inc. (the "Purchaser"); (b) the Confirmation, dated _____ 2006, between the Seller and the Purchaser (the "Confirmation"); and (c) any other document delivered prior hereto or on the date hereof in connection with the sale and servicing of the Mortgage Loans in accordance with the Purchase Agreement and the Confirmation was, at the respective times of such signing and delivery, and is as of the date hereof, duly elected or appointed, qualified and acting as such officer or attorney-in-fact, and the signatures of such persons appearing on such documents are their genuine signatures.

4. Attached hereto as Attachment II is a true and correct copy of the resolutions duly adopted by the board of directors of the Seller on _____, 2006 (the "Resolutions") with respect to the authorization and approval of the sale and servicing of the Mortgage Loans; said Resolutions have not been amended, modified, annulled or revoked and are in full force and effect on the date hereof.

5. Attached hereto as Attachment III is a Certificate of Good Standing of the Seller dated _____, 2006. No event has occurred since _____, 2006 which has affected the good standing of the Seller under the laws of the State of _____.

6. Attached hereto as Attachment IV is an Incumbency Certificate of the Seller dated _____, 2006, listing the officers authorized to sign on behalf of the Seller.

7. All of the representations and warranties of the Seller contained in Subsections 7.01 and 7.02 of the Purchase Agreement were true and correct in all material respects as of the date of the Purchase Agreement and are true and correct in all material respects as of the date hereof.

8. The Seller has performed all of its duties and has satisfied all the material conditions on its part to be performed or satisfied prior to the related Closing Date pursuant to the Purchase Agreement and the related Confirmation.

All capitalized terms used herein and not otherwise defined shall have the meaning assigned to them in the Purchase Agreement.

WFF Conduit Master 04-01-06

Case 4:07-bk-01578-EWH   Doc 1224-2   Filed 02/04/08   Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2   Page 20 of 35

IN WITNESS WHEREOF, I have hereunto signed my name and affixed the seal of the Seller.

Dated: _____

[Seal]

FIRST MAGNUS FINANCIAL CORPORATION DBA
CHARTER FUNDING
(Seller)

By: _____
Name: _____
Title: Vice President

I, _____, Secretary of the Seller, hereby certify that
_____ is the duly elected, qualified and acting Vice President of the Seller and that the signature appearing above is his genuine signature.

IN WITNESS WHEREOF, I have hereunto signed my name.

Dated:_____

[Seal]

FIRST MAGNUS FINANCIAL CORPORATION DBA
CHARTER FUNDING
(Seller)

By: _____
Name: _____
Title: [Assistant] Secretary

1-2

ATTACHMENT I

Certificate of Incorporation and bylaws

WFF Conduit Master 04-01-06

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 22 of 35

ATTACHMENT II

Resolutions

WFF Conduit Master 04-01-06

ATTACHMENT III

Certificate of Good Standing

WFF Conduit Master 04-01-06

ATTACHMENT IV

Incumbency Certificate


_____, 20__


Wells Fargo Funding, Inc.
2701 Wells Fargo Way
1 South
Minneapolis, MN 55408

Re:  Master Mortgage Loan Purchase and Interim Servicing Agreement between First Magnus Financial Corporation dba Charter Funding and Wells Fargo Funding, Inc.

Ladies and Gentlemen:

This is to advise you that the persons listed on the attached Schedule A are duly appointed officers of First Magnus Financial Corporation dba Charter Funding, and are authorized to sign any and all certificates and other documents delivered in connection with the above referenced Master Mortgage Loan Purchase and Interim Servicing Agreement. The signatures appearing opposite such duly appointed officers' names are their genuine signatures. The list of duly appointed officers may be amended from time to time by delivery to you of a revised schedule.

Capitalized terms not otherwise defined herein are used as defined in the Pooling and Servicing Agreement.

Very truly yours,

First Magnus Financial Corporation dba Charter Funding


By:  _____
Name
Title:

1-6

Case 4:07-bk-01578-EWH   Doc 1224-2   Filed 02/04/08   Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2   Page 25 of 35

Schedule A

OFFICERS

First Magnus Financial Corporation dba Charter Funding

Name                                             Signature

_____                    _____

_____                    _____

_____                    _____

WFF Conduit Master 04-01-06

## EXHIBIT 2

### [FORM OF OPINION OF COUNSEL TO THE SELLER]

_____
(Date)

Wells Fargo Funding, Inc.
2701 Wells Fargo Way, 1 South
Minneapolis, Minnesota 55408

      Re:    Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of
             May 5, 2006

Gentlemen:

I have acted as counsel to First Magnus Financial Corporation dba Charter Funding, a _____ (the "Seller"), in connection with the sale of certain mortgage loans by the Seller to Wells Fargo Funding, Inc. (the "Purchaser") pursuant to (i) a Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of May 5, 2006, between the Seller and the Purchaser (the "Purchase Agreement") [and the Confirmation, dated [Month], 2006, between the Seller and the Purchaser (the "Confirmation")]. Capitalized terms not otherwise defined herein have the meanings set forth in the Purchase Agreement.

In connection with rendering this opinion letter, I, or attorneys working under my direction, have examined, among other things, originals, certified copies or copies otherwise identified to my satisfaction as being true copies of the following:

      A.     The Purchase Agreement;

      B.     [The Confirmation;]

      C.     The Seller's [Certificate of Incorporation and by-laws][certificate of limited partnership and limited partnership agreement], as amended to date; and

      D.     Resolutions adopted by the Board of Directors of the Seller with specific reference to actions relating to the transactions covered by this opinion (the "Board Resolutions").

For the purpose of rendering this opinion, I have made such documentary, factual and legal examinations as I deemed necessary under the circumstances. As to factual matters, I have relied upon statements, certificates and other assurances of public officials and of officers and other representatives of the Seller, and upon such other certificates as I deemed appropriate, which factual matters have not been independently established or verified by me. I have also assumed, among other things, the genuineness of all signatures, the legal capacity of all natural persons, the authenticity of all documents submitted to me as originals, and the conformity to original documents of all documents submitted to me as copies and the authenticity of the originals of such copied documents.

2-1

Case 4:07-bk-01578-EWH   Doc 1224-2   Filed 02/04/08   Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2   Page 27 of 35

On the basis of and subject to the foregoing examination, and in reliance thereon, and subject to the assumptions, qualifications, exceptions and limitations expressed herein, I am of the opinion that:

1. The Seller has been duly [incorporated][formed] and is validly existing and in good standing under the laws of the State of _____ with corporate power and authority to own its properties and conduct its business as presently conducted by it. The Seller has the corporate power and authority to service the Mortgage Loans, and to execute, deliver, and perform its obligations under the Purchase Agreement [and the Confirmation] (sometimes collectively, the "Agreements").

2. The Purchase Agreement [and the Confirmation] have been duly and validly authorized, executed and delivered by the Seller.

3. The Purchase Agreement [and the Confirmation] constitute valid, legal and binding obligations of the Seller, enforceable against the Seller in accordance with their respective terms.

4. No consent, approval, authorization or order of any state or federal court or government agency or body is required for the execution, delivery and performance by the Seller of the Purchase Agreement [and the Confirmation], or the consummation of the transactions contemplated by the Purchase Agreement [and the Confirmation], except for those consents, approvals, authorizations or orders which previously have been obtained.

5. Neither the servicing of the Mortgage Loans by the Seller as provided in the Purchase Agreement [and the Confirmation,] nor the fulfillment of the terms of or the consummation of any other transactions contemplated in the Purchase Agreement [and the Confirmation] will result in a breach of any term or provision of the [certificate of incorporation or by-laws][certificate of limited partnership or limited partnership agreement] of the Seller, or, to the best of my knowledge, will conflict with, result in a breach or violation of, or constitute a default under, (i) the terms of any indenture or other agreement or instrument known to me to which the Seller is a party or by which it is bound, (ii) any State of _____ or federal statute or regulation applicable to the Seller, or (iii) any order of any State or _____ or federal court, regulatory body, administrative agency or governmental body having jurisdiction over the Seller, except in any such case where the default, breach or violation would not have a material adverse effect on the Seller or its ability to perform its obligations under the Purchase Agreement.

6. There is no action, suit, proceeding or investigation pending or, to the best of my knowledge, threatened against the Seller which, in my judgment, either in any one instance or in the aggregate, would draw into question the validity of the Purchase Agreement or which would be likely to impair materially the ability of the Seller to perform under the terms of the Purchase Agreement.

7. The sale of each Mortgage Note and Mortgage as and in the manner contemplated by the Purchase Agreement is sufficient fully to transfer to the

WFF Conduit Master 04-01-06

Purchaser all right, title and interest of the Seller thereto as noteholder and mortgagee.

8. The Assignments of Mortgage are in recordable form and upon completion will be acceptable for recording under the laws of the State where the Mortgaged Property is located. The Mortgage Notes will be duly endorsed under _____ law.

The opinions above are subject to the following additional assumptions, exceptions, qualifications and limitations:

A. I have assumed that all parties to the Agreements other than the Seller have all requisite power and authority to execute, deliver and perform their respective obligations under each of the Agreements, and that the Agreements have been duly authorized by all necessary corporate action on the part of such parties, have been executed and delivered by such parties and constitute the legal, valid and binding obligations of such parties.

B. My opinion expressed in paragraphs 3 and 7 above is subject to the qualifications that (i) the enforceability of the Agreements may be limited by the effect of laws relating to (1) bankruptcy, reorganization, insolvency, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally, including, without limitation, the effect of statutory or other laws regarding fraudulent conveyances or preferential transfers, and (2) general principles of equity upon the specific enforceability of any of the remedies, covenants or other provisions of the Agreements and upon the availability of injunctive relief or other equitable remedies and the application of principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law) as such principles relate to, limit or affect the enforcement of creditors' rights generally and the discretion of the court before which any proceeding for such enforcement may be brought; and (ii) I express no opinion herein with respect to the validity, legality, binding effect or enforceability of (a) provisions for indemnification in the Agreements to the extent such provisions may be held to be unenforceable as contrary to public policy or (b) Section 18 of the Purchase Agreement.

C. I have assumed, without independent check or certification, that there are no agreements or understandings among the Seller, the Purchaser and any other party which would expand, modify or otherwise affect the terms of the documents described herein or the respective rights or obligations of the parties thereunder.

I am admitted to practice in the State of _____, and I render no opinion herein as to matters involving the laws of any jurisdiction other than the State of _____ and the Federal laws of the United States of America.

Very truly yours,

WFF Conduit Master 04-01-06

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 29 of 35

## EXHIBIT 3

### SECURITY RELEASE CERTIFICATION

    1.    <u>Release of Security Interest</u>

_____, hereby relinquishes any and all right, title and interest it may have in and to the Mortgage Loans described in Exhibit A attached hereto upon purchase thereof by Wells Fargo Funding, Inc. from the Seller named below pursuant to that certain Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of May 5, 2006, as of the date and time of receipt by _____ of $_____ for such Mortgage Loans (the "Date and Time of Sale"), and certifies that all notes, mortgages, assignments and other documents in its possession relating to such Mortgage Loans have been delivered and released to the Seller named below or its designees as of the Date and Time of Sale.

Name and Address of Financial Institution

      (Name)

      (Address)

By:_____

3-1

II.     Certification of Release

The Seller named below hereby certifies to Wells Fargo Funding, Inc. that, as of the Date and Time of Sale of the above mentioned Mortgage Loans to Wells Fargo Funding, Inc., the security interests in the Mortgage Loans released by the above named corporation comprise all security interests relating to or affecting any and all such Mortgage Loans. The Seller warrants that, as of such time, there are and will be no other security interests affecting any or all of such Mortgage Loans.

Seller

By: _____
Name: _____
Title: _____

WFF Conduit Master 04-01-06

Case 4:07-bk-01578-EWH    Doc 1224-2    Filed 02/04/08    Entered 02/04/08 10:12:53
Desc Exhibit A - Part 2    Page 31 of 35

<u>EXHIBIT 4</u>

### ASSIGNMENT AND CONVEYANCE

On this _____ day of _____, 2006, First Magnus Financial Corporation dba Charter Funding ("Seller") as the Seller under that certain Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of May 5, 2006 (the "Agreement") does hereby sell, transfer, assign, set over and convey to Wells Fargo Bank, N.A. as Purchaser under the Agreement, without recourse, but subject to the terms of the Agreement, all rights, title and interest of the Seller in and to the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto, together with the related servicing rights thereto, Mortgage Files and all rights and obligations arising under the documents contained therein including the right to any Prepayment Charges payable with respect thereto. Pursuant to Subsection 6.03 of the Agreement, the Seller has delivered to the Purchaser, or its designee, the documents for each Mortgage Loan to be purchased as set forth in Exhibit 13 to the Agreement. The contents of each related Servicing File required to be retained by the Seller to service the Mortgage Loans pursuant to the Agreement and thus not delivered to the Purchaser are and shall be held in trust by the Seller for the benefit of the Purchaser as the owner thereof. The Seller's possession of any portion of each such Servicing File is at the will of the Purchaser for the sole purpose of facilitating servicing of the related Mortgage Loan pursuant to the Agreement, and such retention and possession by the Seller shall be in a custodial capacity only. The ownership of each Mortgage Note, Mortgage, and the contents of the Mortgage File and Servicing File is vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Seller shall immediately vest in the Purchaser and shall be retained and maintained, in trust, by the Seller at the will of the Purchaser in such custodial capacity only.

The Seller confirms to the Purchaser that the representation and warranties set forth in Subsections 7.01 and 7.02 of the Agreement are true and correct with respect to the Seller and the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto as of the date hereof, and that all statements made in the Seller's Officer's Certificates and all Attachments thereto remain complete, true and correct in all respects as of the date hereof, and that the Mortgage Loan characteristics identified on the attached Schedule are true and correct as of the date hereof.

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.

First Magnus Financial Corporation dba Charter Funding,
Seller

By: _____
Name: _____
Title:

4-1

## EXHIBIT 5

### SELLER'S UNDERWRITING GUIDELINES

- Jumbo Fixed – Effective 7-7-06
- Jumbo LIBOR ARM – Effective 4-17-06
- Jumbo Interest Only LIBOR ARM – Effective 3-22-06
- Jumbo Express Fixed and ARM SISA – Effective 4-5-06
- Alternative ARM – Effective 5-24-06
- Evolution – Effective 7/11/06

WFF Conduit Master 04-01-06

<u>EXHIBIT 6</u>

CONDITIONS AND LIMITATIONS TO SELLER'S UNDERWRITING GUIDELINES

Notwithstanding anything contained in the Purchaser Agreement or in the Seller's Underwriting Guidelines attached as Exhibit 5, the following conditions/limitations will apply:

(1)    Debt to Income ("DTI")/FICO Score Restrictions: no Mortgage Loan will:

    (a)    Have a Mortgagor with a FICO score less than 620 and a DTI greater than 45% if residual income is less than $500.00 for any one Mortgagor; and

    (b)    Have a Mortgage with a FICO score between 500 and 539 and a DTI greater than 50%; or

    (c)    Have a Mortgage with a FICO score between 540 and 619 and a DTI greater than 55%; or

    (d)    In the case of interest-only Mortgage Loans, have a Mortgagor with a FICO score between 580 and 619 with a DTI greater than 50%

(2)    Product/FICO Restrictions

    (a)    No stated income, stated income/stated asset (SISA), no ratio, no income/no asset (NINA) or any other low or no documentation product may have a Mortgagor with a FICO score below 620

    (b)    No call options, default rate products, or payments in advance at closing products may have a Mortgagor with a FICO score below 620

    (c)    No interest-only Mortgage Loan may have a Mortgagor with a FICO score less than 580.

(3)    Exception Process: the following products must obtain prior approval prior to inclusion in a loan pool:

    (a)    Non-arms length transactions

(4)    Other product restrictions

    (a)    Maximum loan of $3,000,000.

    (b)    Non-conforming products only (i.e. not applicable to FNMA/FHLMC product).

    (c)    Financed mortgage insurance is not allowed.

6-1

(d)    Refugee I94 Visa type is not allowed.

(e)    Cooperative properties in Washington DC are not allowed.

(f)    Title held by an LLC is not allowed on Alt A products.

(g)    Condo Hotel properties are not allowed.

(h)    Interim construction financing is not allowed.

(i)    Option ARMs are not allowed.

(j)    Non U.S. Citizen Visa types not currently allowed by Wells Fargo are not allowed.

(k)    Loans without credit sources are not allowed.

(l)    First lien mortgages only.

(m)    Manufactured Housing is not allowed.

WFF Conduit Master 04-01-06