**SIGNED.**

Dated: February 28, 2008



_____
**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>FIRST MAGNUS FINANCIAL CORPORATION,<br><br>                      Debtor. | Chapter 11<br><br>No. 4:07-bk-01578-JMM<br><br>**MEMORANDUM DECISION**<br>**RE: BROKER'S COMMISSION**<br><br>(Under Advisement Since 02/20/2008) |

Before the court is the motion of Bourne Partners, LLC to alter or amend a recent sale order which denied it a commission, and to approve said commission in the amount of $157,500 (Dkt. #1140). Bourne Partners was represented by S. Cary Forrester; the Debtor was represented by Todd A. Burgess; the Official Committee of Unsecured Creditors (the "Committee") was represented by Michael D. Warner. Other appearances were noted of record. A hearing was held on February 20, 2008. At that time, the court considered the arguments of the parties, and took the matter under advisement for further study.

The court now rules.

# BACKGROUND

## A. Procedural Background

On January 4, 2008, the court held a hearing, on a motion brought by the Debtor, to sell a package of certain construction loans. The Debtor had procured an opening offer from Summit Investment Management, LLC ("Summit") of $4,600,000, but asked that the court submit the package to open bidding.

The court obliged, and on January 4, 2008, an auction was held, which ended with a high bid of $5,250,000 being accepted as the highest and best offer for the property. The successful bidder was Hughes Development. At the same time, the court denied Summit's request for a "break up fee," a "cost reimbursement," or similarly labeled plea for reimbursement of monies advanced in its pre-sale due diligence. The court also denied the request of Bourne Partners to be paid a sales commission of 3%, on the grounds that Bourne Partners had not previously been appointed as an estate professional, pursuant to 11 U.S.C. § 327 and FED. R. BANKR. P. 2014. A 3% commission on a sale of $5,250,000 is $157,500.

An order approving the sale was entered on January 11, 2008 (Dkt. #1094). The part of the order which Bourne Partners seeks to change is found on page 9, paragraph 14, which reads:

> The request for the payment of . . . a commission to the Broker is denied.

On January 22, 2008, Bourne Partners filed the instant motion, seeking to alter the January 11 ruling in Bourne Partners' favor (Dkt. #1140).

## B. Substantive Background

The unopposed affidavits of Bourne Partners' agent, Randy Emerson, and the Debtor's in-house attorney, Joel Herk, reflect that both individuals were attentive early to the need to obtain

the appropriate paperwork to employ Bourne Partners as the Debtor's agent for the purpose of selling the subject property.

This effort began on September 17, 2007. The Debtor's bankruptcy counsel explained that he would need a copy of the commission agreement, after which he would file an "application to get the broker employed." (Ex. A to Emerson affidavit.)

For some unexplained reason, Debtor's bankruptcy counsel failed to follow through and obtain a court order appointing Bourne Partners. Had they done so, on or about September 17, 2007, the court would have signed it, because these types of appointments are both routine and *ex parte*. Additionally, there is nothing in all of the paperwork before the court which suggests that Bourne Partners is not a "disinterested" party.

From and after September 17, 2007 Mr. Emerson worked diligently to interest potential buyers in the property. He was successful in this effort, and at the sale hearing, one of the buyers found by Mr. Emerson made the high bid of $5,250,000. This figure was $650,000 higher than the opening bid of Summit.

## **JURISDICTION**

This court has jurisdiction over this core proceeding. 28 U.S.C. §§ 157 and 1334.

## **ISSUE**

May the court, and should it, grant Bourne Partners' payment request, although it had not been previously appointed as an estate professional?

# THE LAW

## A. Rule 59 (FED. R. BANKR. P. 9023)

Bourne Partners' motion is a timely motion to alter or amend an order. FED. R. CIV. P. 59 (made applicable to bankruptcy proceedings by FED. R. BANKR. P. 9023). Bourne Partners essentially asks the court to amend its order, or enter different conclusions of law, changing the court's previous rejection of Bourne Partners' commission request to an acceptance thereof.

## B. The General Rule

The Bankruptcy Code, 11 U.S.C. § 327, is the cornerstone statute which requires a court order in the appointment of any professional who is to be engaged, and paid by a bankruptcy estate.

Bankruptcy Rule 2014 is the foundational procedural rule for the steps which must be taken in order for a professional person or entity to perform services for a bankruptcy estate. The rule refines the directives of the statute.

The statute's purpose, requiring pre-approval of professionals, is to prevent gratuitous volunteers, over whom the court has no initial control, from depleting the estate's assets unnecessarily. *In re Haley*, 950 F.2d 588, 590 (9th Cir. 1991). This rule goes back a long way in bankruptcy jurisprudence. Judge Learned Hand gave succinct reasons for discouraging those without court approval from being paid in bankruptcy cases:

> An estate in the custody of a court is not in need of voluntary services; there is no room for the doctrine of salvage. It is presumably being cared for adequately, and those who seek to impose upon it the benefit of their assistance do so at their own account, unless they secure some consent at the outset.

*In re Siegel*, 252 F. 197, 198 (S.D.N.Y. 1918), *rev'd* on other grounds, 256 F. 226 (2nd Cir. 1919).

In our Circuit, such reasoning has been expressed by the Bankruptcy Appellate Panel:

> The rationale behind the requirement of prior court approval for the employment of professionals is to guard against abuses: "The reason for the rules relating to retention of professional personnel and the setting of their fees is to protect the estate and its creditors from unwarranted and gratuitous claims." *In re Cummins*, 15 B.R. 893, 896 (9th Cir. BAP 1981). As one court has stated:
>
>> The court must make the initial determination of the propriety of hiring consultants to assure that the costs of such services will not outweigh the benefits, and to insure that the door is not opened to the costly problems invited by the terrific opportunity for abuses which would exist if the debtor-in-possession were allowed to hire his own selected staff of consultants without the independent, detached assessment of the court.
>
> *In re Carolina Sales Corp.*, 45 B.R. 750, 754 (Bankr. E.D.N.C.1985).

*In re Shirley*, 134 B.R. 940, 944-45 (9th Cir. BAP 1992).

Because Bourne Partners never received a court order at or about September 17, 2007, or afterward, it was on this statute and rule and for these reasons that the court denied Bourne Partners' request to be compensated.

### C. Exceptions to the General Rule

#### 1. The Reasons for the Instant Motion

Bourne Partners suggests that the court was too hasty in denying it a sales commission at the conclusion of the auction hearing. It maintains that its request for payment was imbedded within the Debtor's sale approval papers, and that Ninth Circuit law requires reconsideration of the initial denial of compensation.

With its current motion, however, Bourne Partners has now provided the court with additional facts, about which the court was unaware on January 4, 2008, and asks the court to rethink its prior decision.

In aid of its argument, Bourne Partners has retained experienced bankruptcy counsel, who has provided the court with legal authorities from this circuit to convince the court that its prior ruling was not perhaps fully developed by a consideration of both the pertinent facts and the law.

Bourne Partners' position, in this respect, has merit. At the January 4, 2008, sale hearing, only Mr. Emerson was present. He did not have counsel with him, and as a lay person was not familiar with the details of bankruptcy law. At the hearing, he was understandably at a loss, because he had no idea, when he stepped into the courtroom that day, that his request for a $157,500 commission was at risk of denial.

Only with current counsel's help has Bourne Partners now properly pled its case, and supported its request with affidavits, exhibits and applicable law.

## 2. **The Law**

Many courts in the Ninth Circuit have had occasion to consider the question of when, and under what circumstances, a professional may be paid when that person has failed to be pre-approved.

The Ninth Circuit Court of Appeals spoke to this issue in *In re THC Financial Corp.*, 837 F.2d 389 (9th Cir. 1988). There, an attorney sought payment on behalf of a chapter 11 debtor for whom she had performed lobbying services. Although the trustee had objections on the merits to the application, the trial court and the Circuit focused on the necessary procedure for a retroactive appointment. The Circuit noted that the rules surrounding pre-approval were not absolute, but that a court, in the exercise of its equitable powers, can approve a late-filed request under "exceptional" circumstances. Two criteria must exist for a set of facts to be considered exceptional:

1) there must be a satisfactory explanation for the failure to receive prior judicial approval, and

2) the bankruptcy estate must have benefitted in some significant manner.

*Id*. at 392. As the attorney in the *THC* case was unable to satisfy either prong, the denial of her fee request was affirmed by the Circuit.

The Circuit had a later opportunity to again consider the issue, when accountants who had not been pre-approved were allowed compensation by the bankruptcy court. In that case, they had performed emergency services at the Debtor's request, which services benefitted the estate in reducing a tax liability. There, the accountants had been repeatedly assured by the debtors and their attorneys that appointment papers were in process. When the accountants later became aware that such filings had not been made, they obtained counsel who then promptly attempted to cure the problem. No creditors objected to the application, and the trial court concluded that, if payment were not made for the beneficial services rendered to the estate, the estate would receive a "windfall." *In re Atkins*, 69 F.3d 970, 978 (9th Cir. 1995).

In *Atkins*, the Circuit restated its *THC* rule, and while expressly not adopting them, also considered the nine factors of the Tennessee bankruptcy court's decision in the *Twinton* case to be of assistance to a trial court. *In re Twinton Props. P'ship*, 27 B.R. 817, 819-20 (Bankr. M.D.Tenn. 1983) (Judge Keith Lundin). Those factors are:

1. The debtor, trustee or committee expressly contracted with the professional person to perform the services which were thereafter rendered;

2. The party for whom the work was performed approves the entry of the *nunc pro tunc* order;

3. The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;

4. No creditor or party in interest offers reasonable objection to the entry of the *nunc pro tunc* order;

5. The professional satisfied all the criteria for employment pursuant to § 327 and the procedural rules at or before the time services were actually commenced and remained qualified during the period for which services were provided;

6. The work was performed properly, efficiently, and to a high standard of quality;

7. No actual or potential prejudice will inure to the estate or other parties in interest;

8 The applicant's failure to seek pre-employment approval is satisfactorily explained; and

1  9. The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

(Alteration added.) The Ninth Circuit noted that bankruptcy courts must balance the equities and weigh the good faith of the professional who proceeded without a court order. It also noted:

> Other factors for consideration include a determination of whose responsibility it was to obtain authorization, the applicant's relationship with the debtors and his own sophistication in the field.

*Atkins*, 69 F.3d at 974, n. 4. While noting that trial courts are <u>not required</u> to apply each *Twinton* factor, the Circuit suggested that those factors may be helpful in helping the trial court examine whether an applicant has a "satisfactory explanation" for failure to comply with the pre-approval requirements, and whether the applicant has benefitted the estate in some significant manner.

To its *THC* factors, the Ninth Circuit added an additional one: the professional must also have satisfied the criteria for employment pursuant to § 327 (e.g., disinterestedness, etc.). *Atkins,* 69 F.3d at 976.

Lower courts in the Ninth Circuit have all properly enunciated the same legal standards in cases similar to the instant one, with varying results because of differing fact situations. *See, e.g., In re Mehdipour*, 202 B.R. 474 (9th Cir. BAP 1996), *aff'd*, 139 F.3d 1303 (9th Cir. 1998) (real estate broker's fees approved at trial court on *nunc pro tunc* basis, when chapter 11 debtor received benefit, the professional satisfied the § 327 standards, and its explanation for prior non-approval was satisfactory); *In re Shirley*, 134 B.R. 940 (9th Cir. BAP 1992) (rule restated); *In re Kroeger Props and Dev., Inc.*, 57 B.R. 821 (9th Cir. BAP 1986) (exceptional circumstances rule restated, but attorney's late fee request disallowed as pure neglect, not meeting the Circuit's enumerated test).

## **APPLICATION OF THE LAW TO THE FACTS**

In this case, Bourne Partners has satisfied the Ninth Circuit's test for exceptional circumstances. It is disinterested, it has rendered a $650,000 additional benefit to the estate, and it

8

Case 4:07-bk-01578-EWH   Doc 1587   Filed 02/28/08   Entered 02/29/08 09:19:11   Desc
Main Document    Page 8 of 10

has satisfactorily explained, through the affidavits of Messrs. Herk and Emerson, why its failure to pre-apply was not accomplished. As to the latter point, it is clear that the chapter 11 Debtor's counsel knew, and intended to file for Bourne Partners' employment, but simply neglected to do so, perhaps explainable by the crush of other matters occurring in this case. But Debtor's counsel's failure is not imputed to Bourne Partners, nor to Mr. Emerson, who had every reason to believe that the application was being properly placed before the court. Mr. Emerson did what he was requested to do--he asked what was needed, he supplied the commission agreement, he searched for bidders, and he produced a benefit to the estate. Bourne Partners was a disinterested party, and the benefit to the estate was substantial. The Ninth Circuit's test, then, for retroactive employment has been satisfied. Under all the circumstances of the case, and because no meaningful objection has been raised by the creditors, the Committee or the Debtor to the payment of Bourne Partners' 3% commission, and the court also finding that the 3% commission is reasonable and was earned, the court will alter paragraph 14 of its January 11, 2008 order (Dkt. #1094), as follows:

> 14. The request for payment of an expense reimbursement to Summit is denied, and a commission of 3% ($157,500) may be paid to Broker Bourne Partners (Sales Agent, Randy Emerson), from and out of the proceeds of the approved sale.

A separate order will be entered. FED. R. BANKR. P. 9021.

### D. Objections

Only one objection was filed to Bourne Partners' request. It was filed by Summit, the initial bidder which, in the end, was not the successful purchaser of the property.

Unfortunately, Summit has no legal standing to oppose this request, because whatever the outcome, it does not stand to receive any benefit. Thus, since it has neither a "personal stake" nor a pecuniary interest in the relief sought by Bourne Partners , its objection must be overruled for lack of standing. *See, e.g., Raines v. Byrd*, 521 U.S. 811, 819, 117 S.Ct. 2312, 2317, 138 L.Ed. 2d 849 (1997); *In re Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983) (appellate standing); *see also In re*

*CFLC, Inc.*, 89 F.3d 673, 675 (9th Cir. 1996) (unsuccessful bidders are generally not "aggrieved" for standing purposes).

To the extent that Summit has attempted to gain, from Bourne Partners, a withdrawal of its objection upon a payment from Bourne Partners of $10,000, as a "settlement," this tactic is expressly rejected by the court. Fee sharing is likewise prohibited by applicable bankruptcy rules, unless previously disclosed and approved by the court. FED. R. BANKR. P. 2016. As there is no valid basis for this "settlement," this court expressly disapproves it as violative of bankruptcy law.[1]

Neither the Debtor nor the Committee objected to the instant motion. To the extent that any objection may be discerned by the record from the Committee, it was perfunctory and half-hearted. As Summit has no legal standing to object, its objection will also be overruled. To the extent that Summit has asked the court to let it participate in the sale proceeds for its due diligence expenses, that request is without merit and will be denied.

**RULING**

Based upon the facts and the applicable law, the court is persuaded that its previous denial of compensation to Bourne Partners was in error, and that now, having been properly presented with the facts and applicable law, the court alters its findings and legal conclusions, and will order that Bourne Partners is entitled to a commission of $157,500 (3%), upon closing. However, under no circumstances shall Bourne Partners pay Summit any portion thereof, nor pay it $10,000 or any other amount under any pretext or justification, upon penalty of contempt of court, including fines, and if required, any other appropriate sanction, including but not limited to referral to the United States Attorney for further investigation.

DATED AND SIGNED ABOVE.

---

[1] Such "agreements" may also have criminal implications as violative of the Borah Act. *See* 18 U.S.C. §§ 152(6) and 155.