
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST MAGNUS FINANCIAL CORPORATION, | No. 4:07-bk-01578-JMM |
| Debtor. | **MEMORANDUM DECISION** |

    Debtor's counsel has requested attorneys' and paralegals' fees of $1,338,158.75, and out-of-pocket costs of $90,723.78. The attorneys have voluntarily reduced their fees by $19,353 in "non-working travel time," resulting in the requested figure of $1,338,158.75.

    This has not been an easy or typical case. Its issues were complex, multi-layered and many. In order to staff the case to accommodate the pressures of prompt reaction, legal analysis and proper planning, delegation of responsibility by the attorneys was critical. In reviewing the summary of attorney time devoted to the case, it is noted that 29 attorneys had some part in the overall administration. However, only seven pulled the laboring oars (Brown, Burgess, Clemency, Ganz, Gold, Keenan and LeShaw). Additionally, while ten paralegals assisted, the bulk of their duties were handled by only three of their number (Aguilar, Martinez and Vasquez).

    At the court's request, the Greenberg Traurig firm filed supplemental exhibits which further detailed the involvement of the firm and its various members.

    Due to the size and complexity of this case, the court cannot, superficially, pronounce that "too many attorneys" worked on the case. The court has had long experience in chapter 11 cases, and well understands the myriad of issues facing a debtor's counsel, and the multi-front battles

which must be waged, both internally and externally. These include legal knowledge, practical considerations, strategies and skilled delegation. In addition, the attorneys' supervision of all of the various roles, duties and constantly moving parts, all contribute to the success or failure of a given case.

The legal authorities and standards relating to the reasonableness of a fee request are legion and well-established. . *See, e.g.*, *In re Yermakov,* 718 F.2d 1465, 1471-72 (9th Cir. 1983); 11 U.S.C. §§ 329, 330. In the final analysis, the court's judgment is founded upon sound discretion, after consideration of all aspects of the case. . *Hale v. U.S. Trustee,* 509 F.3d 1139, 1146 (9th Cir. 2007); *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir. 1985).

Only one objection to the Greenberg Traurig application was filed, by WNS North America, Inc. Its concerns fall generally into five categories:

1. "Too many lawyers" at too high rates;
2. Failure to apply only Arizona's hourly rate structure;
3. WNS' difficulty in understanding how much time was devoted to various tasks;
4. "Non-working travel time" which should be eliminated; and
5. Poorly-managed litigation decisions.

Each issue will be addressed in turn.

**Items 1 and 4: Too Many Lawyers; Non-Working Travel Time**

As for the first and fourth issues, the court notes that the size of the fee requested, combined with the number of attorneys and paralegals, appears high. But that is merely a "knee-jerk reaction" to the sizeable dollar figure. The nature, type, scope and complexity of the legal matters must be carefully scrutinized and taken into account. The participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort. *See McGrath v. County of Nev.*, 67 F.3d 248, 255 (9th Cir. 1995). It is not enough to merely point to the raw data;

an objecting party must be more specific in articulating where possible abuse may have occurred, and why that portion of the fee is unreasonable in view of the factors enumerated in § 330 of the Code, and the cases which discuss the fee issue. *In re Worldwide Direct, Inc.,* 334 B.R. 112, 132 (Bankr. D. Del. 2005) (the opposing party must lodge a "sufficiently specific objection" to a fee award). Except for the "non-working travel time," which Greenberg Traurig has now removed from its request, WNS has not focused, with the required degree of precision, on alleged abuses in any other category. While WNS may have a difference of opinion as to all or some of the Greenberg Traurig fee request, it has not suggested a reduced, yet otherwise reasonable number for any other category. WNS has raised a few questions, but has failed to provide answers.

Accordingly, as to the first and fourth categories of objection, they will be overruled, except as to "non-working travel time," which has now been withdrawn from the fee request and is therefore moot.

### Item 2: Failure to Apply Local Market Rate

Turning to WNS's second argument, that some of the Florida attorneys charge more than Arizona attorneys of similar experience, this issue has been addressed by many courts over the years. The Ninth Circuit, in *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) addressed this issue, and explained that, as a general rule, the appropriate hourly rates are the prevailing market rates in the relevant community, noting that this is generally where the court sits. But there are exceptions, such as when local counsel is unavailable, unwilling or unable to handle a case due to the lack of experience, expertise or specialization. *Id.; see also Barjon v. Dalton*, 132 F.3d 496, 500, 501-02 (9th Cir. 1997).

Many "mega-cases," which have involved the nation's bankruptcy courts, illustrate that the practice of bankruptcy law has become national in scope. This is especially true in the instant case, where the Debtor had over 5,500 employees in virtually every state. In addition, when one factors in that the Debtor's counsel of choice is a large single law firm with offices and expertise located in various parts of the nation, one must question whether the simple paradigm of "local law

3

Case 4:07-bk-01578-EWH    Doc 3068    Filed 05/22/08    Entered 05/23/08 11:34:37    Desc
Main Document    Page 3 of 5

firm / local rates" has meaningful application. At the least, the complex facts of this case and the need for special expertise present circumstances which require looking beyond the local community rates. So long as the ultimate amount requested is, on the whole, reasonable for the type of case and work involved, the fee can be approved. *See Deukmejian,* 987 F.2d at 1405; *see also Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 767 (D. Md. 2001); *Atlantic States Legal Foundation, Inc. v. Onondaga Dept. of Drainage & Sanitation*, 899 F. Supp. 84, 89-90 (N.D. N.Y. 1995). The nature and scope of this case is of the type where exceptions swallow the rule.

Thus, WNS second objection will be overruled.

### Item 3: Time Devoted to Tasks

Third, WNS contends that it had trouble deciphering how much time the Debtor's attorneys devoted to various tasks. On April 22, 2008, Greenberg Traurig supplemented its fee application to address this concern. The court has reviewed it, and finds that WNS' position on this issue has been rendered moot by the additional submission. Therefore, WNS' objection on this basis will be denied.

### Item 5: Poorly Managed Litigation Decisions

Finally, as for WNS' arguments that the Debtor raised issues or took positions on selected matters, as to which it may not have prevailed in whole or in part, the court views this argument as too simplistic. In litigation, and especially in bankruptcy cases, there is a fluidity about each case and each issue; when one door closes, another path must be traveled. No party in an evolving proceeding such as a chapter 11 bankruptcy case can expect to win on every issue, every time. There are checks and balances built into the bankruptcy structure. Because the Debtor may have taken a position on which it lost is not a demerit, having a residual consequence on its fee request. Nor does it prove to have necessarily been wrong in hindsight. "When reasonable professionals could differ over the right course, the professional is not to be penalized." *Matter of*

4

Case 4:07-bk-01578-EWH    Doc 3068    Filed 05/22/08    Entered 05/23/08 11:34:37    Desc
Main Document    Page 4 of 5

*Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995), *overruled on other grounds by Lamie v. United States Tr.,* 540 U.S. 526 (2004); *see also In re Mednet, MPC Corp.*, 251 BR. 103, 108 (9th Cir. BAP 2000) (fee applicant must demonstrate that the services were "reasonably likely" to benefit the estate). Each process is a step in the evolution of a chapter 11 case. Ultimately, the Debtor succeeded in having its plan confirmed. Victories and losses along the way, large or small, helped mold that result. The scorecard, kept along the way, does not measure the reasonableness of a fee. Winning an inning does not mean winning the game. The court finds no undue or wasted effort in the advancement of this case.

WNS's objection on this ground will be denied.

## CONCLUSION

For the reasons set forth above, WNS' objection will be overruled and Greenberg Traurig's amended fee application will be approved.

Greenberg Traurig shall submit an appropriate form of order as soon as practicable.

DATED AND SIGNED ABOVE.

