**SIGNED.**

Dated: June 12, 2008



_____
**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>FIRST MAGNUS FINANCIAL CORPORATION,<br><br>                Debtor. | Chapter 11<br><br>No. 4:07-bk-01578-JMM<br><br>**MEMORANDUM DECISION**<br>**RE: MOTION TO RECONSIDER, ALTER**<br>**OR AMEND FINAL COMPENSATION**<br>**AWARD TO MCA FINANCIAL** |

Before the court is the Motion to Reconsider, Alter or Amend Final Order Regarding Compensation of MCA Financial Group ("MCA") (Dkt. #2552). A hearing was held on June 9, 2008, after which the court took the matter under advisement. MCA was represented by Steven N. Berger. No objections were filed to the latest MCA pleading. The court has now reviewed the pertinent record in this case, the instant motion and applicable law. Its decision follows.

## ISSUE

Should the court change its compensation order, and award MCA more fees?

# JURISDICTION

Jurisdiction over this core issue is unquestioned. 28 U.S.C. § 157(b)(2)(A); 28 U.S.C. § 1334.

# PRIMARY PLEADINGS CONSIDERED

In order to gain a full appreciation for the history of this issue, and how it evolved, the court considered, among other relevant administrative pleadings and hearing minutes, the following:



Dkt. #9
Dkt. #10
Dkt. #83
Dkt. #131
Dkt. #193
Dkt. #260
Dkt. #310
Dkt. #427
Dkt. #560
Dkt. #796
Dkt. #864
Dkt. #1181
Dkt. #1587
Dkt. #2346
Dkt. #2347
Dkt. #2552
Dkt. #3569

# PROCEDURE

This court's final order regarding compensation to this financial advisor professional, MCA, was entered on the docket on April 24, 2008 (Dkt. #2347). The instant Motion to Reconsider, Alter or Amend Final Order was timely filed on May 5, 2008 (Dkt. #2552), as a FED. R. BANKR.

P. 59 motion to alter or amend. (Rule 59 is incorporated into bankruptcy proceedings by FED. R. BANKR. P. 9023.)[1]

MCA's request was also made pursuant to FED. R. BANKR. P. 9024, which incorporates FED. R. CIV. P. 60.

## **DISCUSSION**

**A.     MCA's employment.**

This chapter 11 liquidating case was voluntarily filed on August 21, 2007.

On the same day, the Debtor-in-Possession ("Debtor") filed an application to employ MCA as its financial professional (Dkts. #9 and #10). The court set the request for hearing on August 29, 2007, one week later. At that hearing, the minutes reflect that the court questioned the amount requested, $75,000 per month,[2] as being too high for a liquidating debtor. Nonetheless, the Court ruled that MCA could be employed for the first 30 days of the case, and that another look would then be taken at MCA's involvement for 30 days following the initial appointment.

Thus, on September 7, 2007, the court entered an order appointing MCA for 30 days (Dkt. #131). The order noted that employment was authorized pursuant to § 327 (which requires disinterested professional persons to have court approval for their employment), and that, specifically, at numbered paragraph 2 (it should have been no. 3) of the order:

> All fees and costs incurred by MCA on behalf of First Magnus Financial will be subject to Bankruptcy Court approval pursuant to 11 U.S.C. §§ 330 and 331 <u>but for said 30 day period, shall not exceed $75,000.00.</u>

---

[1] MCA's motion also touches upon FED. R. BANKR. P. 7052. It incorporates FED. R. CIV. P. 52. This rule relates to findings made after an evidentiary hearing, and is therefore not applicable here. Moreover, the facts surrounding the instant controversy are agreed, and not in dispute. This leaves only legal issues to discuss.

[2] MCA also argues that this figure was $75,000 per <u>week</u>, which was even more extreme.

3

Case 4:07-bk-01578-EWH    Doc 3608   Filed 06/12/08   Entered 06/12/08 16:18:17    Desc
Main Document    Page 3 of 9

The underlined portion above, was handwritten and added by the court. (Dkt. #131.)

On September 20, 2007, MCA obtained another order from the court, continuing its employment for the next 30 days, again at the $75,000 per month fee cap (Dkt. #193).

On October 17, 2007, pursuant to the minutes of the court, MCA was authorized to continue its professional duties through the close of the case, but at a reduced monthly cap of $50,000 (Dkt. #427).

Since the entry of the first order affecting MCA, entered on September 7, 2007, MCA has, on no fewer than four occasions (including this one), disagreed with its compensation arrangement, take issue and has asked for reconsideration. Those instances include:

| Date | Docket | Item |
|---|---|---|
| 10/01/2007 | #260 | MCA's motion for reconsideration of fee cap for initial 30-day period (file pro se, without counsel) |
| 10/05/2007 | #310 | Amended motion for reconsideration |
| 11/07/2007 | #560 | First interim fee application (reminding court that it filed a motion for reconsideration) |
| 05/05/2007 | #2552 | Motion to alter or amend judgment, or to reconsider |

The court now turns to MCA's most recent pleading.

**B.    MCA's appointment was pursuant to § 327, not § 330.**

MCA argues that it was appointed pursuant to § 330 of the Bankruptcy Code, not § 327. This argument fails for two reasons.

First, the application for employment (Dkt. #9), seeks employment pursuant to § 327. That section, not § 330, is the statute which gives the court the power to approve the Debtor's choice of a professional. That was the sole statutory basis made for employment, and it was proper.

The Debtor's application for employment of MCA sought appointment pursuant only to § 327(a). In passing, at paragraph 8 of the same pleading, it requested that compensation be set,

4

pursuant to §§ 330 and 331, at an hourly rate. In its September 7, 2007 order (Dkt. #131), the court approved the appointment and the hourly compensation basis, but placed a maximum, or cap, on the hourly fees to be charged by MCA. For the first two months, the maximum was $75,000 per month, and thereafter the maximum was $50,000 per month. If an hourly rate, multiplied by the number of hours spent, exceeded the maximum, only the maximum was to be paid. If the same formula resulted in a monthly amount over than the maximum, then only the lower earned amount would be compensated.

Second, § 330 is <u>not</u> an employment-enabling statute. Instead, it describes only how a court should consider <u>payment</u> to a professional. Section 330 is a compensation statute only.

If a professional is authorized for employment under § 327, then the next applicable section is § 328, which sets forth various examples of the types of fee structures for any professional. It describes several examples of compensation structures, such as retainers, hourly basis, fixed basis, percentage fee basis, or contingency. Section 330 also notes that these examples are not exclusive of other reasonable terms and conditions of employment. *See* § 102(3) ("including" is not a limiting phrase). In summary, § 330 is not applicable to MCA's "appointment" argument, because it is, quite simply, not an appointing statute, but is instead a compensation-setting statute.

This court appointed MCA pursuant to § 327, as it requested, and then set its hourly compensation at capped rates by the terms of the same order. The rate cap authority was derived from § 328(a). Later, when MCA asked for interim and final payment, the court turned to § 330, and "subject to Section . . . 328," awarded it a fee. 11 U.S.C. § 330. Since MCA had been appointed under specific orders which also specified its compensation under § 328, the court then awarded MCA the hourly rates sought, subject to the maximum amounts allowed by its orders.

Prior to the entry of its final fee award decision (Dkt. #2346), when MCA sought to exceed the caps, the court considered the employment orders, and the compensation structure contained therein, in the only way the statute allows, to wit, was the contemplated compensation "improvident in light of developments not capable of being anticipated at the time of the fixing of

5

Case 4:07-bk-01578-EWH    Doc 3608    Filed 06/12/08    Entered 06/12/08 16:18:17    Desc
Main Document      Page 5 of 9

such terms and conditions?" 11 U.S.C. § 328(a). The court concluded that improvidence was not a factor, and denied MCA the increased compensation requested (Dkt. #2346).

MCA seeks to fit itself within the facts and law of *In re Circle K Corp.*, 279 F.3d 669, 671 (9th Cir. 2002). The facts of this case, however are distinguishable from *Circle K*. Until it was appointed by the court, MCA had no right to rely on any promises by the Debtor as to how it would be compensated. The statute is clear. Section 327(a), the appointing statute, requires "the court's approval." Simply because the court did not rubber-stamp the Debtor's "First Day" motion, but instead set a hearing thereon, one week after the filing, that motion should have alerted MCA that the issues of both the need for such a professional, and what shape the terms of its employment might be, were to be discussed, analyzed and decided. Once that critical step was accomplished, the court issued its order on September 7, 2007. That order was unambiguous and clear. It both appointed MCA, and capped its monthly fees.

For all of these reasons, MCA's argument that it was appointed pursuant to § 330, or that it otherwise had some inchoate right to be paid what it felt was fair, up to and after the court entered its order, is rejected. MCA's view of the law is not consistent with applicable statutory and case authority. As for MCA's "reasonable expectation" that its employment would be routinely approved, that argument is also unavailing. If Congress had intended for courts to have no decision-making power over a chapter 11 debtor-in-possession's desires, then it would not have made such employment subject to "the court's approval." MCA had no legal or equitable right to expect anything prior to the entry of the court order. And after appointment, MCA had no legal or equitable right to compensation beyond what the court ordered.

**C.     MCA's "surprise."**

MCA maintains, as above, that somehow the court is bound to consider MCA's expectations. Again, for the reasons set forth above, this argument has no merit.

6

**D.**     *<u>Quantum meruit.</u>*

MCA also argues that, had it simply quit, after it learned of its lowered fee expectations immediately after the entry of the September 7, 2007 order, that the Debtor would have floundered, failed or would have had to expend more money on a substitute financial advisor.

This argument is too speculative to gain traction. We will never know if MCA's assessment is accurate, because it elected to stay in the case. For all we know, the opposite hypothetical is also plausible--that a substitute would have performed equally as well or better than MCA. The bottom line is: if MCA was unhappy working on the bankruptcy case, for any reason, MCA was free to leave at any time. No doubt, in such instances, the case would have survived its ongoing liquidation effort.

The *quantum meruit* argument is also unavailing, because not only the court, but all other parties to this case relied on the clear, unambiguous language of the September 7, 2007 order. *Quantum meruit* offers no equitable way for this court to disregard its prior orders, especially in view of its finding that later developments in the case did not render its fee caps "improvident" under § 328(a).[3] (Dkt. #2346.)

There is no argument that MCA was compelled to work in excess of the fee cap maximums. No one disputes that MCA did less than a good job. But, by the same token, holding MCA to the fee structure established at the outset of the case is not inequitable, nor can doing so fairly be called a "surprise." The rules were clear from the outset. If MCA felt that working in the bankruptcy arena was antithetical to its interests, could have declined employment on September 8, 2007.

---

[3]    Nor can MCA bootstrap its position by a comparison to what occurred in the Bourn Partners' isolated real estate commission issue. There, Bourn had failed to initially obtain approval to act as a real estate professional, but satisfied the court that retroactive <u>employment</u> was appropriate. Bourn touched each of the bases for <u>retroactive employment</u> as articulated by the Ninth Circuit in *In re THC Financial Corp.*, 837 F.2d 389 (9th Cir. 1988). The instant case is about compensation, not appointment in the first instance. The two situations are dissimilar in all respects. (*See* Dkt. #1587, Memorandum Decision regarding approval of Bourn Partners' commission.)

## **CONCLUSION**

Unconvinced that this court erred legally, factually or equitably, MCA's motions will be DENIED. A separate order will be entered by the court. FED. R. BANKR. P. 9021. Any appeal must be taken within ten days. FED. R. BANKR. P. 8002.

DATED AND SIGNED ABOVE.

COPIES served as indicated below
on the date signed above:

David Wm. Engelman  (dwe@engelmanberger.com)
Steven N. Berger  (snb@engelmanberger.com)
Bradley D. Pack  (bdp@engelmanberger.com)
Engelman Berger, P.C.
3636 N. Central Ave., Suite 700
Phoenix, AZ 85012
Attorneys for MCA Financial Group, Ltd.

John R. Clemency  (clemencyj@gtlaw.com)
Todd A. Burgess  (burgesst@gtlaw.com)
Lawrence J. Rosenfeld  (rosenfeldl@gtlaw.com)
Garland A. Brown, Jr.  (browng@gtlaw.com)
Greenberg Traurig, LLP
2375 E. Camelback Rd., Suite 700
Phoenix, AZ 85016
Attorneys for Debtor

Nancy J. March  (nmarch@dmyl.com)
DeConcini McDonald Yetwin & Lacy, P.C.
2525 E. Broadway Blvd., #200
Tucson, AZ 85716
Attorneys for WNS North America, Inc.

Robert E. Michael  (robert.e.michael.esq@gmail.com)
Robert E. Michael. & Associates, PLLC
950 Third Ave., Suite 2500
New York, NY 10022
Attorneys for WNS North America, Inc.

Michael D. Warner  (mwarner@warnerstevens.com)
Rachel R Obaldo  (robaldo@warnerstevens.com)
Warner Stevens, L.L.P.
301 Commerce St., Suite 1700
Fort Worth, TX 76102
Attorneys for Official Committee of Unsecured Creditors

| | |
|---|---|
| 1 | Renee Sandler Shamblin            (renee.s.shamblin@usdoj.gov) |
| | Office of the U.S. Trustee |
| 2 | 230 N. First Ave., Suite 204 |
| | Phoenix, AZ 85003-1706 |

By <u>M.B. Thompson</u>
    Judicial Assistant

