16

FILED

JUN 2 0 2008

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) Chapter 11 |
| FIRST MAGNUS FINANCIAL CORPORATION, | ) No. 4:07-bk-01578-JMM |
| | ) **MEMORANDUM DECISION** |
| Debtor. | ) |

On March 31, 2008, a group of eight former employees of Debtor, on behalf of themselves and 256 others, filed a motion to allow immediate payment of a portion of their proofs of claim (Dkt. #1995).[1] Specifically, they seek to recover, as a priority administrative expense and immediate payment under the confirmed chapter 11 plan, approximately 40 days' wages and benefits, as well as attorneys' fees, as damages pursuant to the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101, et seq. This chapter 11 bankruptcy case is affected because they seek the allowance of not less than $1,939,875.84, plus attorneys' fees, as an administrative expense. They style themselves, in shorthand fashion, the "WARN Act" employees. We will do likewise.

---

[1] The claimants move on behalf of themselves and "all others similarly situated," attaching a list of 264 claims. The court previously dismissed the same eight employees' adversary proceeding and denied their motion for approval of class certification. See FED. R. CIV. P. 23 (made applicable to adversary proceedings by FED. R. BANKR. P. 7023). There is a pending appeal of that matter.

FEDERAL CIVIL RULE 23 does not automatically apply to contested matters, see FED. R. BANKR. P. 9014. The claimants must establish the requirements of Rule 23, and the decision to extend its application is committed to the court's discretion. See In re Musicland Holding Corp., 362 B.R. 644, 650-51 (Bankr. S.D.N.Y. 2007). The court does not need to reach this issue, however, based on the ultimate decision to deny relief.

This issue was argued on May 19, 2008, after which the court took the matter under advisement. Having now reviewed applicable law, the court issues its decision.

## **PREFACE**

The issue presented is one of first impression. It involves dueling federal statutes, and to the extent possible, the court must harmonize them.

From a bankruptcy perspective, the clash of ideas pits long-established bankruptcy principles against the newly enacted Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which went into effect on October 17, 2005.

The particular new section in question here is 11 U.S.C. § 503(b)(1)(A)(ii), and the issue is whether that statute grants an administrative expense claim to former employees who were laid off pre-petition. To answer this question, the court must consider:

1. What was Congress' intent?
2. Is the statute so clear on its face that it needs no interpretation?
3. If the statute is unclear, can the court unravel the intent of Congress?

With this backdrop, the court now addresses the problem.

## **JURISDICTION**

Jurisdiction over this core matter is unquestioned. 28 U.S.C. § 157(b)(2)(A), (B) and (O); 28 U.S.C. § 1334.

## FACTS

The essential facts are not in dispute.

With the exception of one employee, whom Debtor alleged was not employed on the day of the mass layoff, these WARN Act employees were terminated by Debtor on August 16, 2007, without receiving 60 days' advance written notice. Debtor then filed a voluntary liquidating chapter 11 petition on August 21, 2007. The employees maintain that Debtor violated the WARN Act, and that the 60-day liability period for this violation runs from August 16, 2007, and into the post-petition period. They further argue that the post-petition portion of their claims is entitled to administrative expense status, pursuant to § 503(b)(1)(A), which they maintain gives them priority in a bankruptcy distribution and immediate payment pursuant to the confirmed plan provisions. 11 U.S.C. § 507(a)(2).

The parties do not dispute that any allowed pre-petition back-pay claims are entitled to fourth and/or fifth priority distribution as unsecured claims, subject to a cap of $10,950 each, pursuant to § 507(a)(4) and (a)(5).[2]

---

[2] These provisions provide, in pertinent part:

(a) The following expenses and claims have priority in the following order:

(4) Fourth, allowed unsecured claims, but only to the extent of $10,950 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for--

(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

. . . .

(5) Fifth, allowed unsecured claims for contributions to an employee benefit plan--

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs

3

## OPPOSITION TO THE ADMINISTRATIVE CLAIM STATUS

Debtor and the Official Committee of Unsecured Creditors (together "Debtor") jointly oppose the relief sought in the motion. As a threshold matter, Debtor contends that the plain language of § 503(b)(1)(A) requires a <u>prior</u> back-pay award determination, and that these claimants cannot obtain an award from the bankruptcy court in the first instance. Debtor further maintains that administrative expense status is reserved for claims that arise post-petition and that constitute actual and necessary costs and expenses in the preservation of the estate; that the WARN Act claims are merely "constructive" wage claims and are otherwise punitive in nature, rather than compensatory. Alternatively, Debtor contends that its situation falls under the "unforeseen business circumstances" exception to the WARN Act notice requirement. Finally, it maintains that any attorneys' fees, which are available under the WARN Act, are not entitled to administrative expense allowance.

## DISCUSSION

### A. The WARN Act.

The WARN Act was passed in 1988 in the wake of numerous plant closings and mergers in the 1970s and 1980s. This act mandates that defined employers give affected workers

---

> first; but only
> 
> (B) for each such plan, to the extent of--
> 
> (i) the number of employees covered by each such plan multiplied by $10,950 ; less
> 
> (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507 (footnotes omitted).

60 days' written notice of a plant closing or a mass layoff. 29 U.S.C. § 2102(a). The purpose of the WARN Act is to ensure that workers receive advance notice of plant closures and mass layoffs that affect their jobs. Marques v. Telles Ranch, Inc., 131 F.3d 1331, 1333-34 (9th Cir. 1997). The Act was intended to allow "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a).

The WARN Act is primarily remedial, i.e., ensuring an income stream or protection to workers, their families and communities by providing the most rapid possible readjustment and retraining of displaced workers and to ease the personal and financial difficulties of the terminated workers. See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1159 (9th Cir. 2001); see also In re Hanlin Group, Inc., 176 B.R. 329, 333-34 (Bankr. D. N.J. 1995) ("[T]he purpose of WARN is to provide a statutory form of severance pay.").

The WARN Act contains no statutory section which outlines how such claims are to be treated under a companion federal statute, the Bankruptcy Code.

B. **Pre-BAPCPA treatment of WARN Act claims.**

Prior to BAPCPA, most bankruptcy courts treated pre-petition WARN Act back-pay claims as "wages," rather than as a "penalty," and afforded them priority treatment under § 507(a), up to the amount of the statutory cap. Any excess, over the cap, was treated as an unsecured claim. See In re Kitty Hawk, Inc., 255 B.R. 428, 439 (Bankr. N.D. Tex. 2000); In re Riker Indus., Inc., 151 B.R. 823, 825-26 (Bankr. N.D. Ohio 1993); In re Cargo, Inc., 138 B.R. 923, 927-28 (Bankr. N.D. Iowa 1992).[3] The Cargo court found that WARN Act claims were similar to severance pay

---

[3] Congress noted that the statutory damages for a WARN Act violation could also be viewed as a penalty because it is "in effect a liquidated damages provisions [sic], designed to penalize the wrongdoing employer, deter future violations, and facilitate simplified damages proceedings." See Shannon v. Computer Assocs., Inc., 202 Ariz. 348, 350-51, 45 P.3d 345, 353-54 (Ct. App. 2002) (citing Saxion v. Titan-C-Manufacturing, Inc., 86 F.3d 553, 560 (6th Cir.1996) (quoting S.Rep. No. 62, 100th Cong., 1st Sess. 24 (1987)). And WARN Act

5

at termination. See id. (citing Matter of Health Maintenance Foundation, 680 F.2d 619, 621 (9th Cir. 1982) (severance pay at termination in lieu of notice is entitled to priority payment as cost of administration). Cf. In re Palau Corp., 18 F.3d 746, 751 (9th Cir. 1994) (NLRB back pay award).

C. **The Bankruptcy Code.**

1. **Super-Priority of Administrative Claims.**

It is long-accepted that bankruptcy proceedings embody the ideal of "equitable distribution" of a debtor's assets among competing creditors. Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 667, 126 S.Ct. 2105, 2116, 165 L.Ed.2d 110 (2006); Begier v. IRS, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990); Sherwood Partners, Inc. v. Lycos, Inc., 394 F.3d 1198, 1203 (9th Cir. 2005). The Code is designed to achieve an "equality of treatment among similarly situated creditors." In re Lockard, 884 F.2d 1171, 1178 (9th Cir. 1989).

Since it is rarely possible for a debtor to pay all creditors in full, Congress has prioritized distributions to creditors. Under the Bankruptcy Code, certain types of claims are entitled to administrative claim status. These expenses include "the actual, necessary costs and expenses of preserving the estate . . . .," and are accorded top-tier priority for payment, even ahead of most other "priority" claims. 11 U.S.C. § 507(a)(1)(C) and (2). The theory behind this "super-priority" treatment for administrative expenses is that the services rendered to a debtor, which help preserve the value of the estate, whether for continuation of the business or immediate liquidation, benefit all of the pre-petition creditor body. 4 Collier on Bankruptcy ¶ 503.06[1], at 503-24.1 to 24.2 (15th ed. rev. 2008).

Because priority for administrative claims departs from the Code's policy of

---

provisions can be viewed as punitive or deterrent because employers are "penalized by not using the notice provisions because they must pay affected workers wages although no work was done." Shannon, 202 Ariz. at 351, 45 P.3d at 354 (quoting Breedlove v. Earthgrains Baking Cos., 140 F.3d 797, 801 (8th Cir. 1998)).

6

equality of distribution, the party seeking administrative priority bears the burden of proof. Proving entitlement as an "actual and necessary" expense is narrowly construed. Howard Delivery Serv., 547 U.S. at 667; 126 S.Ct. at 2116; Palau Corp., 18 F.3d at 750; In re Metro Fulfillment, Inc., 294 B.R. 306, 309 (9th Cir. BAP 2003); In re Hanna, 168 B.R. 386, 388 (9th Cir. BAP 1994). As the Supreme Court recently held:

> "[I]f one claimant is to be preferred over others, the purpose should be clear from the statute. . . "
> Every claim granted priority status reduces the funds available to general unsecured creditors and may diminish the recovery of other claimants qualifying for equal or lesser priorities. . . . ."To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer." In re Mammoth Mart, Inc., 536 F.2d 950, 953 (C.A.1 1976).

Howard Delivery Serv., 547 U.S. at 667, 126 S.Ct. at 2116 (internal citations omitted).

As a general rule, an administrative expense claimant must show that the claim was incurred post-petition, that it directly and substantially benefitted the estate, and that it is an "actual and necessary" expense, a test which includes necessary costs of administering or operating the estate's business. Hanna, 168 B.R. at 388; Metro Fulfillment, 294 B.R. at 309.

2. **Section 503 - Administrative Expenses.**

Section 503 of the Bankruptcy Code establishes what types of claims are accorded administrative status. In general, these types of claims relate to the services rendered to a bankruptcy estate in its general administration.

One of the favored categories traditionally has been the wages, salaries or commissions of those who provide, post-petition, actual and necessary services toward the preservation of a bankruptcy estate. See, e.g., § 503(b)(1)(A).

The full text of the statute at issue here is:

(b)    After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--

   (1)(A)    the actual, necessary costs and expenses of preserving the estate including–

|   |   |   |
|---|---|---|
| | (i) | wages, salaries, and commissions for services rendered after the commencement of the case; and |
| | (ii) | wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title; |

* * *

11 U.S.C. § 503 (b)(1)(A).

Subsection (ii) was added to the Code in 2005 by BAPCPA. To date, the parties have not provided nor has the court found any published opinions applying the statute, much less applying it to WARN Act claims.

The legislative history is sparse and consists of only one comment, which, for the most part, simply paraphrases the statutory language:

> Section 329 amends Bankruptcy Code section 503(b)(1)(A) to accord administrative expense status to certain back pay awards. This provision applies to a back pay award attributable to any period of time occurring postpetition as a result of a violation of Federal or state law by the debtor pursuant to an action brought in a court or before the National Labor Relations Board, providing the bankruptcy court determines that the award will not substantially increase the probability of layoff or termination of current employees or of nonpayment of domestic support obligations.

HR Rep. No. 31, 109th Cong., 1st Sess. 329 (2005). Unfortunately, this legislative history is not helpful in fully explaining Congress' intent, nor in determining how this subsection was supposed to work. And, if what Congress meant is what the WARN Act employees contend, it differs from how the statute reads, keeping in mind that past bankruptcy practice is not to be eroded. See Lamie v. U.S.Trustee, 540 U.S. 526, 538, 124 S.Ct. 1023, 1033, 157 L.Ed.2d 1024

8

Case 4:07-bk-01578-EWH    Doc 3675    Filed 06/20/08    Entered 06/20/08 14:38:08    Desc
Main Document    Page 8 of 16

06/20/2008

(2004) (past bankruptcy practice will not be eroded absent a clear indication that Congress intended such a departure.).

As U.S. Supreme Court Justices Anthony Kennedy and Antonin Scalia have noted, legislative history can only be useful if it is "reliable." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568-70, 125 S.Ct. 2611, 2626-27, 162 L.Ed.2d 502 (2005); Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 390-91, 120 S.Ct. 2288, 2303-04, 147 L.Ed.2d 352 (2000) (J. Scalia concur. op.); see also Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law 29-37 (1997) (highlighting a variety of interpretative difficulties with judicial use of legislative history). Since the "legislative history" specified above merely paraphrases a subsection of the statute, it does not give this court any comfort whatsoever, much less a comfort that rises to the level of considering the short statement "reliable."

### 3.  Parsing the Statute.

#### A.  Recalling the Fundamentals.

Without guidance from any other court, nor from Congress, the court must analyze the statute on its own. It is true that some bankruptcy scholars have opined on the subject, and their considered opinions seem to believe that the statute is clear.[4] This court, however, does not

---

[4] The WARN employees have some legal support for their "plain meaning" interpretation. Collier cites no case law or legislative history, but yet opines that "if a judicial or NLRB award of back pay spans a period covering conduct occurring both pre-petition and post-petition based on employer conduct commencing during the pre-petition period, the post-petition portion would qualify as an administrative expense." 4 Collier on Bankruptcy, supra, ¶ 503.06[7][e], at 503-47. The same interpretation is also acknowledged by other scholars. See R.J. Keach, BAPCPA and WARN Act 'Back Pay:' Now, Timing Isn't Everything," 24-Jan. Am. Bankr. Inst. J. 26 (2006) (" 'Plain meaning' advocates will have little trouble applying this section to create administrative claim status for WARN Act back-pay awards arising out of pre-petition layoffs or facilities closings where the notice period runs, and the liability for and amount of the back-pay award is adjudicated post-petition."); see also Honorable Wm. Houston Brown, 2005 Bankr. Reform Legis. with Analysis 2d § 9.71 (2006) (stating that under BAPCPA "administrative expenses have been expanded to include certain postpetition back-pay awards regardless of the time of the underlying conduct," citing 503(b)(1)(A)(ii). He also states that "[a]s with many of the changes in this area, the increase in these priority claims may reduce recoveries to general unsecured claimants.").

believe the statute is all that clear, when deeper thought is given to the subject matter, and consideration given to the Supreme Court's words: "[I]f one claimant is to be preferred over others, the purpose should be clear from the statute. . . . " Howard Delivery Serv., 547 U.S. at 667, 126 S.Ct. at 2116.

The cornerstone principle of statutory construction is that, "where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'" United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citation omitted). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." Id., 489 U.S. at 240-41, 109 S.Ct. at 1030. The "plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" Id., 489 U.S. at 242, 109 S.Ct. at 1031 (citation omitted) (alteration in original).

Another canon of statutory construction is that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Food and Drug Admin. v. Brown & Williamson Tobacco Corp, 529 U.S. 120, 133, 120 S.Ct. 1291, 1301, 146 L. Ed. 2d 121 (2000) (citation omitted). "A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme' . . . and 'fit, if possible, all parts into an harmonious whole.'" Id. (citations omitted).

And, finally, in recognition that bankruptcy jurisprudence spans more than a century, the Supreme Court has wisely counseled bankruptcy courts to remember that, when Congress amends existing statutes, it "does not write on a clean slate." See Dewsnup v. Timm, 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992). This rule of construction might have prompted one legal authority to note that the 2005 Amendment would not change the result in cases that denied administrative priority for back pay that was determined to be for a prepetition period. See 3 Norton Bankr. L. & Prac. 3d § 49.24 n.4 (2008). In other words, a court must think about, and re-think as required, how the entire legal and equitable framework of bankruptcy law is intended to operate.

Case 4:07-bk-01578-EWH    Doc 3675    Filed 06/20/08    Entered 06/20/08 14:38:08    Desc
Main Document    Page 10 of 16

06/20/2008

B. **The Statute's Structure.**

(1) **The Connection Between (i) and (ii).**

The language of § 503(b)(1)(A), as amended, is susceptible to application of the "plain language" rule, because it appears to clearly apply only to those persons who were employed in the post-petition phase of a bankruptcy case.

The Bankruptcy Code provides a "nonexhaustive" list of allowable administrative expenses. In re Kadjevich, 220 F.3d 1016, 1019 (9th Cir. 2000). It is clear, first, however, that § 503(b)(1)(A) expenses must be <u>incurred</u> post-petition.

The first and second clauses of § 503(b)(1)(A) are joined by the word "and." 11 U.S.C. § 503(b)(1)(A)(i) and (ii). "Usually words of a statute must be construed in accordance with their ordinary and common meaning unless they have acquired technical meaning or unless a definite meaning is apparent or indicated by the context of the words." 2A Sutherland Statutes and Statutory Construction § 47:27 (Thompson Reuters/West, 7th ed. 2008). "And" is a common term in English, which means "together or along with: as well as--used to connect words, phrases or clauses that have the same grammatical function in a construction." Webster's II New Riverside University Dictionary (1984).

Interestingly, the leading treatise on statutory construction states:

> Where two or more requirements are provided in a section and it is the legislative intent that <u>all</u> of the requirements must be fulfilled in order to comply with the statute, the conjunctive "and" should be used. Statutory phrases separated by the word "and" are usually to be interpreted in the conjunctive.

1A Sutherland, supra, § 21:14 (emphasis added).

There is also a "commonsense canon of *noscitur a sociis*--which counsels that a word is given more precise content by the neighboring words with which it is associated." United States v. Williams, __ U.S. __, __, 128 S.Ct. 1830, 1839 (2008) (citing 2A Sutherland Statutes and Statutory Construction § 47.16 (7th ed. 2007)).

Therefore, applying the connector, "and," to each part of § 503(b)(1)(A)(i) and (ii)

11

Case 4:07-bk-01578-EWH   Doc 3675   Filed 06/20/08   Entered 06/20/08 14:38:08   Desc
Main Document    Page 11 of 16

06/20/2008

would require that <u>both</u> parts of the subsections must exist in order for a claimant to be entitled to an administrative expense. Such an interpretation would be consistent with longstanding law that only debts that arise postpetition can be treated as administrative expenses. <u>In re Ybarra</u>, 424 F.3d 1018, 1025-26 (9th Cir. 2005); <u>Palau Corp.</u>, 18 F.3d at 751.

Here, the only post-petition attribute of the WARN claims is merely mathematical, that being the calculation of the amount of liability.[5]

Since it is an undisputed fact that these WARN Act employees had been terminated prior to the filing of the instant chapter 11 case, they are unable to show that they provided "services rendered after the commencement of the case . . . ." as required by the first clause of 11 U.S.C. § 503(b)(1)(A)(i). Therefore, they cannot show entitlement to administrative claimant status, since the <u>entire</u> statute, read together, requires, at the least, some attribute of post-petition services. This interpretation best conforms to traditional notions of what constitutes an administrative expense, and otherwise fits within the whole framework of classification of claims.

This interpretation further conforms to the notion that a liquidating chapter 11 trustee or debtor-in-possession "does not succeed to the notice obligations," and thus the liability for any noncompliance therewith, of the prepetition operating Debtor. <u>See</u> <u>Chauffeurs, Sales Drivers, Warehousemen & Helpers Union Local 572, Int'l Bhd. of Teamsters, AFL-CIO v. Weslock Corp.</u>, 66 F.3d 241, 244 (9th Cir. 1995).

Turning to the clause contained in phrase (ii), this subsection also presents obstacles to the WARN Act employees. This section of the statute begins with the requirement that any "wages and benefits must have been awarded pursuant to a judicial proceeding or a

---

[5] PreBAPCPA cases held that the claim for back pay arose at the time of termination and therefore, the "wages" were "earned" at that time. See <u>Kitty Hawk, Inc.</u> 255 B.R. at 437-38 ("An employer's failure to provide the statutory notice gives rise to a claim for statutory damages . . ."; "WARN pay was earned upon termination"); <u>Cargo, Inc.</u>, 138 B.R. at 925 (same); <u>cf. In re Jeannette Corp.</u>, 118 B.R. 327, 330 (Bankr. W.D. Pa. 1990) (severance pay based upon failure to give notice is "earned" when termination occurs); <u>Palau Corp.</u>, 18 F.3d at 751 (debtor's prepetition conduct resulted in award for wages "constructively" earned postpetition; therefore, such wages did not qualify as "actual and necessary" expenses). <u>See also</u> 29 U.S.C. §§ 2102; 2104 (providing that the violation occurs when the employer orders a mass layoff without having given the 60-day advance notice ).

12

proceeding of the National Labor Relations Board as back pay . . . ." It is undisputed that the NLRB has not made any such award to the WARN Act employees, so that clause is inapplicable.

It is also undisputed that no other court has made such an award, either. "Award" means "a final judgment or decision, especially one by an arbitrator or by a jury assessing damages." Black's Law Dictionary (8th ed. 2004).

The WARN Act, itself a federal statute, provides the procedural mechanism to obtain an award. It provides for a civil action against employers, as follows:

> A person seeking to enforce such liability, including a representative of employees or a unit of local government aggrieved under paragraph (1) or (3), may sue either for such person or for other persons similarly situated, or both, <u>in any district court of the United States</u> for any district in which the violation is alleged to have occurred, or in which the employer transacts business.

29 U.S.C. § 2104(a)(5) (emphasis supplied).

Because the WARN Act itself is silent as to the bankruptcy court's power to entertain such a proceeding in the first instance, it is statutorily clear that the type of award contemplated by § 503 must originate from a federal court of <u>general</u> jurisdiction. A bankruptcy court is a federal court of <u>limited</u> jurisdiction, and its powers involve adjudicating existing claims, but not usually awarding or liquidating them in the first instance.[6] Congress, in the WARN Act legislation, did not see fit to expand the bankruptcy court's jurisdiction to include deciding these matters and rendering <u>awards</u> thereon (as opposed to merely liquidating existing claims). The legislative history of the new § 503(b) is silent on the point.

The court is aware that some sister courts have opposite views. <u>See In re Preston Trucking Co.</u>, 333 B.R. 315, 327 (Bankr. D. Md. 2005) ("It is well-established that bankruptcy courts have subject matter jurisdiction over claims brought against a debtor-employer under the WARN Act."). These courts liken the "award" pursuant to a "judicial proceeding" to claims adjudication. <u>See, e.g.</u>, <u>Id.</u>; <u>Cargo, Inc.</u>, 138 B.R. 923. We do not quarrel with claim adjudication jurisdiction, since that power is specifically granted by statute. 28 U.S.C.

---

[6] One exception to this general rule is the liquidation of a claim in a non-dischargeability proceeding. 28 U.S.C. § 157(b)(2)(I).

§ 157(b)(2)(B). But here, the disagreement involves the power to adjudicate, in the first instance, whether a pre-petition penalty can be liquidated post-petition, and <u>then</u> be accorded administrative status, which status then comes <u>ahead of</u> specific priority wage claims under § 507(a)(4). The WARN Act statute does not grant such power to a bankruptcy court, and the Bankruptcy Code does not provide for this interpretation. It is here that this court departs from those with a different view.

### (2) <u>Conflict with the Prority Scheme.</u>

The final challenge, in attempting to apply § 503(b)(1)(A) (administrative claim) to the facts of this case, arises in harmonizing such section with the wage priority statute, § 507(a)(4). In § 507(a)(4) of the Bankruptcy Code, Congress' intent is clear, and its precedent long-established. In it, Congress plainly intended to provide some cushion to unfortunate unpaid employees who were injured by a bankruptcy filing, and who concurrently failed to receive their full compensation package. See <u>Employers Ins. of Wausau v. Plaid Pantries, Inc.</u>, 10 F.3d 605, 607 (9th Cir. 1993).

As for those wage claimants with pre-petition unsecured claims for wages, Congress gave a statutory priority. Unpaid wage claims, incurred within a six-month period preceding bankruptcy, up to a maximum of $10,950 per claimant, are accorded priority in the distribution process. Such claims are granted a fourth-tier priority, but are subordinated to second-tier administrative expenses. 11 U.S.C. §§ 507(a)(2) and (4).

Section 507(a)(2) gives a priority to § 503(b) administrative expenses. Those § 503(b) expenses are granted for rendering services related to the "<u>actual, necessary</u> costs and expenses of preserving the <u>estate</u> . . . . " (emphasis added). An "estate" is not created until a bankruptcy case is commenced. 11 U.S.C. § 541(a). Thus, by definition, a WARN Act claim, for an employee terminated pre-petition, can never be an actual and necessary expense of preserving an <u>estate</u>. This is because the claim did not originate post-petition, and the employee did nothing to preserve the bankruptcy estate. The claim is rooted entirely in prepetition

14

conduct.

Applying bankruptcy logic and jurisprudence to the analytical calculus, above, and the statute's own construction, it is apparent that Congress did not expect the ordinary, terminated pre-petition employee to "double-dip" and get <u>both</u> a priority claim for unpaid prepetition wages, as well as an administrative claim for any WARN Act damages claims, which, due only to timing of the bankruptcy filing carries those damages into the post-petition phase. It is too much of a stretch to believe that Congress carved out such a significant remedy as the WARN Act employees here suggest, and one so entirely foreign to established bankruptcy jurisprudence.

In addition, the WARN Act's method of merely <u>calculating</u> damages, for what would be the monetary equivalent of 60-days' worth of wages, does not translate into <u>actual</u> days worked post-petition.

The court cannot agree with the WARN Act employees, nor accept their legal argument. The statute, if read as this court has done, harmonizes it with bankruptcy jurisprudence, without sacrifice to their practical and legal constructs.

As this court views the statutory scheme, the Code's fairness to employees is met in two ways: (1) If they were not employed on or after the filing date, they are given only a priority over other unsecured creditors for up to $10,950, earned within the previous six months, and a general unsecured claim for other WARN Act damages in excess of the $10,950 cap; and (2) if they were employed post-petition, they could have an administrative expense for the post-petition period, plus the additional WARN Act damages. Both statutes treat employees fairly and with compassion, but do not overly reward them (at the expense of other deserving creditors) for an employer's pre-petition violation of another federal statute (the WARN Act), which statute itself also requires liquidation by a court of general jurisdiction or the NLRB. New § 503(b) does not tilt the bankruptcy playing field totally in favor of terminated employees, nor confer new jurisdiction related to the WARN Act upon a bankruptcy court.

Accepting the interpretation urged by the WARN Act employees turns the careful bankruptcy framework on its head, and runs counter to established equitable principles of how

best to distribute limited resources among multiple claimants. Moreover, the construction urged by the WARN Act employees is inconsistent with the plain meaning of § 503(b)(1)(A) itself.

## CONCLUSION

A separate order will be entered which denies the WARN acts claimants any administrative claim against this estate.

DATED: June 20, 2008.

JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE