**SIGNED.**

Dated: June 26, 2008



_____
**JAMES M. MARLAR
U.S. Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) Chapter 11 |
| FIRST MAGNUS FINANCIAL CORPORATION, | ) No. 4:07-bk-01578-JMM ) **MEMORANDUM DECISION RE:** |
| Debtor. | ) **CALIFORNIA CLAIMANTS' REQUEST FOR** ) **ADMINISTRATIVE EXPENSE STATUS** |

Three former employees of First Magnus Financial Corporation ("Debtor"), who were terminated pre-petition without payment of the wages then owed to them, have filed separate motions for allowance of an administrative expense claim and immediate payment thereof (Dkts. #1960, #1963, #1965). Specifically, they seek to recover, as a priority administrative expense and immediate payment under the confirmed chapter 11 plan, the wages and benefits, as well as attorneys' fees, which constitute a penalty under California law, CAL. LAB. CODE §§ 201; 203. This chapter 11 bankruptcy case is affected because they seek the allowance of not less than $29,746.75, plus attorneys' fees, as an administrative expense. These individuals will be referred to as the "California Claimants."

# PREFACE

The issue presented is one of first impression involving interpretation of the amended Code. In a related case involving 264 other employees who sought an administrative claim under the "WARN Act," this court denied their request on June 20, 2008 (Dkts. #3675 and #3676).

As the legal issues involving the instant California Claimants are the same as those involving the WARN Act claimants, the court incorporates its WARN Act Memorandum Decision by reference (Dkt. #3675).

# JURISDICTION

Jurisdiction over this core matter is unquestioned. 28 U.S.C. § 157(b)(2)(A), (B) and (O); 28 U.S.C. § 1334.

# FACTS

Chanel Crouse, Ed Klavac and Joe Kimball (the "California Claimants") were all terminated on August 16, 2007. They have not been paid, to date, for the wages owed them at that time. However, there is no dispute that any allowed pre-petition back pay claims are entitled to treatment as priority unsecured claims, subject to a cap of $10,950 each pursuant to § 507(a)(4) and (a)(5).[1]

---

[1] These provisions provide, in pertinent part:

(a) The following expenses and claims have priority in the following order:

    (4) Fourth, allowed unsecured claims, but only to the extent of $10,950 [FN1] for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for--

        (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

    . . . .

Each California Claimant has filed a motion for allowance, and immediate payment, of an administrative expense claim consisting of wages and reasonable attorneys' fees. The claims are for $5,418.25, $11,275.75 and $12,752.75, respectively.

California Claimants style these as "wage continuation claims" pursuant to the provisions of the California Labor Code. California law provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately. . . . ." CAL. LAB. CODE § 201(a). An employer who willfully fails to pay wages within 72 hours of layoff shall be subject to an action and penalty in the amount of such wages plus reasonable attorney's fees from the due date thereof up to 30 days; these are referred to in the case law as "waiting time" penalties. See Grant-Burton v. Covenant Care, Inc., 99 Cal. App. 4th 1361, 1377, 122 Cal. Rptr. 2d 204, 218 (Ct. App. 2002); CAL. LAB. CODE § 203,[2] and § 218.5. Since California Claimants' employment was terminated on August 16, 2007, their claims span from that

---

    (5)    Fifth, allowed unsecured claims for contributions to an employee benefit plan--

        (A)    arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

        (B)    for each such plan, to the extent of--

            (i)    the number of employees covered by each such plan multiplied by $10,950 [FN1]; less

            (ii)    the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507

[2] Section 203 provides in pertinent part:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202 and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

CAL. LAB. CODE § 203.

3

date through September 15, 2007. Debtor's voluntary chapter 11 petition was filed on August 21, 2007; therefore, twenty-five (25) days of this penalty period ran post-petition. That is the portion that California Claimants seek to be allowed as administrative expense, pursuant to § 503(b)(1)(A)(ii) of the Bankruptcy Code. This section provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--
>
>     (1)(A) the actual, necessary costs and expenses of preserving the estate including--
>
>         . . . .
>
>         (ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title;

11 U.S.C. § 503 .

## OPPOSITION TO THE ADMINISTRATIVE CLAIM STATUS

Debtor and the Official Committee of Unsecured Creditors (together "Debtor") jointly opposed the relief sought. As a threshold matter, Debtor contends that the plain language of § 503(b)(1) (A)(ii) requires a prior back pay award, and that these motions are procedurally inadequate to obtain an award from the bankruptcy court in the first instance. It further maintains that administrative expense status is reserved for claims that arise post-petition and that constitute actual and necessary costs and expenses of preserving the estate; California Claimants merely assert "constructive" wage claims and have not shown that the attorney's fees were either reasonable or necessary. Finally, Debtor contends that the termination of these employees was not "willful," and therefore cannot be a violation of California law.

4

# DISCUSSION

## A. History of the California Labor Code and Bankruptcy Priority

California Labor Code § 203 mandates a penalty for any employer who willfully fails to comply with the wage payment provisions of section 201. In such a case, "... the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

> The reasons for this penalty provision are clear. "Public policy has long favored the 'full and prompt payment of wages due an employee.' [Citation.] '[W]ages are not ordinary debts.... [B]ecause of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay' promptly." . . . .

Mamika v. Barca, 68 Cal. App. 4th, 487, 491-92, 80 Cal. Rptr. 2d 175, 177-78 (Ct. App. 1998) (citations omitted). In reflecting these policy concerns, § 203 compels prompt payment of earned wages. It is given a "reasonable but strict construction" in order to "encourage employers to pay amounts concededly owed by [them] to [a] discharged or terminated employee without undue delay and to hasten settlement of disputed amounts." Id, 68 Cal. App. 4th at 492, 80 Cal. Rptr. 2d at 178 (citations omitted).

The legal character of CAL.LAB. CODE §§ 201 and 203 is that of an independent state law claim based on non-negotiable rights. See Lividas v. Bradshaw, 512 U.S. 107, 124-25, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994); Balcorta v. 20th Century Fox Film Corp., 69 F. Supp. 2d 1195, 1200-01 (N.D. Cal. 1998).

Prior to BAPCPA, most courts treated back pay claims as "wages," rather than as a "penalty" in order to afford them priority treatment under § 507(a). See, e.g., In re Palau Corp., 18 F.3d 746 (9th Cir. 1994) (an NLRB claim for "constructive" wages or back pay was determined by federal labor law, and bankruptcy law determined only whether the claim should be given priority; In re Cargo, Inc., 138 B.R. 923, 927 (Bankr. N.D. Iowa 1992) (rejecting the trustee's position that federal WARN Act wage claims were "penalties"). The Cargo court found that the WARN claims

were similar to severance pay at termination in lieu of notice of termination. See id. (citing Matter of Health Maintenance Foundation, 680 F.2d 619, 621 (9th Cir. 1982) (severance pay at termination in lieu of notice is entitled to priority payment as cost of administration).

Neither did our Ninth Circuit Bankruptcy Appellate Panel ("BAP") disallow, as an administrative priority, a claim for back pay under the same California statute, on the basis that it was a "penalty." In re Metro Fulfillment, Inc., 294 B.R. 306, 312 (9th Cir. BAP 2003) (whether or not CAL. LAB. CODE § 203 penalty wages were compensatory or punitive was not dispositive because the penalty wages arose out of the debtor's failure to comply with its obligations under state law, and thus was incidental to the operation of the business.)

In Metro Fulfillment, however, two employees of the chapter 11 debtor-in-possession quit their jobs post-petition. When the debtor failed to pay them the wages they were owed, they filed motions for administrative claims under § 503(b)(1)(A), in the bankruptcy case, which was then converted to chapter 7. The chapter 7 trustee objected to priority treatment of the former employees' claims. The bankruptcy court agreed with the trustee and concluded that the "penalty wages . . . do not constitute actual and necessary wages in preserving the estate." 294 B.R. at 308-09.

The claimants appealed to the BAP, which reversed. The BAP concluded that the claims arose from the post-petition acts of the debtor in failing to comply with its obligations under state law. Id. at 312. Moreover, it held that these wage claims were entitled to administrative priority "as a cost of doing business." Id.

Metro Fulfillment was a pre-BAPCPA opinion, and based upon different facts. Therefore, the consideration for this court is whether such back pay claims are entitled to administrative expense status under the amended Bankruptcy Code and where the employees were terminated pre-petition.

**B.    The Bankruptcy Code**

All of the reasoning set forth by this court in deciding the former employees' WARN Act claims applies equally to the claims made by these California Claimants under the California Labor Code. Accordingly, there is no separate need to restate that decision. Its reasoning is incorporated herein by reference. (See Dkt. #3675, #3676.)

**CONCLUSION**

A separate order will be entered which denies the California Claimants any administrative claim against this estate.

DATED AND SIGNED ABOVE.

