**SIGNED.**

Dated: November 26, 2008

_____
**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

In re:                                    ) Chapter 11
                                          )
FIRST MAGNUS FINANCIAL                    ) No. 4:07-bk-01578-JMM
CORPORATION,                              )
                                          ) **AMENDED MEMORANDUM DECISION**[1]
                   Debtor.                )

      Before the court is Pima County's contested motion for payment of Debtor's outstanding 2007 personal property taxes from proceeds of sale of the estate's real property valued at $1.6 million. ("Payment Motion") (Dkt. #981). As of the motion date, December 24, 2007, Pima County asserted that it had a secured claim for such taxes and lien in the real property in the amount of $128,865.86, with accruing interest.

      Debtor and the Liquidating Trustee (together "Debtor") opposed the motion only to the extent that Pima County seeks taxes for personal property that was either rejected or abandoned by order of the bankruptcy court. Debtor concedes that personal property taxes are owed by the estate through August 2007, in the total amount of "approximately" $85,910.57, which is roughly two-thirds of $128,856.86. Alternatively, it requests an evidentiary hearing in order to determine precisely what property Pima County seeks to tax.[2]

---

[1]     The purpose of amending this Memorandum Decision is to include taxes for personal property for the month of September, 2007.

[2]     It is undisputed that Pima County's lien is valid and in first position. *See A.R.S.* § 42-17154(A), § 42-17153; *see also* 11 U.S.C. § 362(b)(18) (providing that postpetition creation of statutory liens for ad valorem property taxes does not violate the automatic stay).

1

Several hearings were held and the matter was continued at the parties' request. Debtor was ordered to pay, and did pay, the undisputed taxes for the first half of 2007.[3] At the last hearing, on October 6, 2008, Pima County informed the court that the payoff amount is $68,671.91. In addition, Pima County alleges that Debtor did not produce requested documentation concerning the surrender of the subject personal property, nor any evidence to support a one-third reduction. Therefore, it maintains that Debtor's bankruptcy estate should pay the entire claim.

Following the October 6th hearing, which was attended by attorneys for Pima County and the Liquidating Trustee, the court took this matter under advisement. Having considered the pleadings, exhibits, the parties' arguments, and on the entire record, the court hereby concludes that all the material facts are before it and will render its decision.

## **FACTS AND PROCEDURAL HISTORY**

Debtor filed a voluntary chapter 11 petition on August 21, 2007. At that time, it had approximately 90 business properties in Tucson which contained personal property. The personal property was either leased or owned by Debtor. Most of the personal property was subject to a blanket lien of Debtor's primary secured creditors Chase Equipment Leasing and JPMorgan Chase (collectively "Chase").

Pima County filed proofs of claim against the estate for personal property taxes for 2007.

On September 4, 2007, Debtor filed an emergency motion for an order terminating month-to-month leases of nonresidential real property and rejecting all of the nonresidential real property leases.[4] Emergency Motion (August 31, 2007) (Dkt. #72) . The motion also sought an order "Establishing Procedures for Rejection, Sale or Abandonment of Personal Property" that may be located in the leased premises. *Id.* at 1, 2. The attached Exhibits A and A-1 (Dkt. #84) listed all of the real property leases and

---

[3] This matter involves secured claim adjudication in federal court. Moreover, Debtor has made partial payment. Therefore, the court will not impose the requirement that a taxpayer pay all delinquent taxes before challenging the validity or amount of the tax via a refund action in state court. *See A.R.S. § 42-11004.*

[4] The court may take judicial notice of its own docket. *In re E.R. Fegert, Inc.,* 887 F.2d 955, 957-58 (9th Cir. 1989).

branch locations, while Exhibit B listed all of the personal property leases and the branch locations. The motion stated that "[t]o the extent that First Magnus Financial determines that the Personal Property is of inconsequential value or otherwise is burdensome to the estate, First Magnus Financial seeks authority to abandon the Personal Property . . . . " *Id.* at 4, ¶ 8.

Pima County responded that it did not object to the motion as long as "all personal property taxes" were paid in full from any sale proceeds. (Dkt. #80.)

The court approved the motion on September 8, 2007 (Dkt. #142). In regards to the personal property, the order described the relief sought:

> In the Motion . . . . First Magnus Financial seeks authority to reject leases of personal property . . . . Through the Motion, First Magnus also seeks abandon [sic] Personal Property at approximately ninety (90) of the Locations that contain Personal Property that is subject to a blanket lien claimed by Chase.

Order (September 8, 2007), at 2.

The court then ordered:

> 3. The Personal Property leases listed on Exhibit B are rejected as of August 31, 2007.
>
> 4. All Personal Property at the approximately ninety (90) Locations that is subject to a blanket lien claimed by Chase is abandoned to Chase by First Magnus Financial and the Bankruptcy estate of First Magnus Financial effective as of September 4, 2007.

*Id.* at 3.

Some other personal property leases as well as property that was currently in use at Debtor's headquarters were excluded from the order. *Id.* at 3, ¶ 8; Debtor's Objection to Payment Motion (January 25, 2008) at 2, ¶ 4 (stating that the September 8, 2007 order authorized Debtor to reject "the vast majority of its personal property leases").

Subsequently, Debtor filed a second motion to reject additional nonresidential real property leases and personal property leases, as listed on its attached "Exhibit A," and also "to abandon any personal property associated with the former branch locations listed on Exhibit A." Motion for an Order (November 8, 2007), at 2 (Dkt. # 567).

3

There were no objections to the second motion, and it was granted. The order stated, in relevant part:

> 2. The Personal Property leases that relate to Wells Fargo Leasing as listed on Exhibit A are rejected as of August 31, 2007.
>
> 3. The remaining Personal Property leases, the Location Lease, and the Storage Lease are rejected as of December 7, 2007.
>
> 4. To the extent that any of the Leases on Exhibit A are month-to-month Leases, they are terminated as of December 7, 2007.
>
> 5. All Personal Property on Exhibit A is abandoned as of December 7, 2007.

Order (December 19, 2007) at 2. (Dkt. #896) . Paragraph 5 of the order effectively abandoned the estate's personal property at the branch locations listed on Exhibit A. Once again, personal property currently being used at Debtor's headquarters was excluded from the order.

Debtor filed and noticed a separate motion for approval of the sale of a certain parcel of nonresidential real property for $1.6 million (DN 539). Pima County objected to the proposed sale unless it was conditioned upon its liens for unpaid personal and real property taxes attaching to the sale proceeds and such taxes were paid in full. (Dkt. #719.) Following a hearing, on December 20, 2007, the sale was approved (DN 913). In regards to Pima County, the court ordered:

> 3. . . . . Any real property taxes due and payable with respect to the Property . . . shall be paid out of the sale proceeds from escrow at closing.
>
> 4. Upon the filing of an appropriate motion by the Pima County Attorney regarding additional alleged lien interests of Pima County, Arizona in the sale proceeds, the Debtor shall segregate and hold a portion of the sale proceeds in the DIP Hold Account, sufficient to cover the lien alleged by Pima County, Arizona and an additional $20,000 for the alleged judgment lien pending further order of the Court.

Order (December 20, 2007) at 5, ¶ 4.

In compliance with the sale order, on December 24, 2007, Pima County filed the instant Payment Motion.

Debtor filed its objection (Dkt. #1160) and a supplemental objection (Dkt. #4712) , asserting that it owed no more than $85,910.87, a figure it arrived at by reducing the entire tax claim by one-third for the months following the lease rejection and abandonment orders. Debtor further alleged that Chase had

4

1 | entered the branch locations and "tagged all personal property as theirs." Debtor's Supplemental Response
2 | (October 3, 2008) at 3, ¶ 5. In addition, Debtor asserted that the only personal property currently owned
3 | by Debtor consists of 20 GE copiers listed on Exhibit A. *Id.* at ¶ 6. Pima County filed a Reply (DN 1211),
4 | in which it disputed Debtor's claim that it owed no more than $85,910.87, without supporting evidence.

**ISSUES**

1. Whether Debtor owes 2007 personal property taxes through December 31, 2007, for all personal property that was either rejected or abandoned by Debtor by authority of the September 8 and December 19, 2007, orders.
2. Whether Debtor met its burden of proof that the amount of personal property tax owed for 2007 is no more than $85,910.57.

**A.  Bankruptcy Court Jurisdiction over the Lien Claim**

In Arizona, personal property taxes are enforceable as a lien on property. *A.R.S.* §§ 42-17153(A). In addition, real property is liable for taxes levied on personal property. *A.R.S.* § 42-17154(A).

Pima County's lien for 2007 personal property taxes attached to the real and personal property effective January 1, 2007, and therefore is a prepetition secured debt. *See A.R.S.* § 42-17153(C)(1). Pima County's lien is prior and superior to the Chase or other secured creditor's lien. *A.R.S.* § 42-17153(C)(3).

The lien on the parcel of real property to be sold "is not satisfied or removed until one of the following occurs:"

    (a) The taxes, penalties, charges and interest are paid.
    (b) Title to the property has finally vested in a purchaser under a sale for taxes.
    (c) A certificate of removal and abatement has been issued pursuant to § 42-18353.

*A.R.S.* § 42-17153(C)(2).

1  Here, subsections (b) and (c) are inapplicable. The bankruptcy court's sale order directed
2  disposal of the sale proceeds and instructed Pima County to file the supplemental motion for payment of
3  its lien.

4  Whether or not the subject personal property has been abandoned by the estate, the
5  bankruptcy court has jurisdiction over the disposition of the sale proceeds toward payment of the Pima
6  County lien, pursuant to 28 U.S.C. § 1334(a) and (e), and 28 U.S.C. § 157(b)(2) (B), (N) and (O).

**B.  Discussion**

10  Pima County filed proofs of claim based on its property tax assessments for 2007. A proof
11  of claim is deemed allowed and constitutes *prima facie* evidence of the claim's validity and amount unless
12  a party in interest objects under § 502(a). *In re Lundell*, 223 F.3d 1035, 1039 (9th Cir. 2000); FED. R.
13  BANKR. P. 3001(f). To defeat the claim, the objecting party must come forward with sufficient evidence
14  and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs
15  of claim themselves." *Id.* (citing *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)).

16  The basic rule in bankruptcy "is that state law governs the substance of claims." *See Raleigh*
17  v. *Ill. Dept. of Rev.,* 530 U.S. 15, 20, 120 S.Ct. 1951, 1955, 147 L. Ed. 2d 13 (2000). In the case of tax
18  claims, the ultimate burden of proof rests with the taxpayer if that is the substantive state law. *Id.,* 530 U.S.
19  at 26, 120 S.Ct. at, 1958 . In Arizona, the county treasurer's tax records are *prima facie* evidence of the
20  facts stated therein. *See A.R.S.* § 42-11007. In addition, a taxing authority's valuation and classification
21  of property for tax purposes are presumptively correct and the burden is on the taxpayer to show that they
22  are incorrect. *See A.R.S.* § 42-17212(B). In general, however, the tax statutes are liberally construed against
23  the government and in favor of the taxpayer or citizen; and any doubts as to their meaning are to be resolved
24  in favor of the taxpayer. *See State ex. rel. Ariz. Dept. of Rev. v. Capitol Castings, Inc.,* 207 Ariz. 445, 447,
25  88 P.3d 159, 161 (2004); *Ariz. Tax Comm'n v. Dairy & Consumers Co-op. Ass'n,* 70 Ariz. 7, 18, 215 P.2d
26  235, 242-43 (1950).

27  In Arizona, the valuation of personal property is entered on the tax roll, which shall include
28  the "name and residence of the person who owns the personal property or who possesses the property and

reports the property for taxation . . . ." *A.R.S. §* 42-19002(A) and (B)(1). A "person" means an individual or entity, *inter alia*, "a corporation . . . that owns, controls or has possession of real or personal property." *A.R.S. §* 42-11001(9). For taxation purposes, there is a presumption that pledged property is owned by the person in possession. *A.R.S.* § 42-15060(2).

On January 1, 2007, the date that the Pima County lien attached, Debtor was in possession of the subject personal property as either the lessee or owner. Thus, Debtor concedes that it owes personal property taxes through August of 2007, in the amount of approximately $85,910.57, which represents two-thirds of the tax claim, or eight months' taxes. However, Debtor denies any liability for taxes which arose <u>after</u> the personal property was surrendered to Chase (or other third party) following lease rejection and abandonment, <u>i.e.</u>, after August of 2007.[5]

Pima County maintains that Debtor has not provided adequate documentation of the personal property that was surrendered and demands payment of the entire tax claim.

The County has the right to demand accurate property reports. *See, e.g., A.R.S.* § 42-15052. On the other hand, in order to assess the taxes, it is undisputed that Debtor performed its statutory duty to provide a list of its personal property in advance of the assessment and levy of taxes, which was the basis for the calculation of Pima County's proof of claim. *See First Interstate Bank of Arizona v. State Dept. of Rev.*, 178 Ariz. 242, 244, 871 P.2d 1178, 1180 (1994) (assessors are entitled to rely on the lists furnished by the taxpayer); *A.R.S.* § 42-15053 *et seq.*

Then, in its first motion to reject leases and abandon property, Debtor provided documentation of the (1) personal property leases to be rejected, (2) the personal property subject to the leases, and (3) the branch locations. Pima County had proper notice of whatever personal property was either left at, or removed from, those locations.

---

[5] Debtor stated that the second motion and order, issued in December 2007, were unnecessary, in that the same personal property had already been abandoned in the first rejection order, or was filed "out of an abundance of caution" since Wells Fargo maintained that there were discrepancies with the lease descriptions in the first rejection order. Second Motion for Order (November 8, 2007) at 3, ¶ 3. The court has reviewed the motions and exhibits and is unable to confirm Debtor's statement. Nor has the December 19, 2007, order been set aside. Therefore, it is a final order concerning the supplemental personal property and will be taken into account.

7
Case 4:07-bk-01578-EWH   Doc 4862   Filed 11/26/08   Entered 12/01/08 08:16:21   Desc
Main Document    Page 7 of 10

1 The second motion and order, in December 2007, referred to the property listed on its
2 Exhibit A. Those personal property leases which related to Wells Fargo Leasing were rejected effective
3 August 31, 2007, while any remaining personal property leases were rejected as of December 7, 2007. The
4 December 19, 2007, order also specified that all the property listed on the motion's Exhibit A was
5 abandoned as of December 7, 2007. Although the property was not abandoned to a third party, it is evident
6 that this was leased property, and that those leases were rejected.

7 Moreover, except for the remaining personal property used by Debtor at its headquarters, the
8 prior two motions and orders disposed of all of Debtor's personal property. Therefore, Debtor has provided
9 Pima County with the information it needs to determine which property is where.

10 Pima County asserts that it must obtain records of disposition or surrender of the personal
11 property in order to calculate the proper taxes. We disagree.

12 Property that is abandoned pursuant to § 554 is no longer property of the estate and becomes
13 part of the debtor's nonbankruptcy estate. 11 U.S.C. § 554; 5 *Collier on Bankruptcy ¶ 554.02[3]* (15th ed.
14 rev. 2008). Here, the bulk of the personal property was both rejected under the leases and abandoned to
15 Chase in the first order. The legislative history and weight of authority holds that abandonment to a third
16 party with a possessory interest is entirely proper. 4 *Norton Bankr. L. & Prac.3d* § 74:2 & n.12 (2008); *see
17 also* H. Rep. No. 595, 95th Cong., 1st Sess. 377 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 92 (1978)
18 (stating that abandonment can be to "any party with a possessory interest in the property abandoned). In
19 the second order the property was not abandoned to a third party, specifically, but it was leased property
20 that was both rejected and abandoned. Presumably, the lessors of that equipment have retrieved it.

21 Abandonment is not the equivalent of a judicial sale, however, and any secured creditor or
22 lessor must thereafter comply with state law foreclosure or forfeiture requirements. *Collier*, *supra*.
23 Similarly, rejection of personal property leases removes the property from the bankruptcy estate and gives
24 the lessor the opportunity to take possession without violating the automatic stay. 11 *U.S.C.* § 365(g) and
25 (p).

26 Nonetheless, the lease rejection and abandonment orders constituted a constructive surrender
27 of the personal property to, and constructive possession by, Chase and/or to the other third parties, who were
28 thereafter free to deal with the property as they so chose. *See Third Nat'l Bank v. Winner Corp.*, 29 B.R.

8

Case 4:07-bk-01578-EWH   Doc 4862   Filed 11/26/08   Entered 12/01/08 08:16:21   Desc
Main Document    Page 8 of 10

383, 386 (M.D. Tenn. 1982) (citing *In re United Cigar Stores Co. of America,* 86 F.2d 629 (2nd Cir. 1936)); *see also Black's Law Dictionary* at 309, 1183, 1458 (7th ed. 1999) ("constructive" means "having an effect in law though not necessarily in fact"; "constructive possession" means "[c]ontrol or dominion over a property without actual possession or custody of it"; "surrender" is the "act of yielding to another's power or control").

Although the pleadings did not include detailed information concerning the surrender of the personal property, as Pima County complains, Debtor did not need to provide such information. Here, the real property and personal property leases were rejected and property abandoned at approximately 90 branch locations. Specifically, the September 8, 2007, order abandoned the property to Chase and thus gave constructive possession to Chase. Similarly, the December 19, 2007, order abandoned all the property at the listed locations and rejected the personal property leases. The court's orders were sufficient evidence to rebut the presumption that the collateral thereafter belonged to Debtor for taxation purposes. *See A.R.S.* § 42-15060(2).

Debtor has agreed to a payment of $85,910.57, through August 2007. Pima County has objected to that amount only because it alleges that Debtor has not provided sufficient evidentiary support concerning the property involved in order to disprove the tax records.

Having already determined that Debtor's pleadings and papers presented sufficient evidence of the personal property involved and its disposition, the court overrules Pima County's objection. Moreover, the court agrees with Debtor's method of subtracting one-third of the assessed tax to reflect the four months for which it did not have legal possession and control of the personal property. On the other hand, the court disagrees with Debtor's calculation to the extent that it ignores any property that was the subject of the second motion and order's later effective date.

Pursuant to the court's December 19, 2007 order, certain personal property leases were rejected and abandoned effective December 7, 2007. Although the Wells Fargo Leasing equipment leases were rejected as of August 31, 2007, the property was not abandoned until December 7, 2007. Out of an abundance of caution, the court concludes that Debtor still owes personal property taxes for the property listed on Exhibit A to the second motion for September, October and November of 2007. The amount of additional tax added to $85,910.57 will yield the final tax liability.

**CONCLUSION**

The tax lien is not a personal liability of Debtor. *See A.R.S.* § 42-17153(B). Debtor is not responsible for personal property taxes following lease rejection and abandonment of the identified property. The court concludes that Debtor's obligation to pay personal property taxes ended no later than September 4, 2007, for the bulk of the property either subject to the leases or abandoned from the branch locations listed on Exhibits A, A-1 and B, and on December 7, 2007, for the remainder of the personal property as indicated on Exhibit A of the second motion.

Thus, the court concludes that Debtor's tax liability for 2007 is the admitted $85,910.57 plus any taxes owed for September, October and November of 2007 for the personal property on Exhibit A to the Debtor's second motion (Dkt. #567).

Pima County shall calculate such tax and shall prepare and lodge a form of order in accordance with the court's ruling. Debtor shall have five days from service of such order in which to serve and file a written objection.

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Notification Center ("BNC") to the following:

German Yusufov
Deputy Pima County Attorney

Craig Ganz
Attorney for Liquidating Trustee

John R. Clemency and Todd A. Burgess
Attorneys for Debtor

Office of the United States Trustee