**SIGNED.**

Dated: February 25, 2009

_____
**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST MAGNUS FINANCIAL CORPORATION, | No. 4:07-bk-01578-JMM |
| | **MEMORANDUM DECISION ON TRAVIS COUNTY'S MOTION FOR LATE FILING AND ALLOWANCE OF PROOF OF CLAIM** |
| Debtor. | |

Before the court is the contested Motion for Late Filing and Allowance of Proof of Claim ("Motion," Dkt. #4069) and Notice of Tax Lien (Dkt. #4070) of Travis County Tax Assessor-Collector Nelda Wells Spears, on behalf of Travis County and other taxing authorities in Travis County, Texas ("Travis County"). Travis County contends that it is a secured creditor, by virtue of a statutory lien for unpaid 2007 personal property taxes in the amount of $14,388.41, and is a § 507(a)(8) priority creditor for any unsecured amount of such claim.

Debtor's Liquidation Trustee objected, both to the late filing and on the merits (Dkt. #4725). The matter was heard on December 8, 2008, with appearances and argument made by counsel. The court, having taken the matter under advisement, now renders its decision.

**FACTS AND PROCEDURE**

Debtor filed a voluntary chapter 11 petition on August 21, 2007. Travis County was not listed as a creditor on the Schedules (Dkt. # 176),[1] and did not receive formal notice of the bankruptcy filing.

Debtor had been operating its business throughout the United States, including in leased real property in Austin, Texas. The personal property at the Texas offices was either leased or owned by Debtor.

On Schedule B, Debtor indicated that it had $1,861,301,639 in personal property assets, most of which consisted of cash or bank accounts, investment interests, receivables, and internally developed software of unknown value. Tangible property included "various artwork" of unknown value, and furniture and fixtures estimated to be worth $27,667,539.[2]

Debtor's personal property was subject to a blanket lien of Debtor's primary secured creditors Chase Equipment Leasing and JPMorgan Chase (collectively "Chase").

On September 4, 2007, Debtor filed an emergency motion for an order terminating month-to-month leases of nonresidential real property and rejecting all of the nonresidential real property leases. ("2007 Motion," Dkt. #72). The motion also sought an order "Establishing Procedures for Rejection, Sale

---

[1] The court may take judicial notice of its own docket. In re E.R. Fegert, Inc., 887 F.2d 955, 957-58 (9th Cir. 1989).

[2] Texas law defines personal property as follows:

  (4) "Personal property" means property that is not real property.

  (5) "Tangible personal property" means personal property that can be seen, weighed, measured, felt, or otherwise perceived by the senses, but does not include a document or other perceptible object that constitutes evidence of a valuable interest, claim, or right and has negligible or no intrinsic value.

  (6) "Intangible personal property" means a claim, interest (other than an interest in tangible property), right, or other thing that has value but cannot be seen, felt, weighed, measured, or otherwise perceived by the senses, although its existence may be evidenced by a document. It includes a stock, bond, note or account receivable, franchise, license or permit, demand or time deposit, certificate of deposit, share account, share certificate account, share deposit account, insurance policy, annuity, pension, cause of action, contract, and goodwill.

TEX. TAX CODE § 1.04. "Computer application software" has been held to be intangible personal property. Dallas Cent. Appraisal Dist. v. Tech. Data Corp., 930 S.W. 2d 119, 122-23 (Tex. App. 1996).

or Abandonment of Personal Property" that may be located in the leased premises. Id. at 1, 2. The motion stated that "[t]o the extent that First Magnus Financial determines that the Personal Property is of inconsequential value or otherwise is burdensome to the estate, First Magnus Financial seeks authority to abandon the Personal Property . . . . " Id. at 4, ¶ 8.

The attached Exhibits A and A-1 (Dkt. #84) listed all of the real property leases and branch locations, while Exhibit B listed all of the personal property leases and the branch locations. Exhibit A included leases for real property in Austin, while Exhibit B included personal property leases for property located in Austin.

Travis County was not served with the motion or notice of hearing on the motion.

The court approved the motion in an order which stated:

> 3. The Personal Property leases listed on Exhibit B are rejected as of August 31, 2007.
>
> 4. All Personal Property at the approximately ninety (90) Locations that is subject to a blanket lien claimed by Chase is abandoned to Chase by First Magnus Financial and the bankruptcy estate of First Magnus Financial effective as of September 4, 2007.

Order (Sept. 8, 2007), at 2 (Dkt. #142).

The Liquidating Trustee alleged that, contemporaneously with the entry of the order, Chase entered the office locations of Debtor and "tagged all personal property as theirs." Objection to Travis County's Motion (Oct. 6, 2008), at 2, ¶4 (Dkt. # 4725). Some other personal property as well as property that was currently in use at Debtor's Tucson headquarters was excluded from the order. See Order (Dkt. #142), at 3, ¶8.

Subsequently, Debtor filed a second motion to reject additional nonresidential real property leases and personal property leases, as listed on its attached "Exhibit A," and also "to abandon any personal property associated with the former branch locations listed on Exhibit A." Motion for an Order (November 8, 2007), at 2 (Dkt. # 567).

There were no objections to the second motion, and it was granted. Specifically, all personal property on Exhibit A was abandoned as of December 7, 2007. Order (Dec. 19, 2007) (Dkt. # 896).

Once again, personal property currently being used at Debtor's headquarters was excluded from the order. Id. at 2, ¶8. According to papers filed in another proceeding, Debtor retained approximately 20 GE copiers at its Tucson headquarters. (Dkt. # 4712, at 3, ¶6 & Exh. A).

Meanwhile, on October 15, 2007, Debtor filed its Chapter 11 Plan of Liquidation. Section 4.1.2 of the Initial Plan stated:

> <u>Administrative Bar Date</u>. Requests for payment of Administrative Expense Claims must be filed and served pursuant to the procedures set forth in the Confirmation Order or notice of entry of the Confirmation Order, no later than thirty (30) days after the Confirmation Date.

Plan of Liquidation Dated October 15, 2007 (Dkt. # 370). The First and Second Amended Plans included the same language (Dkt. ## 501 and 1065).

The court authorized the Clerk to post the Disclosure Statement and Plan on the court's website.

On October 30, 2007, the court set a claims filing deadline of December 3, 2007, for the vast majority of prepetition claimants, including governmental units (Dkt. # 510).

Then, the court entered orders approving the Second Amended Disclosure Statement (Dkt. #1080) and confirming the Second Amended Plan of Liquidation (Dkt. #1589). The Disclosure Statement, Plan and Confirmation Order set forth a bar date for administrative expense claims to be filed no later than thirty (30) days after the confirmation date (February 29, 2008), which date was March 30, 2008. <u>See</u> Liquidating Trustee's Objection (Oct. 6, 2008), at 4, ¶12 (Dkt. # 4725).

On August 27, 2008, Travis County filed its Motion and Proof of Secured Claim in the amount of $14,388.41, and Notice of Tax Lien. Travis County alleged that it was not aware of the bankruptcy filing until mid-July 2008, when the County Attorney's Tax Litigation Division received correspondence from Debtor in response to a Notice of Hearing on the merits in the cause of <u>Travis County, et al. vs. First Magnus Financial Corporation</u>, Cause No. D-1-GV-08-001069, filed in the Travis County District Court. Debtor's July 8, 2008, letter was attached to the motion, in which Debtor had informed Travis County of the Arizona bankruptcy filing.

The Liquidating Trustee objected, stating that Travis County presented no evidence or excuse for the late filing. He maintained that the bar date should be enforced in order to protect judicial integrity

4

and efficiency, and that the untimely claim would be prejudicial to the bankruptcy estate. On the merits, the Liquidating Trustee denied any obligation to pay ad valorem tax on property in which it had no interest after August 31, 2007, pursuant to the September 2007 order.

**ISSUES**

1. Whether "cause" and "excusable neglect" exist in order to extend the filing deadline for Travis County's proof of claim.
2. Whether Travis County's secured claim for 2007 personal property taxes should be disallowed in full or in part following lease rejection and/or abandonment of the personal property.
3. Whether Travis County's lien can be enforced against property of the estate.

**A. Jurisdiction**

The court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). This is a "core" matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (K).

**B. Discussion**

**(1) Late-Filed Claim**

In order to recover against a bankruptcy estate, creditors typically must file proofs of claim. See Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 383, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); FED. R. BANKR. P. 3003(c)(2). The Federal Rules of Bankruptcy Procedure permit bankruptcy courts to establish bar dates by which proofs of claim must be filed or thereafter forfeited. See FED R. BANKR. P. 3003(c)(3).

Travis County filed its motion and proof of claim for 2007 personal property taxes on August 27, 2008, whereas the deadlines were December 3, 2007, for most prepetition claims and March 30, 2008 for administrative expense claims.[3] Travis County asserts that the claim was tardy because it did not have actual knowledge of the bankruptcy or claims bar date until mid-July 2008. It then filed its motion and proof of claim approximately one month later, after compiling the delinquent tax information. See Motion (Dkt. # 4069), at 2, ¶3.

Rule 3003(c)(3) also provides that the court "for cause shown may extend the time within which proofs of claim or interest may be filed." Rule 9006 must be construed to govern the permissibility of late filings in chapter 11 bankruptcies. When the bar date has passed, Rule 9006(b)(1) "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect.'" Pioneer, 507 U.S. at 382-83, 113 S.Ct. at 1491-92.

Pioneer directs the court to consider excusable neglect after consideration of various factors, including the reason for the delay; the danger of prejudice to the debtor; the length of delay and its impact on judicial proceedings; and whether the claimant acted in good faith. Id., 507 U.S. at 395, 113 S.Ct. 1498. Travis County bears the burden of presenting facts demonstrating excusable neglect. In re Cahn, 188 B.R. 627, 631 (9th Cir. BAP 1995). It is an "equitable inquiry." Pioneer, 507 U.S. at 389, 113 S.Ct. at 1495.

Insufficient notice of the bar date may be sufficient cause to extend the bar date. See In re Pettibone Corp., 123 B.R. 304, 310 (Bankr. N.D. Ill. 1990); In re Herd, 840 F.2d 757, 758 n.2 (10th Cir. 1988) ("[N]otice which is constitutionally deficient satisfies the 'for cause' standard contained in the rule."); In re Dix, 95 B.R. 134 (9th Cir. BAP1988) (lack of actual notice of the claim bar date may be sufficient to support a finding of excusable neglect so as to warrant extension of the bar date in a chapter 11).

Due process and the Bankruptcy Rules entitle the creditor to adequate and reasonable notice of bar dates. See, e.g., New York v. New York, New Haven & Hartford R.R Co., 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953) ; Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); FED. R. BANKR. P. 2002(a)(7) (requiring "at least 20 days' notice by mail of . . . the time fixed [by the bankruptcy court] for filing proofs of claims pursuant to Rule 3003(c).").

---

[3] Travis County has not asserted a postpetition administrative expense claim.

In chapter 11 cases, "known" creditors are entitled to formal notice of the bankruptcy and claims date. See In re Maya, 78 F.3d 1395, 1398 (9th Cir. 1996), cert. denied, 519 U.S. 862 (1996). A debtor must list all creditors whose identity and claim are known. 11 U.S.C. § 521(a). Even contingent and disputed creditors must be scheduled, and the fact that there might be thousands of creditors does not lessen the debtor's duty to file a list of creditors. See In re Circle K Corp., 198 B.R. 784, 790 (Bankr. D. Ariz. 1996). "The burden is on debtor to give formal notice. A creditor who is not given notice, even with actual knowledge of the case, does not have a duty to investigate and inject himself into the proceedings." Id. at 789 (citing Maya Constr., 78 F.3d at 1399).

There was no evidence in the record that Travis County received formal notice of either the bankruptcy or the claims bar date. The Liquidating Trustee maintains that the notice, orders and plan were posted on the court's website. Notice by publication is a customary substitute "where it is not reasonably possible or practicable to give more adequate warning." Mullane, 339 U.S. at 317, 70 S.Ct. at 658. If the creditor's "name and address are reasonably ascertainable, [it] is entitled to have that information sent directly to [it], but, if not, then publication of the information in the newspaper or other periodical that [it is] most likely to see is permitted." Fogel v. Zell, 221 F.3d 955, 963 (7th Cir.2000) (alterations and emphasis added; citations omitted). Known creditors, such as Travis County, must be notified directly. Even if publication were appropriate, it would not have been unreasonable for Travis County, without knowledge of the bankruptcy, to fail to view the Arizona bankruptcy court website.

The Liquidating Trustee's argument that the late claim will cause judicial inefficiency and prejudice to the estate rings hollow in light of Travis County's right to due process and Debtor's duties to provide adequate notice of the bar date to known creditors. In addition, judicial integrity and efficiency is promoted by allowing the late filing in this case. Although the plan has already been confirmed, the Liquidating Trustee need only administer the claim for payment as allowed. The Liquidating Trustee's case support is factually distinguishable. In In re Montaldo Corp., 209 B.R. 40 (Bankr. M.D.N.C. 1997), the lessor had notice of the bar date but did not file its claim for lease rejection damages until seven months after the bar date. The bankruptcy court held that the delay was inexcusable and would impact the judicial process and prejudice the other parties in interest. Id. at 47-49. In addition, the Liquidating Trustee's

concern that this claim will create a "slippery slope" is not persuasive. Judicial integrity demands that valid claims be addressed in the bankruptcy case.

The court finds and concludes that cause and excusable neglect have been established to grant an extension of the bar date for Travis County to file its proof of claim.

## **(2) Travis County's Secured Claim**

A proof of claim is deemed allowed and constitutes prima facie evidence of the claim's validity and amount unless a party in interest objects under § 502(a). <u>In re Lundell</u>, 223 F.3d 1035, 1039 (9th Cir. 2000); FED. R. BANKR. P. 3001(f).

The basic rule in bankruptcy "is that state law governs the substance of claims." <u>See Raleigh v. Ill. Dept. of Rev.</u>, 530 U.S. 15, 20, 120 S.Ct. 1951, 1955, 147 L. Ed. 2d 13 (2000). In the case of tax claims, the ultimate burden of proof rests with the taxpayer if that is the substantive state law. <u>Id.</u>, 530 U.S. at 26, 120 S.Ct. at 1958. In Texas, once a prima facie case of delinquent taxes is shown, the burden shifts to the taxpayer to introduce competent evidence that he has paid the full amount of taxes, penalties and interest, or that there is some other defense that applies to his case. If the prima facie case is rebutted, then, under a legal sufficiency analysis, the fact-finder resolves matters of weight and credibility among the competing items of evidence. <u>Maximum Med. Imp., Inc. v. County of Dallas</u>, 272 S.W.3d 832, 835-36 (Tex. App. 2008).

Travis County has asserted a secured lien claim for $14,388.41 for the unpaid 2007 personal property tax, pursuant to TEX. TAX CODE § 32.01, which provides, in pertinent part:

>   (a) On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest <u>ultimately imposed for the year on the property</u>, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property...

TEX. TAX CODE § 32.01(a) (emphasis added.) Under Texas law, a property owner's liability for ad valorem taxes for any given year arises and is liquidated as of January 1 of that year regardless of when the tax is assessed. <u>Jackson v. Stonebriar P'ship</u>, 931 S.W.2d 635, 637-38 (Tex. App. 1996).

8

In regards to the extent of the lien, subsection (b) further provides that a personal property lien

> attaches to all inventory, furniture, equipment, and other personal property that the property owner owns on January 1 of the year the lien attaches or that the property owner subsequently acquires.

TEX. TAX CODE § 32.01(b).

The property to which the statute refers is the category of property taxed, rather than each individual item of property. Dallas v. Cornerstone Bank, N.A., 879 S.W.2d 264, 270 (Tex. App. 1994) (tax lien is "floating" lien in all inventory); 69 Tex. Jur. 3d Taxation § 590 (2009). Presumably, such "floating" lien attaches to all personal property belonging to the owner no matter where it is located. Cf. In re Eschenbach, 267 B.R. 921, 923-24 (Bankr. N.D. Tex. 2001) (holding that similarly broad language in federal tax statute, 26 U.S.C. § 6321–stating that a federal tax lien arises "upon all property and rights to property, whether real or personal, belonging to such person"-- eliminates the need for the IRS to file a notice of lien in every county or state where property is located or acquired).

Here, the lien arguably attached to Debtor's tangible personal property, because intangible personal property is not taxable, with certain exceptions that do not apply to these facts. TEX. TAX CODE § 11.02. Travis County has not asserted, nor does Texas law provide, that the personal property tax lien also attached to the owner's real property. Thus, on January 1, 2007, Travis County's lien attached to the tangible personal property owned by Debtor on that date. As of the petition date, Debtor reportedly had at least $27,667,539 in tangible personal property located in various jurisdictions.

The lien is perfected on attachment, TEX. TAX CODE § 32.01(d), and, essentially, has priority over all other consensual and contractual liens, whether or not such liens were created and perfected before the tax lien was perfected. Id. § 32.05. The lien has not been avoided, nor is it avoidable under § 545. See 11 U.S.C. § 545(2); In re Winn's Stores, Inc., 177 B.R. 253, 257 (Bankr. W.D. Tex. 1995) (DIP's hypothetical BFP status does not empower it to avoid the tax liens because Texas law requires a hypothetical BOC–Buyer in the Ordinary Course, and the requirements are not the same.); TEX. TAX CODE § 32.03.

In Texas, "property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed . . . .A person is not relieved of the obligation because he no longer owns the property." TEX. TAX CODE § 32.07(a).

Ownership of encumbered or leased property is governed by § 25.06, which provides, in pertinent part:

> (a) [P]roperty encumbered by a leasehold or other possessory interest or by a mortgage, deed of trust, or other interest securing payment or performance of an obligation shall be listed in the name of the owner of the property so encumbered.

TEX. TAX CODE § 25.06(a).

The Liquidating Trustee has not disputed that, as of January 1, 2007, Debtor was the responsible party for all of the personal property at issue.[4] Notwithstanding state law, and the facts which existed on January 1, 2007, the Liquidating Trustee relies on federal law, specifically 11 U.S.C. § 502(b)(3), in challenging the estate's liability for taxes on the personal property in which it relinquished all rights pursuant to the 2007 abandonment orders.

Clearly, some if not all of the property assessed by Travis County was the same property that was abandoned from the estate. On the other hand, it is also clear that Debtor did not abandon all of its personal property to which the Texas lien attached. In particular, it may have retained artwork, furniture or office equipment, e.g., the equipment at Debtor's headquarters.

Section 502 deals with the allowance and disallowance of claims. Ad valorem claims must satisfy § 502(b)(3) in order to be an allowed claim, i.e., they must not exceed "the value of the interest of the estate" in the property. Section 502(b)(3) provides in full:

---

[4] Debtor's objection states, at p. 2, that, contemporaneously with the September 2007 Order, Chase tagged all of the property as theirs, which suggests that all of the personal property in Austin was owned by Debtors and was not leased from others. However, Exhibit B to the 2007 Motion lists equipment leases (Ref. ## 363, 421, 558-561). Nonetheless, the liability of Debtor versus these lessors for payment of ad valorem taxes has not been raised as an issue in this matter and need not be addressed by the court. We also note that it is acceptable under Texas law for lessors and lessees to agree to a proration of the ad valorem taxes. See A.J. Robbins & Co. v. Roberts, 610 S.W. 2d 854, 856 (Tex. App. 1980).

10
Case 4:07-bk-01578-EWH   Doc 5179   Filed 02/25/09   Entered 02/25/09 13:51:36   Desc
Main Document   Page 10 of 15

|   |   |   |
|---|---|---|
| 1 | (b) | Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that– |
| | . . . | |
| | (3) | if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property; |

11 U.S.C. § 502(b)(3).

In discussing the underlying purpose of § 502(b)(3), Collier on Bankruptcy states:

> The purpose of this section is to prevent the depletion of the debtor's estate by the payment of taxes assessed against property that has no value to the estate and is likely to be abandoned by the trustee. This section is designed to prevent injustice to unsecured creditors and to prevent a windfall to mortgagees and other lienors who would unfairly benefit from the payment of property taxes that would otherwise remain charges on the property.

4 Collier on Bankruptcy ¶ 502.03[4][a], at 502-34 (15th ed. rev. 2008).

The issue before the court is how to interpret the term "value of the interest of the estate in such property" in § 502(b)(3). The application of § 502(b)(3), when the assessed property has been abandoned but there remains in the estate other property of value to which the taxing authority's lien is attached, appears to be a matter of first impression in our Circuit.

The Ninth Circuit BAP has defined "value of the interest of the estate in such property" as equity for the estate in the assessed property. In re Carolina Triangle L'td P'ship, 166 B.R. 411, 417 (9th Cir. BAP 1994). It is axiomatic that there is no equity for the estate in property that has been abandoned. Id. In addition, abandoned property is deemed never to have come into the estate. This issue becomes even more problematic if one considers whether a debtor even has any equity in leased property.

That cannot logically be the end of the discussion, however. Carolina Triangle concerned a parcel of real property in North Carolina and a dispute arose, following abandonment of the property, as to whether the Debtor or the secured creditor owed the real property ad valorem taxes. Under the Code, as it existed, the tax lien could not attach to the property until after it had been abandoned. 166 B.R. at 417. Therefore, in Carolina Triangle there was neither a tax lien on the property, nor was there other estate property encumbered by the tax lien. The BAP determined that § 502(b)(3) required disallowance of the unsecured tax claim because otherwise the secured creditor would have received a windfall by selling the

property free of the lien, which would attach following abandonment, while the estate's unsecured creditors would have already paid the tax. Id. See also In re Transco Corp., 11 B.R 310, 312 (Bankr. N.D. Tex. 1981) (property foreclosed upon, leaving estate with no interest); see also In re Cummins, 656 F.2d 1262, 1264 (9th Cir. 1981) (priority unsecured claim for ad valorem personal property taxes extended only to the amount of equity in sale proceeds); In re Skinner Lumber Co., 35 B.R. 31, 32 (Bankr. D. S.C. 1983) (taxing authority's claim became unsecured when the property subject to the lien was abandoned, therefore, former § 502(b)(4) (now § 502(b)(3)) applied to disallow the claim.); In re Damar Mach., Inc., 30 B.R. 256, 257-58 (Bankr. D. Me. 1983) (equipment that was repossessed prepetition provided no benefit to the estate and the city's tax claim was disallowed under former § 502(b)(4) (now § 502(b)(3)).

In contrast, where a taxing authority holds a valid secured claim against property of the estate the unsecured creditors are not similarly threatened. On our facts, Debtor had other personal property to which the Travis County lien attached besides the subsequently abandoned property. In addition, Travis County's lien primed all other liens on such property. TEX. TAX CODE § 32.01.

A case more analogous to our facts is Universal Seismic Assocs., Inc., 288 F.3d 205 (5th Cir. 2002). There, the debtor, who filed bankruptcy on September 7, 1999, had equipment that was purchased or leased from third parties. Id. at 206. Soon after filing for bankruptcy, the debtors returned "almost all" of the personal property to the secured creditors/lessors pursuant to agreements and orders of the bankruptcy court. The debtors retained some vehicles, which were then sold for $54,500, and office furnishings valued at $3,700, equaling a combined value of $58,200. Id. at 207.

The Texas taxing authorities filed proofs of claim totaling $81,054.73 for ad valorem personal property taxes. Notwithstanding the surrender/abandonment of most of the personal property, the taxing authorities alleged a secured claim up to the full value of the remaining property. Id.

The debtor, although apparently recognizing the existence of the taxing authorities' lien, claimed, as does the Liquidating Trustee in this case, that § 502(b)(3) applied to remove the underlying claims for taxes on property that the estate no longer had an interest in, i.e., the property that was either abandoned or sold for no net gain to the secured creditors/lessors just prior to and subsequent to the bankruptcy filing. See id.

Case 4:07-bk-01578-EWH    Doc 5179    Filed 02/25/09    Entered 02/25/09 13:51:36    Desc
Main Document    Page 12 of 15

The Fifth Circuit noted that the interpretation of § 502(b)(3) was a matter of first impression for it, and that the court would not seek out conflicts between state and federal law where none existed. Id. It determined that the tax lien was established on all of the debtor's personal property as of January 1, 1999, prepetition. Therefore, it found that a logical reading of § 502(b)(3)'s phrase "value of the interest of the estate" was the "gross value" of the debtor's personal property as of the petition date, and the taxing authorities could not claim more than that value. Since the bankruptcy court found that the gross value of the personal property retained by the bankruptcy estate was $58,200, the Fifth Circuit determined that the taxing authorities had a secured claim for taxes up to that amount. Id. at 208.[5]

A proof of secured claim can only be allowed by the bankruptcy court if the property that secures the debt is property of the estate. See § 502(a). Once property that is subject to a security interest becomes a part of the estate, § 506(a) determines how the secured claims against that property will be treated in the bankruptcy.

Notwithstanding the abandonment of most of Debtor's personal property pursuant to the 2007 orders, the gross value of the remaining personal property as of the petition date may have exceeded the Travis County claim for $14,388.41. Debtor did not bring an action to challenge the validity and extent of the secured claim, nor was the lien avoided through other statutes.

Therefore, the court holds that Travis County has an allowed secured claim in the amount of the lesser of $14,388.41 or the gross value of the tangible personal property remaining in the estate (other than the abandoned property) as of the petition date.[6]

Travis County also filed a proof of unsecured priority claim under § 507(a)(8) for any unsecured portion of the claim. In pertinent part, § 507(a)(8) provides an eighth-priority distribution for allowed unsecured claims of governmental units for "a property tax incurred before the commencement of

---

[5] Furthermore, the amount of secured claims encumbering the property is not deducted when determining gross value. See In re Milit, Inc., 231 B.R. 604, 607-08 (Bankr. W.D. Tex. 1999). In Milit, Judge Leif Clark applied an "holistic" construction of § 502(b)(3), with other sections of the Bankruptcy Code as well as Texas law, to conclude that "value of the interest of the estate" refers to the gross value of the property that entered the bankruptcy case at the commencement of the case, rather than to the equity in the property.

[6] To the extent that a valuation dispute arises, it may be brought before the court in a separate proceeding.

13

the case and last payable without penalty after one year before the date of the filing of the petition."
11 U.S.C. § 507(a)(8)(B).

The effect of § 502(b)(3) is to eliminate all unsecured prepetition tax claims that might otherwise obtain priority under § 507(a)(8)(B). <u>Cummins</u>, 656 F.2d at 1267. Consistent with our analysis and the purpose of § 502(b)(3), to the extent that Travis County's claim is unsecured, and therefore in competition with the estate's unsecured creditors, Travis County is not entitled to an unsecured priority claim against the estate for the deficiency. <u>See</u> <u>Universal Seismic Assocs.</u>, 288 F.3d at 208 (under § 502(b)(3), taxing authorities could not claim more than the value of the interest the debtors had in the estate property); <u>In re Precision Concepts, Inc.</u>, 305 B.R. 438, 442 (Bankr. M.D. N.C. 2004) (a claim disallowed under
§ 502(b)(3) is disallowed for all purposes); <u>see also</u> 3 <u>Norton Bankr. L. & Prac. 3d</u> § 48:31 ("Obviously, to the extent that the claim is disallowed under this provision, the tax claim is not granted the priority of Code § 507(a) . . . "); <u>Milit</u>, 231 B.R. at 607 (§ 502(b)(3) converts property tax claims into non-recourse debt in bankruptcy).

## **CONCLUSION**

Travis County was entitled to file a tardy proof of claim for its ad valorem personal property taxes, having established cause and excusable neglect due to lack of actual and formal notice of the bankruptcy and claims deadline.

Travis County has an allowed secured claim, which is payable by the estate, up to the lesser of $14,388.41 or the gross value of the remaining tangible personal property of the estate as of the petition date. Travis County's request for an unsecured priority claim for any difference between the gross value and the full amount of its claim is prohibited by § 502(b)(3).

A separate order will be issued contemporaneously with this ruling.

DATED AND SIGNED ABOVE.

| | |
|---|---|
| 1 | COPIES to be sent by the Bankruptcy Notification Center ("BNC") to the following: |
| 2 | John R. Clemency |
| | Todd A. Burgess |
| 3 | Craig Solomon Ganz |
| | GREENBERG TRAURIG, LLP |
| 4 | 2375 Eat Camelback Road, Suite 700 |
| | Phoenix, AZ 85016 |
| 5 | ATTORNEYS FOR MORRIS C. |
| | AARON, LIQUIDATING TRUSTEE |
| 7 | Karon Y. Wright |
| | Assistant County Attorney |
| 8 | Travis County |
| | P.O. Box 1748 |
| 9 | Austin, TX 78767 |
| 10 | Office of the United States Trustee |