Sean P. O'Brien (SBN 010540)
**GUST ROSENFELD P.L.C.**
100 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2553
Telephone: 602-257-7460
Facsimile: 602-340-1538
E-mail: spobrien@gustlaw.com

    - and -

Joseph M. Coleman (Texas SBN 04566100)
George H. Barber (Texas SBN 01705650)
**KANE RUSSELL COLEMAN & LOGAN PC**
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Telephone: 214-777-4200
Telecopier: 214-777-4299
E-mail: jcoleman@krcl.com
E-mail: gbarber@krcl.com

**ATTORNEYS FOR LARRY LATTIG, TRUSTEE**
**FOR THE FIRST MAGNUS LITIGATION TRUST**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | § § § § § § | No. 4:07-bk-01578-JMM |
| FIRST MAGNUS FINANCIAL CORPORATION, | | (Chapter 11) |
| Debtor. | | |

## NOTICE OF FILING LITIGATION TRUSTEE'S FINAL REPORT AND ACCOUNTING

As reported in the Litigation Trustee's Periodic Status Report dated July 31, 2013 [Dkt. 7360], the Litigation Trustee completed the administration of the Litigation Trust, which terminated on May 1, 2013. In anticipation of entering a final decree closing the case, and pursuant to Paragraph 10 (c) of the Litigation Trust Agreement, the Litigation Trustee hereby submits his Final Report and Accounting, which is attached hereto and was accepted and approved by the Advisory Board in or about April, 2014.

Dated this 17th day of June 2015.

                              **KANE RUSSELL COLEMAN & LOGAN PC**


                              By:/s/Joseph M. Coleman_____

                              Joseph M. Coleman
                              (Texas SBN 04566100)
                              George H. Barber,
                              (Texas SBN 01705650)
                              3700 Thanksgiving Tower
                              1601 Elm Street
                              Dallas, Texas 75201
                              Telephone:  214-777-4200
                              Telecopier:  214-777-4299
                              E-mail: jcoleman@krcl.com
                              E-mail: gbarber@krcl.com

                              and

                              **GUST ROSENFELD P.L.C.**
                              Sean P. O'Brien – SBN 010540
                              100 East Washington St., Suite 1600
                              Phoenix, Arizona 85004-2553
                              Telephone:  602-257-7460
                              Facsimile: 602-340-1538
                              E-mail: spobrien@gustlaw.com


                              **ATTORNEYS FOR LARRY LATTIG, TRUSTEE**
                              **FOR THE FIRST MAGNUS LITIGATION TRUST**

# FIRST MAGNUS LITIGATION TRUST

# Litigation Trustee's Final Report and Accounting



# I. OVERVIEW

3598164 v1 (63210.00002.000)

## Litigation Trustee's Final Report and Accounting

The First Magnus Litigation Trust ("Trust" or "Litigation Trust") was formed pursuant to: (1) the *Second Amended Plan of Liquidation* (the "Plan") in the First Magnus Financial Corporation bankruptcy case, Case No. 4-07-bk-01578-JMM (the "Bankruptcy Case"), in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court"); (2) the *Order Confirming Second Amended Plan of Liquidation* entered on February 28, 2008 (the "Confirmation Order"); and (3) the *Litigation Trust Agreement* executed as of April 20, 2008 (the "Trust Agreement"). The Trust was formed on May 1, 2008, when the Plan became effective. Larry Lattig was duly appointed Trustee for the Trust at that time (the "Trustee" or "Litigation Trustee"). First Magnus Financial Corporation is referred to herein as "FMFC" or the "Debtor."

The Trust is one of two trusts created pursuant to the Plan and Confirmation Order. The Trust was charged with pursuing "Estate Tort and Other Claims" as defined in the Plan, and resolving certain claims against the FMFC Estate. The second trust, the First Magnus Liquidating Trust ("Liquidating Trust"), was created for the purpose of pursuing all other claims, liquidating assets, objecting to all other claims not specifically assigned to the Trust, and making disbursements under the Plan, and was administered by the Liquidating Trustee ("Liquidating Trustee").

As more fully explained below, the Trust:

- Obtained gross cash recoveries of $20,727,090.22.

- Generated total cash payments for the benefit of creditors of $8,387,773.33.

- Reduced claims in the Bankruptcy Case by more than $636 million.

There are no remaining assets expected to be received in or by the Trust, and the duration of the Trust terminated as of May 1, 2013.

3

3598164 v1 (63210.00002.000)

The Trustee has completed its wind-down activities, and has fully and finally administered the Trust. Accordingly, the Trustee submits this final report and accounting, which provides an overview of the Trust's activities, details the recoveries and other benefits obtained, and itemizes the Trust's expenses. The Trust previously submitted its Final Accounting to the Advisory Board, which was accepted and approved in or about April, 2014.

4

3598164 v1 (63210.00002.000)

## OVERVIEW OF LITIGATION TRUST ACTIVITIES

| I.  Litigation Trust - Cash In | | |
|---|---|---|
| | | |
| 1)  Total Cash Recoveries | $20,727,090.22 | |
| 2)  Liquidating Trust Funding of Litigation Trust[1] | $ 2,250,000.00 | |
| 3)  Bank Account Income | $        1,302.97 | |
| Total Cash In | | $22,978,393.19 |

| II.  Litigation Trust - Cash Out | | |
|---|---|---|
| | | |
| 1)  Net Cash Paid to Liquidating Trust[2] | $ 4,425,000.00 | |
| 2)  Paid to Priority WARN Act Claimants [3] | $ 2,507,304.46 | |
| 3)  Total Expenses Paid [4] | $16,044,618.28 | |
| 4)  Bank Account Fees and Charges | $        1,470.45 | |
| Total Cash Out | | $22,978,393.19 |

---

[1] Funding of expenses of Trust by the Liquidating Trust pursuant to the Plan, Art. VII.

[2] Total cash paid to Liquidating Trust, including the return of $2,250,000 initially funded by the Liquidating Trustee pursuant to the Plan, Art. VII, for a net amount paid to the Liquidating Trustee of $2,175,000.

[3] WARN Act Claimants consisted of certain former FMFC employees that were eligible for relief under the WORKER ADJUSTMENT RETRAINING ACT due to their termination without warning shortly before FMFC filed for bankruptcy. *See* discussion *infra* at 8-13. In addition to the $2,507,304.46 distributed from recoveries by the Trustee to the WARN Claimants, the Trustee also secured an additional distribution to the WARN Claimants in the amount of $1,455,468.87 directly from the bankruptcy trustee for First Magnus Capital, Inc., the parent company of FMFC, for a total cash benefit paid in the amount of $3,962,304.46 to those former FMFC employees eligible for relief.

[4] *See* Litigation Trusts Expenses at 22.

5

3598164 v1 (63210.00002.000)

| III. Litigation Trust - Other Benefits | | |
|---|---|---|
| | | |
| 1) Reduction in Amount of Assigned Claims | | $636,156,989.81 |
| 2) Other WARN Act Claim Related Benefits[5] | | $    8,138,398.61 |

| IV. Litigation Trust – Summary Results[6] | | |
|---|---|---|
| | | |
| 1) Payments Conferred for Benefit of Creditors[7] | | $8,387,773.33 |
| 2) Reduction in Claims and Other Savings | | $644,295,388.42 |
| 3) Return on Investment – Payments for Benefit of Creditors [8] | | 129% |

---

[5]  WARN claimants sought damages in the form of administrative expenses and other priority claims, in both a class claim covering more than 1,000 employees, and in 265 individually filed claims, pursuant to 11 U.S.C. § 503(b)(1)(A). The amount sought by the WARN Claimants was not less than $6.3MM and may have exceeded $10.1MM (exclusive of statutory damages, interest, and attorneys' fees). All WARN Claims were released and discharged as part of the settlement negotiated by the Trustee, which resulted in a net savings of no less than $8,138,398.61, including the release of reserves in the amount of $2,650,000 held by the Liquidating Trustee, and were in addition to the total cash benefit paid by the Litigation Trust to the former FMFC employees eligible for relief under the WARN Act in the amount of $2,507,304.46. *See infra* at 8-13.

[6]  Due to funding of litigation expenses and the corresponding time period necessary to pursue litigation, the Liquidation Trust incurred interest charges.

[7]  Total payments conferred for the benefit of FMFC creditors consists of the amount paid to the Liquidating Trustee ($4,425,000, which included the return of the $2,250,000 funded by the Liquidating Trust), amount paid by the Litigation Trust to the former FMFC employees eligible for relief under the WARN Act ($2,507,304.46), and amount secured by the Litigation Trustee for the former FMFC employees eligible for relief under the WARN Act from the bankruptcy trustee for First Magnus Capital, Inc., the parent company of FMFC ($1,455,468.87). *See infra* at 8-13.

[8]  Calculated as total cash recoveries divided by total expenses paid.

6

3598164 v1 (63210.00002.000)

# II.  RECOVERIES

3598164 v1 (63210.00002.000)

<u>**DESCRIPTION OF LITIGATION TRUSTEE RECOVERIES**</u>

1.     <u>FMCI, Taberna, and the WARN Claimants</u>

a.  <u>Overview</u>

The FMCI Bankruptcy settlement (detailed below) was a significant achievement for the Trustee.  In short, and among other things, the FMCI Bankruptcy settlement:

(i)     Resolved the priority and administrative claims of the WARN Claimants in the FMFC and FMCI Bankruptcy Cases, which were no less than $6.3MM and may have been in excess of $10.1MM;

(ii)     Allowed the Trustee to recover approximately $4.7MM of the $6MM in available assets in the FMCI Bankruptcy Case;

(iii)     Lifted reserves in the FMFC Bankruptcy Case, which made an additional $2.65MM available for distribution to FMFC creditors;

(iv)     Eliminated FMCI's claim against FMFC, which was in excess of $37MM;

(v)     Saved the time and expense associated with litigating the WARN Claims to fruition, which would have further hindered distribution to FMFC creditors; and

(vi)     Captured the competing claims asserted by FMCI and Taberna against FMFC's former directors, officers, shareholders, and affiliated entities, which maximized the Trustee's ability to monetize the claims for the benefit of FMFC's creditors and eliminated the risk that FMCI and/or Taberna recovered in lieu of the Trustee.

b.  <u>FMCI</u>

On June 15, 2005, the shareholders of FMFC formed First Magnus Capital, Inc. ("<u>FMCI</u>"), for the ostensible purpose of establishing a federally chartered savings and loan institution (the "<u>Bank</u>").  The UNITED STATES OFFICE OF THRIFT SUPERVISION, in conjunction with various findings by the ARIZONA DEPARTMENT OF FINANCIAL INSTITUTIONS, refused to approve the formation of the Bank, and the endeavor to form the Bank was subsequently scuttled.

On June 21, 2006, the shareholders of FMFC exchanged all of their shares of capital stock in FMFC for capital shares of FMCI.  This share exchange resulted in the shareholders of FMFC owning 100% of FMCI, and FMCI owning 100% of FMFC.

The formation and operation of FMCI added a significant layer of complexity and risk with respect to the Trustee's ability to recover shareholder distributions, stock redemptions, and various loan repayments, as these distributions were made directly from FMCI — not FMFC.  Moreover,

3598164 v1 (63210.00002.000)

FMCI had asserted its own claims in the FMFC Bankruptcy Case in the amount of $37,482,071.92 [Claim No. 4551] (the "<u>FMCI Claim</u>"). The Trustee disputed the FMCI Claim.

On February 15, 2008, FMCI filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, in Phoenix, Arizona, initiating *In re First Magnus Capital, Inc.*, Case No. 2:08-bk-01494-GBN, in the United States Bankruptcy Court for the District of Arizona (the "<u>FMCI Bankruptcy Case</u>" and "<u>FMCI Bankruptcy Court</u>").

On September 25, 2008, the FMCI Bankruptcy Court issued its order confirming the First Amended Plan of Liquidation in the FMCI Bankruptcy Case (the "<u>FMCI Plan</u>" and "<u>FMCI Confirmation Order</u>"). Pursuant to the FMCI Plan and Confirmation Order, the First Magnus Capital, Inc. Liquidating Trust was created ("<u>FMCI Liquidating Trust</u>"), and Grant Lyon was appointed as its Liquidating Trustee (the "<u>FMCI Liquidating Agent</u>").

The Trust was a Class 2 Claimant in the FMCI Bankruptcy Case, and asserted claims against the FMCI Estate related to various transfers from FMFC to or for the benefit of FMCI (as outlined in the FMFC Insider Litigation) (the "<u>FMFC Claim</u>"). The FMCI Liquidating Trust disputed the FMFC Claim.

On January 28, 2009, the FMCI Liquidating Agent filed suit against Magnus Corporation and other former insiders of FMFC and FMCI, in a suit styled *Lyon v. Magnus Corp., et al. (In re First Magnus Capital, Inc.)*, Case No. 2:08-bk-01494-GBN, Adv. No. 2:09-ap-00102-GBN, in the FMCI Bankruptcy Case ("<u>FMCI Insider Litigation</u>"). The FMCI Insider Litigation sought to recover certain transfers to certain former insiders of FMFC and FMCI, and obtain payment on certain debts it alleged were owed. Many of the claims asserted in the FMCI Insider Litigation related to the same or related transfers at issue in the FMFC Insider Litigation, including, but not limited to, officer bonuses, shareholder distributions, stock redemptions, and loan repayments.

c. <u>Taberna</u>

Taberna Capital Management, LLC c/o The Bank of New York Mellon Trust Company, N.A., not in its individual capacity, but as Trustee under the Junior Subordinated Indenture with FMCI dated August 30, 2006, and as Property Trustee under the Amended and Restated Trust Agreement with FMCI dated August 30, 2006 (collectively, "<u>Taberna</u>") had an allowed claim against FMCI in excess of $25 million arising out of and related to the Taberna Note, which Taberna contended should be treated as a Class 3 Claim and share equally in distributions made to Class 2 and Class 3 Creditors (the "<u>Taberna Claim</u>"), which would have significantly diluted any recovery by the Trustee.

The FMCI Liquidating Trust and the Trustee objected to Taberna's request to deem the Taberna Claim a Class 3 Claim, and contended that the Taberna Claim was a Class 4 Claim, which was subordinate to Class 1, 2, and 3 Claims, and should be paid only after payment in full on all of those claims.

On October 27, 2008, Taberna filed a lawsuit against Gupreet S. Jaggi, former President and CEO of FMFC and FMCI, styled *Taberna Capital Management, LLC v. Jaggi*, Index No. 114434/08, in the Supreme Court of the State of New York, which was pending in Case No. 08-cv-11355 (DLC), in the United States District Court for the Southern District of New York ("<u>Taberna

3598164 v1 (63210.00002.000)

Litigation"). Taberna alleged that Jaggi had made material misrepresentation and omissions to Taberna that induced it to loan FMCI approximately $25MM prior to the FMFC bankruptcy filing.

    d. <u>WARN Claimants</u>

On August 30, 2007, the WARN Claimants filed a Class Action Adversary Proceeding in the FMFC Bankruptcy Case, Adv. Proc. No. 07-00060, alleging a single Rule 23 Class Claim for violations of the WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, 29 U.S.C. § 2101, *et seq.* (the "<u>WARN Act</u>"), and its California counterpart, CALIFORNIA LABOR CODE § 1400, *et seq.* (the "<u>WARN Adversary</u>"). The WARN Claimants asserted claims in the WARN Adversary against FMFC in favor of themselves and a class of approximately 1000 similarly situated former employees terminated without warning shortly before the FMFC bankruptcy filing.

Certain WARN Claimants also filed approximately 265 individual proofs of claims in the FMFC Bankruptcy Case that asserted WARN Claims (the "<u>Individual WARN Claims</u>"). In addition to filing the WARN Adversary and the Individual WARN Claims in the FMFC Bankruptcy Case, the WARN Claimants also filed a Class Proof of Claim on behalf of the approximately 1,000 similarly situated former employees of FMFC (the "<u>Class POC</u>").

The WARN Claimants sought a first priority administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A) in an amount not less than $6.3MM and that may have exceeded $10.1MM (exclusive of statutory damages, interest, and attorneys' fees), which they asserted equaled the sum of the WARN Claimants' unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions, and other ERISA benefits, for the 60 days following termination that would have been covered and paid under the then-applicable employee benefit plans had coverage continued for that period. Alternatively, the WARN Claimants sought a priority claim up to the first $10,950 of such an amount per WARN Claimant pursuant to 11 U.S.C. § 507(a)(4) and the remainder as a general unsecured claim (collectively, the "<u>WARN Claims</u>").

Because the WARN Claimants were terminated without warning on August 15, 2007, approximately 7 days prior to the FMFC bankruptcy filing, the WARN Claimants were likely entitled to an amount no less than $4.45MM (exclusive of attorneys' fees, interest, and statutory damages) as a first priority administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A). The WARN Claimants also sought an allowed administrative expense priority claim under 11 U.S.C. § 502 for the reasonable attorneys' fees and the costs in prosecuting the WARN Claims, which was likely to have been in an amount no less than $1.58MM. The WARN Claimants also asserted their right to statutory damages in excess of $16.7MM ($500 per day per eligible employee), and for all pre-judgment interest that began accruing August 16, 2007.

The FMFC Liquidating Trustee listed the WARN Claim in the FMFC Bankruptcy Case in the amount of $8,527,750. Pursuant to the FMFC Plan and FMFC Confirmation Order, the First Magnus Liquidating Trust was required to reserve a certain amount of funds with respect to the WARN Claims, and subsequently, reserved approximately $1.9 million in the Dividend Fund (as defined in the FMFC Plan) (the "<u>WARN Reserve</u>").

On November 24, 2008, the WARN Claimants filed a Class Proof of Claim against FMCI in the FMCI Bankruptcy Case, which asserted the same WARN Claims asserted in the FMFC Bankruptcy Case (the "<u>Class Claim in FMCI</u>").

3598164 v1 (63210.00002.000)

On April 15 and 16, 2009, the FMFC Liquidating Trustee filed objections to the Class POC and Individual WARN Claims in the FMFC Bankruptcy Case. On April 16, 2009, the FMCI Liquidating Agent filed an Objection to the WARN Class Claim in FMCI.

On June 12, 2009, the WARN Claimants filed a motion for class certification in the FMCI Bankruptcy Case, which was pending and subject to objections by the FMCI Liquidating Agent, the FMFC Litigation Trustee, and Taberna.

e.  <u>FMCI Settlement</u>

Pursuant to the FMCI Plan, Class 1 Claims were Priority Unsecured Claims and entitled to priority treatment over the FMFC Claim and the Taberna Claim. Class 1 Claims consisted of any priority claims, including those WARN Act Claims asserted by the WARN Act Claimants that were entitled to priority treatment pursuant to 11 U.S.C. § 507. In addition, Priority Tax Claims defined under § 4.2 of the Plan, including any tax liabilities determined to be owed to taxing authorities for certain States (collectively, the "<u>Tax Liabilities</u>"), were also entitled to priority treatment over the FMFC Claim and the Taberna Claim.

There was approximately $6MM in assets available in the FMCI Bankruptcy Estate, which was insufficient to satisfy the WARN Claims alone, never mind the FMFC Claim, or the Taberna Claim. As a result, the Trustee, FMCI Liquidating Agent, and WARN Claimants, entered into a Settlement Agreement dated September 16, 2009, which was subsequently approved by the FMCI Bankruptcy Court ("<u>WARN Settlement</u>"). *See* Final Order Approving Settlement (Dec. 21, 2009) [FMCI Dkt. 331].

Pursuant to the WARN Settlement:

(i)  The WARN Claimants received an Allowed Class 1 Claim in the amount of $5.5MM in the FMCI Bankruptcy Case ("<u>WARN Allowed Claim</u>"), agreed to dismiss with prejudice all claims in the FMFC Bankruptcy Case and related litigation, and agreed to lift the WARN Reserve ($1.9MM) in the FMFC Case;

(ii)  Distributions to the WARN Claimants on their WARN Allowed Claim were limited to $2.6MM, approximately $1.3MM of which were paid by FMCI directly, and the remaining $1.3MM were paid from distributions to the Litigation Trustee from FMCI;

(iii)  Any additional distributions to the WARN Claimants on the WARN Allowed Claim were contingent and limited exclusively upon subsequent net recoveries by the Trustee in the FMFC Insider Litigation (30% of the first five million ($1.5MM), and 28% of the second five million ($1.4MM));

(iv)  FMCI was responsible for the administrative expense related to the qualified settlement administrator appointed to distribute funds to the WARN Claimants, and the FICA and related taxes associated with the initial distribution;

3598164 v1 (63210.00002.000)

<blockquote>

(v)      The Trustee was responsible for any additional FICA and related taxes associated with any subsequent distributions based on the contingent portion of the WARN Allowed Claim;

(vi)      All Residual Funds held by the qualified settlement administrator were returned to the Trustee;

(vii)      All other proceeds from the FMCI Estate were distributed to the Trustee (70%) and Taberna (30%), respectively;

(viii)      The FMCI Liquidating Agent agreed to assign all rights, claims, and interests in the FMCI Insider Litigation to the Trustee; and

(ix)      The FMCI Liquidating Agent agreed to release the FMCI Claim in the FMFC Bankruptcy Case ($37.4MM).

</blockquote>

*See* Joint Motion [to Approve WARN Settlement] (Oct. 28, 2009) [FMCI Dkt. 274].

The Trustee, FMCI Liquidating Agent, and Taberna entered into separate confidential Settlement Agreement related to the WARN Settlement, dated September 16, 2009 ("Taberna Settlement").  In addition to the terms outlined in the WARN Settlement, Taberna agreed to assign the Trustee all claims related to the Taberna Litigation, which the Trustee proceeded to pursue and ultimately settle in conjunction with the FMFC Insider Litigation.

As a result of the WARN Settlement and Taberna Settlement, and related disbursements:

<blockquote>

(i)      Total recoveries by the Trustee from FMCI Estate on the FMFC Claim (exclusive of the FMFC Insider Litigation, the FMCI Insider Litigation, and the Taberna Litigation) were $4,761,648.70;

</blockquote>

3598164 v1 (63210.00002.000)

(ii)    All WARN Claims in the FMFC and FMCI Bankruptcy Cases were dismissed with prejudice, and total disbursements to the WARN Claimants through the Trustee were ultimately limited to $2,507,304.46 (a net savings in excess of $8MM); [9]

(iii)    More than 1000 former FMFC employees eligible to recover as WARN Claimant benefited from an additional $1.45MM distributed to the WARN Claimants directly from FMCI;

(iv)    Distributions on FMFC priority wage claims owed to employees on pre-petition wage claims were facilitated by the lifting of $2.65MM in reserves, and expedited resolution of the Trustee's claims in the FMCI Bankruptcy Case;

(v)    The FMCI Claim ($37.4MM) in the FMFC Bankruptcy Case was released; and

(vi)    The Trustee's claims against the FMFC Insiders were maximized by the assignments of the FMCI Insider Litigation and Taberna Litigation for the benefit of FMFC's creditors, and the risk that FMCI and/or Taberna recovered in lieu of the Trustee was eliminated.

2.    <u>FMFC Insider Litigation</u>

On February 26, 2009, the Litigation Trustee filed a lawsuit against more than 40 defendants, which included FMFC's former directors, officers, and shareholders. *See Lattig v. StoneWater Mortgage Corp., et al.* (*In re First Magnus Financial Corp.*), Adversary Proceeding No. 4:09-ap-00211-JMM, in the FMFC Bankruptcy Case (the "<u>FMFC Insider Litigation</u>").

On June 10, 2009, the Litigation Trustee entered into a confidential Settlement Agreement with StoneWater Mortgage Corp., and thirteen other defendants ("<u>StoneWater Settlement</u>"). In accordance with the StoneWater Settlement, a Notice of Dismissal was entered with respect to the settling defendants on June 17, 2009. *See* Notice of Dismissal of the Settlement Defendants with Prejudice and Accompanying Stipulation (June 17, 2009) (identifying the 14 defendants) [Dkt. 69].

---

[9]

**Net Other WARN Act Claim Benefits**

| | |
|---|---|
| Total Principal Liability on 5 Sites Entitled to Priority with Award of Attorneys' Fees & Costs | $6,040,234.20 |
| WARN Reserved Lifted: | $1,900,000.00 |
| Litigation Trust Reserve Lifted | $750,000.00 |
| Estimated Liquidating Trust WARN Fees & Costs Saved | $500,000.00 |
| FMCI Contribution to Payments to WARN Claimants | $1,455,468.87 |
| Less Paid Priority WARN Claims | ($2,507,304.46) |
| TOTAL | $8,138,398.61 |

3598164 v1 (63210.00002.000)

On June 9, 2010, the Litigation Trustee entered into a confidential Settlement Agreement and Mutual Release with respect to Martin Thomas, a former FMFC shareholder ("Thomas Settlement"). In accordance with the Thomas Settlement, a Notice of Dismissal was entered with respect to Thomas on June 25, 2010. *See* Stipulated Notice of Dismissal of Martin Thomas with Prejudice (June 25, 2010) [Dkt. 190].

On July 14, 2010, the Litigation Trustee entered into a confidential Settlement Agreement and Mutual Release with Jeff Arnold, the former President of Charter Insurance Group, which was a wholly owned subsidiary of First Magnus Lender Services, LLC ("Arnold Settlement"). In accordance with the Arnold Settlement, a Notice of Dismissal was entered with respect to Arnold on August 11, 2010. *See* Stipulated Notice of Dismissal of Arnold with Prejudice (Aug. 11, 2010) [Dkt. 217].

On November 29, 2010, the Litigation Trustee entered into a confidential Settlement Agreement and Mutual Release with Arvind Sharma, a former employee domiciled in India ("Sharma Settlement"). In accordance with the Sharma Settlement, a Notice of Dismissal was entered with respect to Sharma on January 26, 2011. *See* Stipulated Notice of Dismissal of Sharma with Prejudice (Jan. 26, 2011) [Dkt. 632].

On January 14, 2011, the Litigation Trustee entered into a confidential settlement agreement with the FMFC and FMCI former directors, officers, shareholders, and affiliated entities, resolving the claims against them in the FMFC Insider Litigation, FMCI Insider Litigation, and Taberna Litigation, respectively ("D&O Settlement"). In accordance with the D&O Settlement, the claims in the FMFC Insider Litigation, FMCI Insider Litigation, and Taberna Litigation were dismissed on February 3, 2011. *See* Stipulation for Dismissal with Prejudice in the FMFC Insider Litigation (Feb. 3, 2011) [Dkt. 639]; Stipulation for Dismissal with Prejudice in the FMCI Insider Litigation (Feb. 3, 2011) [Dkt. 149]; Stipulation for Dismissal with Prejudice in the Taberna Litigation (Feb. 3, 2011) [Dkt. 136].

3.  Great Southwest Mortgage

On September 11, 2007, one of two branch managers ("GSW Branch Managers") for the Great Southwest Mortgage division of FMFC filed a proof of claim in the Bankruptcy Case [Claim No. 2190-1], asserting a claim against FMFC in the amount of $2,656,786.34 ("Lutz POC"). On February 26, 2009, the Litigation Trustee filed an objection to the Lutz POC in the Bankruptcy Case [Dkt. 5185] ("Claim Objection"), and began an investigation into various payments made to the GSW Branch Managers pursuant to a Net Branch Employment Agreement, dated October 1, 2004. Subsequently, the Litigation Trustee brought two suits to recover certain payments made to the GSW Branch Managers during the course of the Net Branch Employment Agreement and/or offset the claims asserted in the Luts POC. *See Larry Lattig, Litigation Trustee for the First Magnus Litigation Trust v. Fred Kron, et al.*, Civil Action No. 2010-CV-004203, in the Superior Court of the State of Arizona ("Kron Litigation"); *Larry Lattig, Litigation Trustee for the First Magnus Litigation Trust v. Erik T. Lutz*, Case No. A-10-03885, in the Court of Common Pleas, Hamilton County, Ohio ("Lutz Ligation"). On May 13, 2011, the Litigation Trustee enetered into a confidential Settlement Agreement and Mutual Release resolving the Kron Litigatioon, which was subsequently dismissed on June 2, 2011. On April 11, 2013, the Litigation Trustee entered into a confidential Settlement Agreement and Mutual Release resolving the Lutz Litigation, which resulted in the disallowance of the Lutz POC in the amount of $2,645,836.34 [Dkt. 7339] and subsequent dismissal of the Lutz Litigation on April 25, 2013.

3598164 v1 (63210.00002.000)

4.    Aurora Bank Settlement

On August 19, 2009, the Trustee filed a lawsuit against Aurora Bank FSB f/k/a Lehman Brothers Bank, FSB and Aurora Loan Services for avoidance and recovery of alleged preferential and fraudulent transfers, for an accounting, and asserting objections to claims. Adversary Proceeding No. 4:09-ap-00957-JMM. The lawsuit concerned the complex and extensive business dealings between FMFC and the defendants, and sought recovery of several direct and indirect transfers including transfers related to: (i) indemnification agreements; (ii) repurchase agreements; (iii) repricing agreements; (iv) check transfers; and (iv) loan payoff transfers. The defendants raised several defenses, including particularly that such claims were barred under Section 546(e) of the Bankruptcy Code. This lawsuit was eventually settled under the terms of a Settlement Agreement dated February 8, 2012, which provided for payment to the Trustee of $2.5 million and withdrawal and disallowance of all claims filed by the defendants in the FMFC case. See Notice of Dismissal with Prejudice (February 16, 2010) [Adv. Dkt. 20].

5.    National Bank of Arizona

On February 27, 2009, the Trustee filed a lawsuit against the National Bank of Arizona alleging preferential set-offs under Section 553(b) of the Bankruptcy Code. Adversary Proceeding No. 4:09-ap-00219. That lawsuit was eventually settled for a cash payment of $275,000 to the Trust plus the disallowance of approximately $2.2 million of the Bank's $5 million claim filed in the FMFC case. See Order of Dismissal, Closing of Case and Allowing Claim of National Bank of Arizona (June 8, 2012) [Adv. Dkt. 98].

6.    Criminal Restitution

The Litigation Trustee responded to various subpoenas *duces tecum* from the United States of America for certain loan files and other documentation related to criminal cases pending against third parties in jurisdictions across the country. In conjunction with the production of the information requested, the Litigation Trustee submitted certain victim rights' claims for restitution in those matters. Subsequently, the Trust received restitution in the amount of $6,543.24.[10]

7.    Other Miscellaneous Collections

The Trustee also pursued several other preference claims. The Trustee's recovery on those other preference claims totaled approximately $375,000.

---

[10] Subsequent to the Advisory Board's approval of this accounting, the Litigation Trustee received three additional invoices from a third-party vendor in the aggregate amount of $15,139.85, and recovered an additional $1,795.35 in criminal restitution. The third-party vendor agreed to accept payment in the amount of $1,795.35 in full and final satisfaction of the outstanding amount owed, which was subsequently remitted.

3598164 v1 (63210.00002.000)

# III.  CLAIMS REDUCTION

3598164 v1 (63210.00002.000)

# LITIGATION TRUST'S CLAIMS REDUCTION

Under the Plan, the Trustee was responsible for the pursuit of certain claims defined as "Estate Tort and Other Claims," which included both the pursuit of claims and causes of action seeking to recover money, and the pursuit of claims objections seeking to reduce the amount of claims filed in the FMFC Bankruptcy Case. The Trustee was also responsible under the Plan to pursue other claims and causes of action, including claims objections, that were subsequently assigned to him by the Liquidating Trustee. By assignments dated August 23, 2008, October 27, 2008, and April 16, 2009, the Liquidating Trustee assigned to the Trustee responsibility to pursue claims against 23 additional entities and claims objections as to 21 claims totaling in excess of $600 million filed by those additional entities, that would have otherwise been handled by the Liquidating Trustee.

The Trustee was obligated to move quickly with respect to the claims objection process because the Plan required that claim objections be filed not later than 120 days after the confirmation date. Although there were some brief extensions to that deadline beyond 120 days that were granted by the Bankruptcy Court, the mere existence of the deadline required the Trustee to devote immediate time and attention to the prosecution of appropriate claim objections.

Further, the amount of filed and asserted claims in the Bankruptcy Case exceeded $1 billion. The resolution of claims objections, delineating appropriate claims that should be allowed and paid in a bankruptcy case, from redundant claims or other questionable claims that should be disallowed and not paid in a bankruptcy case, is an ordinary, customary part of the process that must be undertaken before any distributions to creditors can take place in any bankruptcy case.

In this Bankruptcy Case, the efforts by the Trustee on claims objections were highly successful. The Trustee successfully objected to and reduced administrative, priority, secured and unsecured claims in the Bankruptcy Case by approximately $636.2 million (exclusive of the WARN Claims discussed *supra*). The Trustee also obtained the disallowance of numerous other claims filed in the Bankruptcy Case in unliquidated or unknown amounts.[11] More detail regarding the Trustee's claim objection results is provided below.

---

[11] The quantified claims reduction included full or partial disallowance of general unsecured claims totaling $532.1 million, and disallowance of another $104 million of unsecured claims based on assignments to the Trustee of preference claim recoveries first from any claim distributions.

3598164 v1 (63210.00002.000)

**CLAIMS RESOLVED: $636,156,989.81**

**SUMMARY**

| | | | |
|---|---|---|---|
| Total Claims Disallowed | 64 | | |
| Total Amount of Claims Disallowed | $636,156,989.81 | | |

| DISALLOWED CLAIMS | PARTY | CLAIM NO. | CLAIM AMOUNT | DISALLOWED |
|---|---|---|---|---|
| | FM Equity XI | 4601 | $2,707,279.64 | $2,707,279.64 |
| | Amtrust | 3391-1 | $550.00 | $550.00 |
| | Amtrust | 3393-3 | $750.00 | $750.00 |
| | Amtrust | 3418-1 | $9,500.00 | $9,500.00 |
| | Amtrust | 3420-1 | $2,585.95 | $2,585.95 |
| | Amtrust | 3422-1 | $2,049.00 | $2,049.00 |
| | Amtrust | 3573-1 | $31,992.36 | $31,992.36 |
| | Amtrust | 3574-1 | $1,250.00 | $1,250.00 |
| | Amtrust | 3616-1 | $4,855.00 | $4,855.00 |
| | Amtrust | 3965-1 | $5,663.97 | $5,663.97 |
| | Amtrust | 3966-1 | $6,151.58 | $6,151.58 |
| | SPW Sullivan, Sr. | Scheduled | $4,750.00 | $4,750.00 |
| | SPW Herk | Scheduled | $10,000.00 | $10,000.00 |
| | SPW Chopra | Scheduled | $6,750.00 | $6,750.00 |
| | SPW Lemke | Scheduled | $7,500.00 | $7,500.00 |
| | SPW Johnson | Scheduled | $6,500.00 | $6,500.00 |
| | SPW Shoemake | Scheduled | $6,250.00 | $6,250.00 |
| | SPW Thrasher | Scheduled | $5,000.00 | $5,000.00 |
| | SPW Yonan | Scheduled | $5,417.00 | $5,417.00 |
| | SPW Wright | Scheduled | $6,000.00 | $6,000.00 |
| | Thomas W. Sullivan Sr. Revocable Trust | Scheduled | $20,000,000.00 | $20,000,000.00 |
| | Title Security Agency and Title Security Agency of Arizona | Scheduled | $937.11 | $937.11 |
| | Secured Non-Priority Gary Malis | Scheduled | $4,695.65 | $4,695.65 |
| | Secured Non-Priority Karl Young | Scheduled | $5,212.70 | $5,212.70 |
| | SPW Karl Young | Scheduled | $10,250.00 | $10,250.00 |
| | SPW Dominick Marchetti | Scheduled | $8,200.00 | $8,200.00 |
| | SPW Gary Malis | Scheduled | $8,250.00 | $8,250.00 |
| | SPW Gurprett Jaggi | Scheduled | $8,750.00 | $8,750.00 |
| | FMCI | 4551 | $37,482,071.92 | $37,482,071.92 |
| | Secured Non-Priority of FMLS | Scheduled | $1,430,379.75 | $1,430,379.75 |
| | Erik Lutz | 2701 | $2,645,836.34 | $2,634,886.34 |
| | LBHI [1] | 4699-2 | $287,360,955.88 | $222,354,465.93 |
| | Aurora Loan Services, LLC | 5044 | $1,497,480.00 | $1,497,480.00 |
| | Bank of America [2] | 4908 | $75,673,691.00 | $70,573,681.00 |
| | Countrywide Home Loans [3] | 4815 | $105,000,000.00 | $12,000,000.00 |
| | (1st payment of claim recovery) | | | $93,000,000.00 |
| | Countrywide Warehouse Lending [4] | 4748 | $30,538,086.00 | $25,533,086.00 |
| | Countrywide Home Loans | 376 | $68,329.00 | $68,329.00 |
| | Countrywide Bank [5] | 5180 | | |
| | FMLC Mortgage d/b/a Long Mortgage | 4776, 4771, 5071 | $112,907.00 | $112,907.00 |
| | GMAC | 5057 | $70,136.00 | $70,136.00 |
| | Homecomings Financial | 2339 | $624,137.00 | $624,137.00 |
| | Lehman Brothers Bank | 4697 | $110,112,272.00 | $110,112,272.00 |
| | Morgan Stanley [6] | 4569 | $9,600,000.00 | $6,600,000.00 |
| | Morgan Stanley [7] | 5026 | | |
| | Morgan Stanley [8] | 6114 | $346,406.00 | $0.00 |
| | National Bank of Arizona [9] | | $5,000,000.00 | $2,188,816.19 |

3598164 v1 (63210.00002.000)

**CLAIMS RESOLVED: $636,156,989.81**

**SUMMARY**

| | | | | |
|---|---|---|---|---|
| Total Claims Disallowed | 64 | | | |
| Total Amount of Claims Disallowed | $636,156,989.81 | | | |

| DISALLOWED CLAIMS | PARTY | CLAIM NO. | CLAIM AMOUNT | DISALLOWED |
|---|---|---|---|---|
| | Residential Funding Co. [10] | 4678 | $15,000,000.00 | $4,000,000.00 |
| | (1st payment of claim recovery) | | | $11,000,000.00 |
| | Redwood Mortgage [11] | 4544 | $8,500,000.00 | $8,500,000.00 |
| | RWT Holdings [12] | 5215 | $70,136.00 | $0.00 |
| | RWT Holdings [13] | 4623 | | |
| | Wells Fargo Bank [14] | 4708 | $1,469,058.00 | $504,629.25 |
| | Wells Fargo Bank [15] | 4713 | $4,837,939.00 | $2,920,405.47 |
| | Wells Fargo Leasing [16] | 4289 | $222,217.00 | $72,217.00 |
| | Wells Fargo [17] | 4891 | | |
| | Burkley, Larry and Judy [18] | 4549 | | |
| | Chigas, Greg [19] | 4553 | | |
| | West, Sean [20] | 4558 | | |
| | Stueber, John [21] | 4554 | | |
| | McInerney, James [22] | 4552 | | |
| | Sukenik, Mark M. [23] | 4555 | | |
| | Swan, Kimberly [24] | 4556 | | |
| | Swan, Brian and Rhonda [25] | 4557 | | |
| | Walcher, Robert (aka Rob Walcher) [26] | 4559 | | |
| | White, Richard and Stephanie [27] | 4546 | | |
| | TOTAL (including 1st payment of claim recoveries) | | | $636,156,989.81 |
| | TOTAL (without 1st payment of claim recoveries) | | | $532,156,989.81 |

[1] Partially allowed as a general unsecured claim at $65,006,489.95

[2] Partially allowed as a general unsecured claim at $5.1 million

[3] Partially allowed as a general unsecured claim at $93 million plus assignment to Trust of first $1.9 million in distributions on claims as a preference recovery

[4] Partially allowed as a general unsecured claim at $5,005,000

[5] Contingent litigation claim - unknown - disallowed in full.

[6] Partially allowed as a general unsecured claim at $3,000,000.00

[7] Unliquidated claim regarding securitized loans - disallowed in full

[8] Allowed as a general unsecured claim at $346,406.26

[9] Partially allowed as a general unsecured claim at $2,811,183.81

[10] Partially allowed as a general unsecured claim at $11,000,000 plus assignment to Trust of first $1.0 million in distributions on claims on a preference recovery

[11] Approximately $8.5 million plus unspecified - disallowed in full

[12] Allowed as a general unsecured claim at $70,136.27

[13] Unliquidated claim regarding sale of 18 pools of mortgage loans - disallowed in full

[14] Partially allowed as a general unsecured claim at $964,428.75

[15] Partially allowed as a general unsecured claim at $1,917,533.53

[16] Partially allowed as a general unsecured claim at $150,000

[17] Contingent litigation claim - unknown; disallowed in full

[18 - 27] Unknown amount based on fraud claim - alleged dealings with Debtor (Flagstaff Ranch) - disallowed in full

3598164 v1 (63210.00002.000)

# IV. EXPENSES

3598164 v1 (63210.00002.000)

Case 4:07-bk-01578-EWH    Doc 7458    Filed 06/17/15    Entered 06/17/15 11:20:26    Desc
Main Document    Page 22 of 24

# LITIGATION TRUST'S EXPENSES

**Lackey Hershman, LLP Billed Fees and Costs:** [12]                        **$7,885,383.33**

**Kane Russell Coleman & Logan PC Billed Fees and Costs:** [13]             **$1,955,675.35**

**Remaining Firms Billed Fees and Costs:**

| | | |
|---|---:|---:|
| Altfeld Battaile & Goldman, P.C. | $31,346.91 | |
| AVTranz | $285.15 | |
| Dinsmore & Shohl LLP | $54,166.49 | |
| Elite Document Technology | $2,892.31 | |
| First American Corelogic, Inc. | $223,860.00 | |
| Gabroy Rollman & Bosse (Contingency Fees) | $20,730.87 | |
| Gust Rosenfeld, P.L.C. | $360,032.76 | |
| Hill Schwartz Spilker Keller LLC | $82,574.80 | |
| James Warner | $2,474.59 | |
| Mesirow Financial Consulting, LLC (Trustee Fees) | $605,139.71 | |
| Mesirow Financial Consulting, LLC (Litigation Support) [14] | $4,470,513.97 | |
| Mesirow Financial Consulting, LLC (Claims Analysis) | $273,054.00 | |
| Protiviti Inc. | $11,844.00 | |
| Quarles & Brady LLP | $2,177.50 | |
| Winn Media Inc. | $821.93 | |
| **SUBTOTAL** | | **$6,141,914.99** |

**Miscellaneous Expenses**                                                  **$61,644.61**

**GRAND TOTAL – EXPENSES**                                                  **$16,044,618.28**

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[12]   Lackey Hershman, LLP was hired by the Trustee on a contingency fee arrangement, along with an hourly fee for certain types of work.

[13]   Kane Russell Coleman & Logan PC was retained by the Trustee on an hourly basis.

[14]   Mesirow Financial Consulting LLC's litigation support included, among other things, providing solvency analysis related to FMFC, analysis of transfers, preparation of an expert report, deposition testimony, examination and critique of opposing expert reports, and related litigation support. Mesirow Financial Consulting, LLC supported not only the Trust in the FMFC Insider Litigation, the FMCI Insider Litigation and the Taberna Litigation, but in other litigation pursued by the Litigation Trustee and the Liquidating Trustee.

3598164 v1 (63210.00002.000)

Respectfully submitted,

FIRST MAGNUS LITIGATION TRUST

By:

_____

Larry Lattig, solely in his capacity as Trustee

3598164 v1 (63210.00002.000)